1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CAROLINE WILMUTH, KATHERINE SCHOMER, and ERIN COMBS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMAZON.com, Inc., <br><br> Defendant. | Case No. <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND JURY DEMAND** |

COMPLAINT FOR DAMAGES
Page 1 of 35

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Plaintiffs Caroline Wilmuth, Katherine Schomer, and Erin Combs, by and through undersigned Counsel, on behalf of themselves and all others similarly situated, allege, upon personal knowledge as to themselves and upon information and believe as to others, as follows:

## I.  **SUMMARY OF CLAIMS**

1. This individual, class, and collective action is brought against Defendant Amazon.com, Inc. ("Amazon") to challenge Amazon's (1) policy and practice of paying female employees less than comparable male employees and (2) retaliating against Plaintiffs for raising protected complaints about that discrimination.

2. As set forth below, Plaintiffs allege that Amazon has violated, and continues to violate, the Washington Law Against Discrimination, RCW 49.60.030(1), 49.60.210(1); the Washington Equal Pay and Opportunities Act, RCW 49.58.010 *et seq.*; the Federal Equal Pay Act, 29 U.S.C. § 206 *et seq.*; and the Washington and Federal Family and Medical Leave Acts, RCW 50A.35.010 and 29 C.F.R. § 825.214.

3. Upon completion of the administrative process, Plaintiffs further intend to amend this Complaint to include class claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* and any other appropriate claims and allegations.

4. Amazon is one of the largest companies currently operating in the technology industry.

5. Amazon maintains uniform leveling and compensation policies and practices that resulted in the disproportionate underpayment of women as compared to their similarly-situated male counterparts.

6. Amazon's employment policies and practices – including in hiring, assigning job codes and job levels, setting initial salary and other aspects of compensation, measuring performance, determining bonuses, equity awards, and raises, and awarding promotions, among other things – even where facially neutral, had an adverse impact on

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

women, who were paid less than their male comparators for the performance of the same or similar work.

## II.   PARTIES

7.    Plaintiff Caroline Wilmuth is a female residing in King County, Washington.

8.    Plaintiff Katherine Schomer is a female residing in King County, Washington.

9.    Plaintiff Erin Combs is a female residing in King County, Washington.

10.    Defendant Amazon is a Delaware corporation headquartered in King County and doing business throughout Washington State.

11.    Defendant is an "employer" subject to Washington state statutes governing employment discrimination, retaliation, and equal pay, including the Washington Law Against Discrimination, Ch. 49.60 RCW, and the Washington Equal Pay and Opportunities Act, Ch. 49.58 RCW.

## III.   JURISDICTION AND VENUE

12.    This Court has original subject matter jurisdiction over the Federal Equal Pay Act claims pursuant to 28 U.S.C. § 1331 and Sections 206(d) and 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 206(d), 216(b).

13.    This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

14.    The United States District Court for the Western District of Washington has personal jurisdiction over Amazon because the firm does business in Washington and in this District, and because some of the acts complained of and giving rise to the claims alleged

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

occurred in and emanated from this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

16.     At all times material to this action, Plaintiffs were residents of King County, Washington.

17.     At all relevant times, Defendant employed Plaintiffs Wilmuth, Schomer, and Combs in King County, Washington.

18.     The events, acts, and omissions giving rise to Plaintiffs' claims alleged herein occurred in King County, Washington.

IV.     **ADMINISTRATIVE PROCEDURES**

19.     Plaintiffs have each filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Following the EEOC's issuance of a Notice of Right to Sue, Plaintiffs will seek to amend the Complaint to add claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").

20.     Any and all other prerequisites to the filing of this suit have been met.

V.     **COMMON FACTUAL ALLEGATIONS**

21.     Amazon is among the world's largest e-commerce and technology companies.

22.     Amazon employs common compensation-setting policies across its organizations, which disproportionately result in lower compensation for Plaintiffs and other women relative to similarly-situated men.

23.     Amazon maintains a common salary leveling structure across all organizations, running from Level 4 (at the bottom) to Level 12 (at the top).

24.     Amazon also maintains "job codes," which categorize job function.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

25.     Each level and job code reflects a range of possible compensation, including salary and stock awards.

26.     Amazon assigns each employee a job code upon hire, and that employee's job code largely determines their base salary, bonuses, stock awards, and other compensation.

27.     Upon information and belief, Amazon considers past compensation when setting the job code for employees upon hire.  To the extent it is the only variable responsible for a gap in compensation based on gender, it is discriminatory.

28.     Amazon regularly assigns women to lower job codes for the same job functions as comparable male employees.

29.     Amazon additionally regularly fails to advance women to higher job codes, resulting in the performance of similar work as men in higher job codes for less compensation.

30.     Where women and men performing similar work are in the same job code, Amazon nonetheless regularly pays women lower salaries and/or stock awards than men in the same job code.

31.     Inequity in compensation based on gender compounds over time because periodic compensation decisions, such as salary increases and promotions, are based on current job code.  Therefore, female employees are systematically disadvantaged by the common compensation structure.

## VI.     COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiffs bring this collective action pursuant to 29 U.S.C. § 216(b) seeking injunctive and declaratory relief, as well as monetary damages and other make-whole relief, on behalf of all women who worked for Amazon in a Covered Position at any time from three years before the filing of the initial complaint through the resolution of this action ("EPA Liability Period" / "Washington Liability Period") (collectively, "Collective Members" or the

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

"Collective") for claims under the Federal Equal Pay Act ("EPA").

33.    The "Covered Positions" comprise all positions in job levels 4-8.

34.    Plaintiffs and other Collective Members are similarly situated in that they have had substantially similar job roles, functions, families, titles and/or duties, and have been subjected to Amazon's common compensation and leveling policies and practices.

35.    There are many similarly situated Collective Members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Notice should be sent to the Collective pursuant to 29 U.S.C. § 216(b).

36.    Amazon has engaged in systematic gender discrimination in pay against women through the implementation of common compensation policies and practices that resulted in a gender pay disparity.

37.    As part of its regular business practice, Amazon has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the EPA with respect to Plaintiffs and the Collective.  This policy and pattern or practice includes, but is not limited to willfully compensating women less than men in comparable employment.

38.    Plaintiffs and the Collective have been paid less than their male colleagues in the same establishment for work requiring equal skill, effort, and responsibility and performed under similar working conditions. This unequal pay is not justified by seniority, a merit system, a system that measures earnings by quality or quantity of production, or any factor other than sex.

39.    Questions of law and fact common to Plaintiffs and the Collective include, but are not limited to, the following: (i) whether Amazon unlawfully failed and continues to fail to compensate Collective Members at a level commensurate with comparable male employees; (ii) whether Amazon's policy, practice, or procedure of failing to compensate members of the Collective at levels commensurate with their male comparators violates applicable provisions of the EPA; and (iii) whether Amazon's failure to compensate members of the collective at a level

1    commensurate with comparable male employees was willful within the meaning of the EPA.

