1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLINE WILMUTH, KATHERINE
SCHOMER, and ERIN COMBS, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC.,

Defendant.

Case No. 2:23-cv-01774-JNW

**DEFENDANT'S MOTION TO
DISMISS AND/OR STRIKE**

NOTE ON MOTION CALENDAR:
FRIDAY, FEBRUARY 16, 2024

ORAL ARGUMENT REQUESTED

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) - 1

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ..................................................................................................2

III. LEGAL STANDARD ........................................................................................5

IV. ARGUMENT ......................................................................................................6

    A.    The Court Should Strike Plaintiffs' Class Allegations In Support Of Their WLAD (Count I) And EPOA (Count II) Claims. .............................6

        1.    Plaintiffs Improperly Assert Claims Under Washington Law On Behalf Of A Nationwide Class. ..............................6

            a.    Applying Washington Law To Putative Class Members Who Never Lived Or Worked In Washington Would Be Unconstitutional. ..............................6

            b.    The WLAD And EPOA Do Not Apply To All Putative Class Members Under Washington Choice-Of-Law Principles. ..............................8

        2.    Plaintiffs Cannot Adequately Represent The Putative Class. ....................9

        3.    Plaintiffs' Putative Class Lacks Commonality. ...........................11

        4.    Plaintiffs' Putative Damages Class Fails Rule 23's Predominance And Manageability Requirements. ..............................13

    B.    The Court Should Strike Plaintiffs' Class And Collective Allegations With Respect To Their State-Law EPOA (Count II) and Federal EPA (Count III) Claims. ..............................14

        1.    Plaintiffs' EPOA And EPA Claims Do Not Arise From The Same Establishment. ..............................14

        2.    Plaintiffs Plead No Facts To Support An Exception To The Single Establishment Rule. ..............................16

        3.    The Members Of Plaintiffs' Putative EPA Collective Are Not Similarly Situated..............................17

    C.    The Court Should Dismiss Plaintiffs' Family And Medical Leave Claims (Count VII) And Combs' Gender Discrimination And Equal Pay Claims (Counts I, II, III). ..............................18

        1.    Plaintiffs Fail To State A Claim Under The FMLA Or The WPFMLA (Count VII). ..............................18

        2.    Combs Fails To State Discrimination (Count I) And Equal Pay Claims (Counts II-III). ..............................20

            a.    Combs Fails To State A WLAD Claim (Count I)..........................20

            b.    Combs Fails To State An EPA Or EPOA Claim (Counts II-III). ..............................22

V. CONCLUSION ..................................................................................................23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES**
**Cases**

2

3
*Alexander v. Marriott Intern., Inc.*,
2011 WL 1231029 (D. Md. Mar. 29, 2011)...............................................22

4
*Alonso v. Qwest Comms. Co.*,
315 P.3d 610 (Wash. Ct. App. 2013).......................................................22

5
*Ashcroft v. Iqbal*,
6
556 U.S. 662 (2009)...................................................................................5

7
*Bachelder v. Am. W. Airlines, Inc.*,
259 F.3d 1112 (9th Cir. 2001)..................................................................19

8
*Bell Atl. Corp. v. Twombly*,
9
550 U.S. 544 (2007).............................................................................5, 23

10
*Beyer v. Michels Corp.*,
2022 WL 901524 (E.D. Wis. Mar. 28, 2022) ........................................17

11
*BMW of N. Am., Inc. v. Gore*,
12
517 U.S. 559 (1996)...................................................................................6

13
*Boilermakers Nat. Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates,*
*Series AR1*,
14
748 F. Supp. 2d 1246 (W.D. Wash. 2010)................................................1

15
*Bostain v. Food Exp., Inc.*,
153 P.3d 846 (Wash. 2007)........................................................................7

16

17
*Burk v. Contemp. Home Servs., Inc.*,
2007 WL 2220279 (W.D. Wash. Aug. 1, 2007).....................................17

18
*Burnside v. Simpson Paper Co.*,
864 P.2d 937 (Wash. 1994)........................................................................8

19

20
*Cashatt v. Ford Motor Co.*,
2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)......................................5

21
*Castle v. Wells Fargo Fin., Inc.*,
2008 WL 495705 (N.D. Cal. Feb. 20, 2008) .........................................18

22

23
*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...................................................................................14

24
*Craft v. Burris*,
2017 WL 4891520 (D. Mont. Oct. 30, 2017) ...................................19, 20

25

26
*Dahlstrom v. Life Care Centers of Am., Inc.*,
2023 WL 4893491 (W.D. Wash. Aug. 1, 2023).................................19, 20

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – ii

*Dapper v. Brinderson, LLC*,
   2023 WL 5177511 (W.D. Wash. Aug. 10, 2023) ................................................15

*Delgado v. Marketsource, Inc.*,
   2018 WL 6706041 (N.D. Cal. Dec. 20, 2018) ................................................10

*Donaldson v. Microsoft Corp.*,
   205 F.R.D. 558 (W.D. Wash. 2001) ................................................9, 10

*Duncan v. Northwest Airlines, Inc.*,
   203 F.R.D. 601 (W.D. Wash. 2011) ................................................9, 13

*Foster v. Arcata Assocs., Inc.*,
   772 F.2d 1453 (9th Cir. 1985) ................................................15

*Goins v. United Parcel Service Inc.*,
   2023 WL 3047388 (N.D. Cal. Apr. 20, 2023) ................................9, 13, 15, 16, 17

*Guillot v. Potlatch Corp.*,
   2005 WL 8164962 (E.D. Wash. Feb. 10, 2005) ................................................8

*Hardage v. CBS Broad., Inc.*,
   427 F.3d 1177 (9th Cir. 2005) ................................................22

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989) ................................................7

*Hellman v. Weisberg*,
   360 F. App'x 776 (9th Cir. 2009) ................................................21

*Hinojos v. Home Depot, Inc.*,
   2006 WL 3712944 (D. Nev. Dec. 1, 2006) ................................................17

*Hudon v. W. Valley Sch. Dist.*,
   97 P.3d 39 (Wash. Ct. App. 2004) ................................................22

*Kassman v. KPMG LLP*,
   416 F. Supp. 3d 252 (S.D.N.Y. 2018) ................................................15

*Keats v. Koile*,
   883 F.3d 1228 (9th Cir. 2018) ................................................6

*Kevari v. Scottrade, Inc.*,
   2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ................................................12, 13

*Kirby v. City of Tacoma*,
   98 P.3d 827 (Wash. Ct. App. 2004) ................................................20, 21

*Lavelle v. CL W. Mgmt. LLC, Inc.*,
   2022 WL 10613342 (E.D. Wash. Oct. 18, 2022) ................................................15

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Lee v. Delta Air Lines Inc.*,
   2021 WL 4527955 (C.D. Cal. Aug. 23, 2021)..........................................................20

*Lee v. ITT Corp.*,
   275 F.R.D. 318 (W.D. Wash. 2011) ........................................................................9

*Marquis v. City of Spokane*,
   922 P.2d 43 (Wash. 1996)........................................................................................20

*McMinimee v. Yakima Sch. Dist. No. 7*,
   2019 WL 11680199 (E.D. Wash. Aug. 7, 2019) ....................................................22

*Mooney v. Roller Bearing Co. of Am., Inc.*,
   2022 WL 1014904 (W.D. Wash. Apr. 5, 2022)..................................................18, 19

*Moss v. Loandepot.com, LLC*,
   2020 WL 1508504 (E.D. Mich. Mar. 30, 2020) .....................................................7

*Nguyen v. The Boeing Co.*,
   2016 WL 2855357 (W.D. Wash. May 16, 2016).....................................................23

*Nguyen v. Boeing Co.*,
   2016 WL 7375276 (W.D. Wash. Dec. 20, 2016) ........................................19, 20, 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .............................................................................11, 12

*Patrick v. Ramsey*,
   2023 WL 6680913 (W.D. Wash. Oct. 12, 2023) .....................................................5

*Perez-Melgosa v. State*,
   195 Wash. App. 1041 (Wash Ct. App. Aug. 15, 2016) ...........................................21

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................................7, 8

*Pratt v. Wal-Mart Stores, Inc.*,
   2013 WL 4734805 (W.D. Wash. Sept. 3, 2013) .....................................................22

