THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLINE WILMUTH, KATHERINE SCHOMER, and ERIN COMBS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC.,

Defendant.

Case No. 2:23-cv-01774-JNW

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**

NOTE ON MOTION CALENDAR: FRIDAY, MARCH 22, 2024

ORAL ARGUMENT REQUESTED

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE –
(Case No. 23-CV-1774) - 1

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 3

III. LEGAL STANDARD ............................................................................................ 6

IV. ARGUMENT ......................................................................................................... 7

    A.  Plaintiffs' Count I EPOA Class Allegations Must Be Stricken Because They Cannot Satisfy Rule 23. ................................................................. 7

        1.  Plaintiffs Cannot Adequately Represent The Putative Class. .................... 7

        2.  Plaintiffs' Putative Class Lacks Commonality. ......................................... 9

        3.  Plaintiffs' Putative Damages Class Fails Rule 23's Predominance And Manageability Requirements. ........................................................ 14

    B.  The Court Should Strike Plaintiffs' Class And Collective Allegations With Respect To Their EPOA (Count I) And Federal EPA (Count II) Claims Because They Do Not Arise From The Same Establishment. ............................ 15

        1.  Plaintiffs' EPOA And EPA Claims Do Not Arise From The Same Establishment. .......................................................................... 15

        2.  Plaintiffs Do Not Plausibly Allege Entitlement To The "Unusual Circumstances" Exception To The General "Establishment" Rule. ......... 16

    C.  The Court Should Strike Plaintiffs' Count II EPA Collective Allegations Because The Collective's Members Are Not Similarly Situated ....................... 19

    D.  The Court Should Dismiss Wilmuth's Count VII Leave Claim For Failure To State A Claim. ................................................................................... 20

V.  CONCLUSION ...................................................................................................... 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................6, 21

*Bachelder v. Am. W. Airlines, Inc.*,
259 F.3d 1112 (9th Cir. 2001) ...........................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................6

*Beyer v. Michels Corp.*,
2022 WL 901524 (E.D. Wis. Mar. 28, 2022) ...................................................19

*Boilermakers Nat. Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*,
748 F. Supp. 2d 1246 (W.D. Wash. 2010) ..........................................................2

*Burk v. Contemp. Home Servs., Inc.*,
2007 WL 2220279 (W.D. Wash. Aug. 1, 2007) ...............................................19

*Cashatt v. Ford Motor Co.*,
2020 WL 1987077 (W.D. Wash. Apr. 27, 2020) .................................................6

*Castle v. Wells Fargo Fin., Inc.*,
2008 WL 495705 (N.D. Cal. Feb. 20, 2008) .....................................................19

*Chand v. Regan*,
2022 WL 2390996 (N.D. Cal. July 1, 2022) .....................................................22

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .............................................................................................14

*Craft v. Burris*,
2017 WL 4891520 (D. Mont. Oct. 30, 2017) ...................................................21

*Dahlstrom v. Life Care Centers of Am., Inc.*,
2023 WL 4893491 (W.D. Wash. Aug. 1, 2023) ..........................................21, 23

*Dapper v. Brinderson, LLC*,
2023 WL 5177511 (W.D. Wash. Aug. 10, 2023) ...............................................15

*Delgado v. Marketsource, Inc.*,
2018 WL 6706041 (N.D. Cal. Dec. 20, 2018) ....................................................9

*Donaldson v. Microsoft Corp.*,
205 F.R.D. 558 (W.D. Wash. 2001) ................................................................7, 8

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE –
(Case No. 23-CV-1774) – ii

*Duncan v. Nw. Airlines, Inc.*,
    203 F.R.D. 601 (W.D. Wash. 2001) ..................................................................14

*Foster v. Arcata Assocs., Inc.*,
    772 F.2d 1453 (9th Cir. 1985) ........................................................................15

*Fuentes v. Human. for Horses*,
    2022 WL 5249444 (E.D. Cal. Oct. 6, 2022) ....................................................22

*Goins v. United Parcel Serv. Inc.*,
    2023 WL 3047388 (N.D. Cal. Apr. 20, 2023) ....................................14, 16, 19

*Hinojos v. Home Depot, Inc.*,
    2006 WL 3712944 (D. Nev. Dec. 1, 2006) .....................................................19

*Kassman v. KPMG LLP*,
    416 F. Supp. 3d 252 (S.D.N.Y. 2018) ......................................................16, 17

*Keats v. Koile*,
    883 F.3d 1228 (9th Cir. 2018) ..........................................................................7

*Kevari v. Scottrade, Inc.*,
    2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ..........................................11, 13

*Lavelle v. CL W. Mgmt. LLC, Inc.*,
    2022 WL 10613342 (E.D. Wash. Oct. 18, 2022) ...........................................15

*Lee v. Delta Air Lines Inc.*,
    2021 WL 4527955 (C.D. Cal. Aug. 23, 2021) ................................................23

*Meeks v. Computer Assocs. Int'l*,
    15 F.3d 1013 (11th Cir. 1994) ........................................................................17

*Mooney v. Roller Bearing Co. of Am., Inc.*,
    2022 WL 1014904 (W.D. Wash. Apr. 5, 2022) ........................................20, 21

*Nguyen v. Boeing Co.*,
    2016 WL 7375276 (W.D. Wash. Dec. 20, 2016) ...........................................21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ..........................................................................10

*Patrick v. Ramsey*,
    2023 WL 6680913 (W.D. Wash. Oct. 12, 2023) ..............................................6

*Price v. N. States Power Co.*,
    2011 WL 338451 (D. Minn. Jan. 31, 2011) ...................................................17

*Pytelewski v. Costco*,
    2010 WL 11442901 (S.D. Cal. July 14, 2010) .................................................6

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Reyes v. Fircrest Sch.*,
2012 WL 5878243 (W.D. Wash. Nov. 21, 2012)..................................................23

*Ross v. Lockheed Martin Corp.*,
267 F. Supp. 3d 174 (D.D.C. 2017)....................................................................12

*Sanders v. City of Newport*,
657 F.3d 772 (9th Cir. 2011).............................................................................20

*Schindeler-Trachta, D.O. v. Texas Health & Hum. Servs. Comm'n*,
2020 WL 1902576 (W.D. Tex. Feb. 26, 2020)....................................................18

*Swan v. Bank of Am.*,
360 F. App'x 903 (9th Cir. 2009).......................................................................22

*Trinh v. JP Morgan Chase & Co.*,
2008 WL 1860161 (S.D. Cal. Apr. 22, 2008)....................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)..........................................................................................14

*Van v. Ford Motor Co.*,
332 F.R.D. 249 (N.D. Ill. 2019).........................................................................15

*Wagner v. Taylor*,
836 F.2d 578 (D.C. Cir. 1987).......................................................................7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................3, 10, 11, 12, 13

*Wynn v. Chanos*,
75 F. Supp. 3d 1228 (N.D. Cal. 2014)...............................................................16

*Zentz v. Dentive-Fam. First Dental, LLC*,
2023 WL 4826748 (E.D. Wash. July 27, 2023)..................................................21

**Statutes**

29 U.S.C. § 206..................................................................................................15

29 U.S.C. § 216..................................................................................................19

29 U.S.C. § 2615............................................................................................20, 21

RCW 50A.05.125...............................................................................................20

**Rules**

Fed. R. Civ. P. 23........................................................................................7, 9, 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**Treatises**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1383 (3d Ed.) .................................................................................................................6

