UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLINE WILMUTH, KATHERINE SCHOMER, and ERIN COMBS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.com, Inc.,<br><br>Defendant. | Case No. 2:23-cv-01774<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER**<br><br>NOTE ON MOTION CALENDAR: TUESDAY, JULY 30, 2024 |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**1.    General Principles**

1.1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

1.2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**2.  ESI Disclosures**

Within 30 days of entry of this Order or at a later time if agreed to by the parties, each party shall disclose:

2.1.  <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2.2.  <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

2.3.  <u>Foreign data privacy laws.</u> Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**3.  ESI Discovery Procedures**

3.1.  <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

3.2.  <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search process issues such as terms, queries, predictive coding and AI, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies including validation of such processes, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

3.2.1.  Prior to running searches:

i.  The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology

1  that it proposes to use to locate ESI likely to contain responsive and discoverable information. The
2  producing party may provide unique hit counts for each search query.
3              ii.      After disclosure, the parties will engage in a meet and confer process
4  regarding additional terms sought by the non-producing party.
5              iii.     The following provisions apply to search terms / queries of the
6  requesting party. Focused terms and queries should be employed; broad terms or queries, such as
7  product and company names, generally should be avoided. A conjunctive combination of multiple
8  words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single
9  search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system")
10 broadens the search, and thus each word or phrase shall count as a separate search term unless they
11 are variants of the same word. The producing party may identify each search term or query returning
12 overbroad results demonstrating the overbroad results and a counter proposal correcting the
13 overbroad search or query.
14         3.2.2.   To the extent that any party requests information that is stored in a
15 database or database management system, the producing party will identify the database and
16 platform to the receiving party, and will meet and confer in good faith in an attempt to reach
17 agreement on the data to be produced and the form of the production.  The parties will meet and
18 confer regarding the production format of unstructured communication and collaboration tool
19 data.
20     3.3.    <u>Format</u>.
21         3.3.1.   ESI will be produced to the requesting party with searchable text, in a format
22 to be decided between the parties, contained herein as Attachment A. Acceptable formats include, but
23 are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file),
24 single-page TIFFs (only with load files for e-discovery software that includes metadata fields

identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF. Documents should contain track changes and comments as applicable.

        3.3.2.   The producing party may use redactions to protect attorney client, work product, other legally recognized privileges, or personally identifiable information.  If a producing party maintains that an otherwise responsive document contains information that should be redacted for reasons other than those permitted by this paragraph, the parties shall meet and confer concerning the proposed treatment of such information.  If the parties do not agree, the producing party may submit the document to the Court under seal for review in camera and seek an order concerning the appropriate treatment of the disputed information.

        3.3.3.   Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format. To the extent reasonably possible, documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

        3.3.4.   Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

        3.3.5.   If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. The parent-child relationships (the association between emails and attachments) should be preserved and produced as full families except when withheld on privilege grounds.  The producing party need not produce linked or embedded files unless they are non-privileged, independently responsive, and reasonably accessible, in which case the producing party will maintain the source file's relationship to the linked files.

3.4. <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

3.5. <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.  In the event that withholding most inclusive emails for privilege would suppress lesser inclusive emails that are responsive and not privileged, those lesser inclusive emails must still be produced.

3.6. <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

3.7. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of

the document followed by its file extension).

**4.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

4.1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

4.2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

4.3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   4.3.1.   Deleted, slack, fragmented, or other data only accessible by forensics.

   4.3.2.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   4.3.3.   On-line access data such as temporary internet files, history, cache, cookies, and the like.

   4.3.4.   Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   4.3.5.   Back-up data that are duplicative of data that are more accessible elsewhere.

   4.3.6.   Server, system or network logs.

   4.3.7.   Data remaining from systems no longer in use that is unintelligible on the systems in use.

   4.3.8.   Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a

copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**5.     Privilege**

5.1.    A producing party shall create a privilege log of all documents withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged, work-product protection, or any other privilege or protection recognized by law). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.  Privilege logs shall be produced on a rolling basis within a reasonable time period after a party makes a final privilege determination.

5.2.    With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

5.3.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.4.    Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or

work product shall be immediately returned to the producing party.  Nothing in this section, however, shall require a requesting party to manually update a producing party's production deliverable. Should a producing party wish to update document images or metadata contained within a production deliverable, it shall produce an overlay to update and replace earlier affected deliverables.

DATED: July 30, 2024

By: /s/ Andrew E. Moriarty
    Andrew E. Moriarty, Bar No. 28651
    Shannon McDermott, Bar No. 59455
    Perkins Coie LLP
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099
    Telephone: +1.206.359.8000
    AMoriarty@perkinscoie.com
    SMcDermott@perkinscoie.com

    Jason C. Schwartz*
    Molly T. Senger*
    Matt Gregory*
    Alex Bruhn*
    Gibson, Dunn & Crutcher LLP
    1050 Connecticut Avenue, N.W.
    Washington, D.C. 20036-5306
    Telephone: +1.202.955.8500
    Facsimile: +1.202.467.0539
    JSchwartz@gibsondunn.com
    MSenger@gibsondunn.com
    Mgregory@gibsondunn.com
    ABruhn@gibsondunn.com

*admitted pro hac vice

Attorneys for Defendant Amazon.com, Inc.

By: /s/ Cassandra W. Lenning
    Cassandra W. Lenning, WSBA #54336
    Jahan C. Sagafi*
    Menaka N. Fernando*
    One California Street, Suite 1250
    San Francisco, CA 94111
    Telephone: (415) 638-8800
    Adam T. Klein*
    Cara E. Greene*
    Chauniqua Young*
    Michael C. Danna*
    Lindsay M. Goldbrum*
    685 3rd Ave 25th Floor
    New York, NY 10017
    Telephone: (212) 245-1000
    Jennifer Davidson*
    1225 New York Ave NW, Suite 1200B
    Washington, DC 20005
    Telephone: (202) 915-5810

*admitted pro hac vice

Attorneys for Plaintiffs and Proposed Class and Collective Members

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: July 31, 2024

*[signature]*

The Honorable Jamal N. Whitehead
UNITED STATES DISTRICT JUDGE