1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLINE WILMUTH, KATHERINE SCHOMER, and ERIN COMBS, | CASE NO. 2:23-cv-01774-JNW |
| Plaintiffs, | ORDER |
| v. | |
| AMAZON.COM INC., | |
| Defendant. | |

## 1. INTRODUCTION

Plaintiffs Caroline Wilmuth, Ph.D., Katherine Schomer, and Erin Combs sue Defendant Amazon.com, Inc., alleging Amazon underpays and discriminates against its female employees on a systemic scale. Citing Washington state and federal employment laws, they bring class- and collective-action equal pay claims for themselves and all similarly situated women. The also bring medical leave and retaliation claims in their own names.

Amazon moves to dismiss or strike their claims, arguing that the proposed class—*all women* who worked for Amazon in covered positions—is too broad and unwieldly to sustain a class- or collective-action. Dkt. No. 34. Amazon also moves to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

dismiss Dr. Wilmuth's medical leave claim because, it argues, she fails to state a claim. *See id.*; Fed. R. Civ. P. 12(f).

Having considered the briefing, the relevant record, and the governing law, the Court finds oral argument unnecessary. The Court finds that Amazon's motion is premature, as it cannot say from the pleadings alone that Plaintiffs' case is so hopeless as a class or collective action that it must be dismissed at the start. Plaintiffs' allegations are best viewed through the prism of a class certification motion after some opportunity for discovery. Accordingly, the Court DENIES Amazon's motion.

## 2. BACKGROUND[1]

Plaintiffs allege that Amazon "has systematically paid and continues to pay female employees lower compensation than it has paid and continues to pay men performing substantially equal or similar work" in violation of the federal Equal Pay Act (EPA) and the Washington Equal Pay and Opportunities Act (EPOA). Dkt. No. 33 ¶¶ 2, 19–22; *see also* Dkt. No. 33 at 3, 42–43.

To support their putative collective and class actions under the EPA and EPOA, Plaintiffs provide detailed allegations explaining Amazon's "unitary operations, centralized decisionmaking, and uniform policies" for hiring, promotions, job architecture, compensation, and evaluating performance. For instance, Plaintiffs allege that "Amazon has a centralized HR department . . . which

---

[1] On a motion to strike or dismiss for failure to state a claim, the Court must accept all well-pleaded facts as true. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014). Thus, the Court recounts only the relevant facts alleged in the operative complaint.

implements and dispenses all of Amazon's personnel processes, including hiring, job code and level assignments, promotion, and job evaluations, all of which impact Amazon employees' compensation." *Id*. ¶ 34. They claim that Amazon workers charged with conducting interviews follow rigid, uniform policies and effectively have no discretion in the interview process. *See id*. at 11–13. Dr. Wilmuth states that she "participated in over 75 interviews during her time at Amazon," and each functioned the same way. *Id*. ¶ 41.

The operative complaint also provides a detailed description of the "rigid job architecture" that Amazon has implemented "to provide a framework for the organization of its employees" around the world. *Id*. ¶ 43. It asserts:

> Amazon uses a single set of job coding/ leveling structures throughout the company, across its locations, referred to as the "Leveling Guidelines." Whether an employee is in Seattle, New York, or Mumbai, the same job architecture/ Leveling Guidelines apply.

*Id*. Plaintiffs explain how Amazon uses uniform Job Levels, "Leveling Guidelines," "job families," and "job codes" to systematically pay women less than men for performing the same or substantially similar work.

According to the operative complaint, Amazon's Job Levels work like this:

> Amazon's HR, in conjunction with Bar Raisers, assigns each corporate salaried employee a job level from Level 4 (at the bottom) to Level 12 (at the top) based on a centralized rubric that defines the characteristic [sic] of each level in connection with a given job code.

