UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLINE WILMUTH, KATHERINE
SCHOMER, and ERIN COMBS,

                 Plaintiff,

      v.

AMAZON.COM INC.,

                Defendant.

CASE NO. 2:23-cv-01774-JNW

ORDER

## 1. INTRODUCTION

This putative class action involves alleged employment discrimination by Defendant Amazon.com, Inc. based on sex. Plaintiffs seek compensatory and punitive damages, including backpay and front pay.

Two issues are before the Court. First, Amazon challenges Plaintiffs' privilege log, which identifies 41 withheld documents described as: (1) communications between Plaintiffs and witnesses regarding conversations with counsel; (2) communications between the named Plaintiffs about litigation strategy; and (3) communications between Plaintiffs and putative class members seeking legal advice. Second, Amazon seeks Plaintiffs' federal income tax returns from 2020

1
2
3

through the present, it says, to assess damages and mitigation. Plaintiffs contend they have provided enough information about their earnings through 1099s, W-2s, and sworn discovery responses.

4
5
6

Amazon moves to compel these documents. Dkt. No. 74. After considering the briefing, the record, and the pertinent law, the Court is fully informed and DENIES in part and RESERVES in part, as discussed below.

7

## 2.  DISCUSSION

8

### 2.1  Legal standard.

9
10
11
12
13
14
15
16
17
18
19

Generally, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The party seeking discovery bears the initial burden of establishing relevance. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). Once relevance is established, the party resisting discovery must show why discovery should not be allowed by "clarifying, explaining, and supporting its objections." *Brown v. Warner*, No. C09-1546-RSM, 2015 WL 630926, at *1 (W.D. Wash. Feb. 12, 2015).

20
21
22
23

In determining proportionality, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

1
2

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

3
4
5

District courts have broad discretion in determining relevancy and managing discovery. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011); *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

6
7

## 2.2 The Court grants in part the motion to compel Plaintiffs' tax returns.

8
9
10
11
12
13
14
15
16
17
18
19
20
21

Tax returns may be subject to discovery, but "the Ninth Circuit recognizes that unnecessary public disclosure of tax returns must be limited to encourage taxpayers to file complete and accurate returns." *Int'l News, Inc. v. 10 Deep Clothing, Inc.*, Case No. C18-0302-JCC, 2020 WL 1890611, at *2 (W.D. Wash. Apr. 16, 2020) (citation modified) (quoting *Premium Serv. Corp. v. Sperry and Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)). Courts in this district apply a two-part test to determine whether a party's tax returns should be disclosed: "the Court may only order the production of [a party's] tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Id.* (citing *Alaskan Anvil, LLC v. Majestik Fisheries*, Case No. C13-5702-BJR, 2014 WL 12674380, at *2 (W.D. Wash. 2014) (denying plaintiff's request for production of the defendant's tax returns because the plaintiff's claims did not depend on information contained in the tax returns and plaintiff did not demonstrate a "compelling need" for the information in the returns)); *Kayner v. City of Seattle*, No. C04-2567-MAT, 2006 WL 482072, at *1 (W.D. Wash. Feb. 27, 2006).

22
23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Amazon argues that it needs Plaintiffs' tax returns because Plaintiffs' earnings information is relevant to their alleged damages and mitigation. Dkt. No.82 at 11. In its reply brief, Amazon narrowed its request to seek only "tax returns filed *after* their separation from Amazon[.]" Dkt. No. 82 at 11 (emphasis in original). Amazon is correct to abandon its request for tax returns covering the period of Plaintiffs' employment with Amazon. Those returns are not relevant to Plaintiffs' post-termination mitigation efforts, and Amazon already possesses comprehensive information about Plaintiffs' earnings during their employment through its own payroll records.

On the record before the Court, Amazon has, however, established both relevance and compelling need for Plaintiffs' post-termination tax returns. Plaintiffs' mitigation efforts are directly relevant to their damages claims, and tax returns provide comprehensive income information. While Plaintiffs have produced W-2s, 1099s, and interrogatory responses attesting to earnings, courts have recognized that these documents "do not summarize income information in the same manner as tax returns" and may omit categories of income relevant to damages calculations. *Dowd v. City of Los Angeles*, No. 2:11-cv-00657-DSF-AJW, 2012 WL 13066523, at *2 (C.D. Cal. July 2, 2012); *see also Besco v. City of Longview*, No. 3:15-CV-05493-RJB, 2016 WL 1077266, at *3 (W.D. Wash. Mar. 18, 2016) ("Plaintiff has placed lost earnings in controversy, and although he has provided income information regarding [other sources of income], there may be additional relevant information contained within his tax returns."); *Devs. Diversified Realty Corp. v. Vidalakis*, No. C08-0873RSM, 2008 WL 11509305, at *3 (W.D. Wash. July

22, 2008) ("The Court is persuaded that the tax returns are relevant and that the information sought is not available from another source.").

