THE HONORABLE JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

CAROLINE WILMUTH, KATHERINE SCHOMER, and ERIN COMBS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.com, Inc.,

Defendant.

Case No. 2:23-cv-01774-JNW

**MOTION TO QUASH THIRD-PARTY SUBPOENAS AND FOR PROTECTIVE ORDER**

NOTE ON MOTION CALENDAR:
November 10, 2026

**I. REQUESTED RELIEF** ..... **1**

**II. STATEMENT OF FACTS** ..... **1**

**III. STATEMENT OF ISSUES** ..... **3**

**IV. ARGUMENT AND AUTHORITY** ..... **3**

A. Legal Standard ..... 3

B. The Subpoenas to Third-Party Employers Improperly Seek Private Employment Records that Are Irrelevant to the Claims and Defenses in this Case. ..... 5

C. The Consulting Firm Subpoenas Improperly Seek Confidential and Proprietary Information that Is Not Relevant to this Case. ..... 12

**V. CONCLUSION** ..... **13**



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

## I. REQUESTED RELIEF

Plaintiffs Caroline Wilmuth, Katherine Schomer, and Erin Combs ("Plaintiffs"), by and through their counsel of record, respectfully move this Court under Fed. R. Civ. P. 26(c) and 45(d)(3) for an Order quashing the subpoenas *duces tecum* Defendant Amazon.com, Inc. recently directed to (1) numerous third-parties employers for whom Plaintiffs worked either prior or subsequent to their employment with Amazon, specifically American Express Company; Lyft, Inc.; Starbucks Corporation; Daniel J. Edelman Holdings, Inc.; PRR, Inc.; Wizards of the Coast LLC; and Holistic AI (collectively, "Third-Party Employers"); and (2) two consulting firms, Canary Research & Strategy, LLC and Artio Strategies LLC, founded by Plaintiffs Wilmuth and Combs, respectively, following their employment with Amazon (collectively, "Consulting Firms").

## II. STATEMENT OF FACTS

1. On October 15, 2026, Plaintiffs' counsel sent Defendant a letter objecting to Amazon's proposed third-party subpoenas seeking Plaintiffs' pre-Amazon and post-Amazon employment records, which are private and irrelevant to this case, and requesting Defendant voluntarily withdraw the proposed subpoenas.

2. Defense counsel responded via letter on October 22, 2026, refusing to withdraw the subpoenas because "Plaintiffs have placed their qualifications, experience, performance, pay, and emotional state at issue …."

3. Counsel for the parties met and conferred that same day via videoconference[1], with Plaintiffs' counsel again attempting to convince Defendant to withdraw or narrow the subpoenas (or at least delay serving them while the parties continued to confer), and making affirmative

[1] Present at the conference were Cassandra Lenning and Scott Aldworth from Bibiyan Law Group, Zarka DSouza from Outten & Golden LLP (collectively representing Plaintiffs), and Carrie Akinaka from Ashurst Perkins Coie, Lizzy Brilliant and Naima Farrell from Gibson Dunn (collectively representing Defendant).



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

suggestions for a compromise that would satisfy Defendant's legitimate discovery interests (for example, Plaintiffs have been periodically producing documents reflecting their post-Amazon mitigation efforts and earned compensation, and confirmed they will supplement such production with any remaining responsive documents).[2]

4. Nevertheless, Defendant served the first batch of Third-Party Employer subpoenas to Plaintiffs' pre-Amazon employers (American Express, Lyft, and Starbucks) on October 15, 2026, directing them to produce documents on October 26, 2026.

5. The following day (October 16, 2026), Defendant served the subpoenas on the Plaintiffs' post-Amazon Consulting Firms, directing them to produce documents on October 26, 2026.

6. On October 23, 2026, Defendant served the remaining subpoenas to Plaintiffs' post-Amazon employers (Edelman Holdings, PRR, Wizards of the Coast, and Holistic AI), directing them to produce documents on November 2, 2026.

7. The subpoenas sent to the Third-Party Employers demand broad production of private employment records that are irrelevant to any claims or defenses in this case. The only documents relating to Plaintiffs' outside employment that are potentially relevant—documents relating to Plaintiffs' mitigation of damages—have been, and will continue to be, produced by Plaintiffs.

8. The subpoenas sent to the Consulting Firms demand production of irrelevant and confidential communications between the Consulting Firms and their clients, which necessarily encompass proprietary information provided by those clients to the Consulting Firms.

