THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLINE WILMUTH, KATHERINE SCHOMER, and ERIN COMBS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 2:23-cv-01774-JNW<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO QUASH THIRD-PARTY SUBPOENAS AND FOR PROTECTIVE ORDER**<br><br>NOTE ON MOTION CALENDAR: NOVEMBER 17, 2026 |



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## Introduction

Plaintiffs ask this Court to quash the subpoenas *duces tecum* that Amazon served on employers for whom Plaintiffs worked before and after they worked at Amazon and on Plaintiffs' consulting firms. Mot. (Dkt. 190). Plaintiffs also ask for a protective order prohibiting Amazon from seeking employment records from the third-party employers and non-financial documents from the consulting firms. *Id.* The Court should deny Plaintiffs' Motion.

The documents Amazon seeks are relevant to Plaintiffs' claims and Amazon's defenses for three reasons. *First*, Plaintiffs' claims require proof of "work requiring equal skill, effort, and responsibility," and Plaintiffs' credentials and experience are central to Plaintiffs' equal-pay theory. *See, e.g.*, FAC (Dkt. 33) ¶¶ 82, 89, 98, 208, 212. Amazon's pleaded defense that any pay difference rested on bona fide job-related factors such as education, training, and experience further places those factors at issue. *See* Ans. (Dkt. 70). *Second*, Plaintiffs seek back pay, front pay, "lost earnings, lost benefits, [and] other financial loss," and damages for harm to "professional and personal reputations and loss of career fulfillment," which makes subsequent employment records relevant to Plaintiffs' claimed damages and Amazon's mitigation and offset defenses. *See, e.g.*, FAC ¶¶ 216 & Prayer for Relief; Declaration of Carrie Akinaka ("Akinaka Decl."), Ex. B, Rog. 11; Akinaka Decl., Ex. C, Rog. 10; Akinaka Decl., Ex. D, Rog. 11. *Third*, Plaintiffs' allegations of "severe emotional distress, anxiety, humiliation, and loss of enjoyment of life," their claim that their "mental and physical health suffered" (prompting FMLA leaves), and their request for emotional-distress damages place Plaintiffs' condition before and after their employment with Amazon at issue. *See* FAC ¶¶ 177, 204 & Prayer for Relief.

The relevance of the documents Amazon seeks far outweighs any minimal privacy interest Plaintiffs have against production. Plaintiffs have already spoken with their current employers, current colleagues, and the media about this lawsuit. Plaintiffs themselves put their performance and experience, compensation, benefits, mitigation efforts, and physical and mental state at issue in this litigation. Amazon is entitled to obtain discovery to rebut Plaintiffs' claims and pursue its



**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

affirmative defenses. *See Rugo v. Hardwick*, 2017 WL 2623771, at *3 (E.D. Wash. June 16, 2017). Plaintiffs bear the burden of showing specific harm or prejudice will result if this Court does not grant a protective order, *Walsh v. Walmart Inc.*, 2023 WL 3304216, at *3 (W.D. Wash. May 8, 2023), and Plaintiffs have not identified anything embarrassing in the records sought or any concrete consequences from the documents that Amazon seeks. Plaintiffs' bald assertions of harm are insufficient.

For all these reasons, this Court should deny Plaintiffs' Motion in full.

## Background

Plaintiffs bring individual federal Equal Pay Act ("EPA") and Washington Equal Pay and Opportunities Act ("WEPOA") claims as well as a putative class-wide WEPOA claim; in addition, Plaintiffs assert individual retaliation, discrimination, Family and Medical Leave Act ("FMLA"), and wrongful discharge claims. *See* FAC. Plaintiffs' theory is that they performed the same or similar work as various men at Amazon, but allegedly were paid less for that work; in defending against these claims, Amazon will argue that certain of the men at issue were ***not*** paid more than Plaintiffs and that, where there was a pay differential, Plaintiffs did not have the same or similar jobs as the men they claim were their comparators, and/or any differential was justified by differences in experience, education, and other qualifications. Plaintiffs seek back pay, front pay, "lost earnings, lost benefits, [and] other financial loss," damages for harm to "professional and personal reputations and loss of career fulfillment," and "compensation for Plaintiffs['] emotional distress." *Id.* ¶¶ 216, 220, 245 & Prayer for Relief; Akinaka Decl., Ex. A at 28-32.

