# Exhibit B

THE HONORABLE JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

CAROLINE WILMUTH, KATHERINE SCHOMER, And ERIN COMBS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.com, Inc.,

Defendant.

Case No. 2:23-CV-01774-JNW

**PLAINTIFF CAROLINE WILMUTH'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Caroline Wilmuth ("Plaintiff"), by and through her attorneys hereby submits the following second supplemental objections and responses to Defendant's First Set of Interrogatories, dated May 31, 2024.

## PRELIMINARY STATEMENT

All responses to the following Interrogatories are based on information currently known to Plaintiff and are provided without prejudice to Plaintiff's right to submit evidence of any subsequently discovered facts and information, should such become known. Plaintiff anticipates that as investigation and trial preparation continue, it is possible that additional facts may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiff. These objections and response are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

Plaintiff reserves all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Plaintiff objects to Defendant's "Definitions" and "Instructions" to the extent that Defendant seeks to impose obligations that go beyond the provisions and requirements of the



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

FRCP and the Local Civil Rules.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each Person with whom You have communicated Regarding this lawsuit, the subject matter of this lawsuit, or the allegations of the Complaint. For each such individual other than Your counsel in this Action, identify the form, general substance, and date of each such Communication as well as all methods used to communicate with these individuals.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or common interest privilege.

**RESPONSE:**

In addition to those individuals identified in Plaintiffs' Initial Disclosures, Dr. Wilmuth has also communicated with the following persons regarding this lawsuit or the allegations in the Amended Complaint:

1. Dr. Paula Arciaga, DO
   509 Olive Wy Suites 200 & 900
   Seattle, WA 98101
   (206) 860-4413

Dr. Paula Arciaga is the primary physician of Dr. Wilmuth. Dr. Wilmuth has spoken to Dr. Arciaga about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. Dr. Wilmuth's dates of treatment with Dr. Arciaga, during which she may have discussed the foregoing, include: July 20, 2021, October 4, 2021, April 19, 2022, July 25, 2022, August 29, 2022, November 11, 2022, January 3, 2023, February 21, 2023, March 14, 2023, May 25, 2023, June 8, 2023, November 15, 2023, December 4, 2023, February 15, 2024, February 29, 2024, and June 12, 2024.

On August 29, 2022, at an appointment in Dr. Arciaga's office, Dr. Wilmuth broke down

crying and shared with Dr. Arciaga that she was being discriminated against at work. Throughout 2023, Dr. Wilmuth let Dr. Arciaga know that she was pursuing legal action against the Company after experiencing further discrimination and retaliation and after Dr. Wilmuth's repeated attempts to address the inequity and discrimination were unsuccessful. In November 2023, Dr. Wilmuth informed Dr. Arciaga that she had filed a public lawsuit and sent the Seattle Times article about her lawsuit to Dr. Arciaga via the Polyclinic's internal messaging service.

2. Rachel Arnett
Contact through Plaintiffs' counsel

Rachel Arnett is a personal friend of Dr. Wilmuth. Dr. Wilmuth has spoken to Rachel Arnett about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. All conversations between Dr. Wilmuth and Ms. Arnett were over the phone, text, or occasionally in person, and included discussions about the lawsuit, underlying claims, and impact of the discrimination and retaliation to Dr. Wilmuth's mental health, physical health, and career.

3. Ashley Brown

Ashley Brown is a friend and former Amazon colleague of Dr. Wilmuth's. Dr. Wilmuth has spoken with Mr. Brown about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

4. Kelsey Butler

Kesley Butler is a reporter at Bloomberg. Dr. Wilmuth spoke to Ms. Butler on November 20, 2023, regarding the Complaint and the allegations therein, and then again on February 8, 2024, regarding the Amended Complaint and allegations contained therein. To the best of her recollection, Ms. Butler interviewed Dr. Wilmuth via a Zoom meeting.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

5. Darla Capetillo, PhD
904 7th Ave.
Seattle, WA 98104
Phone: (425) 339-5453

Darla Capetillo is a former therapist of Dr. Wilmuth's. Dr. Wilmuth had one conversation with Darla Capetillo on February 11, 2022, about the mental and physical distress caused by Amazon's conduct.

6. John Cipriani
Contact through Plaintiffs' counsel

John Cipriani is a colleague and friend of Dr. Wilmuth. Dr. Wilmuth has spoken to John Cipriani about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. Since Dr. Wilmuth's team was stripped from her and given to Mr. Burke, Mr. Cipriani's research firm has continued to support many of the programs that Dr. Wilmuth created by working with Mr. Burke's team. Conversations between Dr. Wilmuth and Mr. Cipriani about the underlying claims relevant to this lawsuit were over the phone or in person.

7. Mary Camarata

Mary Camarata is a former Amazon colleague of Dr. Wilmuth's, was her manager in her prior role at Holistic AI, and is now a mentor and personal friend. Dr. Wilmuth has spoken to Ms. Camarata about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

8. Amy Cisneroz

Any Cisneroz is a plaintiff in the related *Srinivas* action and proposed intervenor in this matter. Dr. Wilmuth has communicated with Ms. Cisneroz regarding the litigation. These communications are limited to LinkedIn messages.

9. Erin Combs

Erin Combs is a co-plaintiff, former colleague, and friend of Dr. Wilmuth. Dr. Wilmuth has spoken extensively to Ms. Combs about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have been both verbally and via email and text messages.

10. Caitlin Cordova

Caitlin Cordova is a plaintiff in the related *Srinivas* action, potential plaintiff in this matter, and a friend of Dr. Wilmuth's. Dr. Wilmuth has spoken with Ms. Cordova about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have primarily been verbal.

11. Matt Day

Matt Day is a reporter at Bloomberg. Dr. Wilmuth spoke to Mr. Day on November 20, 2023, regarding the Complaint and the allegations therein, and then again on February 8, 2024, regarding the Amended Complaint and allegations contained therein. To the best of her recollection, Mr. Day interviewed Dr. Wilmuth via a Zoom meeting.

12. Jason Del Ray

Jason Del Ray is a reporter at Fortune. Dr. Wilmuth spoke to Mr. Del Ray on March 8, 2024, regarding the lawsuit and the allegations therein. To the best of her recollection, Mr. Del Ray interviewed Dr. Wilmuth via a Zoom meeting.

13. Sally Fouts

Sally Fouts is an Amazon employee and former colleague of Dr. Wilmuth's. Ms. Fouts contacted Dr. Wilmuth in July 2026 and the two met up in person. During their conversation,



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Dr. Wilmuth and Ms. Fouts discussed their respective experiences at Amazon and the present lawsuit came up.

14. Latasha Gillespie

Latasha Gillespie is a former Amazon colleague. Dr. Wilmuth has spoken to Ms. Gillespie about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

15. Wendy Gillihan

Wendy Gillihan is a friend of Dr. Wilmuth's, who had her own experience with a discrimination lawsuit. Dr. Wilmuth has spoken to Ms. Gillihan about the lawsuit, the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, and/or the mental and physical distress caused by Amazon's conduct.

16. Bryce Hansen
Contact through Plaintiffs' counsel

Bryce Hansen is a mentor, former colleague and personal friend of Dr. Wilmuth. Dr. Wilmuth has spoken to Bryce Hansen about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, the negative impact to her career, and/or the lawsuit. All relevant conversations between Dr. Wilmuth and Mr. Hansen were over the phone or in person.

17. Daniel Kelley
Contact through Plaintiffs' counsel

Daniel Kelley is a mentor, former colleague, and personal friend of Dr. Wilmuth. Dr. Wilmuth has spoken to Daniel Kelley about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

caused by Amazon's conduct, the negative impact to her career, and/or the lawsuit. All relevant conversations between Dr. Wilmuth and Mr. Kelley were over the phone.

18. Lily Kim

Lily Kim is a personal friend and former Amazon colleague of Dr. Wilmuth's. Dr. Wilmuth has spoken with Ms. Kim about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

19. Tara Lamb, LMHC
7205 265th St NW
Stanwood, WA 98292
Phone: (360) 629-1500

Tara Lamb is a former therapist of Dr. Wilmuth. Dr. Wilmuth has spoken to Tara Lamb about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. Dr. Wilmuth's dates of treatment with Tara Lamb, during which she may have discussed the foregoing, include: November 21, 2022, December 29, 2022, January 18, 2023, February 8, 2023, and April 4, 2023. In the first conversation with Ms. Lamb on November 21, 2022, Dr. Wilmuth broke down sobbing within the first five minutes of the appointment regarding the hostile and retaliatory environment that she was in at work. All conversations between Dr. Wilmuth and Ms. Lamb were over the video conferencing service used by The Polyclinic and focused on the negative impact to her mental health of the discrimination and retaliation that Amazon subjected her to.

20. Katherine Lee

Katherine Lee is a former Amazon colleague and personal friend of Dr. Wilmuth. Dr. Wilmuth has spoken to Katherine Lee about the discriminatory and retaliatory conduct that

Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

21. Surya Menon
Contact through Plaintiffs' counsel

Surya Menon was a colleague of Dr. Wilmuth at Harvard Business School and has been a mentee of Dr. Wilmuth ever since. Dr. Wilmuth has spoken to Surya Menon about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. All conversations between Dr. Wilmuth and Ms. Menon were over the phone and focused on the underlying claims outlined in this lawsuit.

22. Christy Panico

Chirsty Panico is a former Amazon employee who reached out to Dr. Wilmuth after the lawsuit was filed. Dr. Wilmuth spoke to Ms. Panico about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

23. Nicholas Richard
Contact through Plaintiffs' counsel

Nicholas Richard was a colleague of Caroline Wilmuth at Harvard Business School and has been an occasional mentee of Dr. Wilmuth's since that time. Dr. Wilmuth spoke to Nicholas Richard once over the phone about this matter. The conversation focused on the underlying claims outlined in this lawsuit.

24. Lauren Rosenblatt
lrosenblatt@seattletimes.com

Lauren Rosenblatt is a reporter at the Seattle Times. Dr. Wilmuth spoke to Ms.

Rosenblatt on November 20, 2023, regarding the filed Complaint and the allegations therein. To the best of her recollection, Ms. Rosenblatt interviewed Dr. Wilmuth via a Zoom meeting.

25. Katherine Schomer

Kathrine Schomer is a co-plaintiff, colleague, and friend of Dr. Wilmuth. Dr. Wilmuth has spoken extensively to Ms. Schomer about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have been both verbally and via email and text messages.

26. Jennifer Schweinhard, LMHC, CMHS
498 NW 7th Avenue
Oak Harbor, WA 98277
(360) 672-2366

Jennifer Schweinhard is a former therapist of Dr. Wilmuth. Dr. Wilmuth has spoken to Jennifer Schweinhard about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. Dr. Wilmuth's dates of treatment with Jennifer Schweinhard, during which she may have discussed the foregoing, include: November 24, 2023, December 1, 2023, December 5, 2023, January 5, 2024, January 13, 2024, February 2, 2024, February 9, 2024, February 22, 2024, March 1, 2024, and April 26, 2024. All conversations between Dr. Wilmuth and Ms. Schweinhard have been over the video conferencing service used by BetterHelp.

27. Gayatri Srinivas

Gayatri Srinivas is a plaintiff in the related *Srinivas* action and proposed intervenor in this matter. Dr. Wilmuth has communicated with Ms. Srinivas regarding the litigation. These communications are limited to LinkedIn messages.

28. Courtney Vinopal

Dr. Vinopal is a reporter at HR Brew. Dr. Wilmuth spoke to Ms. Vinopal on November 27, 2023 and February 29, 2024, regarding the lawsuit and the allegations therein. To the best of her recollection, Ms. Vinopal interviewed Dr. Wilmuth via a Zoom meeting.

29. Abby Wargo

Dr. Wargo is a reporter at Law360. Dr. Wilmuth spoke to Ms. Wargo on November 20, 2023, regarding the filed Complaint and the allegations therein. To the best of her recollection, Ms. Wargo interviewed Dr. Wilmuth via a Zoom meeting.

30. Richard Wilmuth
Contact through Plaintiffs' counsel

Richard Wilmuth is Dr. Wilmuth's father. Dr. Wilmuth has spoken to Richard Wilmuth about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. All conversations between Dr. Wilmuth and her father were over the phone or in person and focused on the underlying claims outlined in this lawsuit, updates on major milestones related to the lawsuit (e.g., letting Mr. Wilmuth know that a public lawsuit would be filed the next day), as well as the negative impact to her as a person.

31. Cindy Wood Bacon

Cindy Wood Bacon is a former Amazon employee. Ms. Wood Bacon reached out Dr. Wilmuth on LinkedIn after the present lawsuit was filed. Dr. Wilmuth has spoken to her about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

32. Michael Zittel
Contact through Plaintiffs' counsel

Michael Zittel is a personal friend and former Amazon colleague of Dr. Wilmuth. Dr.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Wilmuth has spoken to Michael Zittel about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. Since Dr. Wilmuth's team was stripped from her and given to Mr. Burke, Mr. Zittel's research firm has continued to support many of the programs that Dr. Wilmuth created by working with Mr. Burke's team. All conversations between Dr. Wilmuth and Mr. Zittel were over the phone or in person.