2          40.    Plaintiffs seek to represent Collective Members.

3          41.    The systemic gender discrimination described in this Complaint has been,

4    and is, continuing in nature.

5    **VII.   CLASS ACTION ALLEGATIONS**

6          42.    Plaintiffs assert claims under the Washington Equal Pay and Opportunities

7    Act and Washington Law Against Discrimination on behalf of a putative class pursuant to Rule

8    23 of the Federal Rules of Civil Procedure.  Specifically, Plaintiffs seek to represent a class of all

9    women who worked for Amazon in Covered Positions at any time from three years before the

10   filing of the initial complaint through the resolution of this action ("WEPO/WLAD Liability

11   Period" / "Washington Liability Period") (collectively, "Class Members" or the "Class").

12   Plaintiffs are members of the Class they seek to represent.

13         43.    The "Covered Positions" comprise all positions in job levels 4-8.

14         44.    All requirements for class certification are met by the proposed Class.

15         45.    Class Members are so numerous that joinder of all members is

16   impracticable.  Fed. R. Civ. P. 23(a)(1).

17         46.    Although Plaintiffs do not know the precise number of Class Members,

18   the number is far greater than can be feasibly addressed through joinder.

19         47.    There are questions of law and fact common to the Class, and these

20   questions predominate over any questions affecting only individual members.  Common

21   questions include, among others: (i) whether Amazon's policies or practices discriminate against

22   Class Members; (ii) whether Amazon's compensation policies and practices violate the EPOA;

23   (iii) whether Amazon's leveling policies and practices violate the WLAD and EPOA; and (iv)

24   whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for

25   the Class are warranted.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

48.     Plaintiffs' claims are typical of the claims of the Class they seek to represent.

49.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

50.     Class certification is appropriate because Amazon has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class they seek to represent.  The Class Members are entitled to injunctive relief to end Amazon's common, uniform, unfair, and discriminatory policies and practices.

51.     Class certification is also appropriate because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Amazon's common, uniform, unfair, and discriminatory policies and practices.  Amazon has computerized account data, payroll data, and personnel data that will make calculation of damages for specific Class Members relatively simple.  The propriety and amount of punitive damages are based on Amazon's conduct, making these issues common to the Class.

## VIII.   INDIVIDUAL PLAINTIFF FACTUAL ALLEGATIONS

52.     Plaintiffs' experiences, as detailed below, are illustrative of Amazon's unfair treatment of women and bias toward men in determining terms and conditions of employment, including in setting compensation and determining job codes.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

A. **Background**

1. **Plaintiff Caroline Wilmuth**

53. Ms. Wilmuth joined Amazon's Worldwide Communications ("WWC") Organization in October 2017 as a General Marketing Manager on the Global Employer Brand team.

54. In May 2019, Ms. Wilmuth created a research function within Global Corporate Affairs ("GCA") and became the first researcher within WWC.

55. Over the next three years, she quickly grew and expanded what became the GCA Research & Strategy ("R&S") team from just herself to a team of 14 people in December 2022.

56. Ms. Wilmuth and her team conducted reputation research on internal and external audiences that served as the foundation of strategic decision-making and resource allocation across WWC, as well as informing Public Policy and Cross-Channel Marketing.

57. Among other projects, Ms. Wilmuth's team was responsible for global reputation tracking in 18 countries externally and 8 countries internally ("RepTracker"); research and marketing/communications strategy regarding Amazon's reputation in Seattle and the Puget Sound ("HQ1"); exploratory research and messaging development on Amazon's employer reputation, customer trust, sustainability, innovation, executive communications, data privacy, and antitrust; as well as overall reputation strategy.

58. In recognition of her high-quality work and immense impact on Amazon Worldwide Communications, Ms. Wilmuth won the "One WWC" All-Star award in March 2022.

2. **Plaintiff Erin Combs**

59. Ms. Combs has 20 years of experience in brand marketing, reputational strategy, and corporate social responsibility roles.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

60.     She joined Amazon in March 2020, leading marketing and communications for Amazon in the Community ("AITC").

61.     In this role, Ms. Combs developed a Headquarters ("HQ") community marketing strategy that build off her experience leading HQ initiatives for Starbucks and Lyft.

62.     In January 2022, Ms. Combs joined the GCA Research & Strategy team led by Plaintiff Wilmuth as a brand and marketing strategist.  She assumed a leadership role and worked with Ms. Wilmuth on team mission, strategy, and expansion.  Ms. Combs also brought the HQ1 work she started on AITC with her to the R&S team and continued leading the HQ1 research and building a HQ1 marketing strategy.

### 3.     **Plaintiff Katherine Schomer**

63.     Ms. Schomer joined Amazon in October 2019 as the Head of Market Intelligence for Executive Recruiting.

64.     Ms. Schomer thereafter joined the GCA Research & Strategy team in July 2022, bringing with her over 25 years of research experience.  Ms. Schomer's background includes 17 publications in peer-reviewed journals and multiple national awards and grants.

65.     Like Ms. Combs, Ms. Schomer worked alongside Ms. Wilmuth in a strategic leadership role, overseeing the team's highest profile and sensitive exploratory projects (e.g., employee safety, employee satisfaction with communications, treating employees with respect, A-to-z Guarantee, data privacy, and antitrust), as well as all internal research with Amazon employees.

Outten & Golden LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**B.** **Amazon Has Paid Ms. Wilmuth and Ms. Schomer Less than Male Researchers Performing the Same or Lesser Work.**

66.     Amazon discriminated against Plaintiff Wilmuth by misclassifying her into a lower-paid job category that was not reflective of the role she performed.  During all relevant times, Amazon has classified Ms. Wilmuth as a General Marketing Manager, despite her exclusively performing a research role (building and leading the GCA Research team) since May 2019.

67.     Prior to Amazon removing the GCA Research team from her in December 2022, Ms. Wilmuth was the only researcher on her team not classified in a research job category (and the only person on her team with a PhD classified in a lower compensation job code).

68.     Between 2019 and December 2022, Amazon paid Ms. Wilmuth less than her male peers, and multiple male direct reports.  For example, Amazon paid Ms. Wilmuth less than Jordan Burke, a male team lead reporting to the same supervisor (Christina Lee, VP of Corporate Reputation & Content Strategy), notwithstanding that they ran similar-sized teams (with overlapping subject matter) and Ms. Wilmuth has a higher education and more experience than Mr. Burke (Ms. Wilmuth has a PhD and 5+ years at Amazon compared to his Bachelor's degree and approximately two years).  Nevertheless, Amazon hired Mr. Burke as an L8 in January 2021, while continuing to pay Ms. Wilmuth as an L7.  Further, Ms. Lee has recognized since at least August 2021 that Ms. Wilmuth was unquestionably performing an L8 role, and told Ms. Wilmuth she could expect to be promoted to an L8 in 2022 (an assertion repeated by Drew Herdener, SVP of Global Corporate Affairs in November 2021).