*Price v. N. States Power Co.*,
   2011 WL 338451 (D. Minn. Jan. 31, 2011) ............................................................15

*Pytelewski v. Costco*,
   2010 WL 11442901 (S.D. Cal. July 14, 2010) .........................................................5

*Redwind v. W. Union, LLC*,
   2019 WL 3069864 (D. Or. June 21, 2019) ..............................................................22

*Reyes v. Fircrest Sch.*,
   2012 WL 5878243 (W.D. Wash. Nov. 21, 2012).....................................................20

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – iv

*Rizo v. Yovino*,
    950 F.3d 1217 (9th Cir. 2020) ..................................................................................22

*Sanders v. City of Newport*,
    657 F.3d 772 (9th Cir. 2011) ....................................................................................18

*Sanders v. W. Express, Inc.*,
    2022 WL 1800778 (E.D. Wash. June 1, 2022) ..........................................................8

*Schindeler-Trachta, D.O. v. Tex. Health & Hum. Servs. Comm'n*,
    2020 WL 1902576 (W.D. Tex. Feb. 26, 2020) ........................................................15

*Seizer v. Sessions*,
    940 P.2d 261 (Wash. Ct. App. 1997) .........................................................................8

*Senne v. Kansas City Royals Baseball Corp.*,
    934 F.3d 918 (9th Cir. 2019) .................................................................................8, 9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ...................................................................................................6

*Strange v. Les Schwab Tire Ctrs. Of Or., Inc.*,
    2009 WL 2913892 (W.D. Wash. Sept. 8, 2009) ......................................................22

*Trinh v. JP Morgan Chase & Co.*,
    2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ..........................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................................13

*Van v. Ford Motor Co.*,
    332 F.R.D. 249 (N.D. Ill. 2019) ..............................................................................14

*Wagner v. Taylor*,
    836 F.2d 578 (D.C. Cir. 1987) .............................................................................9, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................2, 11, 12, 13

*West v. Spencer*,
    2018 WL 1757138 (W.D. Wash. Apr. 12, 2018) ....................................................22

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) .....................................................................16

*Zentz v. Dentive-Fam. First Dental, LLC*,
    2023 WL 4826748 (E.D. Wash. July 27, 2023) .......................................................19

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..............................................................................9, 14

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Statutes**

29 U.S.C. § 206 .................................................................................................15

29 U.S.C. § 216 .................................................................................................17

29 U.S.C. § 2615 ..........................................................................................18, 19

Miss. Code Ann. § 71-17-7 .................................................................................8

N.Y. Lab. Law § 194 ...........................................................................................8

N.Y. Lab. Law § 198 ...........................................................................................8

RCW 4.16.080 .....................................................................................................8

RCW 49.58.070 ...................................................................................................8

RCW 49.60.180 .................................................................................................20

RCW 50A.05.125 ..............................................................................................19

Tenn. Code Ann. § 50-2-205 ...............................................................................8

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................9, 14

**Treatises**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1383 (3d Ed.) ...................................................................................................5

**Regulations**

29 C.F.R. § 1620.9 .......................................................................................15, 16

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – vi

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## I.    INTRODUCTION

2      Plaintiffs Caroline Wilmuth, Katherine Schomer, and Erin Combs (together, "Plaintiffs")

3    worked for Amazon on the same 14-person team at Amazon headquarters ("HQ1") in Seattle.

4    Wilmuth and Schomer allege they were paid less than male members of that team, while Combs

5    alleges that she was paid less than unspecified "male peers." Compl. ¶¶ 68, 72-73, 79.  Combs

6    and Wilmuth claim that a male leader of a similar team, Jordan Burke, discriminated against them

7    due to their gender. *Id.* ¶ 88.  Plaintiffs also allege that they were retaliated against after raising

8    concerns about their pay and for taking medical leave. *Id.* ¶¶ 125-62.  In their seven-count

9    Complaint, Plaintiffs assert that Amazon discriminated and retaliated against them in violation of

10    the Washington Law Against Discrimination ("WLAD") (Counts I and VI), the Washington Equal

11    Pay and Opportunities Act ("EPOA") (Counts II and V), and the federal Equal Pay Act ("EPA")

12    (Counts III and IV); they also allege that Amazon violated the Family and Medical Leave Act

13    ("FMLA") and the Washington Paid Family Medical Act ("WPFMLA") (Count VII).

14      Despite the individualized nature of their claims, Plaintiffs seek to bring WLAD and EPOA

15    claims on behalf of a class, and an EPA claim on behalf of a collective; that class and collective is

16    defined to include *all* female Amazon employees nationwide who worked for Amazon in *any* job

17    that was "levels 4-8" for the three years preceding the filing of the Complaint through "the

18    resolution of this action." Compl. ¶¶ 32, 42.  In other words, three female employees who worked

19    in a single, 14-person group at Amazon HQ1 seek to represent *all* female Amazon employees

20    nationwide who worked in *any* location, in *any* position (at levels 4-8), in *any* business unit, for

21    *any* supervisor.    Given that Amazon has approximately 350,000 management, sales, and

22    administrative employees in the U.S. and roughly 33.5% of those employees are women, Plaintiffs

23    seek to represent a class and collective of likely more than 100,000 individuals.[1]

24

25    _____

[1] *See* Amazon EEO-1 Consolidated Report (2021), available at https://www.aboutamazon.com/news/workplace/our-workforce-data.  The Court can take judicial notice of information in Amazon's EEO-1 report. *See Boilermakers Nat.*
26    *Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1252 (W.D. Wash. 2010).

1    These class and collective claims must be stricken under Rule 12(f) for at least four reasons.

2    *First*, Plaintiffs cannot bring WLAD and EPOA class claims under Washington law on behalf of

3    employees who never lived or worked in Washington.  *Second*, Plaintiffs' WLAD and EPOA class

4    claims cannot possibly satisfy Rule 23's adequacy, commonality, predominance, or manageability

5    requirements, which justifies striking the class allegations now.  *Third*, Plaintiffs cannot bring

6    nationwide collective or class claims under the EPA or EPOA because such actions are limited to

7    employees within a single establishment (*i.e.*, location), and Plaintiffs do not meet the "unusual

8    circumstances" that justify an exception to that rule.  *Fourth*, Plaintiffs cannot assert EPA claims

9    on behalf of a nationwide collective because women working for Amazon in different roles, in

10   different business units, in different states, and for different supervisors are not "similarly situated"

11   under the EPA.  At bottom, Plaintiffs cannot bring sweeping nationwide class and collective claims

12   because Plaintiffs and the employees they seek to represent "have little in common but their sex

13   and this lawsuit."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

14   In addition, several of Plaintiffs' individual claims merit dismissal under Rule 12(b)(6).

15   Specifically, Plaintiffs' Count VII FMLA and WPFMLA claims must be dismissed because

16   Plaintiffs fail to allege that they were eligible for, requested, complied with the requirements for

17   taking, or actually took protected leave under either the FMLA or the WPFMLA.  And Combs's

18   claims under the WLAD, EPOA, and EPA (Counts I, II, and III) must be dismissed because she

19   fails to adequately allege facts to show that she suffered actionable disparate treatment or that any

20   similarly situated male was paid more than she was.

21   For these reasons, the Court should strike Plaintiffs' Count I, II, and III class and collective

22   action claims; dismiss Count VII in its entirety; and dismiss Counts I, II, and III as to Combs.

23   ## II.    BACKGROUND[2]

24   Plaintiffs Caroline Wilmuth, Katherine Schomer, and Erin Combs all worked for Amazon

25   on the same team, in the same job level (L7), in the same organization, at Amazon headquarters in

26

---

[2] Amazon accepts as true the factual allegations in Plaintiffs' Complaint solely for purposes of this Motion.