**Regulations**

29 C.F.R. § 1620.9 ..............................................................................15, 16, 17, 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## I.       INTRODUCTION

Plaintiffs Caroline Wilmuth, Katherine Schomer, and Erin Combs (together, "Plaintiffs") worked for Amazon on the same 15-person team at Amazon headquarters ("HQ1") in Seattle. Plaintiffs each allege that they were paid less than various male Amazon employees.  Specifically, Wilmuth (a marketing manager) claims that she was paid less than several male research scientists; Schomer (a product manager) asserts that she was paid less than a male research scientist; and Combs (a brand and marketing strategist) maintains that she was paid less than Dylan Green (whose title is not pled).  Dkt. 33, First Amended Complaint ("FAC") ¶¶ 98, 102-03, 109.  Combs and Wilmuth – but not Schomer – claim that a male leader of another team, Jordan Burke, discriminated against them due to their gender.  *Id.* ¶ 110.  All three Plaintiffs allege they were retaliated against after raising concerns about gender discrimination and for taking medical leave. *Id.* ¶¶ 156-204.  In the ten-count FAC, Plaintiffs assert claims under the Washington Equal Pay and Opportunities Act ("EPOA") (Counts I and IV), the federal Equal Pay Act ("EPA") (Counts II and III), the Washington Law Against Discrimination ("WLAD") (Counts V and VI), Title VII (Counts IX and X), the Family and Medical Leave Act ("FMLA") and the Washington Paid Family Medical Leave Act ("WPFMLA") (Count VII).  Plaintiffs Wilmuth and Combs also claim that Amazon wrongfully discharged them in violation of public policy (Count VIII).

Despite the highly fact-based and individualized nature of their claims, Plaintiffs seek to bring an EPA claim on behalf of a sprawling nationwide collective, which is defined to include *all* female Amazon employees in the United States who worked for Amazon in *any* job that was coded as "levels 4-8" for the three years preceding the filing of their original Complaint through "the resolution of this action."  FAC ¶ 63.  In other words, three female employees who worked in a single, 15-person marketing group at Amazon HQ1 seek to represent *all* female Amazon employees nationwide who worked in *any* location, in *any* position (at levels 4-8), in *any* business unit, for *any* supervisor.  Given that Amazon has approximately 350,000 management, sales, and administrative employees in the U.S. and roughly 33.5% of those employees are women, Plaintiffs

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    seek to represent a collective of likely more than 100,000 individuals.[1]  Plaintiffs also seek to bring

2    an EPOA claim on behalf of a massive Washington class, which is defined to include all members

3    of the collective who worked in Washington.  *Id.* ¶ 73.

4          This is not the first time that Plaintiffs have attempted—and failed—to plead viable class

5    and collective claims.  In their original Complaint, Plaintiffs attempted to bring EPOA class and

6    EPA collective claims on behalf of the same enormous group of women now covered by their EPA

7    collective claim.  *See* Dkt. 1.  After Amazon moved to strike the class and collective allegations

8    and dismiss certain of Plaintiffs' individual claims, *see* Dkt. 26, Plaintiffs filed the FAC, which

9    contains the same collective action allegations under the EPA as their original Complaint, but

10   "limits" Plaintiffs' parallel EPOA class claim to only those collective members who worked in

11   Washington.  *See* Ex. A (First Amended Complaint and Complaint Redline) at 19-23.

12         Plaintiffs' class and collective claims fare no better the second time around.  They should

13   be stricken under Rule 12(f) for at least three reasons.  *First*, Plaintiffs' EPOA class claim cannot

14   possibly satisfy Rule 23's adequacy, commonality, predominance, or manageability requirements,

15   which justifies striking the class allegations now.  *Second*, Plaintiffs' class and collective claims

16   are impermissible because the EPOA and EPA limit such actions to employees within a single

17   establishment (*i.e.*, location), and Plaintiffs do not meet the "unusual circumstances" that justify

18   an exception to that rule.  *Third*, Plaintiffs cannot assert EPA claims on behalf of a nationwide

19   collective because women working for Amazon in different roles, in different business units, in

20   different states, and for different supervisors are not "similarly situated" under the EPA.

21         To be clear, Amazon did not discriminate against the three Plaintiffs in this case and will

22   ultimately prove that on the merits.  In the meantime, there is no basis for these three Plaintiffs to

23   repackage their local, individualized grievances on a 15-person team into sweepingly broad state

24

25   [1] *See* Amazon EEO-1 Consolidated Report (2021), available at https://www.aboutamazon.com/news/workplace/our-
     workforce-data.  The Court can take judicial notice of information in Amazon's EEO-1 report because it is a public

26   document and is referenced in the FAC.  *See* FAC ¶ 32 & n.4; *Boilermakers Nat. Annuity Tr. Fund v. WaMu Mortg.
     Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1252 (W.D. Wash. 2010).

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

and nationwide class and collective claims. Because Plaintiffs and the employees they seek to represent "have little in common but their sex and this lawsuit," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), Plaintiffs' class and collective action allegations should be stricken now.

For these reasons, the Court should strike Plaintiffs' Count I and II class and collective action claims. In addition, the Court should dismiss Wilmuth's Count VII claim for "family and medical leave violations" because she pleads no facts to suggest that her January 2024 termination had anything whatsoever to do with the leave that she took approximately seven months earlier.

## II.    BACKGROUND[2]

Plaintiffs Caroline Wilmuth, Katherine Schomer, and Erin Combs all worked for Amazon on the same team, in the same job level (L7), in the same organization, at Amazon headquarters in Seattle—also known as HQ1.[3] FAC ¶¶ 4-6, 92, 94. Plaintiffs' team, the Global Corporate Affairs Research & Strategy Team ("GCARS"), is contained within Amazon's larger Worldwide Communications organization ("WWC"), which is itself part of Amazon Global Corporate Affairs ("GCA"). *Id.* ¶¶ 83-85. Plaintiffs allege that Wilmuth created GCARS in 2019, and that Combs and Schomer reported to Wilmuth after joining the team in 2022. *Id.*

Plaintiffs allege that Amazon maintains a common salary structure for all of its salaried employees, placing each in a level from 4 (L4) to 12 (L12). FAC ¶ 44. According to the FAC, Amazon's HR department and specialized interviewers called "Bar Raisers" "assign[] each salaried employee a job level . . . based on a centralized rubric that defines the characteristic of each level in connection with a given job code." *Id.* In turn, the HR department and Bar Raisers "assign job codes based on Amazon's" "companywide Leveling Guidelines." *Id.* ¶¶ 48, 50. "The intersection of an individual's job level and job code determine[s] their compensation." *Id.* ¶ 43.

---

[2] Amazon accepts as true the factual allegations in the FAC solely for purposes of this Motion.

[3] While Plaintiffs name Amazon.com, Inc. as the defendant, they were, in fact, employed by Amazon.com Services LLC. The arguments in this Motion are being made on behalf of Amazon.com Services LLC, and Amazon.com Services LLC in no way concedes that Amazon.com, Inc. is a proper defendant. Amazon.com Services LLC previously requested that Plaintiffs correct the case caption to reflect the proper Amazon entity, *see* Dkt. 26 at 10 n.3, but Plaintiffs have failed to do so. Amazon.com Services LLC therefore repeats its request that Plaintiffs correct the FAC's case caption to identify the appropriate Amazon entity.