> Amazon strictly controls job level assignments. Managers do not have discretion to change an employee's job level. If a Manager wishes to change the job level for a direct report within the first six months of employment, they must do so by appealing to the Bar Raiser who had been on the employee's hiring panel. Otherwise, a Manager has to wait

at least one year and then put the employee up for a promotion in order
to raise their level.

*Id.* ¶¶ 44–45.

Along with Job Levels, Amazon applies "job codes" to its employees; these
codes indicate the "work to be performed and job qualifications" for a particular job.
*Id.* ¶ 47. Amazon organizes job codes by grouping similar, or related job codes into
the same "job family." *Id.* As with Job Levels, "Amazon's HR, in conjunction with
Bar Raisers, assign job codes based on Amazon's Leveling Guidelines." *Id.* ¶ 48.
"Managers do not have discretion to change an employee's job code." *Id.* ¶ 49. "If
managers believe a job code is incorrect, they must ask Amazon's HR to conduct a
job code review." *Id.* According to Plaintiffs, "Amazon maintains companywide
Leveling Guidelines governing both job levels and job codes," which are uniformly
applied across the entire company. *Id.* ¶ 50.

Plaintiffs maintain that Amazon unlawfully pays women less than men with
the same job code. Plaintiffs also allege that within each job family (*i.e.*, group of
related job codes), Amazon assigns the lower-paying job codes to women while
reserving the higher-paying codes for men. Illustrating the point, Schomer, a
researcher for Amazon, alleges that Amazon's centralized HR assigned her the job
code for "Product Manager," while coding her male research partner as a "Research
Scientist." *Id.* ¶ 102. Schomer's job code led Amazon to pay her less than her male
research partner, even though she was more qualified and had a higher Job Level
than him. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Then, when Schomer switched to a different Amazon research team, Amazon coded her as a "Senior Research Manager." *Id.* ¶ 103. Again, Amazon coded Schomer's male counterpart as a "Research Scientist." *Id.* ¶ 104. The maximum salary for Schomer's job code was around $367,000, "while the Research Scientist job code has a minimum compensation of $570,000 and tops out at approximately $900,000." *Id.* ¶ 105. Schomer alleges that her job code resulted in Amazon paying her male comparator approximately 150 percent of her salary. *Id.* ¶ 104.

Separate from their class and collective action claims, Plaintiffs also allege that Amazon discriminated and retaliated against them individually for taking medical leave and for raising concerns about unequal pay and treatment. *See id.* at 38–40. In Spring 2023, Dr. Wilmuth took about a month of protected FMLA medical leave because of a decline in her physical and mental health, resulting from Amazon's discriminatory practices. *Id.* ¶ 177. Dr. Wilmuth alleges that when she took leave, Amazon HR shared private information about her discrimination complaints and "troubled situation" with her coworkers, which damaged her professional reputation. *Id.* ¶ 179–80. Indeed, she claims that while she was on leave, her coworkers made comments like, "If I was her, I wouldn't come back from leave." *Id.* On October 23, 2023, Dr. Wilmuth submitted a claim to "EthicsPoint," regarding this problem. *Id.* ¶ 181. Amazon did not address the complaint. *Id.*

On November 20, 2023, Plaintiffs filed this lawsuit. *See* Dkt. No. 1. Then, in late-December 2023, Dr. Wilmuth took approved, short-term-disability leave. *Id.* ¶ 182. Before Dr. Wilmuth left, she was asked to write a job description for her

position. *Id.* ¶ 182–183. About two weeks later, while Dr. Wilmuth was still on disability leave, Amazon fired her. *Id.* ¶ 182.

As for Combs, Amazon lowered her performance rating from "top tier" to "meets expectations" after she filed this lawsuit, which "resulted in a significant loss of stock compensation" and an effective demotion. *Id.* ¶ 191. After filing complaints about Amazon's retaliatory behavior, she felt she had no real choice but to resign. *Id.* ¶ 202.