Plaintiffs' interrogatory responses describe their income sources in general terms but do not provide the level of detail necessary for Amazon to confirm and verify their mitigation efforts. Self-employment income, consulting fees below reporting thresholds, business income from pass-through entities, and other sources may not appear on W-2s or 1099s but are properly considered in assessing mitigation. Under these circumstances, Amazon has shown a compelling need that the existing discovery does not satisfy.

Accordingly, the Court GRANTS IN PART Amazon's motion to compel Plaintiffs' tax returns. Plaintiffs must produce their federal income tax returns (Forms 1040 and all schedules) filed *after* their separation from Amazon within 14 days of this order.

Plaintiffs may redact information related to (1) spouses or other household members, and (2) information unrelated to earned income, including itemized deductions, credits, exemptions, and investment income or losses. *See Schloss v. City of Chicago*, No. 17 C 8090, 2020 WL 12178208, at *4 (N.D. Ill. Oct. 2, 2020) (permitting similar redactions).

## 2.3    Correspondence between named Plaintiffs and witnesses regarding the case and conversations with counsel are protected by the work-product doctrine.

Plaintiffs withheld several documents described on their privilege log as "LinkedIn messages between Plaintiff and witness regarding witness's

1  conversations with counsel," or described in a substantially similar fashion. Dkt.

2  No. 75-6 at 2–4. Plaintiffs assert these communications are shielded from discovery

3  by the attorney-client privilege, the work-product doctrine, and the common-interest

4  doctrine.

5      To begin, Amazon argues that Plaintiffs' privilege log descriptions lack

6  sufficient detail to show that any privilege applies. When a party withholds

7  responsive documents on the basis of privilege, "[t]he party asserting an evidentiary

8  privilege has the burden to demonstrate that the privilege applies to the

9  information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.

10  1988). A proper privilege log must be "sufficiently detailed for the opposing party to

11  assess whether the assertion of privilege is justified." *Rodriguez v. Seabreeze Jetlev

12  LLC*, 620 F. Supp. 3d 1009, 1023 (N.D. Cal. 2022) (citation omitted).

13      The Court agrees that some of Plaintiffs' log descriptions would benefit from

14  greater specificity. But Plaintiffs have since supplemented the log with a

15  declaration providing more context. *See* Dkt. No. 81. While a more detailed privilege

16  log in the first place would have been preferable, the log combined with the

17  supporting declaration provides enough information to assess Plaintiffs' privilege

18  claims.

19      Turning to the merits, "[t]he work product doctrine protects from discovery

20  documents and tangible things prepared by a party or his representative in

21  anticipation of litigation." *Schoenmann v. Fed. Deposit Ins. Co.*, 7 F. Supp. 3d 1009,

22  1013 (N.D. Cal. 2014) (quoting *United States v. Richey*, 632 F.3d 559, 567 (9th Cir.

23  2011)). It "protect[s] against disclosure of the mental impressions, conclusions,

opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *see Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003). In determining whether the documents were prepared in anticipation of litigation, courts should consider whether the documents "would not have been generated but for the pendency or imminence of the litigation." *Id.* at 510 (internal quotation marks omitted).

Plaintiffs' privilege log describes these messages as concerning "Plaintiff and third-party witness[es]" communications about "witness' conversations with Counsel" or "reflecting attorneys' mediation and case strategy." Dkt. No. 75-6 at 2–4. Plaintiffs' supporting declaration states these are "correspondences between Plaintiffs and third-party witnesses that we interviewed as part of our investigation and litigation of this matter[.]" Dkt. No. 81 ¶ 4. The declaration adds that counsel "interviewed numerous witnesses and chose, for some, [to] prepare witness statements for use at private mediation." *Id.* ¶ 5. From Plaintiffs' representations in their privilege log and the declaration of counsel, it is clear that these communications "would not have been generated but for the pendency or imminence of litigation." *Kintera*, 219 F.R.D. at 516. The communications arose from and relate to counsel's investigation of this matter and witness interviews conducted for litigation purposes. Plaintiffs' burden being met, these communications are protected under the work-product doctrine.