9. Undersigned counsel certifies, pursuant to LCR 37(a)(1), that prior to filing this

---

[2] Plaintiffs have already produced documents demonstrating their post-Amazon mitigation efforts, employment, and income, including employment offers, wage statements, and tax returns. Plaintiffs similarly have provided sworn interrogatory responses related to the same.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

motion, Plaintiffs met and conferred with Defendant in a good faith effort to resolve the dispute without court action, but the parties were unable to reach agreement. Plaintiffs' counsel notified Defendant on October 15, and again on October 22, 2026, that they would be filing the present motion.[3]

## III. STATEMENT OF ISSUES

1. Whether the Court should issue a protective order and/or quash the subpoenas served on the Third-Party Employers pursuant to Fed. R. Civ. P. 26(c) and 45(d)(3) because the subpoenas seek private employment records that have no relevance to the claims or defenses at issue in this case.

2. Whether the Court should issue a protective order and/or quash the subpoenas served on the Consulting Firms pursuant to Fed. R. Civ. P. 26(c) and 45(d)(3) because the subpoenas seek confidential and proprietary information from the Consulting Firms' clients that have no relevance to the claims or defenses at issue in this case.

## IV. ARGUMENT AND AUTHORITY

### A. Legal Standard

Courts may "limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden." *Erwin v. OBI Seafoods LLC*, 2023 U.S. Dist. LEXIS 119207, *2 (W.D. Wash. July 11, 2023), citing Fed. R. Civ. P. 26(c)(1). "Courts are required to modify or quash subpoenas that present an undue burden or require the disclosure of privileged or protected matter." *Rollins v. Traylor Bros.*, 2017 U.S. Dist. LEXIS 69211, *4 (W.D. Wash. May 5, 2017), citing Fed. R. Civ. P. 45(d)(3)(A). "Whether a subpoena imposes an undue burden depends on the relevance of the

[3] Given that discovery has been ongoing for over two-and-a-half years and fact discovery does not end for several more months, Defendant could have easily waited for a ruling on Plaintiff's motion to quash the proposed third-party subpoenas before serving the subpoenas at issue, but declined to do so.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

information requested, and the burden imposed." *Id*. "The test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Erwin*, 2023 U.S. Dist. LEXIS 119207, *2 (quotations omitted); *see also Scott v. MultiCare Health Sys.*, 2019 U.S. Dist. LEXIS 61787, at *3 (W.D. Wash. Apr. 10, 2019) ("The scope of a subpoena request is coequal with the scope of discovery.").

Similarly, courts may "issue a protective order to prevent 'annoyance, embarrassment, oppression, or undue burden or expense' in connection with documents sought in discovery." *Rollins*, 2017 U.S. Dist. LEXIS 69211, *4, quoting Fed. R. Civ. P. 26(c). "A proper basis for a protective order includes 'forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.'" *Id*., at *4-5, quoting Fed. R. Civ. P. 26(c)(1)(D). "District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection is warranted." *Id*. at *5. In reviewing a motion for a protective order, "courts must consider both whether the discovery falls within the scope of Rule 26(b) and whether the relevance of the information sought outweighs its potential to annoy, embarrass, oppress, or unduly burden the opposing party." *Bolding v. Banner Bank*, 2020 U.S. Dist. LEXIS 116817, *3 (W.D. Wash. July 2, 2020).

As applicable here, Washington courts recognize a presumption of privacy in a plaintiff's employment records with non-party employers. *See Paananen v. Cellco P'ship*, 2009 U.S. Dist. LEXIS 130215, *7 (W.D. Wash. July 15, 2009) ("Generally, employment records from separate employers are not discoverable due to their highly private nature ...."). Further, a plaintiff's "privacy interest in her employment records and the negative impact of a third-party subpoena on her current employment constitute good cause meriting entry of a protective order ...." *Scott*, 2019 U.S. Dist. LEXIS 61787, at *5.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

**B. The Subpoenas to Third-Party Employers Improperly Seek Private Employment Records that Are Irrelevant to the Claims and Defenses in this Case.**

Defendant has issued numerous subpoenas to Plaintiffs' pre-Amazon and post-Amazon employers. Each of these subpoenas are functionally identical and broadly seek:

> 1. Any and all documents concerning the application for employment and hiring of [the Plaintiff] by [the Third-Party Employer], including:
>
> a) Any documents completed or submitted by [the Plaintiff] in connection with seeking employment with [the Third-Party Employer], including any employment applications or resumes, or any pre-employment or pre-engagement documents completed by [the Plaintiff];
>
> b) Any documents concerning [the Third-Pary Employer's] decision to hire, accept, or reject [the Plaintiff's] employment application, including interview notes, interviewer feedback, and offer letters;
>
> c) Any documents concerning any position or engagement, including the duties and responsibilities associated with that position or engagement, offered to [the Plaintiff];
>
> d) Any documents constituting [the Plaintiff's] acceptance or rejection of any offer of employment made by [the Third-Party Employer];
>
> e) Any employment contracts or agreements provided to [the Plaintiff] or completed or submitted by [the Plaintiff] relating to her employment with [the Third-Party Employer]; and
>
> f) Any contracts or agreements between [the Plaintiff] and [the Third-Party Employer] or any of its officers, directors, agents or employees.
>
> 2. Documents sufficient to demonstrate the terms and conditions of [the Plaintiff's] employment with [the Third-Party Employer], including documents sufficient to demonstrate the duties and responsibilities associated with the positions [the Plaintiff] occupied.
>
> 3. Documents sufficient to demonstrate any financial compensation or benefits received by and/or offered to [the Plaintiff] by [the Third-Party Employer] or arising out of her employment or engagement with [the Third-Party Employer], including salary, commissions, bonuses, incentive awards, stock or equity awards, workers' compensation, disability payments, severance pay, or any other form of compensation.
>
> 4. Any and all documents concerning [the Plaintiff's] performance at [the Third-



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

> Party], including formal performance reviews, warnings, disciplinary actions, or similar documentation related to any performance issues or misconduct by [the Plaintiff].
>
> 5. Any and all documents concerning [the Plaintiff's] separation from [the Third-Party Employer], including, if applicable, termination notices, resignation letters, and severance or separation agreements.

*See* Exhibit 1 to Decl. of C. Lenning. The majority of the Third-Party Employers—specifically, American Express, Edelman Holdings, PRR, Starbucks, and Lyft—are employers for whom one of the Plaintiffs worked before Defendant hired them. The remaining Third-Party Employers—Holistic AI and Wizards of the Coast—are employers for whom one of the Plaintiffs worked after their Amazon employment terminated. Wizards of the Coast is Plaintiff Schomer's current employer.

This District has addressed subpoenas to third-party employers on numerous occasions and has consistently held "employment records from separate employers are not discoverable due to their highly private nature absent a specific showing by a defendant as to their relevance." *Paananen*, 2009 U.S. Dist. LEXIS 130215, *7; *see also e.g., Lerum v. Heritage-Crystal Clean, Inc.*, 2026 U.S. Dist. LEXIS 5607, *3 (W.D. Wash. Jan. 12, 2026); *Erwin v. OBI Seafoods LLC*, 2023 U.S. Dist. LEXIS 119207, *2 (W.D. Wash. July 11, 2023); *Bolding v. Banner Bank*, 2020 U.S. Dist. LEXIS 116817, *3 (W.D. Wash. July 2, 2020); *Scott*, 2019 U.S. Dist. LEXIS 61787, *4.

As the court in *Scott* explained, personnel records from other employers generally have no relevance to pending claims against a different employer:

> Defendants seek Plaintiff's performance- and disciplinary-related personnel records from Piedmont, her current employer . . . . But Plaintiff's claims of discrimination and retaliation concern how Defendants treated her while she was employed at Defendant Multicare Health System's Auburn Medical Center in Washington. Plaintiff's allegations against Defendants have put her employment at Auburn Medical Center at issue, and do not implicate her performance at Piedmont, whether she has raised similar concerns at Piedmont, or whether Piedmont has disciplined her on the same grounds as Defendants. Moreover, Defendants have not shown that Piedmont's similar treatment of Plaintiff would necessarily demonstrate Defendants'



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

> reasonableness in this case; conversely, such evidence could simply show that Plaintiff may have similar claims against her current employer.

*Scott*, 2019 U.S. Dist. LEXIS 61787, at *4-5. In *Scott*, the court granted a protective order restricting the defendants from seeking the plaintiff's personnel records from her subsequent employer. *Id.*, at *5.