On October 2, 2026, Amazon's counsel informed Plaintiffs' counsel of Amazon's intent to request documents relevant to these claims from certain third parties, including Plaintiffs' prior and current employers and consulting firms. Akinaka Decl. ¶ 3. To reduce the delay, burden, and cost associated with subpoenaing these entities, Amazon asked Plaintiffs to return signed authorizations by October 9, 2026 to permit Amazon to obtain records from these entities without subpoenas. *Id.* On October 12, 2026, Amazon's counsel followed up by email, and having



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

received no response, on October 14, 2026, Amazon's counsel sent Plaintiffs' counsel a Notice of Intent to Serve Subpoenas on three of Plaintiffs' former employers—American Express Company ("AmEx"), Starbucks Corporation ("Starbucks"), and Lyft, Inc. ("Lyft")—and two consulting companies founded by Plaintiffs Wilmuth and Combs—Canary Research & Strategy ("Canary") and Artio Strategies ("Artio," and collectively with Canary, the "Consulting Firms"). *Id.* ¶ 4. On October 15, 2026, Amazon served subpoenas on AmEx and Lyft. *Id.* ¶ 5. The same day, Plaintiffs' counsel sent Amazon's counsel correspondence related to Amazon's intent to serve subpoenas on American Express, Starbucks, and Lyft and requested to meet the following week to discuss the correspondence and the Consulting Firm subpoenas. *Id.* Plaintiffs did not mention Amazon's prior authorization requests. Amazon served subpoenas on Canary, Artio, and Starbucks the following day. *Id.* ¶ 6.

On October 22, 2026, Amazon's counsel sent a response to Plaintiffs' letter. Akinaka Decl. ¶ 7. Counsel for Plaintiffs and Amazon met and conferred the same day. *Id.* ¶ 8. Although Plaintiffs' letter acknowledged the relevance of certain employment records to alleged lost wages, Plaintiffs refused to sign the authorization requests. *Id.* Accordingly, Amazon sent Plaintiffs' counsel a Notice of Intent to Serve Subpoenas on additional third-party employers: Daniel J. Edelman Holdings ("Edelman") and PRR, for whom Schomer worked before joining Amazon; Holistic AI, for whom Wilmuth worked after leaving Amazon; and Wizards of the Coast, Schomer's current employer. *Id.* On October 23, 2026, Amazon served the subpoenas on PRR and Wizards of the Coast.[1] *Id.* ¶ 9. Plaintiffs filed the instant motion to quash the subpoenas and for a protective order on October 27, 2026.

PRR and Starbucks sent Amazon responsive documents on October 30 and November 3, 2026, respectively. Akinaka Decl. ¶¶ 10-11. On November 3, 2026, Plaintiffs' counsel sent

[1] At this time, Amazon does not intend to subpoena Holistic AI, as the company is apparently no longer located in the United States. Akinaka Decl. ¶ 13. Amazon is still attempting to effectuate service on the correct subsidiary entities associated with AmEx and Edelman. *Id.*



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Amazon records responsive to some portions of the Artio and Canary subpoenas—but not all due to the pending Motion. *Id.* at ¶ 12.