33. Jordana Joseph
Jordanajosephtherapy@gmail.com
503-893-8335

Jordana Joseph is Dr. Wilmuth's current therapist, who she began seeing in March 2025. Dr. Wilmuth has spoken to Jordana Joseph about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

34. Stefan Mattsson
+46 70 396-7763

Stefan Mattsson and Dr. Wilmuth dated from August 2024 through October 2025. Dr. Wilmuth has spoken to Stefan Mattsson about the discriminatory and retaliatory conduct that Amazon subjected Dr. Wilmuth to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. All conversations between Dr. Wilmuth and Mr. Mattsson were over the phone or in person.

**INTERROGATORY NO. 2:** For each job code classification, promotion, or pay increase You allege You were denied because of employment discrimination by Amazon, please Identify the job code classification, promotion, or pay increase You were denied, Your qualifications, when You were denied, and who was responsible for denying You the job code classification, promotion, or pay increase.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it is overbroad, unduly burdensome, and seeks information already in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:**

Prior to joining Amazon, Dr. Wilmuth received a Bachelor's degree from UC Berkeley, a PhD from Harvard Business School, and research training from UC Berkeley, Stanford, NYU, Columbia, and Harvard. She has been published in some of the best peer-reviewed science journals in the world (e.g., Proceedings of the National Academy of Sciences, Journal of Applied Psychology), her research is the foundation of one of the top five most-watched TED talks of all time, and her research has been profiled by major media outlets such as the New York Times, Washington Post, BBC, the Today Show, Wall Street Journal, Forbes, Scientific American, Harvard Business Review, and NPR. She has personally conducted all aspects of hundreds of research projects, trained dozens of researchers on how to conduct research, and managed other researchers executing hundreds of research projects on her behalf/under her supervision.

Dr. Wilmuth started at Amazon in October 2017 as a General Marketing Manager on the Global Employer Brand team within People eXperience & Technology (PXT), where she led brand and marketing strategy for Amazon's central recruitment marketing/employer brand team. In May 2019, Dr. Wilmuth took on a research (non-marketing) role, when she created a research function within Global Corporate Affairs ("GCA") and became the first researcher within Worldwide Communications ("WWC"). Despite the substantial change in her role, Amazon failed to update Dr. Wilmuth's job code and continued to pay her as a General Marketing Manager, a lower-paid job code than was appropriate for the research work she was exclusively performing from May 2019 onward.

Over the next couple years, Dr. Wilmuth quickly grew and expanded what became the GCA Research & Strategy team from just herself to a team of 15 people in December 2022, and



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

in doing so also expanded the scope of her role until she was unquestionably performing an L8/Director role (to the point where Dr. Wilmuth was often mistaken for a Director and referred to as one by several other Directors). Indeed, when Dr. Wilmuth first began building the Research & Strategy team full-time in May 2019, Dr. Wilmuth's manager at the time, Ty Rogers (L8 Director at the time, L10 VP currently), told Dr. Wilmuth that the job of running the Research team was scoped as a Director-level role and he intended to hire someone externally to fill that position. Less than six months later, Mr. Rogers informed Dr. Wilmuth that her stellar performance had proven to him that she was the right person for that Director-level role and to lead the Research & Strategy team. He confirmed that he no longer had any plans to hire someone else for the role and it was only a matter of time before she would be promoted to Director. Dr. Wilmuth's subsequent manager, VP Christina Lee, recognized the same in August 2021 when she told Dr. Wilmuth that she was currently unquestionably performing a Director-level role and she could expect to be promoted to L8 in 2022 (an assertion repeated by Drew Herdener, SVP of Global Corporate Affairs in November 2021). Despite this, Amazon never promoted Dr. Wilmuth or corrected her job code, and instead continued to classify and pay her in an L7 marketing job code.

Notably, prior to Amazon removing the Research & Strategy team from her in December 2022, Dr. Wilmuth was the only researcher on her team *not* coded in a research job code (and the only person on her team with a Ph.D. coded in a lower compensation job code). Amazon's failure to properly code (and later level) Dr. Wilmuth's position beginning in May 2019 resulted in Amazon paying Dr. Wilmuth less than her male peers, and even paying her less than three of her male direct reports, despite her working as their manager.

This includes Amazon paying Alex Koeberle (an L6 Data Scientist) more than Dr. Wilmuth from the time he joined her team through at least March 2021. Similarly, Amazon paid Daniel Tamul (an L6 Research Scientist) more than Dr. Wilmuth from the time he joined the



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

GCA Research Team on July 6, 2020, until he left the team on December 26, 2021. Finally, Amazon paid another male direct report, Gouri Shankar Mishra (an L7 Research Scientist), more than Dr. Wilmuth during the entirety of his tenure on her team between June and December 2022. Upon information and belief, Amazon paid Dr. Mishra approximately $590,000 while paying Dr. Wilmuth – his manager – approximately $400,000.

Amazon also paid Dr. Wilmuth less than Jordan Burke, when they were both reporting to the same supervisor (Christina Lee) from January 2021 through December 2022. Notwithstanding the facts that they ran similar-sized teams (with overlapping subject matter), and Dr. Wilmuth has a higher level of education and more relevant experience than Mr. Burke (Dr. Wilmuth has a Ph.D. and had been at Amazon since 2017 compared to Mr. Burke's Bachelor's degree and 2021 hire). Nevertheless, Amazon hired Mr. Burke as an L8 in January 2021, while continuing to pay Dr. Wilmuth as an L7. This pay discrepancy continued even after Amazon began recognizing in August 2021 that Dr. Wilmuth was unquestionably performing an L8 role.

Beginning in November 2021, Dr. Wilmuth began raising concerns about her job code, pay, and level. During a one-on-one conversation with Ms. Lee that month, Dr. Wilmuth asked about being moved to a Research Scientist job code, as Amazon had not updated her job code and compensation since she left her previous marketing role two and a half years prior. During that same conversation, Dr. Wilmuth raised concerns about her male peer, Jordan Burke, treating her in an unprofessional and disrespectful manner, and told Ms. Lee that she had tried to address these concerns with Mr. Burke directly on multiple occasions, but the mistreatment had continued unabated. In response, Ms. Lee stated that she used to cry every day during her first year at Amazon, this is just the way Amazon is, and Dr. Wilmuth needed to learn to live with the treatment, or "maybe somebody else should run the GCA Research & Strategy team." Dr. Wilmuth understood this as a threat to remove the team she had founded, and spent the last



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

several years building, if she continued to raise concerns about her pay or gendered treatment. The following week, in their next one-on-one, Ms. Lee told Dr. Wilmuth that she was not ready to be promoted to Director (a reversal from two months prior), and specifically cited Dr. Wilmuth having raised concerns about Mr. Burke's mistreatment as an example of her "professional immaturity" and "poor stakeholder management skills." This hostile and retaliatory treatment from Ms. Lee had an immediate and significant negative impact on Dr. Wilmuth's mental health.

In the eyes of those not aware of Dr. Wilmuth's complaints, she was continuing to deliver high-quality work with immense impact on Amazon Worldwide Communications. This was recognized in March 2022, when she won the "One WWC" All-Star award, which is awarded to one individual each year who has served as the connective tissue across WWC.

Two months later, in May 2022, Dr. Wilmuth revisited the issue of a promotion and pay increase with Ms. Lee, who assured Dr. Wilmuth that her compensation would be increased as part of a Q3 promotion to L8 Director. And documentation shows that as of early July 2022, Ms. Lee was actively working on Dr. Wilmuth's promotion. Then on July 12th, 2022, Dr. Wilmuth again raised with Ms. Lee her strong concerns about Mr. Burke's treatment of herself and female members of her team, including Ms. Combs. Two days later, on July 14, 2022, Ms. Lee informed Dr. Wilmuth that her promotion and pay increase were being put on hold, purportedly because two of Dr. Wilmuth's subordinates with documented performance issues had raised concerns that she was "too controlling" in managing her team and did not trust them. Neither of these team members had ever raised concerns with Dr. Wilmuth directly. Indeed, this was the first instance that any of Dr. Wilmuth's direct reports had raised concerns about her leadership to anyone, including herself. Nevertheless, Dr. Wilmuth was not provided any opportunity to understand or react to the feedback, or provided any coaching, before having her promotion put



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

on hold. Ms. Lee also put Dr. Wilmuth through a 360 evaluation, which Ms. Lee later referred to as "a wind-up for the ER investigation" that followed thereafter.

In October 2022, Dr. Wilmuth began escalating her concerns that she (and other female researchers on her team) were being paid substantially less because they were coded in marketing job codes, while male researchers on her team were coded as Research Scientists, despite the fact that their roles entailed the same or substantially equal research work. She pointed out that there were four L7 researchers on her team at that time: herself, Dr. Schomer, Dr. Mishra, and Roxana Cosmaciuc. All three female researchers were classified in lower-paid job categories, while the only male researcher was classified in the higher paid Research Scientist job code. Further, when looking at all eight researchers on Dr. Wilmuth's team (not just L7s), five of the six women and both people of color were all in lower-paid job categories.

On November 2, 2022, Dr. Wilmuth spoke to Ms. Lee and HRBP Keith Johnson regarding the pay discrimination concerns raised by her and members of her team. Without prompting, Mr. Johnson made it clear that there would be no back pay for any of the lower-paid female researchers, and it was unlikely Amazon would increase their compensation to pay them similarly to their higher-compensated male research peers going forward. Dr. Wilmuth also filed formal complaints regarding gender discrimination with respect to her compensation on October 31, 2022, and November 3, 2022.

On December 1, 2022, Dr. Wilmuth again raised the topic of her promotion to an L8 Director role. Ms. Lee previously had told Dr. Wilmuth that her promotion was on hold until after a 360 assessment, which had concluded in September 2022. Then Mr. Herdener had told Dr. Wilmuth in October that unless the investigation into her management revealed any major concerns, Dr. Wilmuth's promotion would go forward in Q1 2023. But when Dr. Wilmuth revisited the issue in December, Ms. Lee stated that she understood Dr. Wilmuth had submitted claims to HR, and that because of complications from these newly submitted HR claims, Ms. Lee



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

would not consider Dr. Wilmuth for promotion in Q1 under any circumstances, regardless of the outcome of the investigation into her management style.

Not only did Amazon fail to correct Dr. Wilmuth's job code, pay her commensurate with her male peers (and direct reports), and fail to promote her to L8, it also demoted her in December 2022 (*see* Response to Interrogatory No. 9).

On January 11, 2023, the Employee Relations investigator assigned to investigate Dr. Wilmuth's pay discrimination claim, admitted that she was closing out the complaint, despite having done nothing to determine whether Dr. Wilmuth was improperly coded in a marketing job code while performing the work of a researcher, stating: "it's not my job to make an assessment of your role." Nevertheless, she found that Dr. Wilmuth could not compare her pay to Dr. Mishra's *precisely because* she is coded as a Marketer and he was coded as a Research Scientist (i.e., the entire basis for Dr. Wilmuth's claim).

At the time of her termination in March 2024, Amazon continued to incorrectly code and pay Dr. Wilmuth as an L7 marketing manager, despite her continuing to perform research in her demoted role in Amazon in the Community.

**INTERROGATORY NO. 3:** Describe in detail Your job duties for all positions You have held at Amazon.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it is overbroad, unduly burdensome, and seeks information already in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:** Dr. Wilmuth was employed at Amazon from October 2017 until March 2024, during which time she held multiple different roles with varying job duties.

In her first role, between October 2017 and May 2019, Dr. Wilmuth was on the Global Employer Brand team and initially reported to Christy Mommsen (L7 Head of Global Employer



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Brand). Dr. Wilmuth was moved under Bryce Hansen (L8 Director of Global Employer Brand, Internal Corporate Communications, and Corporate Events) when Global Employer Brand was moved from People eXperience & Technology to Worldwide Communications. Her skip-level while reporting to Ms. Mommsen was Chris [unknown last name] (L8), and her skip-level while reporting to Mr. Hansen was Drew Herdener (VP, L10 at the time and SVP, L11 currently). Dr. Wilmuth's original title was "General Marketing Manager, Global Employer Brand" within the larger "General Marketing" job code. On the Employer Brand team, Dr. Wilmuth was responsible for articulating Amazon's employee value proposition (EVP) and creating marketing campaigns that would attract top talent to Amazon. More specifically, Dr. Wilmuth:

- Built a new messaging architecture and tone of voice that was compelling and helped showcase what Amazon offers to employers and differentiates it from other employers;
- Created a brand book outlining all strategic marketing guidance for other Employer Brand teams across the company;
- Worked with internal and external designers to refresh Amazon's visual branding and create dozens of assets that met the needs of Employer Brand teams across the company; and
- Wrote a document outlining a pattern in employee experience data relevant to Employer Brand (e.g., Glassdoor data, Connections data), which revealed that women consistently reported having a more negative experience while working at Amazon than men did.