69.     Amazon's failure to properly classify Ms. Wilmuth's position resulted in Amazon paying two of her male direct reports more than her as their manager.  This includes Daniel Tamul (an L6 Research Scientist) from the time he joined the GCA Research Team on

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

July 6, 2020 until Mr. Tamul left the team on December 26, 2021.  Similarly, during the entirety of Gouri Shankar Mishra's (an L7 Research Scientist) tenure on Ms. Wilmuth's team between June and December 2022, upon information and belief, Amazon paid Mr. Mishra $590,000 while paying Ms. Wilmuth (his manager) approximately $400,000.

70.     Even after Amazon stripped Ms. Wilmuth's team from her in December, Mr. Mishra continued to run the RepTracker program Ms. Wilmuth had originated and run for three years, while continuing to pay him significantly more than Ms. Wilmuth to manage just one of the projects that had been under her purview.

71.     Amazon's failure to properly classify Ms. Wilmuth's position has resulted in Defendant underpaying her by hundreds of thousands of dollars annually.  Specifically, Ms. Wilmuth was paid $205,006 in 2019, $279,810 in 2020, and $351,438 in 2021.  But if Ms. Wilmuth had been correctly classified as a researcher then, upon information and belief, she would have been earning between $570,000-$900,000 as an L7 Research Scientist, and between $900,00- $1,300,000 if she were an L8 Research Scientist.

72.     Amazon similarly discriminated against Plaintiff Schomer, misclassifying her position, and paying her less than her male peers.  Prior to joining the GCA team, Ms. Schomer worked on the Customer Experience and Business Trends ("CXBT" or "Benchmarking") team as a Principal Product Manager.  Ms. Schomer worked side-by-side with Pushkar Raj, with both Ms. Schomer and Mr. Raj performing the same job, leading research excellence together, and both possessing the same level of education.  But Amazon classified Mr. Raj as an Research Scientist, rather than Product Manager, and upon information and belief, paid him more than Ms. Schomer despite being a level below her (L6 instead of L7).  When Ms. Schomer questioned her supervisor, Maureen Stewart-Nordberg, about the differing job codes and resulting pay disparity, she received no response.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

73.     Amazon continued to pay Ms. Schomer less than her male peers after she joined the GCA Research & Strategy team.  In July 2022, Ms. Wilmuth discovered that while she was classified as a "Senior Research Manager" within the Functional Marketing job code, Mr. Mishra was designated as a Research Scientist, and therefore she was being compensated significantly less than Mr. Mishra.

74.     Ms. Schomer and Mr. Mishra were both L7s, performing the same work (research), on the same team, reporting to the same supervisor (Ms. Wilmuth), but their different job codes resulted in Amazon paying Mr. Mishra approximately 150% of Ms. Schomer's salary.

75.     Upon information and believe, the highest compensation in Ms. Schomer's job code range is approximately $367,000, while the Research Scientist job code has a minimum compensation of $570,000 and tops out at approximately $900,000.

76.     With a Master's degree, 25+ years of research experience, and 17 research publications, Ms. Schomer more than meets the general qualifications for the higher-paid Research Scientist position.

77.     While both Ms. Wilmuth and Ms. Schomer indisputably perform research roles and have the requisite degree and/or years of experience for the Research Scientist role, Amazon has discriminated against both by misclassifying their roles and paying them less than their male peers and/or subordinate.

78.     Defendant has continued to underpay Plaintiffs Wilmuth and Schomer after they (and several other women) brought the pay disparity to Amazon's attention. Defendant's knowledge of the pay disparity and failure to remedy it was willful.

79.     Upon information and belief, Amazon was also paying Ms. Combs less than her male peers.  Ms. Combs was paid at the very low end of the pay band for her role, while males who had the same job code were being paid more, including males who had substantially less experience than Ms. Combs.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**C.** **Amazon Has Subjected Ms. Wilmuth and Ms. Combs to Inferior Treatment Based on Their Gender.**

80. Both Ms. Wilmuth and Ms. Combs have experienced discriminatory treatment at the hands of Jordan Burke, an L8 Director who reports to Ms. Wilmuth's former supervisor, Vice President Christina Lee.

81. Given the overlap between the reputation research conducted by Ms. Wilmuth's former team and Mr. Burke's paid advertising campaigns team, both Ms. Wilmuth and Ms. Combs regularly had to work with Mr. Burke, and both experienced similarly gendered treatment from him. This includes Mr. Burke devaluing and questioning their experience and expertise, undermining and marginalizing their work and contributions, and speaking to them in in an unprofessional, disrespectful, condescending, and patronizing manner.

82. Beginning in July 2022, Mr. Burke started taking credit for Plaintiffs Wilmuth's and Combs' work. For example, Ms. Wilmuth's and Mr. Burke's teams prepared a joint paper sharing the findings of career advancement research that had been conducted by their two teams. After the paper had been finalized, Mr. Burke removed Ms. Combs' name and that of the GCA Research & Strategy team, and then circulated the joint paper to a wide group of Amazon stakeholders with only his team listed, deliberately concealing the contributions of Ms. Wilmuth's team.

83. During a meeting the following month, when Ms. Lee asked Mr. Burke for an example of local reputation work he had done at Uber (where he worked prior to Amazon), he cited a program that was neither his nor Uber's - instead, it was a program that Ms. Combs had led for Lyft (Uber's primary competitor and her employer prior to Amazon).

84. Last fall, after Ms. Combs had successfully presented her HQ1 reputation research and marketing strategy, Mr. Burke began to assert ownership for the work Ms. Combs had originated and spent the last two years building at Amazon (after spending much of her

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1    career doing the same for prior companies).

2          85.     Despite the fact that Ms. Combs is indisputably a subject matter expert in

3    this area and there would be no HQ1 marketing work at Amazon but for her leadership, Mr.

4    Burke insisted that a white male reporting to him, Rob Wilson, should own all HQ1 creative

5    development going forward and told Ms. Combs that she could apply for an L6 role reporting to

6    Mr. Wilson if she wished to continue working on the program she built.  During a meeting about

7    this work on September 22, 2022, Mr. Burke and Mr. Wilson repeatedly talked over and down to

8    Ms. Combs in an insulting manner, even though she has more than 20 years of experience in

9    creative marketing and has spent the last 10 years leading creative teams or agencies, which is

10    greater experience than either Mr. Burke or Mr. Wilson.