1    Seattle—also known as HQ1.[3]   Compl. ¶¶ 54, 62, 64.   Plaintiffs' team, the Global Corporate

2    Affairs Research & Strategy Team ("GCARS"), is contained within Amazon's larger Worldwide

3    Communications organization ("WWC"), which is itself part of Amazon Global Corporate Affairs

4    ("GCA").  *Id.* ¶¶ 53-55.  Plaintiffs allege that Wilmuth created GCARS in 2019, and that Combs

5    and Schomer reported to Wilmuth after joining the team in 2022.  *Id.*

6           Plaintiffs allege that Amazon maintains a common salary structure for all of its salaried

7    employees, placing each in a level from 4 (L4) to 12 (L12).  Compl. ¶¶ 23, 54, 62, 64.  Amazon

8    assigns every employee a "job code[]" which, when combined with that employee's level,

9    determines a range of possible compensation.  *Id.* ¶¶ 24-25.  Allegedly, Amazon regularly assigns

10   women to lower job codes than comparable men, fails to advance women to higher job codes, and

11   pays men more than women even in the same job code.  *Id.* ¶¶ 28-30.

12          Plaintiffs cite their own experiences as "illustrative" of a supposedly widespread practice

13   of nationwide gender discrimination.  Compl. ¶ 52.  Despite the fact that Wilmuth was hired to

14   serve as a "General Marketing Manager," *id.* ¶ 53, she alleges that her work at Amazon was akin

15   to that of a research scientist and that she was incorrectly coded in an L7 marketing role instead of

16   in a "research job category," *id.* ¶¶ 66-67.  Because she was classified as a marketing manager,

17   Wilmuth claims that she was paid less than male research scientists on her team as well as Jordan

18   Burke, an L8 male, who led a different team and reported to the same supervisor as Wilmuth—

19   Christina Lee.  *Id.* ¶¶ 68-69.  Schomer, an L7, was hired as a "Principal Product Manager" but like

20   Wilmuth, claims she should have been classified as a research scientist instead.  *Id.* ¶¶ 72-73.

21   Schomer alleges that she was paid less than two men, Pushkar Raj and Gouri Mishra, who

22   supposedly performed the same work that she did but were research scientists.  *Id.* ¶¶ 72-75.

23

24

25   [3] While Plaintiffs name Amazon.com, Inc. as the defendant, they were, in fact, employed by Amazon.com Services
     LLC.  The arguments in this Motion are being made on behalf of Amazon.com Services LLC, and Amazon.com

26   Services LLC in no way concedes that Amazon.com, Inc. is a proper defendant.  Amazon.com Services LLC requests
     that Plaintiffs correct the case caption of their Complaint to identify the appropriate Amazon entity.

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Combs, also an L7, alleges that she worked as a Brand and Marketing Strategist and was paid "at

2    the very low end of the pay band for her role," and "less than" unidentified "male peers." *Id.* ¶ 79.

3          Plaintiffs Wilmuth and Combs (but not Schomer) allege that Burke "discriminated" against

4    them due to their gender by questioning their experience, marginalizing their work, and speaking

5    to them in an unprofessional manner.  Compl. ¶ 81.  Wilmuth and Combs allege that Burke also

6    began taking credit for their work starting in July 2022. *Id.* ¶ 82.  Wilmuth and Combs do not

7    identify any alleged gender-based comments that they claim Burke made.  Plaintiffs likewise

8    identify no instances in which Burke provided similarly situated male employees with more

9    favorable treatment; instead, Plaintiffs suggest that Burke's alleged mistreatment was gender-

10   motivated because other, unidentified "[w]omen on Mr. Burke's team have also reported having

11   their expertise minimized and their feedback ignored." *Id.* ¶ 88.

12         All three Plaintiffs allege they complained about this perceived discrimination. *See*

13   Compl. ¶¶ 92, 95, 99, 107, 109-115, 118-124.  Plaintiffs allege that Amazon retaliated against

14   them for their complaints.  Wilmuth alleges that her promotion to an L8 Director position was "put

15   on hold" two days after she complained about Burke's conduct. *Id.* ¶¶ 97-98.  Wilmuth also claims

16   that, in December 2022, Amazon "remov[ed] her entire 14-person team and all of her projects

17   from under her purview," moving her to an "Individual Contributor role." *Id.* ¶ 125.  As part of

18   the reorganization, Schomer was moved to Burke's team and was no longer responsible for

19   supervising two of her three direct reports. *Id.* ¶ 131.  Combs began reporting to a new supervisor,

20   and her two direct reports were reassigned. *Id.* ¶¶ 133-135.

21         Plaintiffs allege that their "mental and physical health suffered," and that they all took

22   "medical leave" in 2023.  Compl. ¶ 145.  Plaintiffs do not allege what medical conditions they had

23   or what type of leave they requested or were granted.  However, they allege that "Amazon HR"

24   shared confidential information about one of Wilmuth's "protected complaints" with her co-

25   workers while she was on leave. *Id.* ¶¶ 147-48.  After returning from leave, Schomer allegedly

26   was "provided . . . with a list of purported performance issues that had never been mentioned to

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    her before." *Id.* ¶ 152.  Combs, upon returning from leave, was supposedly "further demoted" and

2    "placed . . . in a role in which she is set up to fail." *Id.* ¶¶ 157-58.

3        Plaintiffs bring a seven-count Complaint on behalf of themselves and a putative class and

4    collective.  Despite the fact that Plaintiffs were each L7s in marketing-related functions on a single,

5    14-person GCARS team at Amazon HQ1, they assert claims on behalf of "all women who worked

6    for Amazon in a Covered Position [all positions in job levels 4-8] at any time from three years

7    before the filing of the initial complaint through the resolution of this action."  Compl. ¶¶ 32, 42.

8                                    **III.    LEGAL STANDARD**

9        Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any

10   redundant, immaterial, impertinent, or scandalous matter."   Where, as here, "the complaint

11   demonstrates that a class action cannot be maintained," it is appropriate for the court to "strike

12   class allegations prior to discovery."  *Patrick v. Ramsey*, 2023 WL 6680913, at *2 (W.D. Wash.

13   Oct. 12, 2023) (cleaned up); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice*

14   *and Procedure* § 1383 (3d Ed.) (motion to strike class allegations "is appropriate because

15   overbroad or unsupportable class allegations bring 'impertinent' material into the pleading");

16   *Pytelewski v. Costco*, 2010 WL 11442901, at *3 (S.D. Cal. July 14, 2010) (analyzing motion to

17   strike collective claims under Rule 12(f)).  In considering a motion to strike under Rule 12(f),

18   courts apply a similar standard to a motion to dismiss.  *Cashatt v. Ford Motor Co.*, 2020 WL

19   1987077, at *4 (W.D. Wash. Apr. 27, 2020).  Striking class allegations at the pleading stage

20   provides the benefit of avoiding "expenditure of time and money that must arise from litigating

21   spurious issues by dispensing with those issues prior to trial."  *Id.*

22       To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

23   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

24   662, 678 (2009) (cleaned up).  This "requires more than labels and conclusions, and a formulaic

25   recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

26   544, 555 (2007) (cleaned up).  Thus, while the Court must accept "all well-pleaded factual

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  allegations in the complaint as true," the Court is "not bound to accept as true a legal conclusion

2  couched as a factual allegation." *Keats v. Koile*, 883 F.3d 1228, 1234, 1243 (9th Cir. 2018).

3  ## IV.   ARGUMENT

4  ### A.   The Court Should Strike Plaintiffs' Class Allegations In Support Of Their WLAD (Count I) And EPOA (Count II) Claims.

5
6  Plaintiffs bring putative class claims for gender discrimination and unequal pay in violation

7  of the WLAD (Count I) and the EPOA (Count II), seeking injunctive relief under Rule 23(b)(2)

8  and damages under Rule 23(b)(3).  *See* Compl. ¶¶ 163-72.  These claims should be stricken

9  because: (1) Plaintiffs may not assert Washington state-law claims on behalf of a nationwide class;

10  (2) Plaintiffs fail to satisfy Rule 23(a)'s commonality and adequacy requirements; and (3)

11  Plaintiffs' damages class fails to satisfy Rule 23(b)(3)'s predominance and manageability

12  requirements.

13  #### 1.   Plaintiffs Improperly Assert Claims Under Washington Law On Behalf Of A Nationwide Class.

14  As a threshold matter, Plaintiffs' class allegations must be stricken because Plaintiffs

15  purport to assert WLAD and EPOA claims on behalf of a nationwide class, regardless of whether

16  those putative class members have any connection to Washington.  This proposed application of

17  Washington law is both unconstitutional and inconsistent with Washington's choice-of-law rules.

18  ##### a.   Applying Washington Law To Putative Class Members Who Never Lived Or Worked In Washington Would Be Unconstitutional.