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Allegedly, Amazon regularly assigns women to lower job codes than comparable men and pays

2    men more than women even in when they are in the same job code. *Id.* ¶¶ 2, 19-22.

3         Plaintiffs cite their own experiences on a 15-person team at Amazon HQ1 as allegedly

4    "illustrat[ive]" of a supposedly widespread practice of nationwide gender discrimination.  FAC

5    ¶ 81.  Despite the fact that Wilmuth was hired to serve as a "General Marketing Manager," *id.* ¶

6    83, she alleges that her work at Amazon was akin to that of a research scientist and that she was

7    therefore incorrectly coded in an L7 marketing role instead of in a "research job code," *id.* ¶¶ 96-

8    97.  Because she was classified as a marketing manager, Wilmuth claims that she was paid less

9    than male research scientists on her team as well as Jordan Burke, a male "L8 Director" who led a

10   different team and reported to the same supervisor as Wilmuth—Christina Lee.  *Id.* ¶¶ 98-99, 110.

11   Schomer, an L7, was hired as a "Principal Product Manager," but like Wilmuth, Schomer claims

12   that she should have been classified as a research scientist instead (and thus, paid more).  *Id.* ¶¶

13   102-03.  Schomer alleges that she was paid less than two men, Pushkar Raj and an unnamed "Male

14   Comparator," who supposedly performed the same work that she did but were research scientists.

15   *Id.* ¶¶ 102-05.  Combs, also an L7, alleges that she worked as a Brand and Marketing Strategist

16   and was paid "at the very low end of the pay band for her role," and less than Dylan Green, an L7

17   on Burke's team whose position is not identified in the FAC.  *Id.* ¶¶ 109, 118.

18        All three Plaintiffs allege that they complained about perceived gender discrimination.  *See*

19   FAC ¶¶ 123, 126, 130, 138, 140-48, 149-55.  Plaintiffs claim that Amazon retaliated against them

20   for their complaints in various ways.  For her part, Wilmuth alleges that her anticipated promotion

21   to an L8 Director position was "put on hold" two days after she complained about discriminatory

22   conduct by Burke.  *Id.* ¶¶ 128-29.  Wilmuth also claims that, in December 2022, Amazon

23   "remov[ed] her entire 15-person team and all of her projects from under her purview," moving her

24   to an "Individual Contributor role." *Id.* ¶ 156.  As part of the reorganization, Schomer alleges that

25   she was moved to Burke's team and was no longer responsible for supervising two of her three

26

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    direct reports.  *Id.* ¶ 162.  Combs claims that she began reporting to a new supervisor, and her two

2    direct reports were reassigned.  *Id.* ¶¶ 164-166.

3         Plaintiffs allege that their "mental and physical health suffered," and that they all took leave

4    under the FMLA and WPFMLA in 2023.  FAC ¶ 177.  Plaintiffs allege that "individuals on

5    [Wilmuth's] team" made "comments" about her during her March 2023 to June 2023 leave, and

6    that "Amazon HR" shared confidential information about one of Wilmuth's "confidential EEO

7    complaints" with her co-workers when she returned from leave.  *Id.* ¶¶ 177, 179-80.  After working

8    for roughly six months, Wilmuth "went out on short-term disability leave" in December 2023.

9    *Id.* ¶ 182.  Wilmuth does *not* allege that this particular leave was protected under the FMLA or the

10   WPFMLA.  *See id.*  On January 10, 2024, while on this short-term disability leave—not FMLA or

11   WPFMLA leave—Wilmuth was "terminat[ed] due to role elimination."  *Id.* ¶ 182.  "On

12   information and belief," Wilmuth alleges that she was actually terminated "in retaliation for her

13   many complaints of discrimination and retaliation" and "for taking medical leave."  *Id.* ¶ 184.

14        Schomer allegedly took FMLA leave from May 2023 through August 2023.  FAC ¶ 177.

15   After Schomer returned from leave, her female supervisor allegedly provided her "with a list of

16   purported performance issues that she had never previous[ly] mentioned."  *Id.* ¶ 187.  In November

17   2023, Schomer was placed on a "Focus, an internal performance management program."  *Id.* ¶ 189.

18   And in February 2024, she was placed "into Pivot, which [is] Amazon'[s] equivalent of a

19   Performance Improvement Plan."  *Id.* ¶ 190.

20        Combs alleges that she took FMLA leave from March 2023 through June 2023 and short-

21   term disability leave—not FMLA or WPFMLA leave—in June and July 2023.  FAC ¶ 177.  When

22   Combs returned from leave in July 2023, she was supposedly "further demoted" and "placed . . .

23   in a role in which she is set up to fail."  *Id.* ¶¶ 194-95.  Because of her "retaliatory demotion,"

24   "limited assignment of projects," and "lack of opportunity to grow her career," Combs alleges that

25   she was purportedly "compelled to resign, effective December 2, 2023."  *Id.* ¶ 202.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    In the FAC, Plaintiffs bring ten claims on behalf of themselves, as well as a putative class

2    claim under the EPOA and a putative collective claim under the EPA.   Despite the fact that

3    Plaintiffs were each L7s in marketing-related roles on a single, 15-person GCARS team at HQ1,

4    they assert an EPA collective claim on behalf of "all women who worked for Amazon in any

5    position in job levels 4-8 . . . at any time from three years before the filing of the initial complaint

6    through the resolution of this action."  FAC ¶ 63.  Plaintiffs also assert an EPOA class claim on

7    behalf of a subset of these women who worked in Washington during the relevant period.  *Id.* ¶ 73.

8                            ### III.    LEGAL STANDARD

9    Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any

10   redundant, immaterial, impertinent, or scandalous matter."   Where, as here, "the complaint

11   demonstrates that a class action cannot be maintained," it is appropriate for the court to "strike

12   class allegations prior to discovery."  *Patrick v. Ramsey*, 2023 WL 6680913, at *2 (W.D. Wash.

13   Oct. 12, 2023) (cleaned up); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice

14   *and Procedure* § 1383 (3d Ed.) (motion to strike class allegations "is appropriate because

15   overbroad or unsupportable class allegations bring 'impertinent' material into the pleading");

16   *Pytelewski v. Costco*, 2010 WL 11442901, at *3 (S.D. Cal. July 14, 2010) (analyzing motion to

17   strike collective claims under Rule 12(f)).  In considering a motion to strike under Rule 12(f),

18   courts apply a similar standard to a motion to dismiss.  *Cashatt v. Ford Motor Co.*, 2020 WL

19   1987077, at *4 (W.D. Wash. Apr. 27, 2020).   Striking class allegations at the pleading stage

20   provides the benefit of avoiding "expenditure of time and money that must arise from litigating

21   spurious issues by dispensing with those issues prior to trial."  *Id.*

22   To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

23   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

24   662, 678 (2009) (cleaned up).  This "requires more than labels and conclusions, and a formulaic

25   recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

26   544, 555 (2007) (cleaned up).   Thus, while the Court must accept "all well-pleaded factual

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    allegations in the complaint as true," the Court is "not bound to accept as true a legal conclusion

2    couched as a factual allegation." *Keats v. Koile*, 883 F.3d 1228, 1234, 1243 (9th Cir. 2018).