As for Schomer, Amazon placed her in an internal "performance management program" called "Focus," which harmed her performance rating and salary. *Id.* ¶¶ 182, 189. Soon after, Amazon placed Schomer on a "Pivot" plan, which is "Amazon's equivalent of a Performance Improvement Plan." *Id.* ¶ 190.

Despite Plaintiffs raising their concerns with Amazon about discrimination, Amazon failed to take corrective action. *See id.* at 38–40.

### 3.   DISCUSSION

### 3.1   Amazon's motions to strike fail under the proper, Rule 12(f) standard.

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts may not resolve disputed factual or legal issues when resolving motions to strike. *Adan v. Swedish Health Servs.*, Case No. 2:23–cv–01266–TL, 2024 WL 2398208, at *4 (W.D. Wash. May 23, 2024) (Lin, J.) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010) ("We ... hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground

1    that such claims are precluded as a matter of law.")). And "[a]s with motions to

2    dismiss," on a motion to strike, "the Court takes the plaintiff's allegations as true

3    and must liberally construe the complaint in the light most favorable to the

4    plaintiff." *Wysocki v. Zoom Techs. Inc.*, Case No. 3:22–cv–05453–DGE, 2024 WL

5    1139094, at *5 (W.D. Wash. Mar. 15, 2024) (Estudillo, J.) (citing *Farm Credit Bank*

6    *of Spokane v. Parsons*, 758 F. Supp. 1368, 1371 n.4 (D. Mont. 1990) (citing 2A

7    Moore's Federal Practice ¶ 12.21[3]))).

8        "Rule 12(f) motions to strike are generally disfavored because the motions

9    may be used as delay tactics and because of the strong policy favoring resolution on

10   the merits." *Adan*, 2024 WL 2398208, at *4. Motions to strike class allegations from

11   pleadings are *particularly* disfavored "because the shape and form of a class action

12   evolves only through the process of discovery." *Id.*; *Hoffman v. Hearing Help*

13   *Express, Inc.*, No. C19-5960, 2020 WL 4729176, at *2 (W.D. Wash. Mar. 27, 2020)

14   (Leighton, J.) (same); *Patrick v. Ramsey*, Case No. C23-0630-JLR, 2023 WL

15   6680913, at *2 (W.D. Wash. Oct. 12, 2023) (Robart, J.) (same). "[T]he Ninth Circuit

16   has repeatedly recognized the importance of discovery for resolving questions of

17   class certification." *Id.* (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d

18   935, 942 (9th Cir. 2009)); *cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)

19   ("Even after a [class] certification order is entered, the judge remains free to modify

20   it in light of subsequent developments in the litigation.").

21       "While some district courts in the Ninth Circuit permit class allegations to be

22   struck at the pleadings stage, most courts decline to strike class allegations prior to

23   class certification motions and discovery." *Johnson v. Metro-Goldwyn-Mayer Studios*

*Inc.*, No. C17-541 RSM, 2017 WL 3313963, at *7 (W.D. Wash. Aug. 3, 2017) (Martinez, J.) (compiling cases); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014) ("'[I]t is in fact rare to [strike class allegations] in advance of a motion for class certification." (quoting *Cholakyan v. Mercedes–Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D.Cal. 2011)). District courts—especially in this district—regularly find that "a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Hoffman*, 2020 WL 4729176, at *2 (quoting *Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044-DMR, 2019 WL 3554383, at *3 (N.D. Cal. Aug. 5, 2019)); *see also Patrick*, 2023 WL 6680913, at *2 (explaining that courts should rarely dismiss class action allegations at the pleadings stage); *Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022) (Chun, J.) (stating that courts typically review class allegations on motions for certification, not on motions to strike). Thus, while striking class allegations may be appropriate in some, limited cases, "the better course is to deny [such relief]" and to allow discovery to unfold. *Hoffman*, 2020 WL 4729176, at *2 (quoting *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotation and citation omitted)).