The doctrine provides qualified protection. *Id.*; Fed. R. Civ. P. 26(b)(3)(A)(i), (ii). A party may obtain protected materials by showing that (1) "they are otherwise discoverable under Rule 26(b)(1)," and (2) that the party seeking discovery "has a

substantial need for the materials to prepare its case and cannot, without undue

hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P.

26(b)(3)(A)(i), (ii).

Amazon has not shown a substantial need for these communications or that

it cannot obtain the same information through other means like deposing Plaintiffs.

*See* Fed. R. Civ. P. 26(b)(3)(A)(i), (ii). Nor has Amazon identified any information it

needs that cannot be obtained through witness depositions.

Plaintiffs did not waive work product protection by exchanging

communications with non-party witnesses. "[O]ne of primary functions of the work

product doctrine is to prevent a current or potential adversary in litigation from

gaining access to fruits of counsel's investigative and analytical effort, and

strategies for developing and presenting the client's case[.]" *Kintera*, 219 F.R.D. at

508. Therefore, "an analysis of an alleged waiver of work product protection by

virtue of a party's disclosure, must focus on whether the disclosure at issue

substantially increased the likelihood that a current or potentially adverse party

would gain access to disputed documents." *Id*. Communications with non-party

witnesses aligned with Plaintiffs' interests did not increase Amazon's likelihood of

accessing these documents or the strategic information they contain. Thus, no

waiver has occurred.

Accordingly, the Court concludes that the following documents, as identified

on Plaintiffs' privilege log, Dkt. No. 75-6, are protected by the work-product doctrine

and not subject to discovery: 5, 8, 9, 16, 24, 30, 32, 37, and 41. Because the Court

finds work product protection applies to these documents, it need not address

Plaintiffs' alternative assertions of attorney-client privilege or common-interest doctrine as to this category of documents.

### 2.4    Correspondence between named Plaintiffs is protected by the common-interest doctrine.

Next, the privilege log describes Document Nos. 2 and 3 as emails between Plaintiffs about their litigation strategy, plans, and goals, with Document No. 2 including information provided by counsel. Plaintiffs assert that these communications are protected under the common-interest doctrine.

"The common interest doctrine has its origins in situations where one attorney acts for two clients." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citing Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine,* American Bar Association Section of Litigation at 196 (4th ed. 2001)). It is not a privilege in and of itself. *Id.* Rather, it relies on the existence of an underlying privilege. The doctrine recognizes that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims," without waiving underlying privileges. *United States v. Gonzales*, 669 F.3d 974, 978 (9th Cir. 2012).

Amazon challenges the application of the common-interest doctrine in the first instance, arguing that Plaintiffs have not shown an underlying privilege or protection and thus that the common-interest doctrine doesn't apply. The Court disagrees. Emails between Plaintiffs about their joint legal strategy—including one

1    email discussing information provided by counsel—reflect work product and the

2    attorney-client privilege, at minimum.

3         The common-interest doctrine applies when "(1) the communication is made

4    by separate parties in the course of a matter of common [legal] interest; (2) the

5    communication is designed to further that effort; and (3) the privilege has not

6    [otherwise] been waived." *In re Novalpina Cap. Partners I GP S.à.r.l.*, 773 F. Supp.

7    3d 1058, 1068 (D. Or. 2025) (quoting *Nidec Corp.*, 249 F.R.D. at 578).

8    "Communications between and among jointly represented clients may be privileged

9    or otherwise protected from disclosure, even if counsel is not a participant, but only

10   if the information withheld from production is, in fact, privileged or protected in the

11   first instance and concerns the common representation or a matter of common legal

12   interest." *Howington v. Taiwan Semiconductor Mfg. Co., Ltd.*, Case No. 24-cv-

13   05684, 2025 WL 2597403, at *2 (N.D. Cal. Sept. 8, 2025).

14        The three-prong test is satisfied here. First, the challenged emails were

15   exchanged between separate Plaintiffs with a "common [legal] interest" and appear

16   designed to further Plaintiffs' joint litigation efforts. *See Nidec Corp.*, 249 F.R.D. at

17   578. Second, the emails discuss Plaintiffs' litigation strategy, and one refers

18   expressly to communications with counsel. Third, Amazon does not contend that

19   Plaintiffs have waived any privilege or protection with respect to these emails. *See*

20   *id.*

21        Accordingly, the Court concludes that Document Nos. 2 and 3, as identified

22   on Plaintiffs' privilege log, Dkt. No. 75-6, are protected and need not be produced.