In the rare cases in which Washington courts have permitted subpoenas to third-party employers, the defendant has identified specific aspects of the plaintiff's claims that necessitated such discovery. For example, in *Greenburg v. Red Robin Int'l, Inc.*, a court permitted subpoenas to two subsequent employers because the plaintiff had specifically alleged he "shortly ended both jobs because of mental health issues resulting from [defendant's] treatment and termination of" his employment. 2018 U.S. Dist. LEXIS 86734, *4 (W.D. Wash. May 23, 2018). Based on this, the court held the defendant had "shown that this limited information is relevant to actual issues in this case." *Id*. But the court rejected the defendant's attempt to subpoena the entirety of the plaintiff's personnel records, which the defendant argued "could reveal other relevant information, such as a pattern of asserting frivolous claims of discrimination," "declin[ing] to allow [defendant's] fishing expedition into [plaintiff's] private records…." *Id.*

Courts are especially reticent to permit subpoenas to a plaintiff's current employer. In addition to the privacy interests implicated, "courts have recognized that notifying a current employer of the filing of a claim can be considered retaliatory because it would chill employees' willingness to pursue statutory claims and remedies for fear of adversely impacting future employment opportunities." *Bolding*, 2020 U.S. Dist. LEXIS 116817, at *4; *see also Scott*, 2019 U.S. Dist. LEXIS 61787, at *5 ("the negative impact of a third-party subpoena on her current employment constitute good cause meriting entry of a protective order, especially considering



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

Defendants' failure to make a specific showing of relevancy as to the records they seek.").

For the reasons described below, Defendant cannot make the "specific showing" required for discovery of Plaintiffs' third-party employment records, the subpoenas should be quashed, and the Court should enter a protective order preventing Defendant from seeking these documents.

1. <u>Defendant cannot make a "specific showing" of relevance for any of Plaintiffs' pre-Amazon Employment Records.</u>

With respect to the subpoenas issued to Plaintiffs' pre-Amazon employers, Defendant asserted in conferrals that such documents were relevant Plaintiffs' pay equity claims, which Defendant argues placed Plaintiffs' credentials and experience at issue, as well as its affirmative defense "that any difference in pay rested on bona fide job-related factors, such as education, training, and experience." This argument fails for multiple reasons.

First and foremost, Defendant cannot use its *post-hoc* fishing expedition to justify its prior pay (or other employment) decisions. In determining Plaintiffs' and their male comparators' compensation, Amazon certainly did not rely on information it did not possess at the time. *See, e.g., McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 359-60 (1995) (employer cannot escape liability based on after-acquired evidence because "[t]he employer could not have been motivated by knowledge it did not have"); *Hein v. Oregon College of Education*, 718 F.2d 910, 921 (9th Cir. 1983) ("Post-hoc rationalizations, of course, will not permit [the employer] to carry its burden of proving the legitimacy of its payment of unequal starting salaries."); *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) ("As the ultimate issue is the employer's reasoning at the moment the questioned employment decision is made, a justification that could not have motivated the employer's decision is … simply irrelevant."). To prevail on its affirmative defense to Plaintiffs' pay equity claims, Defendant must show the differential in compensation was "based in good faith on a bona fide job-



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

related factor or factors…." RCW 49.58.020(3)(a); *see also* 29 U.S.C. § 206 (d)(1) (differential in compensation only permitted where "based on any factor other than sex"). Information from prior employers regarding Plaintiffs' credentials and experience, which Defendant did not possess during their employment at Amazon, is irrelevant to Defendant's affirmative defense, as Amazon cannot credibly claim the pay differential was *based on* such information.

Second, Defendant's third-party employer subpoenas are far from narrowly tailored, instead seeking broad categories of documents that do not even relate to Defendant's asserted relevance, let alone satisfy the "specific showing" of relevance required for private employment records. The first category covers all documents related to the Plaintiffs' applications for employment with the Third-Party Employer. While these applications may contain information about Plaintiffs' credentials and experience, Defendant cannot rely on any such information to defend their decision to pay Plaintiffs less than their male colleagues. Moreover, this information can be obtained directly from Plaintiffs.[4] The second and third categories in the subpoenas cover documents relating to the terms and conditions of employment with the Third-Party Employer and the compensation paid by the Third-Party Employer, respectively. The fourth and fifth categories in the subpoenas seek documents relating to Plaintiffs' performance and the end of their employment with the Third-Party Employers. Not only can Defendant not rely on any information it did not have at the time it set Plaintiffs' compensation, but the Ninth Circuit has explicitly held employers cannot rely on an employee's prior salary to defend against a pay equity claim. *Rizo v. Yovino*, 950 F.3d 1217, 1229 (9th Cir. 2020). Indeed, Washington law specifically prohibits employers from even requesting an applicant's wage

[4] Indeed, Plaintiffs have already provided sworn interrogatory responses identifying "all instances of gainful work or employment . . . since graduating from high school." And Plaintiffs have produced documents describing their "education, work experience, or job duties since high school, including but not limited to resumes, job applications . . . ."