**Legal Standard**

"Defendants must be allowed to obtain discovery to pursue their affirmative defenses and rebut Plaintiffs' claims and the relief sought." *Rugo*, 2017 WL 2623771, at *3. Parties may thus obtain discovery of any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Smith v. Legacy Partners Inc.*, 2022 WL 1194125, at *4 (W.D. Wash. Apr. 21, 2022) (The scope of a Rule 45 subpoena is the same as the scope of discovery under Rule 26(b)). Courts in this District permit employers to obtain records from other employers when they make "a specific showing" of relevance. *Bolding v. Banner Bank*, 2020 WL 3605593, at *2 (W.D. Wash. July 2, 2020). This "specific showing" requirement is not a bar to discovery: when the defendant ties the requested records to an actual claim or defense, discovery is allowed. *See, e.g.*, *Walsh*, 2023 WL 3304216, at *5; *Awosika v. Target Corp.*, 2011 WL 13048452, at *2-3 (W.D. Wash. May 26, 2011). "Relevant information does not have to be admissible; relevance is construed broadly." *Smith*, 2022 WL 1194125, at *4. "Employment records are routinely found to be relevant in discovery, particularly in employment actions," and "where a plaintiff initiates an employment lawsuit, [her] privacy interest in employment records is reduced." *Id.* (collecting cases).

"The party seeking to limit discovery has the burden of proving 'good cause,' which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Walsh*, 2023 WL 3304216, at *3 (quotation omitted); *accord Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). "Under the liberal discovery principles of the Federal Rules, the party seeking a protective order must "'carry a heavy burden of showing why discovery' should be denied." *Walsh*, 2023 WL 3304216, at *3. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" Plaintiffs' burden to resist relevant discovery. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## Argument

### I. Prior Employer Records Bear on Plaintiffs' Qualifications and on Amazon's Defenses.

Plaintiffs put their pre-Amazon experience at the center of their case such that their prior employer records are plainly relevant. And Plaintiffs' employment experiences before joining Amazon are central to Amazon's defense of this case.

Under the EPA and the WEPOA, an employer may show that a pay difference rests on a bona fide, job-related factor, and "[e]mployers may reward professional experience and education without violating" the law. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1075 (9th Cir. 1999); *see Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 921 (9th Cir. 1983) (factor-other-than-sex defense turns on individualized proof of each comparator's experience and credentials); RCW 49.58.020(3)(a). In bringing this lawsuit, Plaintiffs put their professional experience and education directly at issue. Plaintiffs allege in the complaint that Amazon's levels are supposed to track "education, experience, and skills," and that they had more of each than male colleagues who were purportedly paid more than they were for performing the same or similar work. FAC ¶¶ 43, 82, 89, 93, 98, 106, 116, 163. Combs alleges that her experience "leading HQ initiatives for Starbucks and Lyft" is what she brought to Amazon, and that a male colleague claimed credit for "a program that Ms. Combs had led for Lyft." *Id.* ¶¶ 91, 113. Whether Combs led that program, and what her Starbucks and Lyft roles actually entailed, are questions Lyft's and Starbucks's records may answer directly. The same is true of the years and kinds of experience the other Plaintiffs claim made them more qualified than their alleged male comparators. Amazon's subpoenas are designed to seek evidence relevant to these questions.

Plaintiffs respond that Amazon may justify pay only with information it had at the time, and that Amazon cannot rely on Plaintiffs' prior salary to defend against a pay equity claim. Mot. at 8-9. But none of Plaintiffs' authorities suggests that evidence regarding employees' qualifications, duties, or performance records from prior employers is irrelevant or non-



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

discoverable. *See Rizo v. Yovino*, 950 F.3d 1217, 1224, 1226 (9th Cir. 2020) (noting that education, skills, "experience, training, or ability" constitute job-related factors justifying pay differentials); *Hein*, 718 F.2d at 921 (the EPA "entrusts employers . . . with making the often uncertain decision of how to accomplish business objectives" and demands a "thorough and sensitive" appraisal of individual characteristics that might render distinct starting salaries); *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359-60, 362-63 (1995) (limiting *remedies* based on principle that employer "could not have been motivated by knowledge it did not have" but expressly declining to bar *discovery* "into an employee's background or performance"); *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) (addressing what evidence may justify an employment decision on the merits, not the scope of discovery).