In May 2019, Dr. Wilmuth's began a new role as the Head of the Global Corporate Affairs (GCA) Research & Strategy team, which was a brand-new function/team that she was tasked with building due to her extensive research background and experience. Her title, job code, level, and compensation remained the same, however her functional job duties changed immensely. In this role she reported to Ty Rogers (L8, Director at the time; L10, VP currently) initially, and then later reported to Christina Lee (L10, VP), with Drew Herdener (L11, SVP) as



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

her skip-level in both instances. The Research & Strategy team did not exist prior to Dr. Wilmuth building it and her directive was to create a research team that served all of the research needs within Global Corporate Affairs, with a specific focus on serving the needs of leaders within Worldwide Communications (a subset of GCA). In this role, Dr. Wilmuth was responsible for:

- Identifying when and where conducting original research among customers, employees, policymakers, or opinion elites would support the strategic needs and decisions of senior leaders across GCA;
- Building out all aspects of these research projects, including selecting the right methods, building an effective, valid, and reliable research design, ensuring the right data collection process with the right target audience, appropriately analyzing and interpreting the data, and clearly communicating the findings to senior leaders across GCA and Amazon more broadly (e.g., Marketing, Consumer, Devices, People eXperience & Technology, Advertising);
- Creating clarity, illuminating pitfalls, identifying opportunities, and solving large and significantly complex problems with scientific innovation in the face of ambiguous and undefined circumstances that had significant business risk with potential for significant impact;
- Ensuring that the research conducted had a global remit (e.g., RepTracker, the team's core product, contained research conducted in 18 countries) and addressed all of the reputational priorities within GCA (e.g., employee compensation, employee working conditions, employee safety, sustainability, community impact, economic impact, data privacy, antitrust, executive communications, HQ1 local reputation strategy);
- Delivering research results and writing research documents that had a significant impact on senior leaders' strategic decisions, roadmaps, and resource allocation;



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

- Presenting research findings and recommendations to senior leaders within GCA and across Amazon more broadly, educating them about how research is conducted, what the limitations of research are, and how to effectively interpret and apply the findings to their strategic decisions;
- Building and managing a budget and resourcing plan to address GCA's research needs and ensure the right growth trajectory of the team year-over-year;
- Hiring, developing, and managing of a team of research scientists that had the relevant knowledge and capabilities to conduct original research;
- Hiring external research vendors to aid in data collection and to supplement the team's internal researcher headcount;
- Optimizing all aspects of the research process year-over-year and building the appropriate mechanisms;
- Participating in high-level planning discussions (e.g., OP1), business reviews, talent reviews, and compensation reviews;
- Elevating the scientific standard within the organization, ensuring the team was always producing high quality, valid, and reliable data through their research; and
- Keeping abreast of current research, techniques, methods, tools, and industry trends to ensure scientific excellence across the team.

In December 2022, Amazon removed Dr. Wilmuth as head of the Research & Strategy team, and the following month, in January 2023, Amazon moved Dr. Wilmuth to report to Tara Lubbers (L7, Head of the Fundamentals team within Amazon in the Community), with Alice Shobe (L8, Director of AITC) as her skip-level. Dr. Wilmuth remained in this role until March 2024 (except for two FMLA and short-term disability leaves in March-June 2023 and December 2023-January 2024) when her employment with Amazon was terminated. Dr. Wilmuth's job code and level remained the same in this new role, but her scope and overall compensation was



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

significantly reduced, and she lost all of her previous job responsibilities. This role was a significant demotion for Dr. Wilmuth as she was stripped from all of her leadership responsibilities, she went from leading a team of 15 people to being an individual contributor, she had 100% of the 19 projects under her purview removed from her, and she went from reporting to an L10 to reporting to an L7, with her skip level dropping from an L11 to an L8, thus ensuring she no longer had any pathway to promotion.

Dr. Wilmuth's responsibilities in this new role included identifying research opportunities to support the needs of the Amazon in the Community (AITC) team, with a focus on enabling the Volunteering team and supporting marketing campaigns that would increase awareness and engagement among internal and external audiences. In this role, Dr. Wilmuth built research projects, set higher research standards for the AITC organization, made recommendations for deprecating invalid research, and created a reading guide to aid AITC teams who were reading a book on varying work cultures across the globe. All of her projects were successful and well-received. However, each of these responsibilities was significantly below Dr. Wilmuth's prior job responsibilities, both as a strategic scientist and as the leader of a research team. In fact, multiple members of the AITC team stated that Dr. Wilmuth should be their manager and lead a centralized research team supporting AITC (as she had within Worldwide Communications), even going so far as to express genuine confusion as to why that was not happening. Despite this demoted role being focused on research, Dr. Wilmuth was still not paid as a research scientist. In comparison, a male researcher in the AITC org who does not have the relevant research experience or expertise that Dr. Wilmuth does (Pedrito Maynard-Zhang) was in a Research Scientist job category and thus was making more as an L6 than Dr. Wilmuth was as an L7 to do substantially similar work.

**INTERROGATORY NO. 4:** Describe all facts supporting Your allegation in Paragraph



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

212 of the Complaint that Amazon discriminated against You by "paying [You] less than [Your] male comparators who performed equal work requiring equal skill, effort, and responsibility, and which was performed under similar working conditions," including by Identifying the described male comparators and their positions, describing the allegedly equal work that You and Your male comparators performed, and detailing the compensation paid to You and the described males.

**OBJECTIONS:** Plaintiffs objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiffs further object to this Interrogatory as premature because Plaintiffs' investigation is ongoing and to the extent that Plaintiffs have sought from Defendant information in discovery directly related to the compensation paid to Dr. Wilmuth's male comparators.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows: Upon information and belief, Amazon paid Dr. Wilmuth less than several male peers and direct reports performing substantially equal or lesser work, including Jordan Burke, Gouri Shankar Mishra, Daniel Tamul, Alex Koeberle, and Wes Hays.

Jordan Burke: Amazon paid Dr. Wilmuth less than Jordan Burke, a male team lead reporting to the same supervisor (VP Christina Lee), from the day he was hired at Amazon and through the remainder of Dr. Wilmuth's tenure with Amazon. notwithstanding the fact that they both ran teams with overlapping subject matter (with Dr. Wilmuth's team conducting reputation research and Mr. Burke's team focusing on paid advertising campaigns). Dr. Wilmuth also has a higher level of education and more relevant experience than Mr. Burke (Dr. Wilmuth has a Ph.D. and started at Amazon in 2017 compared to Mr. Burke's Bachelor's degree and 2021 hire). Nevertheless, Amazon hired Mr. Burke as an L8 in January 2021, while continuing to pay Dr. Wilmuth as an L7. Further, Amazon recognized as early as August 2021 that Dr. Wilmuth was unquestionably performing an L8 role. For example, Ms. Lee told Dr. Wilmuth to expect to be



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

promoted to L8 in 2022 (an assertion repeated by Drew Herdener, SVP of Global Corporate Affairs in November 2021), but Amazon did not promote her.

Pay data produced in discovery shows Amazon paid Mr. Burke $652,00 between April 2021-March 2022, while paying Dr. Wilmuth $351,438 during the same time period. Similarly, Amazon paid Mr. Burke $643,000 between April 2022-March 2023, while paying Dr. Wilmuth $402,275 during the same time period. Finally, Amazon paid Mr. Burke $739,000 between April 2023-March 2024, while paying Dr. Wilmuth less than half that ($306,709) for the same time period.

Gouri Shankar Mishra: Amazon paid Dr. Mishra (who is an L7 Research Scientist) more than Dr. Wilmuth for the entirety of his tenure reporting to Dr. Wilmuth. Specifically, between June -December 2022, Amazon paid Dr. Mishra $591,000 while paying Dr. Wilmuth (his manager) approximately $400,000. Both Dr. Wilmuth and Dr. Mishra have PhDs and were both performing research requiring equal skill and effort on the same team, although Dr. Wilmuth had significantly more responsibility, as leader of the team. Indeed, prior to removing the Research & Strategy team from her leadership in December 2022, Dr. Wilmuth was the only researcher on her team *not* coded in a research job code (and the only person on her team with a Ph.D. coded in a lower compensation job code). Even after her team and all the projects under her purview had been removed in December 2022, Dr. Mishra continued to run the RepTracker program Dr. Wilmuth had originated and run for three years; but throughout his tenure Amazon paid him significantly more than Dr. Wilmuth to manage just one of the projects that had been under her purview.

Daniel Tamul: Amazon paid Dr. Wilmuth less than Dan Tamul (an L6 Research Scientist) while he was reporting to Dr. Wilmuth on the GCA Research & Strategy team from July 6, 2020 to December 26, 2021. Both Dr. Wilmuth and Dr. Tamul have PhDs and were performing research under the team's purview, but as leader of the team, Dr. Wilmuth's position



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

required greater skill, effort, and responsibility. Despite being a level below Dr. Wilmuth, in a role requiring lesser skill, effort, and responsibility, and having fewer years of relevant experience, Amazon paid Dr. Tamul $304,000, while paying Dr. Wilmuth (his manager) approximately $279,810 as an L7 General Marketing Manager. Indeed, prior to removing the Research & Strategy team from her leadership in December 2022, Dr. Wilmuth was the only researcher on her team *not* coded in a research job code (and the only person on her team with a Ph.D. coded in a lower compensation job code). Amazon continued to pay Dr. Tamul as a Research Scientist after he transferred to another team in 2022. Similarly, when he returned to the research team that Dr. Wilmuth originally had built but was being run by Mr. Burke in 2024, Amazon continued to pay him as a Research Scientist.

Alex Koeberle: Amazon paid Dr. Wilmuth less than Alex Koeberle (an L6 Research Scientist) for at least part of the time he was reporting to Dr. Wilmuth on the GCA Research & Strategy team in 2020 and 2021. Both Dr. Wilmuth and Mr. Koeberle performed research under the team's purview (along with several other researchers on the team, including Katherine Schomer, Gouri Shankar Mishra, and Roxana Cosmaciuc), but as leader of the team, Dr. Wilmuth's position required greater skill, effort, and responsibility. Despite being a level below Dr. Wilmuth, in a role requiring similar but lesser skill, effort, and responsibility, and having fewer years of relevant experience, Amazon paid Mr. Koeberle $310,000 between 2019-2021 as a Data Scientist, while paying Dr. Wilmuth approximately $205,006 between 2019-2020 and $279,810 between 2020-2021 as an L7 General Marketing Manager.

Wes Hays: Upon information and belief, Amazon paid Dr. Wilmuth less than Dr. Hays while she served as head of Head of the Research and Strategy team and he served as Head of Global Consumer Insights. Both were L7s leading core tracking projects (Dr. Wilmuth's RepTracker and Dr. Hays' brand tracker), which were nearly identical in terms of design, scope, and purpose. They even shared many of the same research items, with Dr. Wilmuth and Dr. Hays



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

both conducting many similar research efforts (e.g., they both led exploratory projects that overlapped in topics and requisite skills and expertise). Although the two tracker projects had slightly different internal stakeholders (Dr. Wilmuth's stakeholders were corporate reputation and communications leaders while Dr. Hays' stakeholders were marketing leaders), they both employed similar methodologies and goals and required similar skill sets and expertise. Dr. Wilmuth's former supervisor, Ms. Lee, explicitly compared Dr. Wilmuth's role to Dr. Hays' when discussing Dr. Wilmuth's potential promotion to L8, and asked Dr. Wilmuth to identify her higher-level responsibilities that distinguished her role from Dr. Hays' and justified L8 promotion.

It does not appear Amazon has produced pay data confirming the exact pay differential between Dr. Wilmuth and Dr. Hays.

The failure to correct Dr. Wilmuth's job code and level resulted in Amazon underpaying Dr. Wilmuth by hundreds of thousands of dollars. Dr. Wilmuth was paid $205,006 in 2019, $279,810 in 2020, and $351,438 in 2021. Based on her educational level (PhD) and remit, if Dr. Wilmuth were correctly classified as a researcher, she should be in a Research Scientist job category, which can pay more than double the salary Dr. Wilmuth was earning in the marketing job category. Specifically, upon information and belief, Dr. Wilmuth would have been earning at least $590,000 and potentially as high as $900,000 as an L7 Research Scientist, and at least $900,000 and potentially as much as $1,300,000 if she were an L8 Research Scientist.

**INTERROGATORY NO. 5:** Describe all facts supporting Your allegation in Paragraph 21 of the Complaint that "Amazon also tracks women, including Plaintiffs Wilmuth and Schomer, into lower paying job codes, while assigning men to higher paying adjacent job codes, resulting in female employees being cabined to lower paying work."