11          86.     Plaintiffs Wilmuth and Combs also both saw their roles and

12    responsibilities materially diminished in favor of enhancing Mr. Burke and his team.  For

13    example, while Mr. Burke has no formal research training or education, and significantly less

14    experience than either Ms. Wilmuth or Ms. Combs, Amazon enabled him to take over large

15    portions of their research and marketing strategy work.

16          87.     Multiple other women who work with Mr. Burke have also raised

17    concerns in the last year that he treats them differently because of their gender and/or race.  This

18    includes Mr. Burke elevating men to leadership roles, whereas women with greater experience

19    are passed over or shuffled down.  For example, there are currently four female L7s nested under

20    Dylan Green, a male L7 who reports up to Mr. Burke, even though each of these women have

21    more experience than Mr. Green.

22          88.     Women on Mr. Burke's team have also reported having their expertise

23    minimized and their feedback ignored, being excluded from work they own, that and having less

24    access and opportunities to interface with Mr. Burke who meets more frequently with male

25    employees on his team than with female employees.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

89.     Upon information and belief, the pay inequities that were experienced by female researchers under Ms. Wilmuth still exist today under Mr. Burke, despite Ms. Wilmuth's efforts to remedy them.

90.     At least two of the women who complained about Mr. Burke's treatment this year, Allison Heim and Kendra Tappin, have since been separated from Amazon.

91.     Defendant is liable for Mr. Burke's disparate treatment of Plaintiffs Wilmuth and Combs because they (and others) complained to their managers and Human Resources, but Amazon failed to take reasonably prompt and adequate corrective action.

**D.**     **Plaintiffs Have Repeatedly Raised Concerns About Gender Discrimination, But Amazon Has Failed to Remedy the Problems.**

**1.**     **Plaintiff Caroline Wilmuth:**

92.     Ms. Wilmuth began surfacing concerns regarding her pay and Mr. Burke's treatment in November 2021.  During a one-on-one conversation with her direct supervisor, Ms. Lee, Ms. Wilmuth asked about being moved to a Research Scientist job category, as Amazon had not updated her job code and compensation since she left her prior marketing role and began leading the GCA Research & Strategy team in May 2019.

93.     During that same conversation, Ms. Wilmuth raised concerns about Mr. Burke treating her with a lack of respect and told Ms. Lee that she had tried to address these concerns with Mr. Burke directly on multiple occasions, but the mistreatment had continued unabated.  In response to her concerns, Ms. Lee told Ms. Wilmuth that she (Ms. Lee) used to cry almost every day in her first year at Amazon because of how she was treated, but that is just the way Amazon is and Ms. Wilmuth needed to learn to live with it.

94.     Ms. Lee also stated, "maybe somebody else should run the GCA Research & Strategy team."  Ms. Wilmuth understood this as a threat to remove the team she had founded and spent the last several years building if she continued to raise concerns about her pay or Mr.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Burke's mistreatment.

95.     The following week, in their next one-on-one, Ms. Lee told Ms. Wilmuth that she was not ready to be promoted to Director, and cited Ms. Wilmuth having raised concerns about Mr. Burke's mistreatment as an example of her "professional immaturity" and "poor stakeholder management skills."  Ms. Lee went on to assign Ms. Wilmuth an executive coach.

96.     Six months later, in May 2022, Ms. Wilmuth again spoke with Ms. Lee regarding her compensation.  Ms. Lee told Ms. Wilmuth that her compensation would be increased as part of a Q3 promotion to L8 Director.  Documentation shows that as of early July, Ms. Lee was actively working on Ms. Wilmuth's promotion.

97.     Then on July 12th, 2022, Ms. Wilmuth again raised with Ms. Lee her strong concerns about Mr. Burke's treatment of herself and female members of her team, including Ms. Combs and Lauren Edwards.  Ms. Wilmuth detailed multiple instances where Mr. Burke had spoken to her in a condescending manner, minimized or dismissed the work of her team, and took credit for shared work product.

98.     Two days later, on July 14, 2022, Ms. Lee informed Ms. Wilmuth that her promotion and compensation increase were being put on hold, purportedly because two of Ms. Wilmuth's subordinates with documented performance issues had raised concerns that she was "too controlling" in managing her team.

99.     Ms. Wilmuth began escalating her concerns about gendered treatment and retaliation up through her management chain and to Human Resources.  On September 13, 2022, Ms. Wilmuth told her skip-level supervisor, Senior Vice President Drew Herdener, that she was being held to a different standard as a woman and criticized as a female leader for being too aggressive.  The following week, Ms. Wilmuth similarly reported to Chuin Phang, Senior DEI Specialist in HR, that she felt the way she was being treated by Mr. Burke and Ms. Lee was both gendered and retaliatory.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

100.     Upon information and belief, Ms. Lee has engaged in other discriminatorily biased activity, including by asking a subordinate what skills they had to justify their green card status in front of their colleagues.

101.     Ms. Wilmuth continued to engage in protected activity throughout the fall, raising and/or escalating the concerns of her female subordinates about gender-based pay discrimination and disparate treatment.  In October, Ms. Wilmuth escalated concerns Plaintiff Schomer had surfaced about the substantial pay discrepancies between the Functional Marketing and Research Scientist roles on her team, which were held by researchers performing the same or substantially equal work.

102.     Ms. Wilmuth expressed her shared concern about "the gender and racial divides . . . across the compensation levels and job categories on [her] team."  Ms. Wilmuth also pointed out that she herself was a victim of the disparate compensation Amazon was paying male researchers on her team as compared to female researchers.

103.     At the time, there were four L7 researchers on Ms. Wilmuth's team: herself, Plaintiff Schomer, Mr. Mishra, and Roxana Cosmaciuc.  All three female researchers were classified in lower-paid job categories, while the only male researcher was classified in the higher-paid Research Scientist job code.

104.     Ms. Lee responded to Ms. Wilmuth's concerns, admitting there had "been a slow evolution" in Amazon "matching the appropriate classifications."  Notably, Ms. Wilmuth had been in a researcher role for over two and a half years at this point, and all of the individuals on her team had been in researcher roles since they started at Amazon.

105.     On November 2, 2022, Ms. Wilmuth spoke to Ms. Lee and HR Business Partner ("HRBP") Keith Johnson regarding the pay discrimination concerns raised by her and members of her team.  During that conversation, Ms. Lee declared there had "been a lot of these kinds of claims coming from [Ms. Wilmuth's] team."  She and Mr. Johnson then proceeded to

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

aggressively question Ms. Wilmuth about what conversations *she* was having with her team that were "leading" them to surface discrimination concerns.

106.    Mr. Johnson then declared there would be no back pay for any of the lower-paid female researchers and it was unlikely Amazon would increase their compensation to pay them equally to their higher-compensated male research peers.