19
20  If the WLAD and EPOA were applied to class members who lived and worked exclusively

21  in other states, that application would violate the federal Constitution.  "No State can legislate

22  except with reference to its own jurisdiction[.]" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571

23  (1996).  Accordingly, under basic principles of federalism, "[i]t would be impossible to permit the

24  statutes of [Washington] to operate beyond the jurisdiction of that State[.]" *State Farm Mut. Auto.*

25  *Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003).  In addition, "the Commerce Clause precludes the

26  application of a state statute to commerce that takes place wholly outside of the State's borders,

1    whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324,

2    336 (1989) (cleaned up).  And the question of whether a statute impermissibly regulates commerce

3    in other states depends not only on the "consequences of the statute itself, but also [on] how the

4    challenged statute may interact with the legitimate regulatory regimes of other States and what

5    effect would arise if not one, but many or every, State adopted similar legislation." *Id.*

6        By seeking to represent a *nationwide* class in the pursuit of claims under the WLAD and

7    the EPOA, Plaintiffs seek to apply those statutes to employees who lived and worked entirely

8    outside of Washington.  This "would essentially be [a] finding that [Washington]'s laws applied

9    across the country," which is "plainly impermissible." *Moss v. Loandepot.com, LLC*, 2020 WL

10   1508504, at *4 (E.D. Mich. Mar. 30, 2020).  Indeed, the Washington Supreme Court has

11   recognized it would be inappropriate to "apply the state law to transactions completely unrelated

12   to Washington." *Bostain v. Food Exp., Inc.*, 153 P.3d 846, 856 (Wash. 2007) (cleaned up).

13       Applying the WLAD and EPOA beyond state lines also would interfere "with the

14   legitimate regulatory regimes of other States." *Healy*, 491 U.S. at 336.  If Washington were to

15   attempt to apply its laws to employees who lived and worked exclusively outside Washington (or

16   to employees who only rarely work in Washington), any other state in which Amazon operates

17   could attempt to apply its employment laws to Amazon's employees who lack a substantial

18   relationship to the state.  That would subject nationwide employers like Amazon operating in

19   interstate commerce to an overlapping and inconsistent patchwork of different states' laws.  That

20   is precisely the harm that the dormant Commerce Clause prohibits.  *See Healy*, 491 U.S. at 340.

21       Applying Washington law to out-of-state class members also would present serious due

22   process concerns.  For a state's laws to be applied to the claims of each class member, the state

23   must have "a significant contact or significant aggregation of contacts to the claims asserted by

24   each member of the plaintiff class." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985)

25   (cleaned up).  Applying Washington law to claims "unrelated to that state"—*i.e.*, to employees

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  who do not live or work in Washington—would be "sufficiently arbitrary and unfair as to exceed

2  constitutional limits." *Id.* at 822.

3        **b.**    **The WLAD And EPOA Do Not Apply To All Putative Class Members Under Washington Choice-Of-Law Principles.**

4        Consistent with the constitutional strictures on extraterritorial application of Washington

5  law, the WLAD and EPOA do not apply to out-of-state class members under the state's choice-of-

6  law rules.  In determining the state law applicable to class claims, a federal court must "utilize the

7  choice-of-law rules of the forum state."  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d

8  918, 928 (9th Cir. 2019).  Washington requires a two-step approach to conflict-of-laws issues.

9  *Sanders v. W. Express, Inc.*, 2022 WL 1800778, at *5 (E.D. Wash. June 1, 2022).  First, a court

10 must determine whether there is an "actual conflict between the laws or interests of Washington

11 and the laws or interests of another state[.]"  *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. Ct. App.

12 1997).  Second, if there is a conflict, the applicable law is decided by determining which

13 jurisdiction has the "most significant relationship" to the dispute.  *Burnside v. Simpson Paper Co.*,

14 864 P.2d 937, 940-41 (Wash. 1994).

15       Here, there are conflicts between Washington law and many putative class members'

16 home-state laws.  For example, the WLAD does not require the exhaustion of administrative

17 remedies, while numerous state laws do require exhaustion.  *See, e.g.*, *Guillot v. Potlatch Corp.*,

18 2005 WL 8164962, at *4 (E.D. Wash. Feb. 10, 2005).  Still other states have different limitations

19 periods than those of the WLAD and EPOA.  *Compare* RCW 4.16.080(2) (civil action must be

20 filed within 3 years of violation under WLAD) and RCW 49.58.070(1) (same under EPOA), *with*,

21 *e.g.*, N.Y. Lab. Law §§ 194, 198(3) (six-year limitations period for New York equal pay law);

22 Tenn. Code Ann. § 50-2-205 (two-year limitations period under Tennessee Equal Pay Act).  And

23 some state statutes include state-specific requirements that are irreconcilable with Washington law.

24 *See, e.g.*, Miss. Code Ann. § 71-17-7(2) (requiring plaintiffs to "first waive any right to relief"

25 under the EPA to pursue claims under Mississippi's 2022 Equal Pay for Equal Work Act).

26

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    In light of these conflicts, the Court would be required to analyze which state's law should

2    be applied to each individual class member's claims.  In most cases, class members' home-state

3    laws would apply.  For employees who worked for Amazon entirely in other states, Washington

4    does not have *any* relationship to those employees' employment—much less the "most significant

5    relationship"—making application of Washington law to those employees' claims "inappropriate."

6    *Lee v. ITT Corp.*, 275 F.R.D. 318, 324 (W.D. Wash. 2011); *see also Senne*, 934 F.3d at 932

7    (explaining that the law of the state where the work is performed usually applies).

8    Because Plaintiffs cannot assert Washington state-law claims on behalf of employees who

9    never lived or worked in Washington, their WLAD and EPOA class claims must be stricken.  *See*

10   *Goins v. United Parcel Service Inc.*, 2023 WL 3047388, at *15 (N.D. Cal. Apr. 20, 2023) (striking

11   class claims where plaintiffs "fail[ed] to address how they can bring class-wide claims under

12   California's FEHA and CEPA for out-of-state employees").[4]

13   ## 2.    Plaintiffs Cannot Adequately Represent The Putative Class.

14   Plaintiffs' class claims also must be stricken because they fail to meet Rule 23's

15   requirement that "the representative parties will fairly and adequately protect the interests of the

16   class."  Fed. R. Civ. P. 23(a)(4).  A putative class fails Rule 23(a)(4)'s adequacy requirement if

17   there is a conflict of interest between class representatives and members of the putative class.

18   *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001).  Such a conflict may arise

19   "where a class contains both supervisory and non-supervisory employees" because supervisors

20   may be required to "implement" the very policies challenged by non-supervisory class members.

21   *Id.*; *see also Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987).

22   Here, Plaintiffs cannot represent *all* female L4s-L8s nationwide because that class includes

23   both non-supervisory employees and supervisory employees.  Many class members report to other

---

24   [4] Even if Plaintiffs amended their Complaint to include nationwide class claims under the applicable laws of all states,

25   they would be unable to satisfy Rule 23(b)(3)'s predominance requirement because individualized issues of state law would present an "insuperable obstacle" to class certification.  *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601,

26   611-12 (W.D. Wash. 2011); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (plaintiff failed to satisfy predominance requirement in asserting claims under 48 states' laws). ‼

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 9

1    class members.  *See, e.g.*, Compl. ¶¶ 87, 112, 138.  Indeed, two of the three named Plaintiffs

2    (Schomer and Combs) reported to the third named Plaintiff (Wilmuth), and all three supervised

3    other employees.  *See id.* ¶¶ 131, 133, 138.  Further, the very discriminatory practices about which

4    Plaintiffs complain are "implemented" by supervisors who are themselves members of the putative

5    class.  *Donaldson*, 205 F.R.D. at 568.  Plaintiffs allege that Amazon's employment practices,

6    "including in hiring, assigning job codes and job levels, setting initial salary and other aspects of

7    compensation, measuring performance, determining bonuses, equity awards, and raises, and

8    awarding promotions" result in underpayment of female employees. Compl. ¶ 6.  Unquestionably,

9    female supervisory employees play a central role in implementing these practices.  *See, e.g., id* ¶

10   98 (alleging that Lee, Wilmuth's supervisor, informed her that her promotion was "on hold"); *id.*

11   ¶¶ 150, 154 (describing reviews of Schomer and Combs by their supervisors that would

12   "negatively impact [their] compensation").  Because Plaintiffs seek to represent some of the very

13   same individuals who they allege engaged in misconduct, Plaintiffs' putative class presents

14   "insurmountable" conflicts.  *Donaldson*, 205 F.R.D. at 568; *see also Wagner*, 836 F.2d at 595. !