3                                  **IV.    ARGUMENT**

4    **A.    Plaintiffs' Count I EPOA Class Allegations Must Be Stricken Because They Cannot Satisfy Rule 23.**

5          Plaintiffs bring a putative class claim for unequal pay in violation of the EPOA (Count I),

6    seeking injunctive relief under Rule 23(b)(2) and damages under Rule 23(b)(3).  *See* FAC ¶¶ 73-

7    80, 205-09.  Plaintiffs' class claim should be stricken because (1) Plaintiffs fail to satisfy Rule

8    23(a)'s commonality and adequacy requirements and (2) Plaintiffs' damages class fails to satisfy

9    Rule 23(b)(3)'s predominance and manageability requirements.

10                **1.    Plaintiffs Cannot Adequately Represent The Putative Class.**

11         Plaintiffs' class claim must be stricken because they fail to meet Rule 23's requirement that

12   "the representative parties will fairly and adequately protect the interests of the class."  Fed. R.

13   Civ. P. 23(a)(4).  A putative class fails Rule 23(a)(4)'s adequacy requirement if there is a conflict

14   of interest between the class representatives and members of the putative class.  *Donaldson v.*

15   *Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001).  Such a conflict may arise "where a

16   class contains both supervisory and non-supervisory employees" because supervisors may be

17   required to "implement" the very policies challenged by non-supervisory class members.  *Id.*; *see*

18   *also Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987).  That is precisely the case here.

19         Plaintiffs cannot represent *all* female L4s-L8s in Washington because that class includes

20   both non-supervisory employees and supervisory employees.  Many class members report to other

21   class members.  *See, e.g.*, FAC ¶¶ 118, 143, 170.  Indeed, two of the three named Plaintiffs

22   (Schomer and Combs) reported to the third named Plaintiff (Wilmuth), and all three supervised

23   other employees.  *See id.* ¶¶ 162, 164, 170.  Further, the very discriminatory practices about which

24   Plaintiffs complain are "implemented" by supervisors who are themselves members of the putative

25   class.  *Donaldson*, 205 F.R.D. at 568.  Plaintiffs allege that Amazon maintains common

26

employment practices "with respect to hiring, job assignment, compensation decisions, performance measurement, and promotion decisions," which result in the underpayment of female employees.  FAC ¶ 76; *see also id.* ¶¶ 23-62.  Unquestionably, female supervisory employees play a central role in implementing these practices. *See, e.g.*, *id* ¶ 41 (alleging that Wilmuth "participated in over 75 interviews during her time at Amazon"); *id.* ¶ 129 (claiming that Lee, Wilmuth's female supervisor, informed her that her promotion was "on hold"); *id.* ¶ 153 (alleging that Lee "insisted" that a new hire "be placed in a lower-paid job code"); *id.* ¶ 185 (describing review of Schomer by her female supervisor that would "negatively impact [her] compensation").  Because Plaintiffs seek to represent some of the very same individuals who they allege engaged in misconduct, Plaintiffs' putative class presents "insurmountable" conflicts, which justifies striking the class allegations now.  *Donaldson*, 205 F.R.D. at 568; *see also Wagner*, 836 F.2d at 595. !!

In an attempt to head off these insurmountable obstacles to class certification, Plaintiffs suggest that compensation decisions are solely "implement[ed] and dispense[d]" by Amazon's "centralized HR department."  FAC ¶ 34; *see also id.* ¶¶ 54, 58 (alleging that job codes and levels are "assigned by Amazon's HR" and that Amazon "does not afford discretion to its managers to promote employees").  But Plaintiffs' *own* factual allegations in the FAC (and common sense) belie their belated, conclusory assertion that all hiring, promotion, and pay decisions at Amazon are centralized.  By Plaintiffs' own account, Christina Lee—an individual female supervisor— "insisted" that a new hire be placed in a particular "lower-paid job code." *Id.* ¶ 153.  And Plaintiff Schomer claims that it was the review she received from a female supervisor—not any centralized process—that "negatively impact[ed] [her] compensation." *Id.* ¶ 185.  Throughout the FAC, Plaintiffs make clear that individual female supervisors and "managers" score employees for evaluation purposes, "put . . . employee[s] up for promotion," "lobby HR" for pay changes and "ask Amazon's HR to conduct . . . job code review[s]." *Id.* ¶¶ 45, 49, 54, 61.  These are the decisions that Plaintiffs seek to challenge on a class-wide basis—even though many of these decisions were plainly made by female members of the putative class.  And, even if it were true

1    that Amazon's HR department somehow exercised exclusive, uniform control over *all* hiring and

2    promotions in one of "the world's largest e-commerce and technology companies," *id.* ¶ 23,

3    Plaintiffs' sweeping class definition *also* includes supervisory female *HR* employees, who

4    themselves would then be supposedly responsible for engaging in discrimination.

5         Plaintiffs also cannot defuse their class conflicts by pointing to general Amazon "policies"

6    or "practices" that they claim are discriminatory against both supervisory and non-supervisory

7    employees alike. *See* FAC ¶ 76. Plaintiffs do *not* (and could not credibly) allege that Amazon's

8    unremarkable practice—akin to that of virtually every other employer—of merely having job

9    codes, levels, performance reviews, or promotions is discriminatory *per se*. Rather, Plaintiffs

10   allege that these practices are discriminatory in practice because *individuals* at Amazon have

11   implemented them unfairly by, for example, "assign[ing]" women to "similar but lower-paying

12   job codes" and "channeling women to lower levels . . . and paying women less than men within

13   the compensation range for the same job codes and level." *See id.* ¶¶ 21, 65; *see also id.* ¶ 68

14   (alleging that Amazon "engaged in systematic gender discrimination in pay against women

15   through the *implementation* of common compensation policies and practices" (emphasis added)).

16   Thus, under Plaintiffs' own theory, determining whether a class member suffered discrimination

17   "would require individualized assessments into the circumstances of each class member[] . . .—

18   and thus into the actions of supervisors." *Delgado v. Marketsource, Inc.*, 2018 WL 6706041, at

19   *8 (N.D. Cal. Dec. 20, 2018). Because there are insurmountable conflicts that permeate Plaintiffs'

20   proposed class, the putative class fails to satisfy Rule 23's adequacy requirement.

21        **2.**     **Plaintiffs' Putative Class Lacks Commonality.**

22        Plaintiffs' class allegations also should be stricken because they fail to satisfy Rule 23's

23   commonality requirement. Under Rule 23(a)(2), a class action may only be maintained where

24   "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common

25   question must be capable of classwide resolution—which means that determination of its truth or

26   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022)

2   (en banc) (cleaned up).  What matters "is not the raising of common questions—even in droves—

3   but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the

4   resolution of the litigation." *Dukes*, 564 U.S. at 350 (cleaned up).

5       Despite acknowledging that Amazon "employed approximately 1,525,000 full-time and

6   part-time employees" as of December 2023, Plaintiffs assert class claims on behalf of "all women

7   who worked for Amazon in any position in job levels 4-8" in Washington at "any time from three

8   years before the filing of the initial complaint through the resolution of this action."  FAC ¶¶ 23,

9   31, 63, 73.  Plaintiffs do not limit their claims to employees in any specific type of job, role, team,

10  business unit, or facility.  *Id.* ¶ 63.