When a defendant moves to strike class allegations from a complaint, the defendant "properly" bears the "burden of proving that the class is *not* certifiable." *Adan*, 2024 WL 2398208, at *4 (quoting *Wysocki*, 2024 WL 1139094, at *4 (quoting *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1340–41 (D. Or. 2013) (emphasis in original))).

### 3.1.1    Amazon has failed to show that the class is not certifiable under Rule 23.

Amazon moves to strike Wilmuth's class allegations related to her EPOA claim, arguing that the proposed class cannot be certified under Rule 23 because there is a conflict between the class representatives and the putative class.[2] Amazon also argues that common questions of law and fact are absent, and that individualized inquiries defeat predominance. Plaintiffs argue to the contrary and cite two, recently certified class actions as persuasive authority that a class may be certified under their case theory and the facts here: *Ellis v. Google, LLC*, Case No. CGC-17-561299, 2021 Cal. Super. LEXIS 158293 (Cal. Sup. Ct. May 27, 2021) and *Rasmussen v. Walt Disney Co.*, Case No.: 19-STCV-10974, LEXIS 6784 (Cal. Sup. Ct. Jan. 30, 2024). In those cases, California courts certified classes like the proposed class here to pursue claims under California's Equal Pay Act—a statute

---

[2] Rule 23(a) allows the Court to certify a class if it meets these requirements:

(1) Numerosity: "the class is so numerous that joinder of all members is impracticable";

(2) Commonality: "there are questions of law or fact common to the class";

(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) Adequacy: "the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(1)–(4); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).

substantially similar to Washington's EPOA. *Compare* RCW 49.58.020(1), (2) *with* Cal. Labor Code § 1197.5(a).

At this early stage in the case, the Court must accept the facts as pled by Plaintiffs, and on this record, the Court cannot say from the pleadings that this case "cannot possibly move forward on a classwide basis[.]" *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013); *Patrick*, 2023 WL 6680913, at *3 (denying motion to strike class allegations; "This case is in its earliest stages . . . . [The court] cannot at this time conclude that the class is uncertifiable as a matter of law."). If anything, *Ellis* and *Rasmussen* show that Plaintiffs' theory of liability is suitable for class treatment. Accordingly, the Court will not "delete" the complaint's class allegations. *See Manning,* 725 F.3d at 59.

### 3.1.2    Amazon's remaining arguments in support of its motion to strike violate the Rule 12(f) standard.

Amazon's remaining arguments are not tenable under Rule 12(f) because they improperly rely on facts outside the complaint, ask the Court to draw inferences in Amazon's favor, and ask the Court resolve factual and legal disputes. *See Adan*, 2024 WL 2398208, at *4 (On a Rule 12(f) motion, "court[s] should not resolve disputed and substantial factual or legal issues."); *see also Whittlestone*, 618 F.3d at 973–75.

For example, Amazon asks the Court to strike Plaintiffs' EPA collective-action allegations because Plaintiffs fail to "plead facts to show that they were 'together the victims of a single decision, policy, or plan.'" Dkt. No. 34 at 25. But the complaint contains detailed factual allegations about Amazon's uniform and

mandatory policies, which the Court must accept as true, and it explains how those policies result in Amazon systematically paying women less than men for the same work. Amazon acknowledges these allegations even as it discounts Plaintiffs' claims, which the Court views as a not-so-silent admission that striking Plaintiffs' collective action allegations would be improper. Dkt. No. 34 at 18 (referencing Plaintiffs' allegations about Amazon's "centralized rubric" for assigning job levels; its "forced ranking system"; its "standardized promotion process"; and its pay-determining algorithm).

Next, Amazon claims the "single establishment" rule precludes Plaintiffs' putative collective and class actions as a matter of law. Dkt. No. 34 at 21. The Court rejects this argument too, as it seeks resolution of factual and legal disputes on a Rule 12(f) motion to strike.