23

1

2

### 2.5   Plaintiffs' communications with putative class members and collective members are not privileged.

3

4    Amazon seeks production of communications between Plaintiffs and putative

5    class or collective members. Plaintiffs' privilege log describes these as "LinkedIn

6    messages between [themselves] and putative collective member[s] seeking legal

7    counsel." *See, e.g.*, Dkt. No. 75-6 at 1. Plaintiffs argue that "[p]utative class and

8    collective members have reached out to Plaintiffs, as an extension of Plaintiffs'

9    Counsel, to discuss and offer support for this lawsuit, determine whether they are

10   covered by the lawsuit, and to seek legal advice about their own potential claims."

11   Dkt. No. 80 at 12. Plaintiffs assert that these communications are protected by the

12   attorney-client privilege, the work-product doctrine, and the common-interest

13   doctrine.

14       None of these doctrines shield the communications from discovery. First, the

15   attorney-client privilege cannot apply. The majority rule is that putative class

16   members have no attorney-client relationship with class counsel before certification.

17   *See, e.g.*, 2 McLaughlin on Class Actions § 11:1 (21st ed.) ("Status of communication

18   with class members"). If putative members' direct communications with licensed

19   attorneys are not privileged, it follows that their communications with non-attorney

20   plaintiffs cannot be privileged either. Named plaintiffs are not lawyers, and

21   putative class members seeking legal advice from them does not create a privileged

22   communication. *See* Fed. R. Evid. 501; *Valve Corp. v. Sierra Ent. Inc.*, No. C02-

23   1683Z, 2004 WL 3780346, at *3 (W.D. Wash. Dec. 6, 2004) (attorney-client privilege

1    requires attorney "'acting as a lawyer,' and giving advice with respect to the legal

2    implications of a proposed course of conduct[.]").

3         Plaintiffs fare no better under the work-product doctrine. These

4    communications were initiated by putative members, not created by Plaintiffs in

5    anticipation of litigation. While Plaintiffs characterize themselves as an "extension

6    of Plaintiffs' Counsel," they cite no authority for this novel theory. Named plaintiffs

7    do not become attorneys or their agents simply by discussing the lawsuit with

8    interested individuals. Nor have Plaintiffs demonstrated that these communications

9    reveal counsel's mental impressions or litigation strategy rather than merely

10   discussing the facts of the case or facilitating connections to counsel. *See In re*

11   *Novalpina Cap. Partners I GP S.à.r.l.*, 773 F. Supp. 3d at 1068–69 (communications

12   "related to the possibility of litigation … does not transform them into attorney

13   work product").

14        Next, the common-interest doctrine cannot salvage these communications. As

15   the Court noted above, the doctrine is not a privilege itself but rather an exception

16   to waiver of existing privileges. *See Nidec Corp.*, 249 F.R.D. at 578. Because no

17   underlying privilege exists—neither attorney-client nor work product—the common

18   interest doctrine doesn't apply here.

19        Finally, Plaintiffs cite no case—and the Court can find none—where

20   communications between named plaintiffs and putative class members have been

21   deemed privileged. While not dispositive on the issue, this reality weighs heavily in

22   the Court's analysis.

23

Accordingly, the Court ORDERS Plaintiffs to produce Document Nos. 4–7, 10–15, 17–23, 25–29, 31, 33–36, and 38–40, as identified on Plaintiffs' privilege log, Dkt. No. 75-6, within 14 days of this order. To address any legitimate concerns about retaliation, Plaintiffs may redact the names and identifying information of non-party putative class members.

### 3.  CONCLUSION

In sum, the Court GRANTS IN PART Amazon's motion to compel. Dkt. No. 74. Plaintiffs must produce Document Nos. 4–7, 10–15, 17–23, 25–29, 31, 33–36, and 38–40, as identified on Plaintiffs' privilege log, Dkt. No. 75-6. Plaintiffs must also produce their federal income tax returns (Forms 1040 and all schedules) filed *after* their separation from Amazon. Production must occur within 14 days of this order. Amazon's motion is DENIED in all other respects.

Dated this 31st day of October, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 13