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

history. RCW 49.58.100. Accordingly, documents relating to the terms and conditions of Plaintiffs' pre-Amazon employment, their compensation, and performance cannot be relevant to any of the claims or defenses at issue in this case.

For these reasons, Defendant cannot satisfy the "specific showing" required with respect to any of the categories of documents in the subpoenas to Plaintiffs' pre-Amazon employers. As such, those subpoenas should be quashed in their entirety, and the Court should enter a protective order preventing Defendant from seeking these documents.

2. Defendant cannot make a "specific showing" of relevance for Plaintiffs' Post-Amazon Employment Records.

With respect to Plaintiffs' post-Amazon employment, Defendant claimed in conferrals that "subsequent employment records" are relevant to Plaintiffs' claims for lost wages and non-economic damages arising out of emotional distress, as well as "Amazon's mitigation and offset defenses." This argument has been repeatedly rejected.

With respect to Plaintiffs' claims for lost wages, while evidence of their income from subsequent employers is relevant, Plaintiffs have already produced documents reflecting such income, including Plaintiffs' tax returns, as well as sworn interrogatory responses, and will continue to supplement such documents and interrogatory responses; thus, there is no need for Defendant to subpoena information from third-parties that it already has or can readily obtain through Plaintiffs. *See Paananen*, 2009 U.S. Dist. LEXIS 130215, at *8 ("Defendant claims that such records should be produced because they are relevant to Plaintiff's claims for front and back pay. However, it appears that Plaintiff has already informed Defendant of all the jobs he has held since his termination with Defendant, including the compensation information for each through his tax records. Therefore, Defendant already possesses the information needed to determine the legitimacy of Plaintiff's front



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

and back pay claims.”).

With respect to Plaintiffs’ claims for non-economic damages arising from their emotional distress, Defendant asserts this renders subsequent “employment records addressing Plaintiffs’ performance, work experience, and any subsequent medical leave” discoverable. But Washington courts have repeatedly held that a plaintiff seeking such damages does not open the door to discovery of subsequent employment records, and there must be a specific allegation about how their plaintiff’s emotional distress has impacted their subsequent employment. As described above, one court allowed such discovery because the plaintiff had specifically alleged that he “shortly ended both jobs because of mental health issues resulting from [defendant’s] treatment and termination of” his employment. *Greenburg*, 2018 U.S. Dist. LEXIS 86734, *4. Absent an allegation of this specificity, however, Washington courts routinely quash subpoenas to subsequent employers. *See, e.g., Erwin*, 2023 U.S. Dist. LEXIS 119207, *6-7 (“[The defendant] has submitted no evidence to suggest that the employment records sought are likely to produce any information probative of emotional distress…The mere possibility that employment records *might* contain such information is insufficient given the sensitive nature of such records.”). Here, Plaintiffs have not made any allegations suggesting the emotional distress caused by Defendant’s actions impacted their work performance for subsequent employers or caused them to take medical leave.

Anything Defendant may find in subsequent employment records regarding Plaintiffs’ post-Amazon work performance has no bearing on the claims or defenses in this case. *See, e.g., Scott*, 2019 U.S. Dist. LEXIS 61787, at *4-5 (granting protective order prohibiting defendant from seeking performance- and disciplinary-related personnel records from subsequent employer, as plaintiff’s discrimination and retaliation claims do not implicate her post-defendant performance); *Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999) (“unsatisfactory performance months after the



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

reduction in force had no bearing on management's state of mind at the time the decision to terminate [plaintiff] was made"). In addition, Plaintiffs have reason to believe that several of their post-Amazon employers are not aware of the instant lawsuit, and for Defendant to notify them of such through these subpoenas, is likely to negatively impact Plaintiffs' relationship with these employers. *See Scott*, 2019 U.S. Dist. LEXIS 61787, at *5 ("the negative impact of a third-party subpoena on her current employment constitute good cause meriting entry of a protective order").