Moreover, Amazon had Plaintiffs' representations about their experience when it hired and leveled them, and Plaintiffs' prior employers' records test whether those representations, on which Plaintiffs now rely, were accurate and complete. Amazon is entitled to challenge Plaintiffs' otherwise unsupported assertions that Plaintiffs had the capacity to perform certain duties throughout their employment. *See EEOC v. Cheesecake Factory, Inc.*, 2017 WL 3887460, at *9 (W.D. Wash. Sep. 6, 2017) (finding "descriptions of jobs [the charging party] held, representations in his job applications, his past attendance, his performance and disciplinary records, [and] recorded communications with his managers" discoverable because they may "contain information relevant" to the charging party's capacity to perform his job responsibilities and the employer's reason for terminating the charging party); *Walsh*, 2023 WL 3304216, at *5 (prior applications and résumés discoverable); *Awosika*, 2011 WL 13048452, at *3 (allowing discovery of prior employment records to verify plaintiff's representations concerning reasons for leaving prior employment). Plaintiffs cannot use their prior experience as a sword while at the same time shielding the only neutral records of that experience. *See Smith*, 2022 WL 1194125, at *4.



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## II. Subsequent Employer Records Bear on Damages, Mitigation, and Emotional Distress.

Employment records from Plaintiffs' subsequent employers are likewise relevant, as they directly address Plaintiffs' requests for damages, Plaintiffs' allegations of emotional and physical distress, and Amazon's mitigation defense.

Plaintiffs seek back pay, front pay, "lost earnings, lost benefits, [and] other financial loss," and damages for harm to "professional and personal reputations and loss of career fulfillment." FAC at Prayer for Relief; Akinaka Decl., Ex. B, Rog. 11; Akinaka Decl., Ex. C, Rog. 10; Akinaka Decl., Ex. D, Rog. 11. Front pay must be reduced by what the plaintiff "could earn using reasonable mitigation efforts," and a plaintiff's work history bears on this calculation. *Teutscher v. Woodson*, 835 F.3d 936, 947 (9th Cir. 2016). Courts in this District therefore allow defendant-employers to obtain mitigation records from plaintiffs' subsequent employers. *See, e.g.*, *Walsh*, 2023 WL 3304216, at *5 ("Information about Walsh's current work schedules, compensation, and benefits is relevant to her damages because she has a duty to mitigate those damages."); *Awosika*, 2011 WL 13048452, at *2 (similar).

The fact that Plaintiffs already have produced tax returns and responded to interrogatories, *see* Mot. at 10, does not moot the subpoenas. As this Court found in granting Amazon's motion to compel production of Plaintiffs' tax returns, "Plaintiffs' interrogatory responses describe their income sources in general terms but do not provide the level of detail necessary for Amazon to confirm and verify their mitigation efforts." *Wilmuth v. Amazon.com Inc.*, 2025 WL 3039344, at *2 (W.D. Wash. Oct. 31, 2025). So, too, do the tax returns fail to provide Amazon with a complete picture: those returns do not reflect the equity, bonuses, leaves, or benefits provided to Plaintiffs during their subsequent employment. Accordingly, unlike in *Paananen v. Cellco Partnership*, 2009 WL 2057048 (W.D. Wash. July 15, 2009), where the plaintiff sought only front and back pay and had disclosed every subsequent job and its associated compensation and benefits, Amazon does not "already possess[] the information needed to determine the legitimacy" or value of



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Plaintiffs' claims for damages. *Id.* at *3. Where, as here, plaintiffs seek lost benefits as well as pay, "other employers are in the best position to provide a complete and accurate picture of … total compensation." *Rugo*, 2017 WL 2623771, at *3. A defendant "is not required to trust" that a plaintiff will gather and produce complete information herself. *Walsh*, 2023 WL 3304216, at *5; *Awosika*, 2011 WL 13048452, at *2 (allowing discovery of records from subsequent employers, which are relevant and "less likely to be biased" than plaintiffs' interrogatory responses).