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows: Dr. Wilmuth is aware of numerous examples, in addition to herself, of Amazon placing women into lower paying job codes compared to their male peers performing the same or similar that Amazon work placed in higher paying job codes. This includes, but may not be limited to, the following:

<u>Katherine Schomer/ Gouri Shankar Mishra:</u> Ms. Schomer joined the Research and Strategy team, reporting to Dr. Wilmuth, in July 2022. While Ms. Schomer was coded as a "Senior Research Manager" within the Functional Marketing job code, her male peer, Gouri Shankar Mishra, was coded as a Research Scientist. Both Ms. Schomer and Dr. Mishra were L7 researchers on the same team reporting to the same manager, but Ms. Schomer's remit encompassed larger scope and responsibility, both in volume and complication; nevertheless, their differing job codes resulted in Amazon paying Dr. Mishra approximately 150% of Ms. Schomer's salary. Indeed, while the subject matter and complication of their respective research projects initially varied (with Ms. Schomer leading research on antitrust, the A-to-Z guarantee, small and medium business empowerment, and internal reputation tracking and Dr. Mishra solely leading external reputation tracking), after the "reorg" and Ms. Schomer's demotion in December 2022 in which she lost 10 of her 11 projects, her one remaining project was the Internal Reputation tracking survey. The scope and function of Ms. Schomer's Internal Reputation tracking survey and Dr. Mishra's External Reputation tracking survey was nearly identical, as were the skill, effort, and responsibility involved in managing those projects (a team member estimated 90%-95% overlap in their roles and responsibilities). Both the internal and external reputation tracking teams use surveys in the United States and other countries to track Amazon's reputation as an employer, though arguably, the internal reputation research owned by



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Ms. Schomer was even more difficult than the external research owned by Dr. Mishra. Both teams administer the surveys, gather the data in chart or graphs, and produce a report on our findings, however Dr. Mishra's work was supported with a large team of external vendors, while Ms. Schomer's work had nominal vendor support. The work of the two teams was so similar that Amazon begun combining the RepTracker report with the internal employee survey so that the external and internal reputation tracking surveys could be reviewed in tandem. With a Masters' degree, 25+ years or more years of research experience, and 17 research publications, Ms. Schomer more that met the general qualifications for the Research Scientist job code. Nevertheless, Amazon continued to pay Ms. Schomer substantially less than Dr. Mishra (and at an even bigger pay difference following the "reorg").

Katherine Schomer / Pushkar Raj: Prior to joining Dr. Wilmuth's team, Ms. Schomer worked on the Customer Experience and Business Trends ("CXBT" or "Benchmarking") team as a Principal Product Manager. Ms. Schomer worked side-by-side with her male colleague Pushkar Raj, with both Ms. Schomer and Mr. Raj performing the same job, leading research excellence together, and both possessing the same level of education. But Amazon coded Mr. Raj as a Research Scientist, rather than Product Manager, and upon information and belief, paid him more than Ms. Schomer despite being a level below her (L6 instead of L7).

Roxana Cosmaciuc / Gouri Shankar Mishra: Ms. Coscmaciuc previously worked at Amazon for almost six years, first from November 2014 to January 2020, and then again from August 2022 to June 2023. When she returned to Amazon in August 2022, she joined the GCA Research & Strategy team, reporting directly to Dr. Wilmuth. Ms. Coscmaciuc was one of several L7 employees leading strategic research projects on Dr. Wilmuth's team. The other L7 research leaders on the team included Dr. Wilmuth herself, Ms. Schomer, and Gouri Shankar Mishra. Although the topics of their individual research projects differed (Ms. Cosmaciuc led research on Amazon's reputation in sustainability, innovation, and community impact, while Ms.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Schomer led research on antitrust, A-to-z guarantee, small and medium business empowerment, and internal reputation tracking, and Dr. Mishra led external reputation tracking), their positions all required the same skills and responsibility. There is no doubt in Ms. Cosmaciuc's mind that she, Ms. Schomer, and Dr. Mishra all performed the substantially equal work (Dr. Mishra also believes they all had comparable levels of responsibility and were performing the same work). Despite this, Amazon placed Ms. Cosmaciuc in a non-technical marketing job code, while placing Dr. Mishra in a much higher-paid Research Scientist (tech) job code. Ms. Cosmaciuc believes Amazon intentionally moved the female L7 researchers from Dr. Wilmuth's team into smaller, diminished roles in December 2022 to make it easier to avoid addressing the pay inequity, as it would have been difficult for Amazon to justify the pay differential before this "reorg."

Suz Koch / Nick Boone-Lutz: Ms. Koch previously worked at Amazon for a total of eight years, from March 2015 to February 2023. She held several roles during her tenure at Amazon, including as a Senior Marketing Manager. In 2019, Ms. Koch and one of her male peers, Nick Boone-Lutz, were co-leading a project, with each of them handling 50% of the work. While this was Boone-Lutz's only project, Ms. Koch also had additional duties outside this project. Despite this, Amazon paid Ms. Koch less than Mr. Boone-Lutz for their work while co-leading the same project. This pay differential continued after they were both promoted from L6 to L7 because Amazon classified Boone-Lutz into the higher-paying Project Manager job code, while classifying Ms. Koch into the lower-paying Marketing Manager job code. When Ms. Koch had started at Amazon in 2015, she did perform a marketing role, but by that point in 2019, she spent over 50% of her time in project management. Ms. Koch was also a People Manager, managing a team of four direct reports (with another 30 fulfillment center associates having a dotted line into her team), while Boone-Lutz was an Individual Contributor with no reports. Nevertheless, Amazon paid Boone-Lutz more than Ms. Koch to perform substantially similar or lesser work.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Cody Wallace / Cameron Waterhouse: Amazon paid Cody Wallace less than her male peer, Cameron Waterhouse, for the same/equal work. Ms. Wallace and Mr. Waterhouse were both contractors with the GCA Marketing team, performing the same job. Amazon then hired them both as full-time employees but hired Mr. Waterhouse (male) at the L6 level in the Marketing job code, while hiring Cody (female) at the L5 level and the Program Manager job code (Program Managers are paid less than General Marketing).

Allison Heim / Dan Scarvalone: Ms. Heim is a former Amazon employee (L6) who, at the time of her separation in 2023, reported to Dan Scarvalone (L7), with Jordan Burke (L8) as her skip-level manager. In January 2023, Ms. Heim began complaining that job codes within Mr. Burke's organization, including Mr. Scarvalone's and that of Ms. Heim and other women on the team, was resulting in discriminatory pay inequities between men and women. Mr. Scarvalone informed Ms. Heim that Mr. Burke placed him in an (incorrect) and inflated job code, as a Principal Product Manager, specifically to meet his compensation needs, even though Mr. Scarvalone's team owned no product. Following Ms. Heim's complaints, Mr. Burke took steps to adjust Mr. Scarvalone's title from Principal Product Manager to Senior Manager, Product Management (which was still incorrectly coded) in order to further increase his compensation. But neither Mr. Burke or anyone else at Amazon took steps to correct Ms. Heim's job code. Similarly, Ana Rocca (L7), another direct report of Mr. Burke's, was in a nearly identical role in scope and responsibility to Mr. Scarvalone, yet she was not put into a technical job category as he was for quite some time. Thus, Mr. Scarvalone was paid more than Ms. Rocca, his female peer, for a significant amount of time, likely resulting in her receiving hundreds of thousands less in compensation than Mr. Scarvalone.

Katrina Symuleski / Unknown male comparator: Ms. Symuleski is the Head of Marketing, Growth & Customer Research within Alexa Enterprise. She is an L7 and coded in a non-tech job code. She has a male peer (name unknown) who is performing almost the exact



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

same work as her, but who is coded in a tech job code, and being paid hundreds of thousands of dollars more than her. There is so much overlap and similarity in Ms. Symuleski's work and that of her male peer that he often leverages Ms. Symuleski's work with his team. Ms. Symuleski has reported this pay discrepancy to Amazon's HR, but the Company has failed to correct it.

Dr. Wilmuth is also aware of numerous other women have also come forward who believe Defendant placed them in lower-pay job codes than their male peers, including for example Amy Cisneroz, Melissa Sharp, Caitlin Cordova, and Rachel Walker. *See Srinivas* FAC ¶¶ 113-122 (alleging Amazon paid Cisneroz less as a non-"tech"-classified Principal Product Manager than male peers performing substantially similar work in the higher-pay Principal Product Manager-Tech job code); *id.* ¶¶ 170-173 (alleging Amazon paid Sharp less as a Curriculum Developer than it did males in "tech-coded" positions, including Technical Curriculum Development Program Managers or Technical Curriculum Developers); *id.* ¶¶ 190-197, 212-213 (alleging Amazon paid Cordova less than male colleagues who were in tech-labeled positions).

**INTERROGATORY NO. 6:** Describe all facts supporting Your allegation in Paragraph 110 of the Complaint that You "have experienced discriminatory treatment at the hands of Jordan Burke," including identifying all instances of alleged discriminatory treatment, when and where it took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

Given the overlap between the reputation research conducted by Dr. Wilmuth's former team and Mr. Burke's paid advertising campaigns team, Dr. Wilmuth regularly had to work and interact with Mr. Burke in 2021 and 2022. During this time, Mr. Burke devalued and questioned



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Dr. Wilmuth's expertise and experience, undermined and marginalized her work and contributions (as well as that of her team), and spoke to her in in an unprofessional, disrespectful, condescending, and patronizing manner. While Dr. Wilmuth observed Mr. Burke speak to other women on her team (particularly Erin Combs) in a similar manner, Dr. Wilmuth never saw him speak to male colleagues this way. Similarly, when Mr. Burke travelled to Seattle, he would make a point to meet with male leaders and peers, but not Dr. Wilmuth or other female leaders. This discriminatory behavior was also called out by Christine Hoeger and Kate Brinks, both of whom raised concerns about Mr. Burke to Dr. Wilmuth prior to knowing that she herself was a victim of Mr. Burke's discriminatory treatment.

Beginning in July 2022, Mr. Burke started taking credit for Dr. Wilmuth's work and that of her team. For example, Dr. Wilmuth's and Mr. Burke's teams prepared a joint paper sharing the findings of career advancement research that had been conducted by their two teams. After the paper had been finalized, Mr. Burke removed Ms. Combs' name and that of the Research & Strategy team, and then circulated the joint paper to a wide group of Amazon stakeholders with only his team listed, deliberately concealing the contributions of Dr. Wilmuth's team. Dr. Wilmuth is not aware of any instance of Mr. Burke taking credit for male peers' work, but is aware of other instances of him doing this to other women (for example, Christine Hoeger raised concerns to Dr. Wilmuth about Mr. Burke taking credit for her team's work and attempting to take over portions of her remit). To the contrary, Mr. Burke often selects Dan Scarvalone, Dylan Green and Robert Wilson to present their work to leadership, Ms. Lee included. Mr. Burke routinely highlights successful accomplishments from men on his team, including Mr. Wilson, Joshua Werman, Benjamin Herson, Mr. Green, and Mr. Scarvalone.

Dr. Wilmuth also saw her role and responsibilities materially diminished in favor of enhancing Mr. Burke and his team. Despite Mr. Burke having no formal research training or education, and significantly less relevant experience than Dr. Wilmuth, Amazon enabled him to



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

take over large portions of her work. For example, RepTracker was the signature program on Dr. Wilmuth's team beginning in 2019, one component of which was measuring perception among "Opinion Elites." This was highly valuable data for Drew Herdener and other Amazon leaders. When Mr. Burke began building his campaign program in 2021, he began targeting "Opinion Elites" with advertising, and having his team (led by Dan Scarvalone) conduct research among their "Elite" audience, asking very similar questions to what was in RepTracker (i.e., favorability, perception of Amazon as an employer, etc.), and conducting qualitative research among "Opinion Elites." Mr. Burke and Mr. Scarvalone then distributed this research and data internally and positioned that their research and definition of "Opinion Elites" should be used instead of the one in RepTracker, despite there being no meaningful difference between the two "Opinion Elite" audiences being used by Mr. Burke and Dr. Wilmuth's teams.

Executive Communications was another body of work that Dr. Wilmuth was leading, involving highly sensitive research about Amazon CEOs (Jeff Bezos and Andy Jassy), and which she was working directly with Drew Herdener and a small select group of leaders on. Mr. Burke wanted to own this work also and added questions about Andy Jassy into his surveys in order to undercut the work Dr. Wilmuth had been asked to do. Notably, Executive Communications had nothing to do with paid campaign work and was a topical area far outside of Mr. Burke's remit. Mr. Burke ignored repeated verbal and email requests from Dr. Wilmuth to share the executive communications research that he was conducting with her and articulate why he was conducting research on this topic.

In addition to taking over and/or taking credit for Dr. Wilmuth's work and that of her team, Mr. Burke also worked to undermine Dr. Wilmuth. For example, Dr. Wilmuth and Ms. Schomer were leading "hyper local" research and strategy work (which like much of their remits, Mr. Burked wanted to own). In a meeting with two other WWC directors in or around November 2022, Wilmuth, Schomer, and Burke were discussing specific research that Dr.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Wilmuth and Schomer advised against doing. Instead of accepting this recommendation, Mr. Burke undercut Dr. Wilmuth and her influence by indicating he would have his team do the work (another instance of Mr. Burke actively trying to take Dr. Wilmuth's work).