107.    That same week, Ms. Wilmuth submitted a written complaint to HR, describing how she had been subject to gender discrimination with respect to her compensation, the diminution of her role and responsibilities, and the treatment she had endured from Mr. Burke.

108.    When Ms. Wilmuth informed her skip-level manager, Mr. Herdener, that she had filed an EEO complaint involving Mr. Burke and Ms. Lee, Mr. Herdener dismissed and minimized Ms. Wilmuth's concerns as nothing more than a "personality clash."

**2.    Plaintiff Erin Combs**

109.    Ms. Combs began voicing concerns about Mr. Burke's disparate treatment to Ms. Wilmuth in July 2022.  Ms. Wilmuth in turn escalated Ms. Combs' concerns, as well as her own, to Ms. Lee.

110.    In early August 2022, Ms. Combs shared her concerns directly with Ms. Lee, reporting she had never in her professional career seen a leader speak to team members in the "alarming and offensive" way that Mr. Burke had spoken to Ms. Wilmuth, Ms. Combs, and Lauren Edwards during a meeting in July 2022.

111.    Throughout August and September, Mr. Burke continued to claim credit for Ms. Combs' work, while also sending emails to Ms. Combs' supervisors referring to her as uncollaborative, "presumptuous," and "strident."  On September 20, 2022, Ms. Lee told Ms. Combs that Mr. Burke's emails were "inappropriate" and she would speak to him about it.  Ms. Lee also assured Ms. Combs that she would continue to own her HQ1 work.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

112.     Nevertheless, Mr. Burke's disrespectful treatment and efforts to assume control of Ms. Combs' work continued unabated.  On September 26, Ms. Combs told Mr. Burke that his recent comments were disrespectful and insulting.  In response, Mr. Burke stated that a male on his team, Rob Wilson, would soon own Ms. Combs' HQ1 work, and she "could apply for an open role reporting to Rob" (notably, the open role was an L6 position, lower than the L7 role Ms. Combs was currently performing.)

113.     A couple days later, Ms. Combs escalated her concerns to HR.  She detailed her concerns regarding Mr. Burke's "unprofessional, unethical, and unequal" treatment on September 30, 2022.  Ms. Combs expressed her fear about working with (or worse, under) Mr. Burke, and stated she did not feel she was in a safe environment to file a formal complaint because she feared retribution.

114.     Ms. Combs continued raising her concerns with Ms. Wilmuth throughout the fall, explicitly calling out Mr. Burke's treatment of her as "gendered," and telling Ms. Wilmuth that she found "him to be deeply misogynistic," and that he speaks to and interacts with male leaders in a different manner than female leaders.  She stated: "I can't even imagine him treating a man the way he treats me."

115.     Ms. Combs again escalated her concerns to Ms. Lee on November 10, reporting that Mr. Burke continued to marginalize her and was trying to assume ownership of her HQ1 work.

116.     By this point, Ms. Wilmuth had filed her own discrimination complaint related to Mr. Burke's treatment of her and Ms. Combs.  On November 17, 2022, Ms. Combs was contacted by Employee Relations as part of the investigation into Ms. Wilmuth's EEO complaint.  Over the course of two interviews and follow up emails in late November, Ms. Combs provided documentation of Mr. Burke's mistreatment.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

117.    Notably, the investigator never even asked Ms. Combs if she believed Mr. Burke's treatment was discriminatory or related to gender (instead asking only about "tension" between Ms. Wilmuth's and Mr. Burke's teams).

### 3.    Katherine Schomer

118.    Ms. Schomer first began raising concerns about pay inequity with Ms. Wilmuth within weeks of joining the R&S team in July 2022, and discovering that Mr. Mishra was classified as a Research Scientist, while Ms. Schomer is not.

119.    Approximately three weeks later, when Brandi Daniels (a Black woman) joined Ms. Schomer's team, also in the lower-paid Functional Marketing job code, she similarly expressed that the pay differentials were inequitable given that Ms. Schomer's and Mr. Mishra's teams both performed the same work (research).

120.    At Ms. Wilmuth's suggestion, Ms. Schomer met with Amazon Director Katie Curran, who had been investigating job codes within WWC.  On September 21, 2022, Ms. Schomer explained to Ms. Curran how current job codes were creating significant pay discrepancies on Ms. Wilmuth's team, and the impact was being felt across gender and racial lines.

121.    During her next two one-on-ones with Ms. Wilmuth in late September and then October 5, 2022, Ms. Schomer continued to raise strong concerns about unequal pay based on gender and race.  Ms. Schomer followed up with an email to Ms. Curran and Ms. Wilmuth on October 7 summarizing the compensation issues they had discussed and the need for a job code and compensation review for Ms. Wilmuth's team.

122.    Ms. Schomer's concerns worsened when she hired a Black researcher on her team in early November, who Ms. Lee and HR insisted similarly be placed in the lower-paid job category, thus increasing the racial pay discrimination.  Further, with this hire, Ms. Schomer now had three people reporting to her, which should have automatically elevated her into the

1  higher-paying Senior Manager title.

2       123.    Ms. Schomer raised this with Ms. Wilmuth on November 18, as she was

3  still being paid as a "Principal."  Ms. Wilmuth emailed HRBP Keith Johnson that same day

4  seeking guidance on how to make this change to ensure Ms. Schomer was "appropriately

5  recognized and compensated" for the people leadership role that she was then performing.

6       124.    After Ms. Schomer again discussed her pay discrimination concerns with

7  Ms. Wilmuth on December 5, Ms. Wilmuth again escalated the issue of Ms. Schomer's pay

8  raise.  Mr. Johnson refused to provide the requested information and insisted that Ms. Schomer

9  not be compensated as a senior manager until after the completion of a job code analysis, thus

10  continuing the pay disparity between Ms. Schomer and Mr. Mishra.

11     **E.**     **Amazon Retaliated Against Plaintiffs by Demoting Them Within Weeks of**

12            **Each Engaging in Protected Activity.**

13       125.    On December 12, 2022, Ms. Lee informed Ms. Wilmuth that Amazon was

14  removing her entire 14-person team and all of her projects from under her purview, and she

15  would no longer have any role on the GCA Research and Strategy team (that she founded and

16  spent three and half years building).

17       126.    Amazon demoted Ms. Wilmuth from a People Manager to an Individual

18  Contributor and moved her from a leadership role (that was scoped as an L8 Director) to a

19  supporting researcher role on the AITC Fundamentals team with no opportunity for

20  advancement.

21       127.    At the same time, Ms. Lee also told Ms. Wilmuth she would no longer

22  have any role in assessing the appropriate job codes for herself, Ms. Schomer, and the other

23  female researchers on her team.

24       128.    Three days later, on December 15, 2022, Ms. Wilmuth discovered that her

25  entire team was moved under Mr. Burke (the very man she and Plaintiff Combs had been

COMPLAINT FOR DAMAGES
Page 22 of 35

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

complaining was discriminating against them).