15        Plaintiffs cannot defuse these conflicts by pointing to abstract Amazon "policies" or

16   "practices" that they claim are discriminatory against both supervisory and non-supervisory

17   employees alike.  *See* Compl. ¶¶ 5-6.  Plaintiffs do *not* allege that Amazon's practice of merely

18   having job codes, levels, performance reviews, or promotions is discriminatory *per se*.  Rather,

19   Plaintiffs allege that these practices are discriminatory in practice because certain *individual*

20   supervisors at Amazon have implemented them unfairly by, for example, "assign[ing]" women to

21   lower levels and paying women less than men within the same codes.  *See id.* ¶¶ 21-31.  Thus,

22   under Plaintiffs' own theory, determining whether a class member suffered discrimination "would

23   require individualized assessments into the circumstances of each class member[] . . .—and thus

24   into the actions of supervisors." *Delgado v. Marketsource, Inc.*, 2018 WL 6706041, at *8 (N.D.

25   Cal. Dec. 20, 2018).  As a result, the putative class fails to satisfy Rule 23's adequacy requirement.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

### 3.    Plaintiffs' Putative Class Lacks Commonality.

2          Plaintiffs' class allegations also should be stricken because they fail to satisfy Rule 23's

3   commonality requirement.  Under Rule 23(a)(2), a class action may only be maintained where

4   "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A common

5   question must be capable of classwide resolution—which means that determination of its truth or

6   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

7   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022)

8   (en banc) (cleaned up).  What matters "is not the raising of common questions—even in droves—

9   but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the

10   resolution of the litigation."  *Dukes*, 564 U.S. at 350 (cleaned up).

11          Despite acknowledging that "Amazon is one of the largest companies currently operating

12   in the technology industry," Plaintiffs assert class claims on behalf of "all women who worked for

13   Amazon" in "job levels 4-8" at "any time from three years before the filing of the initial complaint

14   through the resolution of this action."  Compl. ¶ 48.  Plaintiffs do not limit their claims to

15   employees in any specific type of job, role, team, business unit, or location. *Id.* ¶ 55.  Instead, they

16   "wish to sue about literally millions of employment decisions at once." *Dukes*, 564 U.S. at 352.

17          To support this breathtakingly broad nationwide class, Plaintiffs rest on the thin reed of

18   their *three* allegedly "illustrative" experiences, almost all of which relate to Wilmuth's "team of

19   14 people."  Compl. ¶¶ 52, 55.  The localized and idiosyncratic nature of Plaintiffs' claims leaps

20   from the more than 20 pages and 110 paragraphs of the Complaint devoted to "individual plaintiff

21   factual allegations."  *Id.* ¶¶ 32-162.  For example, Wilmuth alleges she was classified as a lower-

22   paid "General Marketing Manager" instead of in a higher-paid "research job category," "despite

23   her exclusively performing a research role."  *Id.* ¶¶ 66-67.  Adjudication of this claim would

24   require determination of what, precisely, Wilmuth's job duties were; whether she was

25   misclassified in the incorrect job code or level (and if so, by whom and when); whether she, in

26   fact, performed research more akin to a job in the "research job category"; and if so, whether

1   Wilmuth's misclassification had anything to do with her gender.  It is difficult to imagine more

2   individualized questions—or how answering them would resolve questions applicable to other

3   class members' claims "in one stroke." *Olean*, 31 F.4th at 663.

4         Even the three Plaintiffs' claims differ from those asserted by the other Plaintiffs:  Burke

5   allegedly discriminated against Wilmuth and Combs, but not Schomer.  Compl. ¶¶ 80-91.

6   Wilmuth and Schomer believe their job codes were incorrect, but Combs does not dispute hers

7   was appropriate, asserting only (without supporting facts) that she should have been paid more

8   *within* her job code. *Id.* ¶¶ 66, 72, 79.  Wilmuth, but not the other Plaintiffs, alleges that she should

9   have been promoted were it not for "gendered" criticism that her management style was "too

10  aggressive." *Id.* ¶ 99.

11        And of course, Plaintiffs cannot explain how their claims share common questions with

12  those of the *more than one hundred thousand* class members whom they seek to represent.

13  Members of Plaintiffs' sweeping class would necessarily "h[o]ld a multitude of jobs, at different

14  levels of [Amazon's] hierarchy, for variable lengths of time, . . . sprinkled across 50 states, with a

15  kaleidoscope of supervisors (male and female)." *Dukes*, 564 U.S. at 359.  Assessing whether any

16  class member suffered discrimination would require an individualized analysis of her treatment by

17  her supervisor, her job code classification, any alleged comparators, and whether her "L" level was

18  commensurate with her job.  Inevitably, "it would be impossible for all of the contributing factors

19  to produce a common question to the crucial question why [she] was . . . disfavored." *Kevari v.*

20  *Scottrade, Inc.*, 2018 WL 6136822, at *7 (C.D. Cal. Aug. 31, 2018) (cleaned up).

21        Perhaps recognizing their claims are hopelessly individualized, Plaintiffs attempt to gin up

22  common questions.  They allege that Amazon employs "common compensation-setting policies

23  across its organizations." Compl. ¶¶ 22-23.  But this is a conclusory assertion; Plaintiffs plead no

24  facts to support their claim that Amazon's "compensation-setting" is the same across every

25  business unit nationwide.  The actual *facts* that Plaintiffs *do* cite concern only the individual

26  *application* of Amazon's policies to *Plaintiffs*.  For that reason, Plaintiffs fail to bridge the

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    "conceptual gap between an individual's claim that he or she suffered an adverse action

2    on discriminatory grounds and conclusory allegation regarding the existence of a policy

3    of discrimination." *Kevari*, 2018 WL 6136822, at *7.

4        Plaintiffs also allege that common questions include "whether Amazon's policies or

5    practices" "discriminate against Class Members" and "violate the EPOA," whether "Amazon's

6    leveling policies and practices violate the WLAD and EPOA," and "whether equitable remedies,

7    injunctive relief, compensatory damages, and punitive damages for the Class are warranted."

8    Compl. ¶ 47. But these are *legal* questions that "any competently crafted class complaint" would

9    raise, and that are "not sufficient." *Dukes*, 564 U.S. at 349 (questions like "Is that an unlawful

10   employment practice? What remedies should we get?" cannot establish commonality); *see also*

11   *Kevari*, 2018 WL 6136822, at *7 (striking class allegations where plaintiff's "alleged common

12   questions of law are merely alleged legal violations phrased in the form of a question").

13       Ultimately, Plaintiffs' claims are nothing more than parochial individualized grievances

14   based on their own experiences on a 14-person team, packaged as overbroad nationwide class

15   claims. Under similar circumstances, courts have stricken class allegations at the pleading stage.

16   *See, e.g.*, *Goins*, 2023 WL 3047388, at *14. The Court should do the same here.

17       **4.    Plaintiffs' Putative Damages Class Fails Rule 23's Predominance And**
            **Manageability Requirements.**

18       Even if Plaintiffs' class allegations satisfied the commonality requirement (they do not),

19   Plaintiffs' Rule 23(b)(3) damages class cannot proceed because Plaintiffs fail to plead facts

20   sufficient to plausibly meet Rule 23(b)(3)'s predominance or manageability requirements.

21       "The predominance inquiry asks whether the common, aggregation-enabling, issues in the

22   case are more prevalent or important than the non-common, aggregation-defeating, individual

23   issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). The purpose

24   of this inquiry is to test "whether proposed classes are sufficiently cohesive to warrant adjudication

25   by representation." *Duncan*, 203 F.R.D. at 611-12. Consistent with its purpose, the predominance

26

criterion "is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Here, Plaintiffs' fail the predominance requirement for the same reasons they fail the commonality requirement. *See supra* at 11-13. Their claims on behalf of a nationwide class turn on specific experiences of individual employees and individual issues will "overwhelm questions common to the class," *Behrend*, 569 U.S. at 34.