11      To support this sweeping class, Plaintiffs rest on the thin reed of their *three* allegedly

12  "illustrative" experiences, almost all of which relate to Wilmuth's "team of 15 people."  FAC ¶ 85.

13  The localized and idiosyncratic nature of Plaintiffs' claims leaps from the 20 pages and 124

14  paragraphs of the FAC devoted to "individual plaintiff factual allegations."  *Id.* ¶¶ 81-204.  For

15  example, Wilmuth alleges she was classified as a lower-paid "General Marketing Manager"

16  instead of in a higher-paid "research job code," "despite her exclusively performing a research

17  role." *Id*. ¶¶ 96-97.  Adjudication of this claim would require the determination of what, precisely,

18  Wilmuth's job duties were; whether she was placed in the incorrect job code or level (and if so, by

19  whom and when); whether she, in fact, performed research more akin to a job in the "research job

20  code"; and if so, whether Wilmuth's misclassification had anything to do with her gender.  It is

21  difficult to imagine more individualized questions—or how answering them as to Wilmuth could

22  possibly resolve other class members' claims "in one stroke." *Olean*, 31 F.4th at 663.

23      Each of the three Plaintiffs' claims differ from those asserted by the other Plaintiffs:

24  Wilmuth and Schomer believe their job codes were incorrect, but Combs does not dispute hers

25  was appropriate, asserting only (without supporting facts) that she should have been paid more

26  *within* her job code.  FAC ¶¶ 96, 102, 109.  Wilmuth, but not the other Plaintiffs, alleges that she

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

should have been promoted were it not for "gendered" criticism that her management style was "too aggressive." *Id.* ¶ 130. Schomer, but not Wilmuth and Combs, claims that she "should have automatically" been "elevated into [a] higher-paying Senior Manager" role after a new hire increased her number of direct reports, but was not. *Id.* ¶ 153. Given that even the three Plaintiffs' claims differ from those asserted by the other two Plaintiffs, it is hard to imagine how Plaintiffs' claims possibly could share questions in common with those of all other female Amazon employees in levels 4 through 8 in the entire state of Washington (or nationwide).

Plaintiffs cannot explain how their claims share common questions with those of the *thousands* of class members whom they seek to represent—many of whom never worked in marketing, never claim to have performed work akin to that of research scientists, and who have never met Jordan Burke, Christina Lee, or the other individual Amazon employees named in the FAC. Members of Plaintiffs' sweeping class would necessarily "h[o]ld a multitude of jobs, at different levels of [Amazon's] hierarchy, for variable lengths of time, . . . with a kaleidoscope of supervisors (male and female)." *Dukes*, 564 U.S. at 359. Within the State of Washington, they might work at HQ1, a customer fulfilment center, a delivery station, an Amazon pharmacy, or one of many other facilities performing a variety of different functions for different business units under different circumstances. Assessing whether any class member suffered discrimination with respect to compensation would require an individualized analysis of her treatment by her supervisor, her job code classification, any alleged comparators, and whether her "L" level was commensurate with her job. The disparate job circumstances of the women who Plaintiffs seek to represent would inevitably make it "impossible for all of the contributing factors to produce a common answer to the crucial question why [they were] . . . disfavored." *Kevari v. Scottrade, Inc.*, 2018 WL 6136822, at *7 (C.D. Cal. Aug. 31, 2018) (cleaned up).

Perhaps recognizing that their claims are hopelessly individualized, Plaintiffs now have attempted to gin up common questions twice—and still cannot succeed on their second attempt. Plaintiffs allege in a conclusory fashion that Amazon has a "uniform approach" to the "employee

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

experience," which "has resulted in strong consistency in employment practices," including "standard corporate-wide structures, policies and practices" implemented by Amazon's "centralized HR department." FAC ¶¶ 25-26, 34; *see also, e.g.*, *id.* ¶¶ 37-38 (alleging standardized interview training); *id.* ¶ 44 (claiming that "Amazon's HR, in conjunction with Bar Raisers assigns each employee a job level . . . based on a centralized rubric"); *id.* ¶ 54 (asserting that compensation is initially determined based on an "algorithm" considering job code and level); *id.* ¶ 58 (alleging "standardized promotion process"); *id.* ¶ 61 (alleging use of a "forced ranking system that falls along a bell curve"). Based on these allegations, Plaintiffs assert that common questions include "whether Amazon maintains common policies and practices with respect to hiring, job assignment, compensation decisions, performance measurement, and promotion decisions." *Id.* ¶ 76.

But the question of whether Amazon maintains standardized employment policies and practices cannot serve as the "common contention" necessary to support a class claim because answering it will not "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349. Even if Amazon's policies and practices are centralized, Plaintiffs' allegations make clear that the alleged discrimination against class members will turn on "the *use* of these practices on the part of many different superiors in a single company." *Id.* at 349-50 (emphasis added) (question of whether "managers have discretion over pay" not sufficient for commonality); *see also, e.g.*, *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 198 (D.D.C. 2017) ("mere fact that all of [Defendant's] supervisors used the same allegedly ill-defined numerical rubric to grade employee performance . . . says nothing about how individual supervisors exercised what discretion was left to them").

Indeed, the actual *facts* that Plaintiffs do plead concern only the individualized *application* of Amazon's compensation policies and practices to *Plaintiffs*—and make clear that the application of those policies and practices occurs on the individual supervisor level. Wilmuth, for example, does not claim that she suffered discrimination *because* Amazon uses a particular job code, leveling, evaluation, or promotion system. Instead, she claims that she was allegedly

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

"improperly place[d]" into the *wrong* job code and not promoted because subordinates complained that she was "too controlling" and was "criticized as a female leader for being too aggressive." FAC ¶¶ 96, 129-30.  Schomer likewise does *not* claim that the mere practice of having job codes is itself discriminatory, but rather, that she was "improperly cod[ed]," not given her "proper title" of Senior Manager, and "downgraded" in her performance review—all of which occurred at the hands of individuals.  *Id.* ¶¶ 102, 154, 185.  For her part, Combs also does not object to the fact of having "pay bands" and "job codes," but complains that she was supposedly "paid at the very low end of the pay band for her role and level," while males with "the same job code" were paid more, and that she was given a negative individual performance evaluation that impacted her compensation.  *Id.* ¶ 109.  These purported acts of discrimination are not the work of a faceless Amazon "policy" dictated from on high, but of individual, local decisionmakers.  For that reason, Plaintiffs fail to bridge the "conceptual gap between an individual's claim that he or she suffered an adverse action on discriminatory grounds and conclusory allegation[s] regarding the existence of a policy of discrimination."  *Kevari*, 2018 WL 6136822, at *7.

Plaintiffs also allege that common questions include "whether Amazon's policies and practices violate the EPOA" and "whether compensatory damages, and punitive damages, monetary equitable remedies, injunctive relief, or other relief is warranted."  FAC ¶ 76.  But these are *legal* questions that "any competently crafted class complaint" would raise, and that are "not sufficient" to justify class certification post-*Dukes*.  *Dukes*, 564 U.S. at 349 (questions like "Is that an unlawful employment practice? What remedies should we get?" cannot establish commonality); *see also Kevari*, 2018 WL 6136822, at *7 (striking class allegations where plaintiff's "alleged common questions of law are merely alleged legal violations phrased in the form of a question").  The EPOA "can be violated in many ways," and the fact that Plaintiffs and the putative class members all allegedly suffered violations of the same statute "gives no cause to believe that all their claims can productively be litigated at once."  *Dukes*, 564 U.S. at 350.