The single establishment rule comes from the EPA's language:

> No employer having employees subject to any provisions of this section shall discriminate, *within any establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees *in such establishment* at a rate less than the rate at which he pays wages to employees of the opposite sex *in such establishment* for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]

29 U.S.C. § 206(d)(1) (emphasis added). The EPA does not define the word "establishment." 29 C.F.R. § 1620.9. "[H]owever, in pre-[EPA] cases the Supreme Court construed establishment to refer to a 'distinct physical place of business,' not 'an entire business or enterprise which may include several separate places of business.'" *Winther v. Portland*, Civ. No. 91–1232–JU, 1992 WL 696529, at *2 (D.

Or. June 10, 1992) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945) (construing "retail establishment" exemption of the Fair Labors Standards Act, 29 U.S.C. § 213(a)(2))). The Secretary of Labor adopted this interpretation "for the purposes of administering the [EPA]." *See id.* (citing *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1464 (9th Cir. 1985) *overruled on other grounds by Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir. 1991)); *see also* 29 C.F.R. § 1620.9 (defining "establishment").

The regulation interpreting the term "establishment," acknowledges that an establishment may consist of multiple geographic locations under the EPA. 29 C.F.R. § 1620.9(b). For instance, the regulation notes that a company with multiple locations may be considered one "establishment" when "a central administrative unit [] hire[s] all employees, set[s] wages, and assign[s] the location of employment," or when "employees [] frequently interchange work locations." *Id*. The regulation refers to these situations as "unusual circumstances." *Id*. While they may have been unusual when the EPA was passed, these are not so unusual in today's work environment.

Recognizing this development, courts apply a "functional approach" rather than a strict, geographical approach when deciding whether multiple locations may constitute an "establishment" under the EPA. *Winther*, 1992 WL 696529, at *3. To engage in this analysis, courts consider facts developed through discovery. *See id.*; *see also Grumbine v. United States*, 586 F. Supp. 1144, 1151 (D.D.C. 1984) ("In order to determine what comparisons between and among employees should be made for Equal Pay Act purposes, using the standard of function rather than that of

mere geography, the Court now turns to the specific facts of this case."). Thus, the Court cannot decide this issue on Amazon's pre-answer motion to strike—especially considering the Court's duty to construe and apply the EPA broadly so that it may fulfill its purpose of eliminating "all wage discrimination based on sex." *Grumbine*, 586 F. Supp. at 1146; *see Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974) ("[The EPA] is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."); *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983) ( "[The EPA] embodies the deceptively simple principle that 'employees doing equal work should be paid equal wages, regardless of sex.'") (quoting H.R.Rep. No. 309, 88th Cong., 1st Sess. 2, reprinted in 1963 U.S. Code Cong. & Ad. News 687, 688)).

Turning to Plaintiffs' putative class action under the EPOA, the single establishment rule does not apply to that claim. The relevant EPOA provision, RCW 49.58.020, does not use the term "establishment" or otherwise implement a "single establishment" rule. Instead of the term "establishment, the statute uses the term "employer." RCW 49.58.020. Amazon cites no precedent to support substituting the word "employer" for the word "establishment." So the Court will not read the term "establishment" into the code; instead, the Court will presume that the statute means what it says. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quotation omitted) ("The preeminent canon of statutory construction requires [courts] to presume that the legislature says in a statute what it means and means in a statue what it says.").

1

2

**3.2    Dr. Wilmuth states plausible claims under the FMLA and WPFMLA.**

Rule 12(b)(6) governs Amazon's motion to dismiss Dr. Wilmuth's FMLA and WPFMLA claims. Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Courts may dismiss a case under Rule 12(b)(6) "where there is no cognizable legal theory" that applies to the facts alleged, or where there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Rule 12(b)(6) standard requires the court to take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019).