Because Defendant cannot make a "specific showing" as to the relevance of any of the documents sought from Plaintiffs' post-Amazon employers, those subpoenas should also be quashed and the Court should enter a protective order preventing Defendant from seeking these documents.

**C. The Consulting Firm Subpoenas Improperly Seek Confidential and Proprietary Information that Is Not Relevant to this Case.**

Defendant has also sent subpoenas to the Consulting Firms Plaintiffs Wilmuth and Combs began after their employment with Defendant ended. These subpoenas request documents relating to the Consulting Firms' income and profits, and any compensation received by Plaintiffs, which Plaintiffs do not dispute is relevant, and which Plaintiffs have agreed to produce. However, these subpoenas also include a significantly broader request for:

> Documents sufficient to demonstrate the terms and conditions of [the plaintiff's] involvement with [the Consulting Firm] and services offered by [the plaintiff] on [the Consulting Firm's] behalf, *including but not limited to*:
>
> a) Documents sufficient to demonstrate [the plaintiff's] duties and responsibilities;
>
> b) Correspondence or proposals to clients and potential clients describing consulting services offered by [the Consulting Firm] and [the plaintiff]; and
>
> c) Contracts between [the Consulting Firm] and [the Consulting Firm's] clients or other documents discussing the scope of [the Consulting Firm's] and [the plaintiff's] services and engagement.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

*See* Exhibit 2 to Lenning Decl. Such documents are not relevant to any of the claims or defenses at issue, and would necessarily require the disclosure of confidential, proprietary information from the Consulting Firm's clients.

Again, documents relating to income derived from the Consulting Firms to Plaintiffs Wilmuth and Combs are relevant to Plaintiffs' economic damages and mitigation efforts, and have been, and will continue to be, produced. There is no justification for Defendant to dig into the details of every single contract between Plaintiff's Consulting Firms and their clients, however, when only potentially relevant information in those contracts is the amount paid by the client to the Consulting Firm, and the overall amount of client payments will be included in the financial documents Plaintiffs have agreed to produce. There is especially no justification for Defendant to seek specific communications between the Consulting Firms and their clients regarding proposals and scopes of work, which inherently involve the clients' confidential and proprietary information, and were provided subject to Non-Disclosure Agreements. Defendant's effort to subpoena these documents borders on harassment and would irrevocably damage the Consulting Firms' relationships with their clients. These documents have no relevance to the instant case, let alone sufficient relevance to outweigh the prejudice to Plaintiffs' Consulting Firms that would result from the disclosure of these documents.

The only relevant documents in the possession of the Consulting Firms are those relating to their finances, which Plaintiffs have already agreed to produce. The Court should quash the subpoenas to the extent they seek documents beyond those financial documents and enter a protective order preventing Defendant from seeking such documents.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant this Motion and



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043

issue an Order:

1. Quashing the Subpoenas to Produce Documents served on the Third-Party Employers on October 15, 2026 and October 23, 2026;
2. Quashing the Subpoenas to Produce Documents served on the Consulting Firms on October 16, 2026 with respect to the third category of documents sought;
3. Issuing a Protective Order under Fed. R. Civ. P. 26(c) prohibiting Defendant from seeking Plaintiffs' employment records from Third-Party Employers; and
4. Issuing a Protective Order under Fed. R. Civ. P. 26(c) prohibiting Defendant from seeking non-financial records from the Consulting Firms.

I certify that this memorandum contains 4,009 words, in compliance with the Local Civil Rules.

DATED this 27th day of October, 2026.

By: */s/Cassandra W. Lenning*

Cassandra Lenning, WSBA No. 54336
Scott J. Aldworth, WSBA No. 60949
Adarsh N. Parthasarathy, WSBA No. 62319
Alexis E. Hanson, WSBA No. 64041
Madison Gunning, CA Bar No. 345222*
**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043
Fax: (206) 225-2067
*clenning@tomorrowlaw.com*
*saldworth@tomorrowlaw.com*
*aparthasarathy@tomorrowlaw.com*
*ahanson@tomorrowlaw.com*
*mgunning@tomorrowlaw.com*

*Attorneys for Plaintiffs*

* *Admitted Pro-Hac Vice*