The records Amazon seeks are also relevant to Plaintiffs' allegations of emotional and physical distress. Plaintiffs do not allege garden-variety emotional distress damages. Rather, Plaintiffs allege that their "mental and physical health suffered" enough to require FMLA leave or short-term disability leave, and they claim lasting harm to their professional reputations and "loss of career fulfillment." FAC ¶¶ 177, 204 & Prayer for Relief; Akinaka Decl., Ex. A at 28-32. Amazon may "gather evidence to rebut the emotional distress claim," including evidence of Plaintiffs' condition "before and after" their Amazon employment. *Rugo*, 2017 WL 2623771, at *3 (quoting *Awosika*, 2011 WL 13048452, at *3). Plaintiffs' subsequent hiring, attendance, performance, and leave records will show whether the claimed injury affected their professional reputations and their later work. *See Abu v. Piramco Sea-Tac Inc.*, 2009 WL 279036, at *2 (W.D. Wash. Feb. 5, 2009); *Greenburg v. Red Robin Int'l, Inc.*, 2018 WL 2329671, at *2 (W.D. Wash. May 23, 2018) (allowing subpoenas to two subsequent employers for attendance and disciplinary records because the plaintiff alleged he "shortly ended both jobs because of mental health issues resulting from" the defendant's conduct, making those records relevant to his emotional-distress claim) (cited by Plaintiffs).

Plaintiffs' cited authorities turn on the absence of a specific showing of relevance considering the facts and claims at issue, not on any categorical bar to seeking subsequent employment records. *See Bolding*, 2020 WL 3605593, at *2 (denying request for subsequent employment records because hours worked at new employer were "an entirely collateral issue" in



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

a wage-and-hour action concerning hours plaintiff worked and were compensated by defendant); *Erwin v. OBI Seafoods LLC*, 2023 WL 4457153, at *2 (W.D. Wash. July 11, 2023) (finding mitigation records irrelevant where plaintiff agreed to drop economic damages claim); *Scott v. Multicare Health Sys.*, 2019 WL 1559211, at *2 (W.D. Wash. Apr. 10, 2019) (granting protective order where plaintiff's performance at subsequent job was not relevant to reasonableness of defendant's conduct); *Lerum v. Heritage-Crystal Clean, Inc.*, 2026 WL 81773, at *1 (W.D. Wash. Jan. 12, 2026) (modifying subsequent employer subpoenas because defendant's "broad" request to explore whether plaintiff sought accommodations with subsequent employers did not demonstrate specific relevance); *Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999) (finding post-termination performance irrelevant to management's state of mind when it terminated plaintiff). Here, by contrast, Amazon has identified numerous specific reasons that discovery from subsequent employers is relevant to Plaintiffs' claims and Amazon's defenses. The Court should permit this discovery.

**III. Consulting Firm Records Bear on Reasonableness of Mitigation Efforts.**

Plaintiffs concede that their consulting firms' income and finances are relevant. Mot. at 12. Plaintiffs thus take issue only with Amazon's third request, which seeks documents sufficient to show each Plaintiff's role and the services offered, including client proposals and contracts. But records of Plaintiffs' roles and responsibilities and the services they offered in their consulting firms demonstrate Plaintiffs' earning capacity, and bear on any harm to Plaintiffs' reputation, and the reasonableness of Plaintiffs' mitigation efforts, all of which Plaintiffs have placed at issue in this case. *See* FAC ¶¶ 216, 220, 245 & Prayer for Relief; Akinaka Decl., Exs. A-D.

"Self-employment can constitute employment for purposes of mitigating damages, as long as the self-employment was a reasonable alternative to finding other comparable employment." *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 438 (7th Cir. 1992) (collecting cases). Plaintiffs made the firms' pursuit of business their mitigation story: Wilmuth says her proposals did not convert to paid work, and despite obtaining a full-time position with Holistic AI, she later returned