Mr. Burke repeatedly ignored emails and verbal requests from Dr. Wilmuth to outline their team's respective scopes, which would have made it more difficult for Mr. Burke to inappropriately assume portions of Dr. Wilmuth's remit. Similarly, Mr. Burke ignored Dr. Wilmuth's and Ms. Combs' pleas to stop building projects that overlapped with their existing work, and refused to share with them what research he was conducting and why he was doing it on his own instead of collaborating with Dr. Wilmuth's research team (as was the expectation of every other leader and team in Worldwide Communications). When one of Dr. Wilmuth's team members reviewed a scoping document that she wrote with her team outlining the roles and responsibilities of her team vs. Mr. Burke's team, Mr. Burke instructed his team to ignore the document and said his team would continue to conduct whatever research they felt was appropriate for them to do.

Moreover, Mr. Burke branded half of his team as "Strategy & Insights," despite it being confusingly similar to Dr. Wilmuth's pre-existing "Research & Strategy" team. After Mr. Burke's first use of this branding, Dr. Wilmuth protested against it and called it out as inappropriate, misleading, and confusing. Mr. Burke then lied to Dr. Wilmuth and told her that he planned to never use that branding for his team again. Of course, Mr. Burke never stopped branding his team that way and has continued to use that branding to this day, both before and after the Research & Strategy team was stripped from Dr. Wilmuth. As someone who runs a marketing team, Mr. Burke understood the import of calling half of his team "Strategy & Insights" and did so to intentionally to assume portions of Dr. Wilmuth's remit and build a path to taking over her entire team.

Mr. Burke's efforts to undermine and take control of RepTracker, Executive



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Communications, and other projects (e.g., small and medium business research, and employee reputation research) were rewarded in December 2022, when Dr. Wilmuth's entire team and all of the projects under her purview were transferred to Mr. Burke. Even after Mr. Burke took control of Dr. Wilmuth's entire team and all of her remit, he continued to credit her ideas and work as his own. For some time, Dr. Wilmuth and her team had repeatedly - across multiple different projects and papers - called out that Amazon does not have messaging or proof points that combat the perception that Amazon is not a safe place to work and does not treat its employees with respect. Mr. Burke actively questioned and undercut those findings, and thus they were not acted upon. After Mr. Burke took over Dr. Wilmuth's team, however, he (and his team) presented research to Ms. Lee that Amazon's messaging is not effective in shifting perception about safety and treating employees with respect. Ms. Lee credited Mr. Burke, stating "this is a really big deal; this is an important finding." Neither Mr. Burke - nor anyone else on his team - pointed out that Dr. Wilmuth had written full papers about that exact point.

**INTERROGATORY NO. 7:** Describe all facts supporting Your allegation in Paragraph 118 of the Complaint that "Multiple other women who work with Mr. Burke have also raised concerns in the last year that he treats them differently because of their gender and/or race," including identifying the described women, the concerns they raised, when and where the alleged differential treatment of these women took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

Erin Combs: *See* Plaintiff Erin Combs' Second Supplemental Objections and Responses



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

to Defendant's First Set of Interrogatories for a description of Mr. Burke's discriminatory treatment toward Ms. Combs and the concerns she raised.

Katherine Schomer: *See* Plaintiff Katherine Schomer's Second Supplemental Objections and Responses to Defendant's First Set of Interrogatories for a description of Mr. Burke's discriminatory treatment toward Ms. Schomer and the concerns she raised.

Allison Heim: Ms. Heim is a former Amazon employee who reported to Mr. Burke. On January 3, 2023, Ms. Heim complained to her manager, Dan Scarvalone, that job codes within Mr. Burke's organization were incorrect, including Mr. Scarvalone's and that of Ms. Heim and other women on the team, which was resulting in discriminatory pay inequities between men and women on the team. Mr. Scarvalone informed Ms. Heim that Mr. Burke put him in an incorrect and inflated job category specifically to meet his compensation needs.

Later that month, Ms. Heim shared her concerns regarding pay inequality in Mr. Burke's organization with Ms. Schomer. Specifically, Ms. Heim disclosed that she had been reporting her concerns to Mr. Scarvalone, Mr. Burke, and Keith Johnson (HRBP) about pay and job code inequities between her and the male members on her team. Ms. Schomer in turn reported this to Amazon's Employee Relations, specifically an investigator named Alea O'Neal in early February 2023.

Ms. Heim subsequently filed formal complaints on February 6 and February 13, 2023, related to gender-based pay discrimination (including with respect to job codes), retaliation, and Mr. Burke's unethical handling of data. Ms. Heim communicated with Ms. Combs regarding her internal complaints in March 2023. Following Ms. Heim's complaints, Mr. Burke took steps to adjust Mr. Scarvalone's title from Principal Product Manager to Senior Manager, Product Management (which was still incorrectly coded) so he could remain highly compensated and in fact increase his compensation even further. Neither Mr. Burke nor anyone else at Amazon took steps to correct Ms. Heim's job code.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

On March 15, 2023, Amazon's Employee Relations informed Ms. Heim that in response to her discrimination and retaliation complaints, it had not found any violation of Amazon policy, while still acknowledging that job codes were being incorrectly applied within Ms. Heim's Organization. In May 2023, while Ms. Heim was out on approved and protected FMLA leave related to the discrimination and retaliation she had suffered, Amazon contacted Ms. Heim about separating from the Company and releasing her legal claims in exchange for severance.

Kendra Tappin: Kendra Tappin (a Black woman) is also a former Amazon employee who previously reported up into Mr. Burke. In 2023, Ms. Tappin reported to numerous members of Mr. Burke's team, including Ms. Combs, Ms. Heim, Ms. Schomer, and Jamal Scott, that Mr. Burke, Dan Scarvalone, and other males on the team were not receptive to her ideas, the men did not listen to her, they did not credit her work or ideas, and instead they criticized her work for unfair reasons that could not be supported by the research data. Ms. Tappin disclosed that she felt these men were treating her this way because of her gender and race. In or around June 2023, Ms. Tappin formally complained to Amazon's Human Resources. Shortly thereafter, Ms. Tappin was separated from Amazon.

Katie Ambrose: Ms. Ambrose was formerly an L7 on the Reputation Marketing and Insights Team within the Global Communications & Community Involvement (GCCI) organization (previously known as the "Paid Campaigns" team) led by Mr. Burke. Ms. Ambrose has reported that she believes there is a culture of gender discrimination that is rampant on Mr. Burke's team, and that herself and several other women on the team have been discriminated against because of their gender. She has stated that Mr. Burke's team has a pattern/practice of elevating men to leadership roles, whereas women with greater experience are passed over or shuffled down in the organizational structure and have their access to Mr. Burke removed or limited. For example, when Ms. Ambrose joined Mr. Burke's team in July 2023, she had 20 years of experience and had most recently been leading a three-person team at Amazon. Upon



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

joining Mr. Burke's team, she became a nested L7 position (a L7 reporting to one – and in her case- two - other L7s). Ms. Ambrose became one of five women reporting to Dylan Green, and four of whom (Ms. Ambrose, Ms. Combs, Bailey Sargent, and Kathy Lane) were L7s, and each of them has considerably more leadership and brand marketing experience than Mr. Green. Despite Mr. Green not having the experience necessary to lead that team, to Ms. Ambrose's knowledge, Mr. Burke never considered any of the female L7s for the leadership role.

Indeed, it is clear to Ms. Ambrose that Mr. Burke is more comfortable having men report to him. She has stated that Mr. Burke meets more frequently with the male members of his team, opportunities the female leaders are not provided. According to Ms. Ambrose, Mr. Burke also regularly assigns the L7 men on the team (Rob Wilson, Dylan Green, Josh Weirman, and Dan Scarvalone) to lead a bi-weekly meeting with senior leadership, while the L7 women on the team (including herself and formerly Ms. Combs and Ms. Schomer) are not given the same opportunity, with Ms. Ambrose estimating that more than 75% of Mr. Burke's bi-weekly meetings are led by men. Ms. Ambrose has opined that she does not believe Mr. Burke "cares about gender bias on his team," "[h]e allows it to flourish," and "it is hurting the women on his teams," whose careers have stalled.

During a team meeting on November 1, 2023, which included Ms. Ambrose's manager, Dylan Green, she spoke up about these concerns, referencing the optics of five women on the team (including herself and Ms. Combs) being subjected to gendered treatment, particularly at the hands of Rob Wilson. Ms. Ambrose described this gendered treatment as being enforced and demonstrated from the top down (i.e., Mr. Burke). Ms. Ambrose continued calling out the gender divide on the team, how she feels she is treated differently than men on the team, and how women are talked over and not listened to by the male leaders. She concluded that Mr. Burke does not care about diversity or inclusion on the team. Upon information and belief, Ms. Ambrose's comments were reported to Amazon's Employee Relations, which opened an



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

investigation into gender discrimination on Mr. Burke's team, and interviewed Ms. Ambrose (as well as Ms. Combs) about her experience. On or around December 6, Employee Relations closed out the investigation with no finding of any violation of Amazon policy or standards of conduct.

Alexis Skiles: Between May 2022 and December 2022, Ms. Skiles reported to Ms. Combs, with Dr. Wilmuth as her skip-level supervisor. In December 2022, Dr. Wilmuth's entire team, including Ms. Skiles, was moved under Mr. Burke. During her tenure on Mr. Burke's team, from December 2022 – June 2023, Ms. Skiles observed that Mr. Burke's entire senior level / leadership team is comprised of men, except for one woman (Ana Rocca). She described Mr. Burke's team as a "boy's club," observing that Mr. Burke was chummy with the male leaders on the team, while he frequently went around women on the team even to discuss projects they own, instead speaking to male supervisors or peers about their work.

In June 2023, Mr. Burke notified Ms. Skiles that she was being laid off. In an email to the team, Mr. Burke explained he was eliminating the Program Manager role on the team. Presumably, this would have encompassed the other PMs on Burke's team, including Cody Wallace (female), Cameron Waterhouse (male), and her manager, Josh Werman (male). But this was not the case. While Ms. Skiles and Ms. Wallace had their roles eliminated, Mr. Werman remained on the team and continues to perform the Operations work Ms. Skiles had been performing, and Mr. Waterhouse also kept his position on the team reporting to Rob Wilson. Thus, the only two Program Managers whose positions Mr. Burke "eliminated" were the two women, while the two male Program Managers kept their jobs. And just six months later, in December 2023, Mr. Wilson posted a new Program Manager role reporting to him (and Mr. Burke as skip-level), further undermining Mr. Burke's stated rationale and evidencing that he never eliminated the PM role for his team. Ms. Skiles believes she was pushed out in retaliation for vocally raising concerns about Mr. Burke's team.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Meg Coyle: Prior to her termination in early 2025, Meg Coyle reported to Rob Wilson, and Mr. Burke was her skip-level manager. Ms. Coyle raised concerns about Mr. Burke's refusal to communicate with her directly, instead filtering everything through Mr. Wilson, and using him as a messenger. Ms. Coyle repeatedly asked Mr. Burke: "Will you please communicate with me directly?" And during a Connections call for employee feedback last year, Ms. Coyle reported out to the team that even when Mr. Burke knows she owns a project, he will bypass her to speak to Mr. Wilson about her project. Ms. Coyle believes Mr. Burke is uncomfortable working with women, and commented on the number of L7 women across the team he has forced out, while retaining the L7 men. In the most recent example, Mr. Burke laid off two female L7s (Mr. Coyle and Bailey Sargent), while retaining two male L7s (Ben Herson and Josh Werman).

Christine Hoeger: Ms. Hoeger was a female peer of Mr. Burke, with both of them reporting to Christina Lee. Ms. Hoeger has reported to Dr. Wilmuth and others that she has experienced issues with Mr. Burke not collaborating with her team, not treating them with respect, and not deferring to her when it comes to her work leading the Social Media team. And when Ms. Hoeger's team partnered with Mr. Burke's on a research project, Mr. Burke's team edited research findings to be more favorable them and their ideas while undercutting Ms. Hoeger's ideas.

Linda Thomas: Ms. Thomas was a female peer of Mr. Burke, who previously reported to Ms. Lee until December 2021. Ms. Thomas has told Dr. Wilmuth (and others) that Mr. Burke mistreated her team and exhibited a pattern of taking credit for other people's ideas and work. Ms. Thomas left Amazon because of the "boys club" culture promoted by Drew Herdener, Mr. Burke, and others.