129.    Amazon's disparate treatment of Ms. Wilmuth compared to Mr. Burke is stark: while her promotion to L8 Director in the summer of 2022 was put on hold because of concerns regarding her "communication and management style" (before subsequently demoting her), Amazon greatly expanded Mr. Burke's role and team in December 2022 while he was being actively investigated for gender discrimination against multiple female leaders.

130.    Indeed, even after the reorganization, Mr. Burke's discriminatory behavior has continued, with him meet more frequently with the male members of him team and providing them with greater opportunities that the female leaders are not provided.

131.    When Amazon moved Ms. Wilmuth's team under Mr. Burke, it also removed 10 of Plaintiff Schomer's 11 projects and two of her three team members.  With the removal of Ms. Schomer's directs in late December, she also became ineligible for the higher-paying Senior Manager job code, which should have automatically taken effect back in November.

132.    In addition to losing two-thirds of her staff and 90 percent of her projects, Ms. Schomer was moved to report to a peer on Mr. Burke's team with less than half her years of experience (approximately 12 years of experience compared to Ms. Schomer's 25+ years).

133.    Like Plaintiffs Wilmuth and Schomer, Amazon also removed Ms. Combs from her leadership position, stripped both of her direct reports from her (thus demoting her from a People Manager to an Individual Contributor), and reduced the scope of her role by approximately 75 percent.

134.    Among the projects Ms. Combs lost were RepTracker (the team's largest and highest-priority project for which she had served as the strategic lead and wrote the Q4 document); executive research (a highly sensitive and visible body of work on CEO and executive communications); and brand messaging (a body of work Ms. Combs had conceived

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1 | and led for more than a year).

2 | 135.   Amazon also moved Ms. Combs so she is reporting to a male with

3 | substantially less experience (approximately 12 years of experience compared to Ms. Combs'

4 | 20+ years).   The two reports Ms. Combs lost similarly were moved under a less qualified male

5 | on Mr. Burke's team.

6 | 136.   In sum, Amazon removed Plaintiffs Wilmuth, Schomer, and Combs from

7 | their leadership roles, stripped their direct reports from them, removed the majority of their

8 | remits, and severely diminished their career paths after they repeatedly raised concerns about

9 | gender and pay discrimination.

10 | **F.**   **Amazon Failed to Take Any Corrective Action in Response to Plaintiffs'**

11 | **Complaints.**

12 | 137.   On December 20, 2022, Ms. Combs spoke with the Employee Relations

13 | Investigator assigned to Ms. Wilmuth's gender discrimination and retaliation complaint.  Ms.

14 | Combs told the Investigator that she believed Mr. Burke's treatment was gender discrimination,

15 | and that her demotion as part of the December 15th "reorg" was both discriminatory and in

16 | retaliation for her earlier concerns about Mr. Burke's discrimination.

17 | 138.   Three days later, on December 23, Ms. Combs submitted a written

18 | complaint calling out how the "reorg" disproportionately affected the female members of the

19 | Research & Strategy leadership team.  Of the four L7 leads who had reported to Ms. Wilmuth,

20 | each of the three women (Ms. Combs, Ms. Schomer, and Ms. Cosmaciuc) lost direct reports, lost

21 | their leadership roles, and had their scopes severely reduced, while the only male L7 (Mr.

22 | Mishra) had his role, team, and compensation remain the same or even increased.

23 | 139.   On January 4, 2023, Plaintiff Schomer also filed a formal complaint

24 | regarding Amazon's pay discrimination and her retaliatory demotion.  Ms. Schomer detailed

25 | Amazon's disparate treatment of her as compared to Mr. Mishra, both with respect to their

compensation and their treatment in the "reorg." (Mr. Mishra gained a direct report in the "reorg," resulting in him receiving the Senior Manager pay increase, while also keeping his entire remit intact.)

140. On January 11, 2023, Amazon informed Ms. Wilmuth that their investigation had found "zero trace of gendered treatment." With respect to Ms. Wilmuth's pay discrimination claim, the investigator admitted that she had done nothing to determine whether Ms. Wilmuth was misclassified in a marketing job code while performing the work of a researcher, stating: "it's not my job to make an assessment of your role." Nevertheless, she found that Ms. Wilmuth could not compare her pay to Mr. Mishra's *precisely because* she is classified as a Marketer and he was classified at a Research Scientist (i.e., the entire basis for Ms. Wilmuth's claim).

141. On February 1, the investigator assigned to Plaintiffs Wilmuth's and Combs' discrimination and retaliation claims interviewed Ms. Schomer and Roxana Cosmaciuc. Both women stated the "reorg" was absolutely gendered and negatively and disproportionately impacted the female L7 leaders on the Research and Strategy team with the apparent intent to avoid addressing the pay inequity (Ms. Schomer also reported that the "reorg" was retaliatory.)

142. When Mr. Mishra was interviewed, he similarly told the investigator that he believed the "reorg" was discriminatory, done across gender lines, and specifically called out that Plaintiffs Combs and Schomer, and Ms. Cosmaciuc were all harmed in the reorg and forced to report to people with less experience, while he gained a direct report in the "reorg."

143. After Plaintiff Combs continued raising concerns about Mr. Burke's gendered treatment and the discriminatory and retaliatory nature of the "reorg," Mr. Burke further diminished her role. In late January, Mr. Burke removed her from RepTracker, despite Ms. Combs having been the document owner, primary drafter, and strategy lead. Two weeks later, on February 9, Mr. Burke assigned Rob Wilson (the same white male Mr. Burke previously

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

said would own Ms. Combs' HQ1 work) to also take over her Brand Messaging project.

144.   On March 1, 2023, Amazon's EEO investigator admitted that, with respect to moving Ms. Wilmuth's team under Mr. Burke's, "on its face, it seems like there was a disparate impact" on women and referenced the "optics of disparate impact" multiple times.  By that point, at least five employees had raised concerns the "reorg" was "gendered" and "discriminatory," (Plaintiffs Wilmuth, Schomer, Combs, and Ms. Cosmaciuc, and Mr. Mishra), and Amazon's own investigator admitted the "optics of disparate treatment."

### G.   Amazon Continues to Discriminate and Retaliate Against Plaintiffs.

145.   As a result of Amazon's unlawful conduct, Plaintiffs' mental and physical health suffered, and each took a medical leave of absence.  Ms. Wilmuth took a medical leave between March 16, 2023 and June 14, 2023; Ms. Combs took medical leave between March 20 and July 18, 2023; and Ms. Schomer took medical leave between May 5th and August 2, 2023.

146.   Since returning from their respective medical leaves, Amazon has continued to discriminate and retaliate against each of the Plaintiffs.