Addressing the individualized issues across Plaintiffs' enormous putative class also would result in serious "difficulties in managing a class action," thereby violating Fed. R. Civ. P. 23(b)(3)(D). Adjudication of Plaintiffs' claims would require discovery and mini-trials for thousands of putative class members in different jobs, on different teams, in different business units, who worked in different states (and were subject to different state laws) to determine whether they suffered gender discrimination. The parties and the Court would need to assess, among other things, each class member's job duties, the propriety of her job classification, her treatment by individual supervisors and colleagues, and any comparators. Moreover, choice-of-law issues and differences in applicable state law would "compound the disparities among class members from the different states." *Zinser*, 253 F.3d at 1189 (cleaned up). This is not a feasible way for class litigation to proceed. *See, e.g.*, *Van v. Ford Motor Co.*, 332 F.R.D. 249, 290 (N.D. Ill. 2019).

**B.    The Court Should Strike Plaintiffs' Class And Collective Allegations With Respect To Their State-Law EPOA (Count II) and Federal EPA (Count III) Claims.**

Plaintiff's EPOA class allegations—and federal EPA collective action allegations—also should be stricken because such claims are limited to employees within a single establishment; Plaintiffs have pled no "unusual circumstances" that would justify departure from the single-establishment rule; and Plaintiffs are not "similarly situated" to the collective members they seek to represent.

**1.    Plaintiffs' EPOA And EPA Claims Do Not Arise From The Same Establishment.**

Plaintiffs cannot pursue a nationwide collective action under the EPA or a nationwide state-law class action under the EPOA because those statutes—absent unusual circumstances—only

1    permit collective or class actions where the alleged discriminatory pay practices emanate from a

2    single, physical establishment.

3         The EPA provides that "[n]o employer . . . shall discriminate, *within any establishment* in

4    which such employees are employed, between employees on the basis of sex by paying wages to

5    employees *in such establishment* at a rate less than the rate which he pays wages to employees of

6    the opposite sex *in such establishment* for equal work."  29 U.S.C. § 206(d)(1) (emphases added).[5]

7    The word "establishment" means "a distinct physical place of business rather than . . . an entire

8    business or 'enterprise' which may include several separate places of business."  29 C.F.R. §

9    1620.9(a).  "[F]ederal courts have consistently rejected the extension of the statutory establishment

10   requirement to separate offices of an employer that are geographically and operationally distinct."

11   *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1464 (9th Cir. 1985), *overruled on other grounds*,

12   *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).  In other words, where "individual

13   pay and promotion decisions [are] left to the discretion of local" leaders, different facilities of the

14   same company do not qualify as a single "establishment" for purposes of the EPA.  *Kassman v.*

15   *KPMG LLP*, 416 F. Supp. 3d 252, 287 (S.D.N.Y. 2018); *see also Schindeler-Trachta, D.O. v. Tex.*

16   *Health & Hum. Servs. Comm'n*, 2020 WL 1902576, at *7 (W.D. Tex. Feb. 26, 2020); *Price v. N.*

17   *States Power Co.*, 2011 WL 338451, at *4 (D. Minn. Jan. 31, 2011).

18        In *Goins*, 2023 WL 3047388, at *1, the court considered whether the plaintiffs could

19   represent a putative EPA collective, which included "supervisors, sorters, drivers, loaders, and

20   associates located in California, Arkansas, Washington, and Nevada."  The court found that the

21   plaintiffs' EPA collective action and state-law class claims could not proceed "[b]ecause [the]

22   plaintiffs [did] not allege violations within a single establishment." *Id.* at *6.

23        The same result is warranted here.  Plaintiffs purport to bring collective action and state-

24   law class claims emanating from as many as *613* potential "establishments"—including locations

25

26   [5] The EPOA is "analogous" to the federal EPA and is analyzed under the same standards.  *See Dapper v. Brinderson, LLC*, 2023 WL 5177511, at *3 n.2 (W.D. Wash. Aug. 10, 2023); *see also Lavelle v. CL W. Mgmt. LLC, Inc.*, 2022 WL 10613342, at *7 (E.D. Wash. Oct. 18, 2022).

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 15

as disparate as Amazon corporate headquarters in Virginia and an Amazon warehouse in New Jersey.[6]  The employees at these locations do not even work in the same state, much less in the same "physical place of business."  *See* 29 C.F.R. § 1620.9(a).  Plaintiffs have not alleged facts to show that employees at all of these facilities worked "within a single establishment," as needed to bring a collective EPA claim or a class EPOA claim.  *See Goins,* 2023 WL 3047388, at *6.

## 2. Plaintiffs Plead No Facts To Support An Exception To The Single Establishment Rule.

Nor do Plaintiffs allege any facts sufficient to support the "unusual circumstances" in which an "establishment" need not be limited to a "physical place of business."  *See* 29 C.F.R. § 1620.9(b).  Plaintiffs do not allege, for example, that there is "a central administrative unit" at Amazon that "hire[s] all employees, set[s] wages, and assign[s] the location of employment."  *Id.* Quite the opposite: Plaintiffs allege it was their *individual*, *local* supervisors' conduct that led to them being placed in improper "job codes" and/or receiving purportedly unfair compensation within those codes.  Plaintiffs allege that Wilmuth's supervisor "insisted" another employee "be placed in the lower-paid job category" when they were onboarding, Compl. ¶ 122, and that the "performance rating" given by Combs' and Schomer's "new supervisor[s]" would "negatively impact [their] compensation level for the next three years," *id.* ¶¶ 150, 154.  These allegations underscore that the alleged misconduct occurred at the local level.

Plaintiffs also do not plead any of the other "unusual circumstances" that could justify departure from the "single establishment" rule.  They do not allege that employees at Amazon "frequently interchange work locations" or that they have "virtually identical" job duties that are "performed under similar working conditions" across all locations.  *See* 29 C.F.R. § 1620.9(b).  Nor could they.  Plaintiffs' proposed class and collective would include both a female lawyer working in Amazon HQ2 in Virginia as well as a female manager of an Amazon warehouse in

---

[6] *See* Amazon.com Form 10-K (2022), *available at* https://www.sec.gov/Archives/edgar/data/1018724/000101872423000004/amzn-20221231.htm (noting there are 611 Amazon facilities in the United States, along with two "headquarters").  The Court can take judicial notice of this report as a public filing.  *See Wynn v. Chanos,* 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014).

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

New Jersey, who do not have "virtually identical" duties performed "under similar working conditions." Plaintiffs' Complaint includes conclusory assertions that "Plaintiffs and other Collective Members" have "substantially similar job roles [and] functions," but there are no well-pled *facts* to support that naked assertion. Indeed, even Plaintiffs themselves have different job duties and performed them for different supervisors, with some Plaintiffs reporting to Lee, and others reporting to Wilmuth. *See, e.g.*, Compl. ¶¶ 68, 74. These differences are only multiplied across all female Amazon employees "in job levels 4-8" nationwide. *Id.* ¶ 33.

"Because [P]laintiffs do not allege violations within a single establishment," their EPOA and EPA claims should be stricken as to the collective. *See Goins*, 2023 WL 3047388, at *13.

### 3. The Members Of Plaintiffs' Putative EPA Collective Are Not Similarly Situated.

Under the EPA, a plaintiff may pursue collective claims only on behalf of those who are "similarly situated." 29 U.S.C. § 216(b). In considering whether members of a collective are similarly situated, courts assess whether they are "together the victims of a single decision, policy, or plan." *See Burk v. Contemp. Home Servs., Inc.*, 2007 WL 2220279, at *4 (W.D. Wash. Aug. 1, 2007) (cleaned up). "Plaintiffs cannot proceed in a collective action if the action relates to other specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006).