Ultimately, Plaintiffs' claims are nothing more than parochial individualized grievances

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

based on their own experiences on a single 15-person team, packaged as overbroad statewide class claims.  Under similar circumstances, courts have stricken class allegations at the pleading stage. *See, e.g.*, *Goins v. United Parcel Serv. Inc.*, 2023 WL 3047388, at \*14 (N.D. Cal. Apr. 20, 2023). The Court should do the same here.

### 3. Plaintiffs' Putative Damages Class Fails Rule 23's Predominance And Manageability Requirements.

Even if Plaintiffs' class allegations satisfied the commonality requirement (they do not), Plaintiffs' Rule 23(b)(3) damages class cannot proceed because Plaintiffs fail to plead facts sufficient to plausibly meet Rule 23(b)(3)'s predominance or manageability requirements.

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up).  The purpose of this inquiry is to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 611-12 (W.D. Wash. 2001). Consistent with its purpose, the predominance criterion "is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Here, Plaintiffs fail the more stringent predominance requirement for the same reasons that they fail the less stringent commonality requirement. *See supra* at 9-14.  Plaintiffs' claims on behalf of a statewide class turn on specific experiences of individual employees and the adjudication of these individual issues would "overwhelm questions common to the class," *Behrend*, 569 U.S. at 34.

Addressing the individualized issues across Plaintiffs' putative class also would result in serious "difficulties in managing a class action," thereby violating Fed. R. Civ. P. 23(b)(3)(D). Adjudication of Plaintiffs' claims would require discovery and mini-trials for thousands of class members in different jobs, on different teams, and in different business units to determine whether they suffered gender discrimination.  The parties and the Court would need to assess, among other things, each class member's job duties, the propriety of her job classification, her treatment by

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    individual supervisors and colleagues, and any comparators.  This is not a feasible way for class

2    litigation to proceed.  *See, e.g.*, *Van v. Ford Motor Co.*, 332 F.R.D. 249, 290 (N.D. Ill. 2019).

3    **B.    The Court Should Strike Plaintiffs' Class And Collective Allegations With Respect To Their EPOA (Count I) And Federal EPA (Count II) Claims Because They Do Not Arise From The Same Establishment.**

4

5         Plaintiff's EPOA class allegations—and federal EPA collective action allegations—also

6    should be stricken because such claims must be limited to employees within a single establishment;

7    Plaintiffs have not plausibly pled any of the "unusual circumstances" that would justify departure

8    from the single-establishment rule; and Plaintiffs are not "similarly situated" to the collective

9    members they seek to represent.

10        **1.    Plaintiffs' EPOA And EPA Claims Do Not Arise From The Same Establishment.**

11

12        Plaintiffs cannot pursue a nationwide collective action under the EPA or a statewide class

13   action under the EPOA because those statutes—absent unusual circumstances—only permit

14   collective or class adjudication where the alleged discriminatory pay practices emanate from a

     single, physical establishment.

15        The EPA provides that "[n]o employer . . . shall discriminate, *within any establishment* in

16   which such employees are employed, between employees on the basis of sex by paying wages to

17   employees *in such establishment* at a rate less than the rate at which he pays wages to employees

18   of the opposite sex *in such establishment* for equal work."  29 U.S.C. § 206(d)(1) (emphases

19   added).[4]  The word "establishment" means "a distinct physical place of business rather than . . . an

20   entire business or 'enterprise' which may include several separate places of business."  29 C.F.R.

21   § 1620.9(a).  "[F]ederal courts have consistently rejected the extension of the statutory

22   establishment requirement to separate offices of an employer that are geographically and

23   operationally distinct."  *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1464 (9th Cir. 1985),

24

25

26   [4] The EPOA is "analogous" to the federal EPA and is analyzed under the same standards.  *See Dapper v. Brinderson, LLC*, 2023 WL 5177511, at *3 n.2 (W.D. Wash. Aug. 10, 2023); *see also Lavelle v. CL W. Mgmt. LLC, Inc.*, 2022 WL 10613342, at *7 (E.D. Wash. Oct. 18, 2022).

1   *overruled on other grounds*, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).  Where

2   "individual pay and promotion decisions [are] left to the discretion of local" leaders, different

3   facilities of the same company do not qualify as a single "establishment" for purposes of the EPA.

4   *See Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 287 (S.D.N.Y. 2018).

5          In *Goins*, 2023 WL 3047388, at *1, the court considered whether the plaintiffs could

6   represent a putative EPA collective and state-law classes, which included "supervisors, sorters,

7   drivers, loaders, and associates located in California, Arkansas, Washington, and Nevada."  The

8   court found that the plaintiffs' EPA collective action and state-law class claims could not proceed

9   "[b]ecause [the] plaintiffs [did] not allege violations within a single establishment." *Id.* at *13.

10         The same result is warranted here.  Plaintiffs purport to bring collective action claims

11  emanating from as many as *613* potential "establishments"—including locations as disparate as

12  Amazon corporate headquarters in Virginia, Amazon movie studios in California, and an Amazon

13  warehouse in New Jersey.[5]  The employees at these locations do not even work in the same state,

14  much less in the same "physical place of business."  *See* 29 C.F.R. § 1620.9(a).  Plaintiffs have

15  not alleged facts to show that employees at all of these facilities worked "within a single

16  establishment," as needed to bring a collective EPA claim or a class EPOA claim.  *See Goins*, 2023

17  WL 3047388, at *13.

18         **2.      Plaintiffs Do Not Plausibly Allege Entitlement To The "Unusual**
            **Circumstances" Exception To The General "Establishment" Rule.**

19

20         Plaintiffs also fail to allege facts to support the "unusual circumstances" exception to the

21  rule that "each physically separate place of business is ordinarily considered a separate

    establishment." 29 C.F.R. § 1620.9(a).

22

23         Plaintiffs now assert for the first time in the FAC that there are "centralized human

24  resources . . . structures and processes" at Amazon.  FAC ¶ 26 (asserting that Amazon's "job

    ---

25  [5] *See*           Amazon.com           Form           10-K           (2022),           *available           at*
    https://www.sec.gov/Archives/edgar/data/1018724/000101872423000004/amzn-20221231.htm (noting there are 611

26  Amazon facilities in the United States, along with two "headquarters").  The Court can take judicial notice of this
    report as a public filing.  *See Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014).