**3.2.1    Dr. Wilmuth states a plausible FMLA interference claim.**

Dr. Wilmuth alleges an FMLA interference claim. "The FMLA provides a cause of action for an employee whose employer has violated the statute by interfering with, restraining, or denying the employee's attempt to exercise 'any right provided under this subchapter.'" *Martinez Patterson v. AT&T Servs. Inc.*,

1    Case No. C18-1180-RSM, 2021 WL 3617179, at *11 (W.D. Wash. 2021) (Martinez,

2    J.) (quoting 29 U.S.C. § 2615(a)(1)).

3        Courts interpret FMLA interference claims broadly. *Martinez Patterson*, 2021

4    WL 3617179, at *11. The term "interference" includes "not only denial of FMLA

5    rights, but also instances where an employer discouraged an employee from using

6    FMLA leave, retaliated against an employee for exercising or attempting to exercise

7    FMLA rights, or 'otherwise caused the employee to suffer an adverse employment

8    action as a consequence of taking FMLA leave.'" *Id*. (quoting *Bushfield v. Donahoe*,

9    912 F. Supp. 2d 944, 955 (D. Idaho 2012) (citing *Bachelder v. Am. W. Airlines, Inc.*,

10   259 F.3d 1112, 1125, n. 11 (9th Cir. 2001))).

11       "The elements of a FMLA interference claim are (1) an entitlement to FMLA

12   leave; (2) an adverse action by Plaintiff's employer, which interfered with Plaintiff's

13   right to take FMLA leave; and (3) a showing that the employer's adverse action was

14   related to the exercise, or attempt to exercise, FMLA rights." *Id*. (citing *Bachelder*,

15   259 F.3d at 1124–26). Regarding the third element, "[t]he Ninth Circuit takes an

16   expansive view of what constitutes an adverse employment action." *Bushfield*, 912

17   F. Supp. 2d 944. Courts have "interpreted such actions to include lateral transfers,

18   unfavorable job references, changes in work schedules, or any other action that

19   would be reasonably likely to deter employees from engaging in protected activity."

20   *Id*. (citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000)).

21       Here, Dr. Wilmuth alleges she was fired, in part, because she took protected

22   leave. Amazon acknowledges this allegation, Dkt. No. 34 at 27 (citing Dkt. No. 33

23   ¶ 184), but argues that Dr. Wilmuth's interference claim fails because her

1    allegations cannot establish causation, *see id*. Specifically, Amazon maintains that

2    the seven-month period between Dr. Wilmuth's protected leave and termination is

3    too long, as a matter of law, to support causation. *Id*.

4        Upon reviewing the precedent that Amazon cited to support its argument,

5    *Swan v. Bank of Am.*, 360 Fed. App'x. 903 (9th Cir. 2009), the Court is not

6    persuaded. In *Swan*, the Ninth Circuit concluded on *summary judgment* that the

7    *only* evidence offered to support causation was the four-month period between the

8    plaintiff's protected leave and termination. 360 Fed. App'x. at 906. The court held

9    that timing—standing alone—was not enough to support causation, reasoning that

10   the plaintiff's termination was "too remote in time [from her protected leave] to

11   support a finding of causation premised *solely* on temporal proximity." *Id*. (emphasis

12   added)).

13       The allegations here are different—Dr. Wilmuth does not rely solely on the

14   timing of a single retaliatory act to support her claim. Rather, her factual

15   allegations illustrate how her use of protected leave continued to cause problems for

16   her months after she returned. Indeed, Dr. Wilmuth filed a complaint related to her

17   Spring-2023 FMLA leave four months after she returned. Dkt. No. 33 ¶ 181. She

18   claims Amazon ignored it. *Id*.

19       Likewise, Dr. Wilmuth alleges that Amazon HR improperly shared private

20   information related to her medical leave with her new supervisor, who then shared

21   that information with her coworkers, damaging her reputation and likely

22   embarrassing her. *See id*. ¶ 179; *see also id*. ¶ 180–81. Specifically, Amazon HR told

23   her new supervisor that she was coming "from a troubled situation" and that

1    "Amazon ha[d] the receipts on her." *Id*. ¶ 179. Amazon's use of the slang "receipts"

2    implies that Amazon HR improperly shared detailed, specific information related to

3    Dr. Wilmuth's "troubled situation" with her coworker. That reasonable inference is

4    bolstered by Dr. Wilmuth's allegation that her coworkers had somehow learned

5    about the circumstances surrounding her FMLA leave and made comments about it

6    like, "If I was her, I wouldn't come back from leave." *Id*. ¶ 180.