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

to self-employment. *See* Akinaka Decl., Ex. B, Rogs. 11 & 15. On the other hand, Combs says her proposals produced several paid contracts, Akinaka Decl., Ex. D, Rog. 15, and while documents suggest an Artio client offered her a full-time salaried job, she has produced no documents demonstrating the terms of that offer, whether she accepted them, or the reasonableness of her decision. Whether Plaintiffs' efforts to secure contracts and employment were diligent, what services and rates were offered, what clients engaged the firms on what terms, and what opportunities were declined are relevant questions that are not answered by production of a profit-and-loss statement. *See Chinn v. Whidbey Pub. Hosp. Dist.*, 2021 WL 5447321, at *2 (W.D. Wash. Nov. 22, 2021) ("[T]he question is whether Plaintiff exercised reasonable diligence in seeking comparable employment when she decided to" open her own practice); *see also Rollins v. Traylor Bros., Inc.*, 2017 WL 1756576, at *5 (W.D. Wash. May 5, 2017) ("Defendants have an interest in finding evidence of other causes for Plaintiffs' alleged future impairment," such that they may seek compensation and performance records.).

Client confidentiality is not a basis for quashing the third-party subpoenas. The parties have agreed to a stipulated protective order, which allows Confidential and Attorney's Eyes Only designations. *See* Dkt. 55; *Awosika*, 2011 WL 13048452, at *4 (Plaintiff's "concern for her privacy may be addressed through the confidentiality provisions to which the parties have already agreed."); *accord Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 26 (D.D.C. 2011) ("The existence of a protective order weighs against quashing [a] subpoena on commercial information grounds."). Moreover, Rule 45(d)(3)(C) permits production "under specified conditions"; it does not preclude the production of otherwise relevant evidence. In any event, Plaintiffs have provided no basis for concluding that *all* responsive documents contain confidential or proprietary information and are subject to non-disclosure agreements, such that the entire request should be quashed.

Plaintiffs misconstrue the challenged request as demanding "the details of *every single contract* between Plaintiff's Consulting Firms" and *every* one of their clients. *See* Mot. at 13



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

(emphasis added). Amazon requests only "[d]ocuments *sufficient* to demonstrate the terms and conditions of [Plaintiff's] involvement with [Artio or Canary] and services offered by [Plaintiff] on [Artio's or Canary's] behalf." *See* Dkt. 191 at 53 (emphasis added). That request is narrowly tailored and aimed at documents that bear directly on Plaintiffs' claims and Amazon's defenses, such that this Court should allow their production.

**IV. Plaintiffs Have Not Demonstrated a Substantial Privacy Interest or Good Cause for a Protective Order.**

The relevance of the discovery Amazon seeks outweighs Plaintiffs' privacy interests in nondisclosure. Plaintiffs reduced their privacy interests in the employment records by initiating this lawsuit and placing their performance and experience, mitigation efforts, and emotional state at issue. *Smith*, 2022 WL 1194125, at *4; *Abu*, 2009 WL 279036, at *3 ("[P]laintiff may have waived some of her privacy interests by bringing this Title VII suit and seeking damages for emotional distress. Plaintiff could have reasonably expected that matters regarding her other employment and performance would be disclosed in this litigation."). Plaintiffs' remaining assertions of purported harm do not establish good cause for a protective order.

Plaintiffs' only specific allegation—that Plaintiffs have "reason to believe that several of their post-Amazon employers are not aware of the instant lawsuit" and that notification "is likely to negatively impact Plaintiffs' relationship with these employers"—applies only to Holistic AI and Wizards of the Coast and is insufficient to limit discovery. Schomer herself has told her managers and colleagues at Wizards of the Coast about this lawsuit, and Wizards of the Coast has since acknowledged receipt of Amazon's subpoena. Akinaka Decl. ¶ 9; Akinaka Decl., Ex. C, Rog. 1. Likewise, Wilmuth spoke about this lawsuit with her managers at Holistic AI, and nonetheless, she no longer works for Holistic AI. Akinaka Decl., Ex. B, Rogs. 1 & 11.[2] Plaintiffs

[2] Wilmuth was laid off by Holistic AI in December 2025 and started a new role recently. Akinaka Decl., Ex. B. Combs also appears to have started a new role. Akinaka Decl., Ex. E. Plaintiffs have not produced any documents related to these employment changes. Plaintiffs notified Amazon of Wilmuth's employment changes for the first time last week and have yet to notify Amazon of Combs's new role. *See* Akinaka Decl., Ex. B.