Brandi Daniel: Ms. Daniel is a Black female L6 who previously worked on Dr. Wilmuth's team and then on Mr. Burke's team. Ms. Daniel joined the GCA Research & Strategy team in August 2022, reporting directly to Ms. Schomer, and Dr. Schomer was her skip-level



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

supervisor. Within a couple weeks of joining the team, Ms. Daniel began raising concerns to Ms. Schomer about pay inequity because both Ms. Schomer's and Gouri Shankar Mishra's teams were performing research work on the same larger team, but their differing job codes (Ms. Daniel's role was coded as Functional Marketing) was resulting in vast pay differences. In addition, Ms. Daniel took over and repaired the work of a previous poor-performing Research Scientist on Dr. Wilmuth's team, Daria Bakina (white), whose work was of such inferior quality that Ms. Daniel spent several weeks repairing the data, so it could be analyzed. Thus, Amazon was paying Ms. Daniel less to clean up the mess than it paid the previous poor-performing, white Research Scientist who caused it. Dr. Wilmuth was responsive to the concerns about pay inequality that Ms. Schomer raised on behalf of herself and Ms. Daniels, and Dr. Wilmuth supported investigating new job codes for researchers on her team to ensure equal pay for equal work.

Before any changes could be made, however, Dr. Wilmuth's entire team was moved under Jordan Burke in December 2022. Ms. Daniel told Ms. Schomer (and others) that she remained improperly coded while on Mr. Burke's team, as she continued to perform research work while being paid for a marketing job code. Ms. Daniel has also told Ms. Combs, Ms. Schomer, Dr. Wilmuth, and others that she believes she - and others on Mr. Burke's team - were discriminated against by Mr. Burke on the basis of gender and race. After leaving Mr. Burke's team, Ms. Daniel moved into a research-coded role.

Roxana Cosmaciuc: Ms. Cosmaciuc is a female former employee of Amazon. Ms. Cosmaciuc worked at Amazon from November 2014 to January 2020, and then again from August 2022 to June 2023. When Ms. Cosmaciuc returned to Amazon in August 2022, she joined the Research & Strategy team within Amazon's GCA organization, which is part of WWC. In this role, Ms. Cosmaciuc reported directly to Dr. Wilmuth. While reporting to Dr. Wilmuth, Ms. Cosmaciuc, Mr. Shankar, and Ms. Schomer all performed the same or



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

substantially equal work and their positions all required the same or substantially equal skill, effort, and responsibility. Throughout Ms. Cosmaciuc's tenure in this role, she was classified in a non-technical marketing job code, despite leading a research team. Ms. Cosmaciuc earned substantially less than Mr. Shankar. Ms. Cosmaciuc has told Dr. Wilmuth (and others) that she was being paid less than Mr. Shankar, her male peer. At the end of 2022, when Amazon removed Dr. Wilmuth's entire team from her and transferred it under Mr. Burke, Ms. Cosmaciuc lost her direct reports, lost all of her projects, and was moved two levels down the reporting line. Mr. Shankar gained a direct report (Ms. Cosmaciuc's former report) and retained his major research project. In conversation with Ms. Combs, Dr. Wilmuth, Ms. Schomer and others, Ms. Cosmaciuc stated her belief that she and the rest of the L7 women from Dr. Wilmuth's team were discriminated and retaliated against based on gender. Ms. Cosmaciuc was interviewed by an Amazon investigator in early 2023 and told Amazon's investigator that all of the female L7s on Dr. Wilmuth's team had been demoted and lost responsibilities and reports in the reorganization, and that she believed the reorganization had been gendered and discriminatory.

Bailey Sargent: Ms. Sargent joined Mr. Burke's team (with him serving as her skip-level supervisor) in April 2023. She was originally asked to take a short-term assignment to cover the HQ1 campaign while Erin Combs was out on medical leave, but was converted to a full-time position in June 2023. During the remainder of 2023 and throughout 2024, Ms. Sargent (and other women on the team) vocalized several concerns about what she characterized as a hostile working environment and gender discrimination. Among the concerns Mr. Sargent raised was Mr. Burke not communicating with her directly (instead going through her manager), while going directly to Ms. Sargent's male colleagues (both peers and junior level) with questions regarding campaigns Ms. Sargent was leading. Similarly, Ms. Sargent experienced issues working with two of Mr. Burke's male direct reports, Rob Wilson and Dan Scarvalone, in which Wilson and Scarvalone treated Ms. Sargent in a hostile manner and would go around her to Mr.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Burke. Despite Ms. Sargent and several other women on the team raising concerns about working with Mr. Wilson, Mr. Burke failed to take any corrective action.

Mr. Burke also passed Ms. Sargent over for a role in favor of a less-qualified male, Chris Brown. Specifically, Amazon had hired Ms. Sargent for her experience in international campaign and policy work. When she transferred to Mr. Burke's team, Ms. Sargent discussed with him her desire to take on any international work if the team's scope expanded. When Mr. Burke subsequently opened a new role to lead international campaigns, he did not even provide Ms. Sargent with the opportunity to interview for the role, instead giving it to Mr. Brown, a male transfer from another team who lacked Ms. Sargent's qualifications.

One January 29, 2025, Mr. Burke notified Ms. Sargent that her role was being eliminated. By Ms. Sargent's count, she was one of at least 9-10 females (all L6s or L7s) that Mr. Burke terminated or forced out during her tenure on his team.

**INTERROGATORY NO. 8:** Describe all facts supporting Your allegation in Section D of the Complaint that "Plaintiffs have repeatedly raised concerns about gender discrimination, but Amazon has failed to remedy the problems," including detailing the concerns raised and the response, identifying the dates the concerns were raised, the method by which the concerns were raised, and to whom they were raised.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

Subject to and without waiving these objections, Dr. Wilmuth will respond with respect to the concerns she raised about gender discrimination and Amazon's failures to remedy such discrimination. For facts regarding other Plaintiffs' concerns about gender discrimination and



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Amazon's failures with respect thereto, *see* Plaintiff Erin Combs' Objections and Responses to Defendant's First Set of Interrogatories, and *see* Plaintiff Katherine Schomer's Objections and Responses to Defendant's First Set of Interrogatories.

**RESPONSE:**

Dr. Wilmuth began surfacing concerns regarding her pay and Mr. Burke's gendered treatment in November 2021. During a one-on-one conversation with her direct supervisor, VP Christina Lee, Dr. Wilmuth asked about being promoted to Director, and being moved to a Research Scientist job category, as Amazon had not updated her job code (and compensation) since she left her prior marketing role and began leading the GCA Research & Strategy team in May 2019. During that same conversation, Dr. Wilmuth raised concerns about Mr. Burke treating her with a lack of respect and told Ms. Lee that she had tried to address these concerns with Mr. Burke directly on multiple occasions, but the mistreatment had continued unabated. In response, Ms. Lee told Dr. Wilmuth that she (Ms. Lee) used to cry almost every day in her first year at Amazon because of how she was treated, but that is just the way Amazon is, and Dr. Wilmuth needed to learn to live with it.

The following week, in their next one-on-one, Ms. Lee told Dr. Wilmuth that she was not ready to be Director and cited Dr. Wilmuth raising concerns about Mr. Burke's mistreatment as an example of her "professional immaturity" and "poor stakeholder management skills." Ms. Lee went on to assign Dr. Wilmuth an executive coach and stated that that maybe somebody else should run the GCA Research & Strategy team. Dr. Wilmuth understood this as a threat to remove the team she had founded and the last several years building if she continued to raise concerns about her pay or Mr. Burke's mistreatment. Dr. Wilmuth reported both of these conversations to Teal Pennebaker, the Chief of Staff and Head of Business Operations and Technology for WWC, in a November 29, 2021, email. Ms. Pennebaker encouraged Dr.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Wilmuth to speak directly with SVP Drew Herdener about her concerns.

Dr. Wilmuth escalated her concerns to her skip-level supervisor, Mr. Herdener, who told Dr. Wilmuth that Ms. Lee was wrong, she did not have to put up with this kind of mistreatment, and that he would make sure Dr. Wilmuth's team was not removed from her. But over the next six months, nothing improved. In May 2022, Dr. Wilmuth broke down sobbing in the arms of Director Katie Curran, as she described how Mr. Burke continued to treat Dr. Wilmuth in a disrespectful manner, that Ms. Lee had threatened to take Dr. Wilmuth's team away after she notified Ms. Lee about Mr. Burke's hostile treatment, and that Amazon still had not promoted Dr. Wilmuth to Director or changed her job code to Research Scientist.

Soon thereafter, in May 2022, Dr. Wilmuth again spoke with Ms. Lee regarding the timeline for promotion to Director and increasing Dr. Wilmuth's compensation (given that Ms. Lee and Mr. Herdener had told her in August and November 2021 that she was unquestionably performing an L8 role). Ms. Lee told Dr. Wilmuth that her compensation would be increased along with her Q3 promotion, and as of early July, Ms. Lee was actively working on Dr. Wilmuth's promotion. Then, on July 12, 2022, Dr. Wilmuth again raised with Ms. Lee her strong concerns about Mr. Burke's treatment of herself and female members of her team, including Ms. Combs, and Lauren Edwards. Dr. Wilmuth detailed multiple instances where Mr. Burke had spoken to her in a condescending manner, minimized or dismissed the work of her team, and took credit for shared work product by removing Ms. Combs' name from their final product. That same day, Dr. Wilmuth met with Director Kelly Cheeseman, another L8 who previously reported to Ms. Lee in WWC, who volunteered that Mr. Burke's treatment of Dr. Wilmuth appeared "very gendered."

Two days later, on July 14, 2022, Ms. Lee informed Dr. Wilmuth that her promotion to Director and compensation increase was being put on hold, purportedly because two of Dr. Wilmuth's subordinates, with documented performance issues, had raised concerns that she was



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

"too controlling" in managing her team and did not trust them. Two months later, in mid-September 2022, Dr. Wilmuth discovered that Ms. Lee had rated her significantly lower (in some categories as much as 37% lower) than all of the other 23 reviewers in a 360 evaluation who did not know Dr. Wilmuth had raised concerns about her pay and Mr. Burke's treatment.

On September 9, 2022, Ms. Lee also notified Dr. Wilmuth that Employee Relations would be opening an investigation into Dr. Wilmuth (three months after her poor-performing employees had first raised concerns about her management style), and after previously telling Dr. Wilmuth there would be no investigation (though months later, in December 2022, Ms. Lee would state that the exploration into Dr. Wilmuth's management between July 2022 and September 2022 was "a wind-up for the ER investigation," indicating that this was Ms. Lee's plan all along and that the initial 360 exploration was in fact a fishing expedition). By this time, Dr. Wilmuth still had not been provided any opportunity to hear, understand, or respond to the concerns raised about her management style or been asked any questions about the complaining employees' performance issues or the HR-approved steps she had taken to address them. At this point, Dr. Wilmuth began escalating her concerns about disparate treatment and retaliation.

On September 13, 2022, Dr. Wilmuth reported to her skip-level supervisor, Mr. Herdener, that she was being held to a different standard as a woman, and specifically called out Ms. Lee's criticisms of her, "I'm a female science leader basically being told that I'm too aggressive." In a follow-up conversation with Mr. Herdener on September 29, 2022, Dr. Wilmuth pointed out that the connection between the employees' performance issues and their complaints about her management was not being considered, and instead Ms. Lee was using the concerns as an excuse to ignore Dr. Wilmuth's concerns about mistreatment toward herself and her team. Dr. Wilmuth similarly reported to Chuin Phang, Senior DEI Specialist in HR, on September 19, 2022, that she felt the way she was being treated by Mr. Burke and Ms. Lee was both gendered and retaliatory, noting "I don't want to be another female science leader pushed



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

out of this company."

Dr. Wilmuth continued to raise and/or escalate the concerns of her female subordinates about gender-based pay discrimination and disparate treatment throughout the fall of 2022. On September 20, 2022, Dr. Wilmuth again raised concerns to Ms. Lee regarding Mr. Burke's treatment of Ms. Combs. Ms. Lee acknowledged that Mr. Burke's behavior was not acceptable but failed to take any substantive action to put an end to it. A few weeks later, on October 13, 2022, Dr. Wilmuth escalated concerns Ms. Schomer had surfaced about the substantial pay discrepancies between the Marketing and Research Scientist roles on her team that entailed the same or substantially equal research work. Dr. Wilmuth followed up via email on October 17, 2022, expressing her shared concern about "the gender and racial divides . . . across the compensation levels and job categories on [her] team."

Dr. Wilmuth also pointed out on October 20, 2022, that she herself was a victim of the disparate compensation Amazon was paying male researchers on her team as compared to female researchers. Specifically, there were four L7 researchers on Dr. Wilmuth's team at that time: herself, Ms. Schomer, Dr. Mishra, and Roxana Cosmaciuc. All three female researchers were classified in lower-paid job categories, while the only male researcher was classified in the higher paid Research Scientist job code. Further, when looking at all eight researchers on Dr. Wilmuth's team (not just L7s), five of the six women and both people of color were all in lower-paid job categories.

Ms. Lee responded to Dr. Wilmuth, admitting there had "been a slow evolution" in "matching the appropriate classifications." This was a damning admission that Amazon had miscoded employee's jobs and failed to correct it. Slow is also an understatement; as Dr. Wilmuth pointed out the next day via email: "I have been in this role for over two years and all of the individuals we are referring to have been in researcher roles since they started at Amazon (whether they were hired by me or someone else), rather than them starting in communications



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

or marketing roles" (like Dr. Wilmuth had).