### 1.   Ms. Wilmuth

147.   Upon returning to work from medical leave, Amazon HR shared information concerning Ms. Wilmuth's protected complaints, which by Amazon policy should be kept confidential, with one of Ms. Wilmuth's co-workers.  Specifically, Ms. Wilmuth was informed that before she joined AITC (following the removal of her team) that HRBP Keith Johnson told Kailey Waring, "a new person is joining your team from a troubled situation" and that "Amazon has the receipts on her."  Another teammate told Ms. Wilmuth that Ms. Waring shared this information with other Amazon employees, further damaging her reputation.

148.   Upon information and belief, while Ms. Wilmuth was out on leave, individuals on the team made comments such as, "If I was her, I wouldn't come back from leave."

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

149.     On Tuesday October 3, 2023, Ms. Wilmuth submitted a claim to EthicsPoint detailing this information, and then emailed a summary to Tara Lubbers, Head of the AITC Fundamentals team.  Amazon has done nothing with respect to Ms. Wilmuth's complaint.

**2.     Ms. Schomer**

150.     In December 2022, Ms. Wilmuth entered a "top tier" performance rating for Ms. Schomer.  By the time Ms. Schomer received her review in March 2023, however, her new supervisor Ana Rocca, had downgraded her to "meets expectations," despite having only supervised her for two weeks of that review period.  This resulted in a significant loss of stock compensation and will negatively impact her compensation level for the next three years.

151.     When Ms. Schomer asked why Ms. Rocca had rejected Ms. Wilmuth's rating, Ms. Rocca told her they could not "talk" to Ms. Wilmuth, but they had spoken to Ms. Schomer's previous manager, Maureen Stewart-Nordberg, who is no longer at Amazon.  Ms. Schomer complained to Employee Relations that this review process had not followed standard Amazon protocol.  Amazon has done nothing in response to Ms. Schomer's complaint.  This lower rating also affects Ms. Schomer's reputation at Amazon and impacts her ability to find another role at Amazon.

152.     Within weeks of returning from medical leave, Ms. Schomer began experiencing continued retaliation.  After Ms. Rocca had only been supervising Ms. Schomer for two weeks following her return, she provided Ms. Schomer with a list of purported performance issues that had never been mentioned to her before, and notably came on the heels of her complaints and her protected leave.

153.     Ms. Schomer reported this retaliatory action to HR and Employee Relations.  Ms. Rocca falsely reported to Employee Relations that she had conveyed the performance issues prior to Ms. Schomer's leave.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

### 3. **Ms. Combs**

154.    In December 2022, Ms. Wilmuth entered a "top tier" performance rating for Ms. Combs.  By the time Ms. Combs received her review in March 2023, however, her new supervisor, Dylan Green, had downgraded her to "meets expectations."  This resulted in a significant loss of stock compensation and will negatively impact Ms. Combs' compensation for the next three years.

155.    In the written review, Mr. Green failed to give Ms. Combs credit for a majority of the work she completed in 2022, including her brand messaging and research strategy projects, as well as her leadership and people management contributions.

156.    Further, several peers and direct reports identified "delivers results" as one of Ms. Combs' strengths, however, Mr. Green identified "deliver results" as a growth area and wrote "while Erin spent most of 2022 developing the strategy for HQ1 marketing, she has not yet been able to deliver significant business/reputational impact for this work."  This is empirically false.  Drew Herdener, SVP of Worldwide Communications, had approved two of Ms. Combs' strategy proposals in 2022 and, only a few weeks before her review was finalized in 2023, approved $13 million to fully fund the headquarters strategy she developed.

157.    When Ms. Combs returned from medical leave on July 19, 2023, Amazon failed to reinstate her to her pre-leave role (which was already a demotion from her pre-December 2022 role).  Instead, Amazon further demoted Ms. Combs and placed her in a role in which she is set up to fail.

158.    Specifically, Ms. Combs was directed to perform work previously led by an L6 researcher, which is both below her level and outside Mr. Combs' skillset, as she has no background in research.  Ms. Combs requested training and coaching on this research tool, and told her managers that she was not comfortable leading tests in it, but her managers ignored these

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1   requests, and then blamed Ms. Combs for any small and insignificant misstep.

2        159.    When she was out on leave, Amazon had transferred Ms. Combs' HQ

3   work to two individuals who do not have the subject matter expertise of Ms. Combs.

4        160.    Upon information and belief, Mr. Burke, Ms. Rocca, and Mr. Green all

5   remarked to individuals on the team that they were not expecting Ms. Combs to return to the

6   team or Amazon, and that the individual filling Ms. Combs' role while she was on medical leave,

7   would permanently replace Ms. Combs.

8        161.    To date, Amazon has not corrected the above-described pay disparities or

9   returned Plaintiffs to their prior roles.  Amazon's actions were and are willful and malicious.

10

11        162.    Amazon's discrimination and retaliation was intended to cause, and did

12   cause, each of the Plaintiffs severe emotional distress, anxiety, humiliation, and loss of

13   enjoyment of life.

14   **IX.**     **CAUSES OF ACTION**

15   <b><u>FIRST CLAIM</u></b>

16   <b>DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF THE</b>

17   <b>WASHINGTON LAW AGAINST DISCRIMINATION, RCW 49.60.030(1)</b>

18   <b>(on behalf of Plaintiffs and the Class)</b>

19        163.    Plaintiffs incorporate by reference paragraphs 1 through 160 above.

20        164.    This claim is brought by Plaintiffs on behalf of themselves and the Class.

21        165.    Plaintiffs Wilmuth, Schomer, Combs, and the Class belong in a protected

22   class on the basis of sex (female).

23        166.    Plaintiffs Wilmuth, Schomer, Combs, and the Class were discriminated

24   against on the basis of gender and compensation and treated less favorably in the terms or

25   conditions of their employment than similarly situated male employees.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1    167.    Defendant substantively demoted Plaintiffs Wilmuth, Schomer, and

2    Combs on the basis of their gender.

3                              **SECOND CLAIM**

4    **VIOLATIONS OF WASHINGTON EQUAL PAY AND OPPORTUNITIES ACT,**

5                          **RCW 49.58.010 ET SEQ.**

6                    **(on behalf of Plaintiffs and the Class)**

7    168.    Plaintiffs Wilmuth, Schomer, Combs, and the Class incorporate by

8    reference paragraphs 1 through 165 above.

9    169.    This claim is brought by Plaintiffs on behalf of themselves and the Class.

10   170.    Pursuant to the Washington Equal Pay and Opportunities Act, RCW 49.58

11   *et seq.*, it is unlawful for an employer to discrimination in any way by providing compensation

12   based on gender.

13   171.    Amazon has paid Plaintiffs and the Class less than similar male employees

14   for the performance of work requiring similar skill, effort, and responsibility, and performed

15   under similar working conditions.