Here, members of Plaintiffs' sprawling nationwide collective worked in different roles, performing different functions, in different business units, in different facilities and states, and reported to different supervisors. They do not plead facts to show that they were "together the victims of a single decision, policy, or plan." *Burk*, 2007 WL 2220279, at *3; *see also Beyer v. Michels Corp.*, 2022 WL 901524, at *9 (E.D. Wis. Mar. 28, 2022) (granting motion to strike collective allegations where the plaintiff did not allege "that there was a uniform policy").[7]

---

[7] Plaintiffs' inability to identify any relevant policy is particularly telling, given Wilmuth's "leadership role," which necessarily afforded her access to Amazon policies and procedures—including those regarding compensation. Compl. ¶¶ 126, 147.

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 17

1   "Resolution of plaintiffs' claims would require individualized determinations, and would

2   necessitate testimony from individual employees and their supervisors" about their job duties, their

3   pay, their treatment, and the treatment of comparators. *Castle v. Wells Fargo Fin., Inc.*, 2008 WL

4   495705, at *5 (N.D. Cal. Feb. 20, 2008).  "Because of the individualized inquiries involved . . .

5   judicial economy would not be advanced by allowing this suit to proceed as a collective action."

6   *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *5 (S.D. Cal. Apr. 22, 2008).

7   **C.    The Court Should Dismiss Plaintiffs' Family And Medical Leave Claims (Count VII) And Combs' Gender Discrimination And Equal Pay Claims (Counts I, II, III).**

8
9           The Court also should dismiss Plaintiffs' individual FMLA and WPFMLA claims (Count

10  VII) and Combs's gender discrimination and equal pay claims (Counts I, II, and III).

11          **1.      Plaintiffs Fail To State A Claim Under The FMLA Or The WPFMLA (Count VII).**

12          In Count VII, Plaintiffs allege that Amazon violated the FMLA and WPFMLA by

13  "continu[ing] to discriminate and retaliate against" them and by "fail[ing] to restore Plaintiff

14  Combs to the same or equivalent position" "upon [Plaintiffs'] return from medical leave."  Compl.

15  ¶¶ 2, 146, 195-96.  Plaintiffs fail to state a claim under either statute.

16          While the Complaint alleges that Plaintiffs suffered "retaliation" for taking medical leave,

17  Plaintiffs appear to be asserting an interference claim rather than a retaliation claim.  *See Sanders*

18  *v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (cleaned up).  A plaintiff can bring an FMLA

19  retaliation claim if she is "discharge[d] or in any other manner discriminate[d] against . . . for

20  opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a)(1)(2), (b).  By contrast,

21  a plaintiff can bring an FMLA interference claim if she maintains that her employer "interfere[d]

22  with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided" by the

23  FMLA.  29 U.S.C. § 2615(a)(1).  The WPFMLA "mirrors its federal counterpart." *Mooney v.*

24  *Roller Bearing Co. of Am., Inc.*, 2022 WL 1014904, at *21 (W.D. Wash. Apr. 5, 2022).[8]  "By their

25
26  [8]  Effective January 1, 2020, the WPFMLA superseded the Washington Family Leave Act ("WFLA"), which previously provided employment protections for unpaid family and medical leave.  Although the legislature repealed the WFLA, it "incorporated the employment protections provisions of [the WFLA] wholesale into the new

1    plain meaning, the anti-retaliation . . . provisions [of the FMLA] do not cover visiting negative

2    consequences on an employee simply because he has used FMLA leave." *Bachelder v. Am. W.*

3    *Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).  "Such action is, instead, covered under §

4    2615(a)(1), the provision governing 'Interference with the Exercise of rights.'"  *Id.* (cleaned up).

5    The same is true under the WPFMLA.  *See Mooney*, 2022 WL 1014904, at *21.

6         Here, Plaintiffs allege that they "each took a medical leave of absence" and that, "[s]ince

7    returning from their respective medical leaves, Amazon has continued to discriminate and retaliate

8    against" them.    Compl. ¶¶ 145-46.    Plaintiffs' allegations relate to purported "negative

9    consequences" of using leave, *Bachelder*, 259 F.3d at 1124, not retaliation for opposing alleged

10   violations of the FMLA or WPFMLA.  And while Wilmuth claims that she reported the supposed

11   retaliation against her for taking leave, she does not allege that she suffered any negative

12   consequences for *making that report*—only that "Amazon has done nothing with respect to Ms.

13   Wilmuth's complaint."  Compl. ¶ 149.  Plaintiffs thus cannot state an FMLA or WPFMLA

14   retaliation claim.  *See, e.g.*, *Zentz v. Dentive-Fam. First Dental, LLC*, 2023 WL 4826748, at *3

15   (E.D. Wash. July 27, 2023); *Craft v. Burris*, 2017 WL 4891520, at *3 (D. Mont. Oct. 30, 2017).

16        Plaintiffs appear to be attempting to plead interference claims.  However, to state a viable

17   interference claim, each Plaintiff must allege that:

18         (1) she was eligible for the [statute's] protections, (2) her employer was covered by
19         the [statute], (3) she was entitled to leave under the [statute], (4) she provided
           sufficient notice of her intent to take leave, and (5) her employer denied her
20         [statutory] benefits to which she was entitled.

21   *Nguyen v. Boeing Co.*, 2016 WL 7375276, at *6 (W.D. Wash. Dec. 20, 2016) (cleaned up); *see*

22   *also Dahlstrom v. Life Care Centers of Am., Inc.*, 2023 WL 4893491, at *5 (W.D. Wash. Aug. 1,

23   2023) (similar under WPFMLA).

24        Plaintiffs do not come close to pleading sufficient facts to state an interference claim.

25   Plaintiffs do not plead that they requested or were granted FMLA or WPFMLA leave (as opposed

26   [WPFMLA]."  RCW 50A.05.125 c 59 § 2.  Where appropriate, Amazon cites precedent interpreting and applying the
     WFLA's employment protections.

**DEFENDANT'S MOTION TO DISMISS**
**AND/OR STRIKE**
(Case No. 23-CV-1774) – 19

to another form of medical leave).  Nor do Plaintiffs allege facts to show that they satisfied either statute's eligibility requirements.  Instead, the Complaint simply asserts that "Plaintiffs' mental and physical health suffered," and "each took a medical leave of absence."  Compl. ¶¶ 145-46. Because the Complaint fails to adequately allege that Plaintiffs were eligible for, requested, or took leave under the FMLA or WPFMLA, Plaintiffs' FMLA and WPFMLA claims must be dismissed. *See, e.g.*, *Reyes v. Fircrest Sch.*, 2012 WL 5878243, at *2 (W.D. Wash. Nov. 21, 2012); *Dahlstrom*, 2023 WL 4893491, at *5; *Lee v. Delta Air Lines Inc.*, 2021 WL 4527955, at *10 (C.D. Cal. Aug. 23, 2021); *Craft*, 2017 WL 4891520, at *4.

### 2. Combs Fails To State Discrimination (Count I) And Equal Pay Claims (Counts II-III).

Combs asserts gender discrimination claims under: (1) the WLAD (Count I); (2) the EPOA (Count II); and (3) the EPA (Count III).  Each should be dismissed.

#### a. Combs Fails To State A WLAD Claim (Count I).

The WLAD prohibits discrimination "against any person in compensation or in other terms or conditions of employment" based on sex.  RCW 49.60.180(3).  To succeed on a WLAD disparate treatment claim, a plaintiff must plead that she: (1) belonged to a protected class; (2) suffered an adverse employment action; (3) was doing satisfactory work; and (4) was treated differently than someone not in the protected class.  *Dahlstrom*, 2023 WL 4893491, at *6; *see also Marquis v. City of Spokane*, 922 P.2d 43, 52 (Wash. 1996).  Here, Combs alleges that she was subjected to discriminatory treatment in four ways.  Compl. ¶¶ 80-91.[9]  None are sufficient.

First, Combs claims that Burke took credit for her work and left her name off of research papers circulated to Amazon stakeholders.  Compl. ¶¶ 82-85.  But taking credit for another employee's work is not an adverse employment action under the WLAD.  *See Kirby v. City of Tacoma*, 98 P.3d 827, 833 (Wash. Ct. App. 2004).  And, even if it were, Combs has not alleged

---

[9] The Complaint also suggests in passing that Combs was discriminated against on the basis of "compensation." Compl. ¶ 166.  To the extent Combs attempts to plead a compensation claim under the WLAD, it fails for the same reason as her EPOA claim—namely, she fails to identify a male employee who allegedly performed substantially equal work for more pay.  *See infra* at 22-23; *see also Nguyen*, 2016 WL 7375276, at *3.