architecture, hiring and onboarding processes, compensation determinations, performance measurement systems, and promotion decisions are highly standardized"). But the mere existence of centralized "structures and processes" is not enough to justify an exception to the single-establishment rule; instead, an exception is only warranted when, for example, there is a "central administrative unit" at a company that "hire[s] all employees, [and] set[s] wages." 29 C.F.R. § 1620.9(b). Here, Plaintiffs do not—and could not possibly—allege that there is a single, centralized Amazon decision-making unit that makes all hiring decisions, sets all wages, assigns employees to job codes, and determines where employees should be placed within those job codes for each of the "approximately 1,525,000 full-time and part-time employees" at Amazon. FAC ¶ 31. To the contrary, Plaintiffs' own allegations in the FAC confirm that individual managers exercise discretion in hiring, setting wages, and deciding on promotions. *See, e.g., id.* ¶ 45 (explaining that a "[m]anager" can "put the employee up for [a] promotion" a year after hiring); *id.* ¶ 49 (asserting that "[m]anagers" can "ask Amazon's HR to conduct a job code review"); *id.* ¶ 58 (describing how managers rank employees in the review process). Plaintiffs' allegations further demonstrate that it was their *individual*, *local* supervisors' conduct that led to them being placed in supposedly improper "job codes" or receiving purportedly unfair compensation within those codes. Plaintiffs allege that Wilmuth's supervisor "insisted" another employee "be placed in the lower-paid job category" when they were onboarding, *id.* ¶ 153, and that the "performance rating" given by Combs's and Schomer's "new supervisor[s]" would "negatively impact [their] compensation level for the next three years," *id.* ¶¶ 179, 185. Even if Amazon has "generally applicable guidelines, individual pay and promotion decisions were left to the discretion of local practice area leaders"—which means there are no "unusual circumstances" warranting an exception to the single establishment rule in this case, *Kassman*, 416 F. Supp. 3d at 287; *see also Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1017 (11th Cir. 1994) (no unusual circumstances warranting exception to the single-establishment rule simply because a company "centrally sets broad salary ranges"); *Price v. N. States Power Co.*, 2011 WL 338451, at *4 (D. Minn. Jan. 31,

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    2011) (no exception warranted where company "locations are physically distinct, under separate

2    supervision, and have different salary decision-making authority").

3            Plaintiffs also do not plead any other "unusual circumstances" that could justify departure

4    from the "single establishment" rule.  Plaintiffs do not allege that all female employees in levels

5    4-8 at Amazon have "virtually identical" job duties that are "performed under similar working

6    conditions" across all locations.  *See* 29 C.F.R. § 1620.9(b).  Nor could they.  Plaintiffs' proposed

7    collective would include, for example, both a female lawyer working in Amazon HQ2 in Virginia

8    as well as a female manager of an Amazon warehouse in New Jersey; these two female employees

9    might not have anything in common other than their gender and employment with Amazon—they

10   certainly would not have "virtually identical" duties "performed under similar working

11   conditions."  Indeed, even Plaintiffs themselves—who worked on the same 15-person team—have

12   different job duties and performed them for different supervisors, with some Plaintiffs reporting

13   to Lee, and others reporting to Wilmuth.  *See, e.g.*, FAC ¶¶ 98, 104.  These differences are only

14   multiplied across all female Amazon employees "in job levels 4-8" nationwide (for their EPA

15   claim) or in Washington (for their EPOA claim).  *Id.* ¶ 63.

16           Nor do Plaintiffs plausibly plead that members of the putative class or collective

17   "frequently interchange work locations" in a manner that would justify an exception to the single-

18   establishment rule.  The FAC does not allege that Wilmuth, Schomer, or Combs ever worked at

19   any Amazon facility other than HQ1.  And although Plaintiffs plead that Amazon generously

20   "allows employees to work interchangeably and frequently move between teams," *see id.* ¶ 27, the

21   fact that employees have ***opportunities*** for transfers hardly means that they do, in fact, "***regularly***

22   interchange work locations," 29 C.F.R. § 1620.9(b).  And even "a one-time transfer of employees

23   between agencies is not the same as a 'frequent interchange' of work location."  *Schindeler-*

24   *Trachta, D.O. v. Texas Health & Hum. Servs. Comm'n*, 2020 WL 1902576, at *7 (W.D. Tex. Feb.

25   26, 2020).  In any event, it is facially implausible that the exception applies to Plaintiffs' sprawling

26

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 18

collective, since it would require, for example, that an Amazon attorney working in a Virginia office be able to "regularly interchange work locations" with an Amazon warehouse in Arizona.

"Because [P]laintiffs do not allege violations within a single establishment," their EPOA class and EPA collective claims should be stricken. *See Goins*, 2023 WL 3047388, at *13.

## C.   The Court Should Strike Plaintiffs' Count II EPA Collective Allegations Because The Collective's Members Are Not Similarly Situated.

Under the EPA, a plaintiff may pursue collective claims only on behalf of those who are "similarly situated." 29 U.S.C. § 216(b).  In considering whether members of a collective are similarly situated, courts assess whether they are "together the victims of a single decision, policy, or plan." *See Burk v. Contemp. Home Servs., Inc.*, 2007 WL 2220279, at *4 (W.D. Wash. Aug. 1, 2007) (cleaned up).  "[P]laintiffs cannot proceed in a collective action if the action relates to other specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006).

Here, members of Plaintiffs' sprawling nationwide collective worked in different roles, performing different functions, in different business units, in different facilities and states, and reported to different supervisors.  Plaintiffs do not plead facts to show that they were "together the victims of a single decision, policy, or plan." *Burk*, 2007 WL 2220279, at *3; *see also Beyer v. Michels Corp.*, 2022 WL 901524, at *9 (E.D. Wis. Mar. 28, 2022) (granting motion to strike collective allegations where the plaintiff did not allege "that there was a uniform policy (independent of what a single supervisor said or did)" to support alleged misconduct).  Despite Plaintiffs' conclusory allegation that Amazon has "centralized human resources . . . structures and processes," FAC ¶ 26, the fact remains that "[r]esolution of plaintiffs' claims would require individualized determinations, and would necessitate testimony from individual employees and their supervisors" about their job duties, their pay, their treatment, and the treatment of the male comparators who they claim were paid more for performing substantially equal work. *See Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705, at *5 (N.D. Cal. Feb. 20, 2008).  Plaintiffs, all of

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

whom were L7s on a 15-person team in Amazon's Worldwide Communications organization, have nothing in common with an L6 manager at an Amazon warehouse in Illinois or an L5 Amazon Web Services technical program manager sitting in Massachusetts. Yet Plaintiffs seek to bring EPA claims on behalf of two opt-in Plaintiffs—Elvidania Caperonis and Buyana Ganbold—who held those exact roles. *See* Dkt. 25. And Plaintiffs' putative collective contains more than 100,000 employees in different roles with different supervisors in different lines of business in different establishments in different states and cities. "Because of the individualized inquiries involved . . . judicial economy would not be advanced by allowing this suit to proceed as a collective action." *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *5 (S.D. Cal. Apr. 22, 2008).

## D.    The Court Should Dismiss Wilmuth's Count VII Leave Claim For Failure To State A Claim.

In Count VII, Plaintiffs allege that Amazon "discriminated and/or retaliated" against Wilmuth in violation of the FMLA and WPFMLA by "terminating [her] employment" after she took FMLA leave. FAC ¶ 240. Wilmuth fails to state a claim under either statute.

Although the FAC suggests that Wilmuth suffered "retaliation" for taking medical leave, she appears to be asserting an interference claim rather than a retaliation claim. *See Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (cleaned up). A plaintiff can bring an FMLA retaliation claim if she is "discharge[d] or in any other manner discriminate[d] against . . . for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(1)(2), (b). By contrast, a plaintiff can bring an FMLA interference claim if she maintains that her employer "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). The WPFMLA "mirrors its federal counterpart." *Mooney v. Roller Bearing Co. of Am., Inc.*, 2022 WL 1014904, at *21 (W.D. Wash. Apr. 5, 2022).[6] "By their

---

[6] Effective January 1, 2020, the WPFMLA superseded the Washington Family Leave Act ("WFLA"), which previously provided employment protections for unpaid family and medical leave. Although the legislature repealed the WFLA, it "incorporated the employment protections provisions of [the WFLA] wholesale into the new [WPFMLA]." RCW 50A.05.125 c 59 § 2. Where appropriate, Amazon cites precedent interpreting and applying the WFLA's employment protections.

plain meaning, the anti-retaliation . . . provisions [of the FMLA] do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). "Such action is, instead, covered under § 2615(a)(1), the provision governing 'Interference with the Exercise of rights.'" *Id.* (cleaned up). The same is true under the WPFMLA. *See Mooney*, 2022 WL 1014904, at *21.