7         Amazon's choice to share this private information related to Dr. Wilmuth's

8    leave with its employees—as well as Dr. Wilmuth's October-2023 complaint—

9    illustrates that Dr. Wilmuth's FMLA leave continued to pose problems for her after

10   she returned to work.[3]

11        Further, while Amazon makes much of the seven-month gap between Dr.

12   Wilmuth's 2023 leave and her 2024 termination, Dr. Wilmuth alleges facts showing

13   that Amazon had planned to fire her earlier, in 2023. *See id*. ¶ 183 (alleging that

14   Amazon asked Dr. Wilmuth to write her job description in 2023, which it planned to

15   use for a job vacancy announcement).

16        In sum, Amazon's attacks on the merits of Dr. Wilmuth's FMLA interference

17   claim are misplaced in the context of a Rule 12(b)(6) motion. Dr. Wilmuth has

18   plainly stated a plausible claim; that Amazon thinks little of its merits is not

19   enough to justify dismissal.

20

21

22   [3] The Court also notes that Amazon's information-sharing could constitute a
     separate adverse employment action in itself. *See Bushfield*, 912 F. Supp. 2d 944.
     But because the Parties did not argue this point, the Court makes no further
23   findings on it.

ORDER - 17

### 3.2.2    Dr. Wilmuth alleges a plausible FMLA retaliation claim.

Dr. Wilmuth also alleges FMLA retaliation. "[T]he FMLA makes it unlawful for employers to retaliate or discriminate against a person for opposing a violation of their FMLA right to leave." *Martinez Patterson*, 2021 WL 3617179, at *11 (citing 29 U.S.C. § 2615(a)(2)); *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011)). To establish a prima facie FMLA retaliation claim, Dr. Wilmuth must allege facts showing that: "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." *West v. Alaska Airlines, Inc.*, Case No. 3:18-cv-00102-JMK, 2020 WL 8175608, at *5 (D. Alaska Nov. 9, 2020); *see also Crawford*, 983 F. Supp. 2d at 1269 (citing *Sanders* 657 F.3d at 777).

Dr. Wilmuth alleges that Amazon terminated her employment about a month after she filed this lawsuit, which asserts an FMLA claim against Amazon. *Id.* ¶ 184. The other named Plaintiffs allege similar negative consequences upon filing this lawsuit. *See id.* at 42–45. The Court finds that the timing of Dr. Wilmuth's termination alone is enough state a plausible FMLA retaliation claim. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002) (in the case of unlawful employment retaliation, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.").

### 3.2.3    Dr. Wilmuth's WPFMLA claim survives Amazon's motion to dismiss.

The WPFMLA "mirrors its federal counterpart and provides that courts are to construe its provisions in a manner consistent with similar provisions of the

FMLA." *Crawford*, 983 F. Supp. 2d at 1269 (internal quote omitted). Amazon makes no separate or distinct arguments for dismissing Dr. Wilmuth's WPFMLA claim. Accordingly, the Court finds that the same allegations discussed above support Wilmuth's WPFMLA claim. Thus, dismissal is inappropriate here too.

### 4.    CONCLUSION

In sum, the Court DENIES Amazon's Motion to Dismiss and/or Strike, Dkt. No. 34. The Court also DENIES as moot Amazon's Motion to Stay or Bifurcate Class and Collective Discovery, Dkt. No. 47, because it asked the Court to relieve Amazon of certain discovery obligations while its Motion to Dismiss and/or Strike was pending.

Dated this 12th day of December, 2024.

Jamal N. Whitehead
United States District Judge

ORDER - 19