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

themselves have also publicized the lawsuit through interviews with Bloomberg, the Seattle Times, Fortune, Law360, and other outlets. *See* Akinaka, Ex. B, Rog. 1; Akinaka Decl., Ex. C, Rog. 1; Akinaka Decl. Ex., D, Rog. 1; *Abu*, 2009 WL 279036, at *3 (noting reduced privacy interest due to plaintiffs' own publication of lawsuit). In any event, a "plaintiff is statutorily protected from retaliation for filing the lawsuit," and Plaintiffs cannot make any particular showing that retaliation is likely to occur here. *Abu*, 2009 WL 279036, at *3. Accordingly, the concerns illustrated in Plaintiffs' cited authorities are not present. *See Scott*, 2019 WL 1559211, at *2; *Bolding*, 2020 WL 3605593, at *2.

No Plaintiff identifies anything embarrassing in her records or any other concrete consequence of production. Plaintiffs' only declaration comes from counsel, and it describes correspondence, not harm. *See* Dkt. 191. That is not enough. *See Walsh*, 2023 WL 3304216, at *5 (denying motion where plaintiff's "declaration does not state that she has experienced or anticipates experiencing any resulting embarrassment or other negative consequences"); *Awosika*, 2011 WL 13048452, at *1 (explaining that "a party seeking protection of her own employment records must assert how, specifically, she will be harmed by the discovery of those records."); *Abu*, 2009 WL 279036, at *3 (denying protective order where plaintiffs did not show records would reveal embarrassing information or that "defendant intends to use the discovery process or the contents of the files to harass plaintiff or his other employers").

Nor have Plaintiffs supplied any basis for barring Amazon from serving "further discovery or subpoenas" on any of the nine entities without prior leave "upon a showing of substantial need and good cause." Dkt. 190-1 ¶ 4(c). It is *Plaintiffs'* burden to demonstrate good cause, and Plaintiffs have not done so. Accordingly, this Court should deny Plaintiffs' Motion. *See Mooney v. Roller Bearing Co. of Am. Inc.*, 2021 WL 5299140, at *3-4 (W.D. Wash. Nov. 15, 2021) (denying motion to quash subpoena to prior employer where employment records were relevant to damages, mitigation, and credibility, and plaintiff's privacy interests were lessened because he had put his employment records at issue in the case and they could be protected by the protective



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

order).

**Conclusion**

For these reasons, the Court should deny Plaintiffs' Motion to Quash and for Protective Order in full.



**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Local Civil Rule 7(e)(6) Certification**

I certify that this memorandum contains 4,194 words, in compliance with the Local Civil Rules.

DATED: November 12, 2026

By: */s/ Carrie Akinaka*

Andrew E. Moriarty, Bar No. 28651
Juliana Bennington, Bar No. 60357
Carrie Akinaka, WSBA No. 62079
**Ashurst Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
AMoriarty@perkinscoie.com
JBennington@perkinscoie.com
Carrie.Akinaka@ashurstperkins.com

Jason C. Schwartz (*pro hac vice*)
Molly T. Senger (*pro hac vice*)
Matt Gregory (*pro hac vice*)
Alex Bruhn (*pro hac vice*)
**Gibson, Dunn & Crutcher LLP**
1700 M Street, N.W.
Washington, D.C. 20036-5306
Telephone: +1.202.955.8500
Facsimile: +1.202.467.0539
JSchwartz@gibsondunn.com
MSenger@gibsondunn.com
MGregory@gibsondunn.com
ABruhn@gibsondunn.com

Lauren Blas (*pro hac vice*)
**Gibson, Dunn & Crutcher LLP**
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: +1.213.229.7000
Facsimile: +1.213.229.7520
LBlas@gibsondunn.com

*Attorneys for Defendant Amazon.com, Inc.*