On November 2, 2022, Dr. Wilmuth spoke to Ms. Lee and HRBP Keith Johnson regarding the pay discrimination concerns raised by her, and members of her team. During that conversation, Ms. Lee stated "there's been a lot of these kinds of claims coming from your team." She and Mr. Johnson then proceeded to aggressively question Dr. Wilmuth about what conversations *she* was having with her team that was "leading" them to surface discrimination concerns. Mr. Johnson also made it clear that there would be no back pay for any of the lower-paid female researchers, and it was unlikely Amazon would increase their compensation to pay them similarly to their higher-compensated male research peers going forward.

Two days prior, on October 31, 2022, Dr. Wilmuth submitted a written complaint to senior HR official, Tonya Hallett. Dr. Wilmuth described how she had been subject to gender discrimination with respect to her compensation, the diminution of her role and responsibilities, and treatment she had endured from Mr. Burke. Given the hostile and aggressive tone of the November 2nd conversation with Ms. Lee and Mr. Johnson, the next day on November 3, Dr. Wilmuth took the extra step of submitting her EEO claim to EthicsPoint.

On November 7, 2022, Dr. Wilmuth met with her skip-level manager, Mr. Herdener. After informing him that she had submitted a formal claim of gender discrimination and retaliation related to Mr. Burke and Ms. Lee, Mr. Herdener responded by dismissing and minimizing Dr. Wilmuth's concerns. He told her multiple times these types of things often are just a personality clash, and sometimes people are just not a good fit. Dr. Wilmuth explained that she had been raising concerns on her own behalf and escalating the concerns of her female directs to Ms. Lee to no avail. Dr. Wilmuth appealed to Mr. Herdener for help, but he similarly refused to intervene. Instead, Mr. Herdener told Dr. Wilmuth that if this did not work out for her, then he hoped she could find another role at Amazon. Dr. Wilmuth understood then that no matter what the investigation into her discrimination and retaliation claims revealed, it would not



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

impact Mr. Burke's or Ms. Lee's roles; rather, she would likely lose her role that she had built from scratch and held for multiple years because she had complained about the discrimination she and others were experiencing.

Amazon then assigned the same ER investigator looking into the concerns regarding Dr. Wilmuth's management style to investigate her EEO complaint. Throughout November and December, Dr. Wilmuth continued pressing her EEO claims with the investigator, and also escalating Ms. Combs' and Ms. Schomer's discrimination concerns. On December 1, 2022, Dr. Wilmuth again raised the topic of her promotion to Director. Ms. Lee previously had told Dr. Wilmuth that her promotion was on hold until after the 360 assessment, which had concluded in September. Then Mr. Herdener had told her in October that unless the investigation into her management revealed any major concerns, Dr. Wilmuth's promotion would go forward in Q1 2023. But when Dr. Wilmuth revisited the issue in December, Ms. Lee stated that she understood Dr. Wilmuth had submitted claims of her own to HR, and that due to the delay this had caused in the months-long investigation into the concerns about her management (made back in June 2022), Ms. Lee would not (under any circumstances) consider Dr. Wilmuth for promotion in Q1. Even after the investigator confirmed the first investigation was already complete at this point.

On December 12, 2022, Amazon notified Dr. Wilmuth it was stripping her entire team from her, including all her direct reports and projects, and she would be moved into a yet-to-be-determined Individual Contributor role. Three days later, Dr. Wilmuth learned that Amazon was moving her entire team under Jordan Burke (the very individual Dr. Wilmuth had been complaining was discriminating against her), and in the process, all of her female executives on the team were also being demoted. On December 20, 2022, Dr. Wilmuth wrote to both the Employee Relations investigator and her skip-level manager, SVP Drew Herdener, calling out the gender division in the "reorg." Specifically, each of the senior women on team had their



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

remit and directs removed from them, while the only male senior research has his number of directs and compensation increase, and how this served to further increase the pay disparity that Dr. Wilmuth and Ms. Schomer had been complaining about. Finally, Dr. Wilmuth called out the retaliation at play, pointing out that each of hers, Dr. Schomer's, and Ms. Combs' demotions came shortly on the heels of complaining about gender and/or pay discrimination.

On January 11, 2023, Amazon informed Dr. Wilmuth that their investigation had found "zero trace of gendered treatment." With respect to Dr. Wilmuth's pay discrimination claim, the investigator admitted that she had done nothing to determine whether Dr. Wilmuth was improperly coded in a marketing job code while performing the work of a researcher, stating: "it's not my job to make an assessment of your role." Nevertheless, she found that Dr. Wilmuth could not compare her pay to the Male Comparator's *precisely because* she is coded as a Marketer and he was coded at a Research Scientist (i.e., the entire basis for Dr. Wilmuth's claim).

On February 1, 2023, the Employee Relations investigator assigned to Dr. Wilmuth's and Ms. Combs' discrimination and retaliation claims interviewed Ms. Schomer and Roxana Cosmaciuc. Both women stated the "reorg" was absolutely gendered and negatively and disproportionately impacted the female L7 leaders on the Research & Strategy team with the apparent intent to avoid addressing the pay inequity (Ms. Schomer also reported that the "reorg" was retaliatory.) When Dr. Mishra was interviewed, he similarly told the investigator that Wilmuth, Combs, Schomer, and Cosmaciuc were all harmed in the reorg and forced to report to people with less experience, while he gained a direct report (at Ms. Schomer's expense) in the reorg.

On March 1, 2023, the Employee Relations investigator assigned to Dr. Wilmuth's and Ms. Combs' discrimination and retaliation claims met with Ms. Combs, and admitted that, with respect to moving Dr. Wilmuth's team under Mr. Burke's, "on its face, it seems like there was a



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

disparate impact" on women and referenced the "optics of disparate impact" multiple times. By this point, at least five employees had raised concerns the "reorg" was "gendered" and "discriminatory," (Wilmuth, Schomer, Combs, Cosmaciuc, and Mishra), and Amazon's own investigator admitted the "optics of disparate treatment," but Amazon concluded there was *no* evidence of discrimination and failed to take any corrective action.

**INTERROGATORY NO. 9:** Describe all facts supporting Your allegation in Paragraph 168 that "Amazon removed Plaintiffs Wilmuth, Schomer, and Combs from their leadership roles, stripped their direct reports from them, removed the majority of their remits, and severely diminished their career paths after they repeatedly raised concerns about gender and pay discrimination," including by identifying the remits removed, the Person or Persons who removed the remits, how Your career path was diminished, and the Person or Persons who were responsible for diminishing Your career path.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

Subject to and without waiving these objections, Dr. Wilmuth will respond with respect to Amazon removing her leadership role, direct reports, and the majority of her remit, and the diminishment of her career path. For facts regarding Amazon removing other Plaintiffs from their leadership roles, stripping their direct reports, and the majority of their remits, and diminishing their respective career paths, *see* Plaintiff Erin Combs' Objections and Responses to Defendant's First Set of Interrogatories, and *see* Plaintiff Katherine Schomer's Objections and Responses to Defendant's First Set of Interrogatories.

**RESPONSE:**



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

On December 12, 2022, Ms. Lee informed Dr. Wilmuth that her entire 15-person team and all of her projects would be removed from under her purview, and she would no longer have any role on the GCA Research & Strategy team (that she founded and spent three and half years building). In stripping all of her reports from her, Amazon also demoted Dr. Wilmuth from a People Manager in a leadership role that was scoped at the L8 / Director level to an Individual Contributor with no leadership capacity or path to Director. Three days later, on December 15, 2022 (the "December 15 Reorg"), Dr. Wilmuth discovered that her entire team was moved under Mr. Burke (the very man she and Plaintiff Combs had been complaining was discriminating against them). Amazon's disparate treatment of Dr. Wilmuth compared to Mr. Burke is stark: while her promotion to L8 Director in the summer of 2022 was put on hold because of concerns regarding her "communication and management style" (before Amazon demoted her) and she was put under immense and undue scrutiny that defied Amazon's own internal policies, Amazon greatly expanded Mr. Burke's role and team in December 2022 while he was being actively investigated for gender discrimination against multiple female leaders.

In January 2023, Amazon moved Dr. Wilmuth to a supporting researcher role, reporting to Tara Lubbers (L7, Head of the Fundamentals team within Amazon in the Community), with Alice Shobe (L8, Director of AITC) as her skip-level. This role was a significant demotion for Dr. Wilmuth as she lost all leadership responsibilities, went from leading a team of 15 people to being an individual contributor, and had 100% of the 19 projects under her purview removed from her. She also went from reporting directly to an L10, with an L11 skip-level, to being a nested L7, with an L8 skip-level. Thus, Dr. Wilmuth went from performing a high-impact leadership role scoped at the Director-level to an Individual Contributor role with no direct reports, reporting to someone at her same level, thus ensuring she no longer had any pathway to promotion.

Amazon's discriminatory and retaliatory actions caused negative gossip about Dr.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Wilmuth to ensue. For example, Katie Ambrose heard individuals within the organization make statements along the lines of: "Did you hear that Caroline lost her whole team because she was a poor manager?" and "If I was her, I wouldn't come back from leave." This tarnished Dr. Wilmuth's reputation and further diminished her career path.

**INTERROGATORY NO. 10:** Describe all facts supporting Your allegation in Paragraph 178 that "Since returning from [Your] . . . medical leave[], Amazon has continued to discriminate and retaliate against [You]," including identifying the Person or Person who allegedly discriminated and retaliated against You, what they did to discriminate and retaliate against You, when and where that alleged discrimination and retaliation took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

Dr. Wilmuth took FMLA medical leave between March 16, 2023, and June 14, 2023. Upon Dr. Wilmuth's return to work from FMLA leave, Amazon HR shared information concerning her confidential EEO complaints with one of Dr. Wilmuth's co-workers. Specifically, Dr. Wilmuth was informed that before she joined AITC (following the removal of her team) HRBP Keith Johnson told Kailey Waring, Marketing Lead, "a new person is joining your team from a troubled situation" and "Amazon has the receipts on her." Another teammate told Dr. Wilmuth that Ms. Waring shared this information with other Amazon employees, further damaging her reputation. Upon information and belief, while Dr. Wilmuth was out on FMLA



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

leave, individuals on the team made comments such as, "If I was her, I wouldn't come back from leave." On Tuesday, October 3, 2023, Dr. Wilmuth submitted a claim to EthicsPoint detailing this information, and then emailed a summary to Tara Lubbers, Head of the AITC Fundamentals team.

On December 25, 2024, Dr. Wilmuth went out on short-term disability leave, duly approved by Amazon. On January 10, 2024, during Dr. Wilmuth's disability leave, she was called into a meeting with Ms. Lubbers and HRBP Christopher Royle. They informed Dr. Wilmuth that Amazon was terminating her employment due to role elimination.

**INTERROGATORY NO. 11:** Identify separately with respect to each element of damages that You seek to recover in this Action:

a. The amount of damages sought;

b. The party or parties against whom such damages are sought;

c. The basis upon which such damages are to be calculated;

d. Each Person believed by You to have knowledge relating to such calculation of damages; and

e. Each Document that relates to each such calculation of damages.

**OBJECTIONS:**

Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiff further objects to this Interrogatory to the extent it seeks a calculation of compensatory and punitive damages, neither of which are amenable to calculation or computation. With respect to each such category of damages, Dr. Wilmuth will seek from a jury the maximum amount amenable to proof at trial.

With regard to Dr. Wilmuth's economic losses, Plaintiff further objects to this



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Interrogatory insofar as her damages are ongoing and continue to increase. In addition, Plaintiffs objects to this Interrogatory to the extent that they are in the process of calculating her economic damages based on information received to date from Defendant in discovery.

**RESPONSE:** Subject to and without waiving these objections, Plaintiff Wilmuth responds that she is seeking the following damages, in each instance against Defendant Amazon.

(1) Wilmuth seeks back wages in an amount to be determined at trial based on differences between what Amazon actually paid her, and what it should have paid her if it had not discriminated and retaliated against her. This includes:

a. the difference between what she actually earned in total compensation (i.e., salary and stock awards, factoring in stock appreciation over time) while coded as a General Marketer Manager, and what she would have made, had Amazon correctly coded her position as that of a Research Scientist beginning in May 2019;

b. the difference between what Amazon paid her in total compensation as a L7 and what she would have earned in total compensation if she had been promoted and/or otherwise correctly leveled as an L8 beginning in Q3 2021 or, at the latest, Q1 2022; and

c. damages stemming from Amazon's retaliatory actions, including her reduced total compensation resulting from her lower-than warranted Forte rating for 2023, and lost wages and benefits resulting from her wrongful termination in March 2024.