16   172.    Amazon's conduct constitutes gender discrimination with respect to

17   compensation in violation of the Washington Equal Pay and Opportunities Act.

18                              **THIRD CLAIM**

19         **VIOLATIONS OF EQUAL PAY ACT, 29 U.S.C. § 206 *et seq.***

20                  **(on behalf of Plaintiffs and the Collective)**

21   173.    Plaintiffs Wilmuth, Schomer, Combs, and the Collective incorporate by

22   reference paragraphs 1 through 170 above.

23   174.    This claim is brought by Plaintiffs on behalf of themselves and the

24   Collective.

25

COMPLAINT FOR DAMAGES
Page 30 of 35

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

175.    Defendant discriminated against Plaintiffs Wilmuth, Schomer, Combs and the Collective in violation of the EPA, 29 U.S.C. § 206 *et seq.*, by paying them less than their male comparators who performed equal work requiring equal skill, effort, and responsibility, and which was performed under similar working conditions.

176.    The EPA of the Fair Labor Standards Act makes it unlawful for an employer to discriminate between employees on the basis of sex by paying wages to employees at a rate less than the rate paid to employees of the opposite sex for equal work.

177.    Amazon subjected Plaintiffs and the Collective to discriminatory leveling and compensation policies that resulted in the underpayment of salary, bonuses, and equity awards to Plaintiffs and the Collective in violation of the EPA.

178.    Amazon caused and contributed to the underpayment of Plaintiffs and the Collective relative to their male comparators who were performing substantially equal work.

179.    As a result of Amazon's conduct, Plaintiffs and the Collective suffered harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

180.    The foregoing conduct, as alleged, constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

## FOURTH CLAIM

### VIOLATIONS OF EQUAL PAY ACT, 29 U.S.C. § 206 *et seq.*

### (on behalf of Plaintiffs Wilmuth and Schomer individually)

181.    Plaintiffs Wilmuth and Schomer incorporate by reference paragraphs 1 through 178 above.

182.    Defendant retaliated against Plaintiffs Wilmuth and Schomer substantively demoted them for engaging in protected activity, in violation of 29 U.S.C. § 206 *et seq.*

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

183.     As a result of Amazon's conduct, Plaintiffs suffered harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

184.     The foregoing conduct, as alleged, constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

**FIFTH CLAIM**

**VIOLATIONS OF WASHINGTON EQUAL PAY AND OPPORTUNITIES ACT, RCW 49.58.010 ET SEQ.**

**(on behalf of Plaintiffs individually)**

185.     Plaintiffs Wilmuth and Schomer incorporate by reference paragraphs 1 through 182 above.

186.     Plaintiffs Wilmuth and Schomer each engaged in protected opposition to what they believed in good faith to be unlawful discrimination against them.

187.     Defendant retaliated against Plaintiffs Wilmuth and Schomer and substantively demoted them for engaging in protected activity, in violation of RCW 49.58.050.

**SIXTH CLAIM**

**RETALIATION IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION, RCW 49.60.210(1)**

**(on behalf of Plaintiffs individually)**

188.     Plaintiffs incorporate by reference paragraphs 1 through 185 above.

189.     Plaintiffs Wilmuth, Schomer, and Combs each engaged in protected opposition to what they believed in good faith to be unlawful discrimination against them.

190.     Defendant took adverse employment actions against Plaintiffs, including substantively demoting them, because they engaged in protected opposition activity.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**SEVENTH CLAIM**

**FAMILY AND MEDICAL LEAVE VIOLATIONS**

**(on behalf of Plaintiffs)**

191.    Plaintiffs Wilmuth, Schomer, and Combs incorporate by reference paragraphs 1 through 188 above.

192.    Plaintiff Combs took medical leave between March 20, 2023 and July 19, 2023.

193.    Plaintiff Wilmuth took medical leave between March 15, 2023 and June 14, 2023.

194.    Plaintiff Schomer took medical leave between May 5, 2023 and August 2, 2023.

195.    Defendant retaliated against Plaintiffs Wilmuth, Schomer, and Combs upon their return from medical leave, in violation of RCW 50A.35.010 and 29 C.F.R. § 825.214.

196.    Defendant failed to restore Plaintiff Combs to the same or equivalent position upon her return from medical leave, in violation of RCW 50A.35.010 and 29 C.F.R. § 825.214.

**X.    PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendant and relief as follows:

A.    Certification of the case as a class action on behalf of the proposed Class, designation of Plaintiffs as representatives of the Class, and designation of Plaintiffs' counsel of record as Class Counsel;

B.    Certification of the case as a collective action under the EPA on behalf of the proposed Collective, designation of Plaintiffs as representatives of the Collective, prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1    similarly-situated members of the Collective, which (1) apprises them of

2    the pendency of this action and (2) permits them to assert timely EPA

3    claims in this action by filing individual Consent to Join forms pursuant to

4    29 U.S.C. § 216(b), and tolling of the statute of limitations on the claims

5    of all members of the Collective from the date the original Complaint was

6    filed until the Collective Members are provided with reasonable notice of

7    the pendency of this action and a fair opportunity to exercise their right to

8    opt in as Collective Action Plaintiffs;

9    C.    Trial by jury;

10   D.    Back pay with prejudgment interest, in amounts to be determined at trial,

11         and other relief necessary to make Plaintiffs, Collective Members, and

12         Class Members whole for past and future pecuniary losses resulting from

13         the unlawful employment practices described;

14   E.    Damages for any and all forms of emotional distress Plaintiffs, Collective

15         Members, and Class Members have experienced, including but not limited

16         to humiliation, loss of enjoyment of life, pain and suffering, personal

17         indignity, embarrassment, fear, sadness, anger, anxiety, and anguish, in

18         amounts to be established at trial;

19   F.    Double damages or exemplary damages for EPOA violations pursuant to

20         RCW 49.58.070;

21   G.    Pre- and post- judgment interest to the extent authorized by law;

22   H.    Any and all other actual damages, costs, and expenses;

23   I.    Service payments to the representatives of the Class and Collective;

24   J.    Reasonable attorney's fees and costs;

25   K.    Monetary relief for any adverse tax consequences of their awards; and,

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

L.      Any and all such other relief as the Court deems just and proper.

DATED this 20th day of November, 2023.          OUTTEN & GOLDEN LLP


By: _Cassandra Lenning_____
Cassandra W. Lenning, WSBA #54336
Jahan C. Sagafi*
Menaka N. Fernando*
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800

Adam T. Klein*
Cara E. Greene*
Michael C. Danna*
Lindsay M. Goldbrum*
685 3rd Ave 25th Floor
New York, NY 10017
Telephone: (212) 209-0675
*pro hac vice applications pending

*Attorneys for Plaintiffs*

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800