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    that any similarly situated male employee was treated differently—*i.e.*, that an identified male *did*

2    receive credit for work circulated to Amazon stakeholders or that Burke never took credit for the

3    work of male employees. Combs therefore fails to plausibly allege that Burke took credit for her

4    work because of her gender. *See, e.g.*, *Nguyen*, 2016 WL 7375276, at *3.

5        Second, Combs cites as supposed evidence of a WLAD violation the fact that Burke

6    allegedly tried to assign her "HQ1" project to a member of his team, Rob Wilson. Compl. ¶ 85.

7    But the Complaint does not allege that Burke's attempt to assign the HQ1 project ever materialized,

8    and a mere threat—especially one that just relates to a single assignment—is not an actionable

9    adverse employment action. *See, e.g.*, *Kirby*, 98 P.3d at 833; *Hellman v. Weisberg*, 360 F. App'x

10   776, 779 (9th Cir. 2009).

11       Third, Combs alleges that she was demoted twice: once in December 2022 after Wilmuth's

12   team was reorganized and again when she returned from leave in July 2023. Compl. ¶¶ 138-141,

13   157-158. But these allegations cannot support a WLAD claim because Combs identifies no male

14   who was similarly situated to her "in all relevant aspects" and treated more favorably. *Perez-*

15   *Melgosa v. State*, 195 Wash. App. 1041 (Wash Ct. App. Aug. 15, 2016). She does not identify

16   any comparator at all with respect to the alleged July 2023 demotion. And while she alleges that

17   Mishra "had his role, team, and compensation remain the same or even increase[]" in connection

18   with the December 2022 reorganization, Compl. ¶ 138, she essentially admits that Mishra is not

19   similar to her—Mishra was a Research Scientist, while Combs had "no background in research."

20   *Id.* ¶¶ 69, 158. Further, Combs alleges that she was demoted in December 2022 and lost job

21   assignments in retaliation for "raising concerns" about Burke's treatment and the reorganization

22   of Wilmuth's team. In other words, she claims this demotion amounted to retaliation for making

23   complaints—not gender discrimination. Likewise, Combs claims that she was demoted again in

24   July 2023 because she took leave—another reason having nothing to do with her gender. *Id.*

25   ¶¶ 134, 136, 143, 157. Because Combs fails to allege that either purported demotion was related

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    to her gender,  neither demotion can support a WLAD discrimination claim.  *See, e.g.*, *Pratt v.*
2    *Wal-Mart Stores, Inc.*, 2013 WL 4734805, at *2 (W.D. Wash. Sept. 3, 2013).

3          Finally, Combs alleges that Burke and one of his male subordinates, Wilson, "repeatedly
4    talked over and down to [her] in an insulting manner."  Compl. ¶¶ 85, 111.  But the "WLAD is not
5    intended as a general civility code . . . and not everything that makes an employee unhappy is an
6    actionable adverse action."  *Alonso v. Qwest Comms. Co*., 315 P.3d 610, 617 (Wash. Ct. App.
7    2013).  While Burke's or Wilson's comments, if made, are arguably unpleasant, they do not
8    constitute adverse actions, nor has Combs alleged that they were sufficiently severe or pervasive
9    to rise to the level of a hostile work environment.  *See Strange v. Les Schwab Tire Ctrs. Of Or.,*
10   *Inc.*, 2009 WL 2913892, at *4 (W.D. Wash. Sept. 8, 2009); *Hardage v. CBS Broad., Inc.*, 427 F.3d
11   1177, 1189 (9th Cir. 2005).  The Court therefore should dismiss Combs's WLAD claim.

12         **b.    Combs Fails To State An EPA Or EPOA Claim (Counts II-III).**

13         Combs also fails to state a claim under the EPA or EPOA.  To plausibly plead an EPA
14   claim, an employee must set forth facts to suggest that "the employer pays different wages to
15   employees of the opposite sex for substantially equal work."  *Rizo v. Yovino*, 950 F.3d 1217, 1222
16   (9th Cir. 2020) (en banc); *see McMinimee v. Yakima Sch. Dist. No. 7*, 2019 WL 11680199, at *13
17   (E.D. Wash. Aug. 7, 2019).  The EPOA is "virtually identical" to the EPA.  *Hudon v. W. Valley*
18   *Sch. Dist.*, 97 P.3d 39, 43 (Wash. Ct. App. 2004).

19         Courts routinely dismiss EPA and EPOA claims where a plaintiff fails to identify an
20   employee of the opposite gender who is allegedly paid more for substantially equal work.  *See,*
21   *e.g.*, *West v. Spencer*, 2018 WL 1757138, at *2 (W.D. Wash. Apr. 12, 2018); *Redwind v. W. Union,*
22   *LLC*, 2019 WL 3069864, at *4 (D. Or. June 21, 2019) (same), *R&R adopted*, 2019 WL 3069841
23   (D. Or. July 12, 2019); *Alexander v. Marriott Intern., Inc.*, 2011 WL 1231029, at *5 (D. Md. Mar.
24   29, 2011) (same).

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Here, Combs has failed to name a single male employee who she claims was paid more

2   than she was for performing substantially equal work.  The Complaint contains only two sentences

3   in support of Combs's EPA and EPOA claims:

4       Upon information and belief, Amazon was also paying Ms. Combs less than her
        male peers.  Ms. Combs was paid at the very low end of the pay band for her role,
5       while males who had the same job code were being paid more, including males who
        had substantially less experience than Ms. Combs.

6   Compl. ¶ 79.  These allegations are nothing more than "formulaic recitations" of the elements of

7   the EPA and EPOA "couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (cleaned up).

8   "Threadbare and conclusory allegations that an employer favors a particular group are insufficient

9   to satisfy" the requirement of identifying a comparator.  *Nguyen v. The Boeing Co.*, 2016 WL

10  2855357, at *3 (W.D. Wash. May 16, 2016).  Indeed, the Complaint's threadbare allegation that

11  Combs was "paid at the very low end of the pay band for her role" in no way suggests that only

12  men were placed higher than she was on the pay band; instead, the allegation just as plausibly

13  suggests that comparable *women* in the same pay band were paid more than Combs was.  Because

14  Combs has not identified any male employee who she claims was paid more than her for

15  performing substantially equal work, her EPA and EPOA claims merit dismissal.

16                          **V. CONCLUSION**

17      For all the reasons described above, the Court should strike Plaintiffs' class and collective

18  action allegations; dismiss Count VII in its entirety; and dismiss Counts I, II, and III as to Combs.

19

20            **LOCAL CIVIL RULE 7(e)(6) CERTIFICATION**

21      I certify that this memorandum contains 8,396 words, in compliance with the Local Civil

22  Rules.

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2    DATED: January 19, 2024          By:  _s/ Andrew E. Moriarty_

3                                      Andrew E. Moriarty, Bar No. 28651
                                       Shannon McDermott, Bar No. 59455
4                                      **Perkins Coie LLP**
                                       1201 Third Avenue, Suite 4900
5                                      Seattle, Washington 98101-3099
                                       Telephone: +1.206.359.8000
6                                      Facsimile: +1.206.359.9000
                                       AMoriarty@perkinscoie.com
7                                      SMcDermott@perkinscoie.com

8                                      Jason C. Schwartz (*pro hac vice*)
                                       Molly T. Senger (*pro hac vice*)
9                                      Alex Bruhn (*pro hac vice*)
10                                     **Gibson, Dunn & Crutcher LLP**
                                       1050 Connecticut Avenue, N.W.
11                                     Washington, D.C. 20036-5306
                                       Telephone: +1.202.955.8500
12                                     Facsimile: +1.202.467.0539
                                       JSchwartz@gibsondunn.com
13                                     MSenger@gibsondunn.com
                                       ABruhn@gibsondunn.com
14

15                                     Attorneys for Defendant Amazon.com, Inc.

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on January 19, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: January 19, 2024

*s/ Erin Koehler*
Legal Practice Assistant

CERTIFICATE OF SERVICE
(Case No. 23-CV-1774) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000