Here, Wilmuth alleges that she was "fired," among other reasons, "for taking medical leave." FAC ¶ 184. As a result, her allegations relate to purported "negative consequences" of using leave, *Bachelder*, 259 F.3d at 1124, not retaliation for opposing alleged violations of the FMLA or WPFMLA. And while Wilmuth claims that she reported the supposed comments made about her during and after her leave, she does not allege that she suffered any negative consequences for *making that report*—only that "Amazon has done nothing with respect to Ms. Wilmuth's complaint." FAC ¶ 181. She thus cannot state an FMLA or WPFMLA retaliation claim. *See, e.g.*, *Zentz v. Dentive-Fam. First Dental, LLC*, 2023 WL 4826748, at *3 (E.D. Wash. July 27, 2023); *Craft v. Burris*, 2017 WL 4891520, at *3 (D. Mont. Oct. 30, 2017).

Wilmuth instead appears to be attempting to plead an interference claim. To state a viable interference claim, she must allege that:

> (1) she was eligible for the [statute's] protections, (2) her employer was covered by the [statute], (3) she was entitled to leave under the [statute], (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her [statutory] benefits to which she was entitled.

*Nguyen v. Boeing Co.*, 2016 WL 7375276, at *6 (W.D. Wash. Dec. 20, 2016) (cleaned up); *see also Dahlstrom v. Life Care Centers of Am., Inc.*, 2023 WL 4893491, at *5 (W.D. Wash. Aug. 1, 2023) (similar under WPFMLA).

Wilmuth cannot state an interference claim because she fails to adequately allege that her January 2024 termination had anything to do with her allegedly protected March 2023 – June 2023 medical leave. While she alleges "on information and belief" that Amazon terminated her for taking leave, FAC ¶ 184, that conclusory allegation is insufficient to state a claim. *See Iqbal*, 556

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

U.S. at 678.  She pleads no *facts* suggesting that the two were connected.  Indeed, the only fact she does plead is that Amazon informed her it "was terminating her employment due to role elimination," not because of leave she took.  FAC ¶ 182.  And while she alleges that an Amazon HR representative and other unidentified "individuals on the team" made comments about her that "damage[d] her reputation" during and after her leave, none of those alleged remarks related to her decision to take leave.  *See id.* ¶¶ 179-80 (alleging comments that Wilmuth was "joining [a] team from a troubled situation," that "Amazon has the receipts on her," and that "If I was her, I wouldn't come back from leave").  As such, they do not "suggest [Amazon] disapproved of or fired [Wilmuth]" because she took FMLA leave.  *Fuentes v. Human. for Horses*, 2022 WL 5249444, at *3 (E.D. Cal. Oct. 6, 2022) (claim that employee was terminated for taking leave could not survive motion to dismiss based on alleged "disparaging remarks" made about plaintiff after he returned from leave).

Nor can Wilmuth state a claim based on the proximity between her leave and her termination.  Although a plaintiff can sometimes state an interference claim based solely on temporal proximity, Wilmuth was terminated roughly *seven months* after she returned from her allegedly protected leave.  *See* FAC ¶¶ 177, 182 (alleging that Wilmuth returned from leave on June 14, 2023 and was informed of her termination on January 10, 2024).  That gap is far too long to support a plausible interference claim on its own.  *See, e.g.*, *Fuentes*, 2022 WL 5249444, at *3 (where "four months passed between Plaintiff's protected leave" and his termination, "the two events' temporal proximity" was insufficient to survive a motion to dismiss); *Chand v. Regan*, 2022 WL 2390996, at *4 (N.D. Cal. July 1, 2022) (dismissing Rehabilitation Act claim where there was a "seven month gap between the alleged protected activity and the alleged retaliation"); *see also Swan v. Bank of Am.*, 360 F. App'x 903, 906 (9th Cir. 2009) (four-month delay between employee's return from leave and termination too long for FMLA claim to survive summary judgment).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Finally, while Wilmuth alleges that she was "out on short-term disability leave" at the time

2    that she was terminated, FAC ¶ 182, she tellingly does *not* allege that this leave was protected by

3    the FMLA or WPFMLA.  In the absence of any such allegation, she cannot state any claim based

4    on her short-term disability leave.  *See, e.g.*, *Reyes v. Fircrest Sch.*, 2012 WL 5878243, at *2 (W.D.

5    Wash. Nov. 21, 2012); *Dahlstrom*, 2023 WL 4893491, at *5; *Lee v. Delta Air Lines Inc.*, 2021 WL

6    4527955, at *10 (C.D. Cal. Aug. 23, 2021).  As a result, Wilmuth fails to plead a plausible

7    interference claim, and Count VII should be dismissed as to her.

8                                        **V. CONCLUSION**

9        For all the reasons described above, the Court should strike Plaintiffs' class and collective

10   action allegations and dismiss Wilmuth's Count VII claim.

11

12                       **LOCAL CIVIL RULE 7(e)(6) CERTIFICATION**

13       I certify that this memorandum contains 8,320 words, in compliance with the Local Civil

14   Rules.

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2   DATED: February 23, 2024               By:  *s/ Andrew E. Moriarty*

3                                          Andrew E. Moriarty, Bar No. 28651
                                           Shannon McDermott, Bar No. 59455
4                                          **Perkins Coie LLP**
                                           1201 Third Avenue, Suite 4900
5                                          Seattle, Washington 98101-3099
                                           Telephone: +1.206.359.8000
6                                          Facsimile: +1.206.359.9000
                                           AMoriarty@perkinscoie.com
7                                          SMcDermott@perkinscoie.com

8                                          Jason C. Schwartz (*pro hac vice*)
                                           Molly T. Senger (*pro hac vice*)
9                                          Alex Bruhn (*pro hac vice*)
10                                         **Gibson, Dunn & Crutcher LLP**
                                           1050 Connecticut Avenue, N.W.
11                                         Washington, D.C. 20036-5306
                                           Telephone: +1.202.955.8500
12                                         Facsimile: +1.202.467.0539
                                           JSchwartz@gibsondunn.com
13                                         MSenger@gibsondunn.com
                                           ABruhn@gibsondunn.com
14

15                                         Attorneys for Defendant Amazon.com, Inc.

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS
AND/OR STRIKE
(Case No. 23-CV-1774) – 24

1

2

### CERTIFICATE OF SERVICE

3

     I certify under penalty of perjury that on February 23, 2024, I caused to be electronically

4

filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will

5

send a notification of the filing to the email addresses indicated on the Court's Electronic Mail

6

Notice List.

7

     Dated: February 23, 2024

8

                             *s/ Erin Koehler*

                             Legal Practice Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(Case No. 23-CV-1774)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000