(2) Wilmuth seeks an award of front pay in amount to be determined at trial to compensate her for the difference between what she will earn through any future employment and what she would have earned in total compensation, had Amazon compensated her equally as compared to her male peers, correctly coded and leveled



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

her job position, and not retaliated against her, including by terminating her employment.

(3) Wilmuth seeks an equity interest in the corporate entities in an amount to be determined at trial based on the stock she lost as a result of Amazon's discriminatory and retaliatory actions;

(4) Liquidated damages or statutory damages pursuant to the Washington Equal Pay and Opportunities Act, RCW 49.58.010 *et seq.* ("EPOA") and the federal Equal Pay Act;

(5) An amount to be determined at trial to compensate Wilmuth for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Wilmuth's emotional distress;

(6) An amount to be determined at trial to compensate Wilmuth for the harm to her professional and personal reputations and loss of career fulfillment;

(7) An award of punitive damages in an amount to be determined at trial;

(8) An award for Wilmuth's reasonable attorneys' fees and costs;

(9) An award of prejudgment and post-judgment interest, calculated at the legal rate under applicable law.

For calculation purposes, Plaintiff Wilmuth believes her actual total compensation was $205,006 in 2019; $279,810 in 2020; $351,438 in 2021; $402,275 in 2022; and $306,709 in 2023. Conversely, Plaintiff Wilmuth estimates, she would have been earning between $590,000-$900,000 in total compensation as an L7 Research Scientist, and between $900,00- $1,300,000 as an L8 Research Scientist. The exact pay differential will be determined after discovery is complete.

Following Dr. Wilmuth's termination, she was paid a total of $26,513 in unemployment insurance benefits over 26 weeks in 2024. In April 2025, Dr. Wilmuth secured a new position as Director of Marketing and Communications with Holistic AI, Inc., which paid $170,000 in

salary. Dr. Wilmuth's employment with Holistic AI was terminated on December 15, 2025, as part of ongoing company-wide layoffs. In total, Dr. Wilmuth earned $130,833.81 in taxable wages in 2025 from Holistic AI. Since her layoff, Dr. Wilmuth has received a total of $23,851 in unemployment insurance benefits.

**INTERROGATORY NO. 12:** Identify all administrative proceedings, litigations, and arbitrations, past or pending, in which You were involved either as a party or witness, including the parties involved, relevant allegations, and outcome(s).

**OBJECTIONS:** Plaintiff objects to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence, as it lacks any limitations on the temporal scope or subject matter.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows: Dr. Wilmuth was a witness in a criminal trial in 2004. Dr. Wilmuth, then 20 years old, had been the victim of a mugging while walking home one night in Berkely, California. Police caught the perpetrators, who had also mugged another victim earlier that same night, and each of the three men were prosecuted. Dr. Wilmuth testified at their criminal trial. To the best of her memory, all of the perpetrators had prior convictions and one or more of them were sentenced to jail time as a result of their crimes against Dr. Wilmuth and the other mugging victim.

**INTERROGATORY NO. 13:** Identify all educational programs, awards, club memberships, association memberships, director or officer positions, and any other positions You have completed, applied for, been nominated for, or received since graduating from high school.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence, including but not limited to the extent the temporal



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

scope dates back to high school, well over twenty years ago.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

Dr. Wilmuth attended UC Berkeley for undergrad. While an undergraduate student, Dr. Wilmuth obtained her first research role as a Research Assistant at the Ekman Emotions Lab at Stanford University. Dr. Wilmuth also became a Research Assistant and then the Lab Manager of Professor Robb Willer's social psychology research lab at UC Berkeley. She applied for and won the Greater Good Science Center's undergraduate research fellowship for her research on power dynamics and social cognition. She was also a Counselor, then Trainer, and then the President of UC Berkeley's Student-to-Student Peer Counseling Club, which provides free 1-on-1 psychological support to students in need. Dr. Wilmuth graduated from UC Berkeley with honors and a double major in sociology and psychology.

After graduating from UC Berkeley, Dr. Wilmuth moved to New York and became a Research Assistant at Columbia Business School and New York University, where she conducted research on power dynamics, stress, performance, and perceptions of organizational hierarchy. Dr. Wilmuth then applied to graduate school and was accepted to a PhD program that was a joint program between Harvard Business School and Harvard's Psychology Department.

While Dr. Wilmuth was a doctoral student at Harvard, she applied to be part of and was accepted to the Harvard Graduate Student Leadership Institute, a leadership development program hosted by Harvard's Kennedy School of Government. Dr. Wilmuth also applied to and was approved to supervise two undergraduate honors students, both of whom successfully completed their theses and graduated magna cum laude and summa cum laude, respectively. Dr. Wilmuth was also the teaching assistant for multiple psychology classes during her five years at Harvard and regularly received exemplary ratings from students for her teaching.

After graduating from Harvard (a year earlier than all other individuals in her program's



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

cohort), Dr. Wilmuth began working at American Express in New York. At American Express Dr. Wilmuth was accepted into a leadership program for high potential talent that came with significant senior leadership engagement and focused on strategic projects.

Dr. Wilmuth left American Express for Amazon in 2017 for a role on recruitment marketing/employer brand and moved to Seattle for the job. In 2019, Dr. Wilmuth founded the Research & Strategy team within Worldwide Communications. which she would grow from scratch into a team of 15 people over the next few years and was responsible for conducting high-impact research on all major reputational issues that would inform senior leaders' strategic decisions and resource allocations. In recognition of her high-quality work and immense impact on Amazon Worldwide Communications, Dr. Wilmuth won the "One WWC" All-Star award on March 18, 2022, which is awarded to one individual each year who has served as the connective tissue across WWC.

**INTERROGATORY NO. 14:** Identify all instances of gainful work or employment, including but not limited to jobs, independent contractor arrangements, and businesses owned or operated by You, that You have had since graduating from high school.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence to the extent that the temporal scope dates back to high school, well over twenty years ago.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows: Prior to joining Amazon, Dr. Wilmuth held various Research Assistant, Research Associate, or Lab Manager positions for social psychology research labs at UC Berkeley, Stanford, NYU, and Columbia Business School. In graduate school at Harvard, she was an honors thesis supervisor for two undergraduate students and a teaching assistant for several classes. Immediately after graduate school, Dr. Wilmuth was employed by American Express in



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

various talent strategy roles as part of an accelerated rotation program for high-potential leadership talent. The teams she worked on at American Express included Business Strategy Execution, Global Employer Brand, Global Talent Attraction, and People Tech & Internal Channels. At Amazon, Dr. Wilmuth held roles on Global Employer Brand, GCA Research & Strategy (for which she was the founder and leader), and Amazon in the Community (AITC) Fundamentals.

Following her termination from Amazon, Dr. Wilmuth spent time building an independent consulting business, Canary Research & Strategy, while also searching for full-time employee roles. In April 2025, Dr. Wilmuth secured a position as Director of Marketing and Communications with Holistic AI. She remained in that role until December 15, 2025, when her employment was terminated as part of ongoing company-wide layoffs. Since her layoff, Dr. Wilmuth has continued her search for full-time employment, while also performing executive-level pro bono strategic consulting for CoralMind, an AI safety nonprofit, which will help position the organization to secure funding that could convert her role into a paid position.

**INTERROGATORY NO. 15:** Identify all jobs for which You have applied, whether with Amazon or any other employer, since November 20, 2020, including the dates on which You applied to each, and describe the outcome of any such applications, including but not limited to whether You were extended an interview or offered a job.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, irrelevant, and harassing to the extent the temporal scope predates Dr. Wilmuth's termination and her efforts to mitigate her damages following her termination.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

Dr. Wilmuth did not apply for any jobs during her tenure at Amazon.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

Following her termination, Dr. Wilmuth initially focused on building her own business, Canary Research & Strategy, as an independent consultant, as she had not found any other roles similar to the one she had leading the Research & Strategy team. In support of her business venture, Dr. Wilmuth hired a business lawyer and business accountant, incorporated her business as an LLC and then an S-Corp, obtained a business license from the state of Washington and submitted her Beneficial Ownership Information Report (BOIR) filing, outlined her services and value proposition, wrote all of the messaging for a new business website hired a designer to build her website in collaboration with her, and worked with the designer to create a logo, business cards, letterhead, assets for a marketing campaign on LinkedIn, etc. In addition to building several online profiles, Dr. Wilmuth also submitted several proposals and presented pitches. She even provided some pro bono consulting services, but was unable to convert these to paid work.

For a while after receiving notice of her termination in January 2024, Dr. Wilmuth was regularly meeting twice a week for several hours with a former business development and innovation consultant to work on building her business. She was also meeting regularly with a career coach. Dr. Wilmuth similarly has met with mentors, career counselors, and other former colleagues approximately two dozen times since her termination to get feedback on how she is developing her business and services. She has also been attending professional networking events.

To keep up her skills and knowledge of the space, Dr. Wilmuth has also read multiple books related to her area of expertise and taken courses and lessons on generative AI to develop her knowledge of this space and how it will impact the research field.

Beginning in December 2024, Dr. Wilmuth shifted her focus from independent consulting work to applying for more full-time positions. She applied for at least 50 roles before securing a position with Holistic AI in April 2025. Since her layoff in December 2025, Dr. Wilmuth has applied for approximately 195 full-time positions, participated in multiple



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

interviews with FTI Consulting**,** and researched and/or contacted 43 executive search firms in both the United States and the United Kingdom. She has also maintained an active and continuous job search by regularly identifying and evaluating new employment opportunities; networking with recruiters, executive search professionals, founders, investors, former colleagues, and other senior leaders; seeking ongoing mentoring and career coaching; continuously updating her resume, CV, LinkedIn profile, and professional positioning; preparing for interviews and frequently asked questions arising during networking conversations; maintaining and expanding her expertise through professional development and AI skills development; performing executive-level pro bono strategic consulting for CoralMind, an AI safety nonprofit, while helping position the organization to secure funding that could convert her role into a paid position; and developing current case studies, strategic frameworks, and other work products demonstrating her continuing executive-level capabilities.

**INTERROGATORY NO. 16:** Identify all e-mail accounts, e-mail addresses, user names, handles, mobile devices, mobile device numbers, blogs, forums, cloud storage accounts, social media platforms or accounts, or the like, including but not limited to SMS message accounts, iMessage accounts, Facebook, Twitter, Instagram, WhatsApp, Snapchat, Vine, Pinterest, TikTok, Reddit, Google+, Dropbox, Google Drive, Apple iCloud, and Microsoft OneDrive, by which You have sent, received, shared, stored, posted or forwarded communications or content of any sort in any form (excluding private and privileged communications to or from counsel) concerning the allegations in the Complaint.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it includes information protected by the attorney-client privilege, work product doctrine, and/or common interest privilege. Plaintiffs further object to this Interrogatory as overly broad and not reasonably calculated to lead to admissible evidence.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

- Personal email address: caroline.wilmuth@gmail.com
- Cell phone: 510-393-7974
- LinkedIn account: https://www.linkedin.com/in/carolinewilmuth/
- WhatsApp account: 510-393-7974
- Dropbox drive: Protected from disclosure by attorney-client privilege, the work product doctrine, and common interest privilege.

**INTERROGATORY NO. 17:** Identify all electronic devices, removable media devices (including but not limited to USB drives, thumb drives, and external hard drives), in Your possession, custody or control that contain information related to Your employment, or have contained information related to Your employment at any time since November 20, 2020.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overly broad and not reasonably calculated to lead to admissible evidence.

**RESPONSE:** Subject to and without waiving these objections, Dr. Wilmuth responds as follows:

- Personal computer
- Cell phone
- Work laptop (now in Amazon's possession)

**INTERROGATORY NO. 18:** Identify any consultants or experts with whom You have spoken in connection with this Action.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it conflicts with applicable deadlines for identifying retained experts or producing expert reports.

**RESPONSE:** If and when Plaintiffs retain a testifying expert in this matter, Plaintiffs will



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104

comply with the Court's deadlines for disclosures related thereto.

DATED November 6, 2026.

**Bibiyan Law Group, P.C.**

By: */s/Cassandra W. Lenning*

Cassandra W. Lenning, WSBA No. 54336
Scott J. Aldworth, WSBA No. 60949
Adarsh N. Parthasarathy, WSBA No. 62319
Alexis E. Hanson, WSBA No. 64041
Madison Gunning, *Admitted Pro Hac Vice*
BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104-5119
Telephone: (206) 225-2043
Fax: (206) 225-2067
*clenning@tomorrowlaw.com*
*saldworth@tomorrowlaw.com*
*aparthasarathy@tomorrowlaw.com*
*ahanson@tomorrowlaw.com*
*mgunning@tomorrowlaw.com*

*Attorneys for Plaintiff*

**VERIFICATION**

I, Caroline Wilmuth, solemnly affirm, pursuant to the laws of the United States and the State of Washington, and under the penalty of perjury and upon personal knowledge, that the Answers to the foregoing eighteen interrogatories are true and correct.

By: *Caroline Wilmuth*
Caroline Wilmuth



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Avenue, 42nd Floor
Seattle, WA 98104