# Exhibit C

THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLINE WILMUTH, KATHERINE SCHOMER, And ERIN COMBS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.com, Inc.,<br><br>Defendant. | Case No. 2:23-CV-01774-JNW<br><br>PLAINTIFF KATHERINE SCHOMER'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES |



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Katherine Schomer ("Plaintiff"), by and through her attorneys, Outten & Golden LLP, hereby submits the following first supplemental objections and responses to Defendant's First Set of Interrogatories, dated May 31, 2024.

**PRELIMINARY STATEMENT**

All responses to the following Interrogatories are based on information currently known to Plaintiff and are provided without prejudice to Plaintiff's right to submit evidence of any subsequently discovered facts and information, should such become known. Plaintiff anticipates that as investigation and trial preparation continue, it is possible that additional facts may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiff. These objections and responses are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

Plaintiff reserves all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Plaintiff objects to Defendant's "Definitions" and "Instructions" to the extent that Defendant seeks to impose obligations that go beyond the provisions and requirements of the FRCP and the Local Civil Rules.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each Person with whom You have communicated regarding this lawsuit, the subject matter of this lawsuit, or the allegations of the Complaint. For each such individual other than Your counsel in this Action, identify the form, general substance, and date of each such Communication as well as all methods used to communicate with these individuals.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or common interest privilege.

**RESPONSE:** In addition to those individuals identified in Plaintiffs' Initial Disclosures, Ms. Schomer has also communicated with the following persons regarding this lawsuit or the allegations in the Amended Complaint:

1. Alyxx Berg
   Contact through Plaintiffs' counsel

Alyxx Berg is a close friend of Ms. Schomer. Ms. Schomer sees Ms. Berg about once a week in a friend group and has spoken to her mostly verbally and occasionally via text about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

2. Bart Boatright
   Contact through Plaintiffs' counsel



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Bart Boatright is a friend of Ms. Schomer. Ms. Schomer sees Mr. Boatright about once a week in a friend group and has spoken to him mostly verbally but occasionally by text about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

3. Peter Bortel
Contact through Plaintiffs' counsel

Peter Bortel is a family member of Ms. Schomer. Ms. Schomer has spoken to him briefly in verbal communication at a few family gatherings about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

4. Kelsey Butler

Kesley Butler is a reporter at Bloomberg. Ms. Schomer spoke to Ms. Butler on November 20, 2023 regarding the Complaint and the allegations therein, and then again on February 8, 2024 regarding the Amended Complaint and allegations contained therein. To the best of her recollection, Ms. Butler interviewed Ms. Schomer via a Zoom meeting.

5. Erin Combs

Erin Combs is a co-plaintiff, colleague, and friend of Ms. Schomer. Ms. Schomer has spoken extensively to Ms. Combs about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have been both verbally and via email and text messages.

6. Yen Connolly
Contact through Plaintiffs' counsel

Yen Connolly is a close friend of Ms. Schomer. Ms. Schomer has spoken to Ms. Connolly extensively both verbally and via text about the discriminatory and retaliatory conduct that



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

7. Matt Day

Matt Day is a reporter at Bloomberg. Ms. Schomer spoke to Mr. Day on November 20, 2023 regarding the Complaint and the allegations therein, and then again on February 8, 2024 regarding the Amended Complaint and allegations contained therein. To the best of her recollection, Mr. Day interviewed Ms. Schomer via a Zoom meeting.

8. Jason Del Ray

Jason Del Ray is a reporter at Fortune. Ms. Schomer spoke to Mr. Del Ray on March 8, 2024 regarding the lawsuit and the allegations therein. To the best of her recollection, Mr. Del Ray interviewed Ms. Schomer via a Zoom meeting.

9. Julie Dorschkind
Contact through Plaintiffs' counsel

Julie Dorschkind is a friend and former colleague of Ms. Schomer. Ms. Schomer has spoken to her briefly via text and phone about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

10. Tim Dun
Contact through Plaintiffs' counsel

Tim Dunn is a friend of Ms. Schomer. Ms. Schomer has spoken to him occasionally via text, phone, and verbally during a recent visit (early June 2023) about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

11. Jen Emira
Contact through Plaintiffs' counsel



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Jen Emira is one of Ms. Schomer's closest friends. Ms. Schomer has spoken to Ms. Emira extensively via text and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

12. Nick Feltser
Contact through Plaintiffs' counsel

Nick Feltser is a friend of Ms. Schomer. Ms. Schomer sees Mr. Feltser about once a week in a friend group and has spoken to him mostly verbally but occasionally by text about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

13. Mindy Fitzgerald
Contact through Plaintiffs' counsel

Mindy Fitzgerald is a friend and former colleague of Ms. Schomer. Ms. Schomer has spoken to her briefly via text and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

14. Frank Hagan
Contact through Plaintiffs' counsel

Frank Hagan is a family member of Ms. Schomer. Ms. Schomer has spoken to him about briefly and verbally at family gatherings the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

15. Michael Johnson
One Tower Bridge 100 Front Street, Suite 600
West Conshohocken, PA 19428
(610) 940-4613
NMLS #2347026
Michael.R.Johnson@morganstanley.com

Michael Johnson is the financial planner of Ms. Schomer. Ms. Schomer has spoken to him about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

16. Rebecca Kowals
Contact through Plaintiffs' counsel

Rebecca Kowals is a neighbor and friend of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

17. Dr. Christopher Kweon, M.D.
3800 Montlake Blvd NE
Box 354060
Seattle, WA 98195
(206) 520-5000

Dr. Christopher Kweon is an orthopedic surgeon and treating physician of Ms. Schomer. Ms. Schomer has spoken to him briefly and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the lawsuit, and particularly how the mental and physical distress caused by Amazon's conduct was affecting her

ability to heal while he was treating her for a life-threatening bone marrow infection (Osteomyelitis).

18. William Lee
Contact through Plaintiffs' counsel

William Lee is a friend of Ms. Schomer. Ms. Schomer sees Mr. Lee about once a week in a friend group and has spoken to him mostly verbally but occasionally by text about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

19. Dr. Elizabeth Luengas

Dr. Elizabeth Luengas is an infectious disease physician and treating Ms. Schomer. Ms. Schomer has spoken to her briefly and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the lawsuit, and particularly how the mental and physical distress caused by Amazon's conduct was affecting her ability to heal while she was treating Ms. Schomer for a life-threatening bone marrow infection (Osteomyelitis).

20. Elizabeth Larter
Contact through Plaintiffs' counsel

Elizabeth Larter is a former colleague and friend to Ms. Schomer. After Ms. Schomer's termination at Amazon in May 2024, she reached out to Ms. Larter to be a reference for her job applications. They met in-person on June 14, 2024, and Ms. Schomer spoke to her about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

21. Pam Macfetridge
Contact through Plaintiffs' counsel

Pam Macfetridge is a neighbor and friend of Ms. Schomer. Ms. Schomer has spoken to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

her occasionally via text and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

22. Dr. Lisa Maier, M.D.
4225 Roosevelt Way NE
Seattle, WA 98105
(206) 598-4067

Dr. Lisa Maier is a treating physician of Ms. Schomer. Ms. Schomer may have spoken to her about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

23. Bryna McCollum, PA-C
314 NE Thornton Place
Seattle, WA 98125
(206) 528-8000

Bryna McCollum is the primary treating physician assistant of Ms. Schomer. Ms. Schomer has spoken to her verbally in her appointments with Ms. McCollum about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment and the lawsuit, but has particularly and extensively spoken about the mental and physical distress caused by Amazon's conduct including Ms. McCollum's recommendation to take FLMA leave.

24. Chi Nguyen
Contact through Plaintiffs' counsel

Chi Nguyen is a friend and hair stylist of Ms. Schomer. Ms. Schomer has spoken to Nguyen briefly and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

25. Kerry Nunn
Contact through Plaintiffs' counsel

Kerry Nunn is a friend of Ms. Schomer. Ms. Schomer has spoken to her occasionally and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

26. Trisha Pascale
Contact through Plaintiffs' counsel

Trisha Pascale is a former work colleague of Ms. Schomer. Ms. Schomer has spoken to her briefly via LinkedIn about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

27. David Rehmer
Contact through Plaintiffs' counsel

David Rehmer is a family member of Ms. Schomer. Ms. Schomer has spoken to him briefly and verbally at family gatherings about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. Mr. Rehmer passed away in August of 2024.

28. Christy Robinson
Contact through Plaintiffs' counsel

Christy Robinson is a family member of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text and verbally at family gatherings about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

29. Jeremy Robinson
Contact through Plaintiffs' counsel

Jeremy Robinson is Ms. Schomer's husband. Ms. Schomer has spoken to him extensively about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the lawsuit, and particularly about the mental and physical distress caused by Amazon's conduct.

30. Laura Robinson
Contact through Plaintiffs' counsel

Lisa Robinson is a family member of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text (1 time in-person) about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

31. Oliver Robinson
Contact through Plaintiffs' counsel

Oliver Robinson is Ms. Schomer's son. Ms. Schomer has spoken to him regularly about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

32. Owen Robinson
Contact through Plaintiffs' counsel

Owen Robinson is Ms. Schomer's son. Ms. Schomer has spoken to him regularly about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

33. Roxlyn Robinson
Contact through Plaintiffs' counsel



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Roxlyn Robinson is a family member of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text but mostly verbally via phone/in-person about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

34. Max Rose
Contact through Plaintiffs' counsel

Max Rose is a neighbor and friend of Ms. Schomer. Ms. Schomer has spoken to him occasionally and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

35. Lauren Rosenblatt
lrosenblatt@seattletimes.com

Lauren Rosenblatt is a reporter at the Seattle Times. Ms. Schomer spoke to Ms. Rosenblatt on November 20, 2023 regarding the filed Complaint and the allegations therein. To the best of her recollection, Ms. Rosenblatt interviewed Ms. Schomer via a Zoom meeting.

36. Audrey Schomer
Contact through Plaintiffs' counsel

Audrey Schomer is a family member of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text and via phone about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

37. James M. Schomer
Contact through Plaintiffs' counsel

James M. Schomer is Ms. Schomer's father. Ms. Schomer has spoken to him extensively

via phone and in-person about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

38. Kevin Schomer
Contact through Plaintiffs' counsel

Kevin Schomer is a family member of Ms. Schomer. Ms. Schomer has spoken to him occasionally via text and phone about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

39. Rebecca Schomer
Contact through Plaintiffs' counsel

Rebecca Schomer is Ms. Schomer's mother. Ms. Schomer has spoken to her extensively and regularly via text, phone, and in-person about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

40. Shawn M. Schomer
Contact through Plaintiffs' counsel

Shawn M. Schomer is Ms. Schomer's brother. Ms. Schomer has spoken to him occasionally via phone and text about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

41. Patrice Stankovich
Contact through Plaintiffs' counsel



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Patrice Stankovich is a friend and former graduate school colleague of Ms. Schomer. Ms. Stanovich is currently working in the Ukraine, and in November 2022, she reached out to Ms. Schomer via Facebook Messenger to confirm she was the person referenced in media publications announcing the lawsuit. Ms. Schomer confirmed she was one of the plaintiff's mentioned in the media story.

42. Kerri Thacker Lovell
Contact through Plaintiffs' counsel

Kerri Thacker Lovell is a close family member and friend of Ms. Schomer. Ms. Schomer has spoken to her occasionally via Facebook messenger about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

43. Gwynn Thomas
Contact through Plaintiffs' counsel

Gwynn Thomas is a friend of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text, phone, and verbally during her recent visit (early June 2023) about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

44. Jennifer Thomsen
Contact through Plaintiffs' counsel

Jennifer Thomsen is a friend of Ms. Schomer. Ms. Schomer has spoken to her occasionally via text, phone, and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

45. Lavinia Touchton
Contact through Plaintiffs' counsel



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Lavinia Touchton is one of Ms. Schomer's closest friends. Ms. Schomer has spoken to her extensively via text, phone, and verbally about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the lawsuit, and particularly the mental and physical distress caused by Amazon's conduct.

46. Courtney Vinopal

Ms. Vinopal is a reporter at HR Brew. Ms. Schomer spoke to Ms. Vinopal on November 27, 2023 and February 29, 2024 regarding the lawsuit and the allegations therein. To the best of her recollection, Ms. Vinopal interviewed Ms. Wilmuth via a Zoom meeting.

47. Abby Wargo

Ms. Wargo is a reporter at Law360. Ms. Schomer spoke to Ms. Wargo on November 20, 2023 regarding the filed Complaint and the allegations therein. To the best of her recollection, Ms. Wargo interviewed Ms. Schomer via a Zoom meeting.

48. Karen Weiss

Ms. Weiss is a reporter at the New York Times. Ms. Schomer exchanged one message on November 17, 2022 with Ms. Weiss about the filed Complaint.

49. Kimbra Wellock
Contact through Plaintiffs' counsel

Kimbra Wellock is a former colleague of Ms. Schomer. Ms. Schomer has spoken to her briefly via LinkedIn about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

50. Eric Willsey
Clothier & Willsey, LLC
1000 Second Ave Suite 1560
Seattle, WA 98122
(206) 805-3000

Eric Willsey is the tax accountant for Ms. Schomer. Ms. Schomer has spoken to him one time on October 30,2023 about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

51. Caroline Wilmuth

Caroline Wilmuth is a co-plaintiff, colleague, and friend of Ms. Schomer. Ms. Schomer has spoken extensively to Ms. Wilmuth about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have been both verbally (including phone) and via email and text messages.

52. Joseph Winston
Contact through Plaintiffs' counsel

Joseph Winston is a friend of Ms. Schomer. Ms. Schomer sees Mr. Winston about once a week in a friend group and has spoken to him briefly mostly verbally but occasionally by text about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

53. Charles Wright Jr.
Contact through Plaintiffs' counsel

Charles Wright Jr. is a former work colleague of Ms. Schomer. Ms. Schomer has spoken to him briefly in a few meetings regarding a volunteer opportunity from August 2023 to January 2024 about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

54. Iman Yunis, DNP, ARNP, PMHNP-BC
Mindful Therapy Group
101 Elliott Ave W, Suite 500
Seattle, WA 98119
(206) 483-0730

Iman Yunis is the treating therapist and psychiatrist of Ms. Schomer. Ms. Schomer has spoken to her extensively via online and regular appointments from May 2023 to January 2023 about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the lawsuit, and particularly the mental and physical distress caused by Amazon's conduct.

55. Michael Zittel
Contact through Plaintiffs' counsel

Michael Zittel is a friend and colleague of Ms. Schomer. Ms. Schomer has spoken to him briefly in a few phone conversations about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

56. Kallie Kurtz, MSW
PEAK Psychological Wellness
3245 Fairview Ave E
Seattle, WA 98102
(206) 552-8491

Kallie Kurtz is Ms. Schomer's current therapist. Ms. Schomer has spoken to Kallie Kurtz about the discriminatory and retaliatory conduct that Amazon subjected Ms. Schomer to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

57. Anna Dearbury

Anna Dearbury is Ms. Schomer's current manager at Wizards of the Coast. Ms. Schomer briefly spoke with Ms. Dearbury in a phone conversation to inform her of the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

58. Lindsey Harris
Contact through Plaintiffs' counsel

Lindsey Harris is a colleague of Ms. Schomer at Wizard of the Coast. Ms. Schomer has spoken to Ms. Harris briefly in an in-person conversation about the lawsuit.

59. Amanda Litchkowski
Contact through Plaintiffs' counsel

Amanda is a colleague of Ms. Schomer at Wizard of the Coast. Ms. Schomer has spoken to Ms. Litchkowski briefly in an in-person conversation about the lawsuit.

**INTERROGATORY NO. 2:** For each job code classification, promotion, or pay increase You allege You were denied because of employment discrimination by Amazon, please Identify the job code classification, promotion, or pay increase You were denied, Your qualifications, when You were denied, and who was responsible for denying You the job code classification, promotion, or pay increase.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it is overbroad, unduly burdensome, and seeks information already in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:**

Ms. Schomer does not allege she was denied a promotion, but does allege Amazon discriminated against her by improperly coding her position, paying her less than her male peers, and refusing to correct her job code or increase her pay. In support of those allegations, Ms. Schomer states as follows:

Prior to joining Amazon, Ms. Schomer received a Bachelor's degree from Gonzaga University, and a Master's degree from University of Cincinnati. She has 25+ years of research experience starting in 1995 as Legislative Assistant for the late Senator Ted Stevens of Alaska, writing statistical scripts for the Ohio Poll (political poll since 1981), then as a market research manager for Boeing Employees Credit Union (BECU). For 15 years, she was at a boutique



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

communications firm in Seattle (PRR, Inc), where she started as a research associate but eventually grew the team to become a Research Account Director. Her long tenure at PRR included conducting early messaging research for the Energy Star program, for the fuel economy label on every new car in the U.S. (for the EPA), sustainability product research for Nike, and she managed 5,000+ participant experimental studies for the California Department of Transportation and similar, but smaller experimental studies in WA, Oregon, and Colorado. Also, while at PRR, Inc. she won a Public Relations Society of America (PRSA) National Silver Anvil award for her community-based research to improve the air quality in school zones and she was awarded a National Science Foundation grant to develop measurement templates (quantitative and qualitative) for transportation impact studies. Besides her long tenure at PRR, she also spent six years at the University of Washington Medical Center leading a team that partnered with physicians across the country to conduct systemic evidence reviews in rehabilitation medicine. This led to 17 publications in peer-reviewed medical journals. Just before joining Amazon, Mrs. Schomer was a Senior Vice President of Research at Edelman, where she started as a Vice President building a research team from the ground up and managed global research projects (including managing managers) across the west coast (Seattle, Portland, San Francisco, and Los Angeles) for clients including Meta, Microsoft, and Samsung.

Amazon discriminated against Ms. Schomer by improperly coding her position, and paying her less than her male peers, beginning in January 2022. Ms. Schomer was working as a Principal Customer Insights Product Manager within the Customer Experience and Business Trends ("CXBT") "Benchmarking" organization, specifically on the Net Promotor Score (NPS) Customer Insights team. Ms. Schomer worked side-by-side with her male colleague Pushkar Raj, with both Ms. Schomer and Mr. Raj performing the same job, leading research excellence standards for the NPS team together, and both possessing the same level of education. But Amazon coded Mr. Raj as a Research Scientist, rather than Product Manager, and upon



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

information and belief, paid him more than Ms. Schomer despite being a level below her (L6 instead of L7). When Ms. Schomer verbally questioned her supervisor soon after she arrived on the team, Maureen Stewart-Nordberg, about the differing job codes and resulting pay disparity, she received no rationale for the disparity at the time.

Amazon continued to pay Ms. Schomer less than her male peers who were at the same level, coded properly, and performing the same work, after she joined the GCA Research & Strategy team in July 2022. Ms. Schomer discovered that while she was coded as a "Senior Research Manager" within the Functional Marketing job code, her male peer leading parallel research, Gouri Shankar Mishra, was coded as a Research Scientist, and therefore she was being compensated significantly less than the Male Comparator. While the subjects of their respective research projects initially varied (with Ms. Schomer leading antitrust research and Mr. Mishra leading external reputation tracking), Ms. Schomer and Mr. Mishra were both L7s, performing the same work (research), on the same team, reporting to the same supervisor (Caroline Wilmuth). With a Master's degree, 25+ years of research experience, and 17 research publications, Ms. Schomer more than met the general qualifications for the higher-paid Research Scientist position.

Moreover, after the December 2022 "reorg" in which Ms. Schomer lost 10 of her 11 projects, her one remaining project was the Internal Reputation tracking survey (later known as the Amazon Research in Communications (ARC) survey). The scope and function of Ms. Schomer's Internal Reputation tracking survey and Mr. Mishra's External Reputation tracking survey was nearly identical, as were the skill, effort, and responsibility involved in managing those projects (a team member estimated 90%-95% overlap in their roles and responsibilities). Both the internal and external reputation tracking teams use surveys in the United States and other countries to track Amazon's reputation as an employer. And both teams administer the surveys, gather the data in chart or graphs, and produce a report on our findings. The work of the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

two teams overlapped enough that Amazon begun combining the Reputation survey report with the internal employee survey report so that the external and internal reputation tracking surveys could be reviewed in tandem with senior leaders (both the VP Christina Lee and SVP Drew Herdener). Nevertheless, Amazon continued to pay Ms. Schomer substantially less than Mr. Mishra (and at an even bigger pay difference following the "reorg").

Upon information and belief, the highest compensation for an L7 in Ms. Schomer's then job code range (Functional Marketing) is approximately $367,000, while the Research Scientist job code at the L7 level has a minimum compensation of $570,000 and tops out at approximately $900,000.

In addition to the incorrect job code, Amazon failed to increase Ms. Schomer's pay when she began supervising three direct reports in November 2022, which automatically entitled her to a Senior Manager job code and pay increase. Instead, in December 2022, Amazon removed two of Ms. Schomer's three team members, thus removing her eligibility for the higher-paying Senior Manager job code. In contrast, Mr. Mishra gained a direct report in the December 2022 "reorg," making it so he would instead receive the Senior Manager pay increase.

Finally, in December 2022, Ms. Wilmuth entered a "top tier" performance rating for Ms. Schomer. By the time Ms. Schomer received her annual performance review in March 2023, however, her new supervisor Ana Rocca, had downgraded her rating to "meets expectations," despite having only supervised her for two weeks of the applicable review period. Compensation targets are directly tied to performance ratings. If an employee is rated "meets expectations," their target compensation for the next year is 40-60% of the range for their job code. Conversely, if employee is rated "top tier," their target compensation for the next *two years* is 85-95% of the range for their job code. The change in Ms. Schomer's performance rating from "top tier" to "meets expectations" resulted in a significant loss of stock compensation and negatively impacted her compensation through her termination (because "top tier" ratings



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

predict compensation targets for two years).

**INTERROGATORY NO. 3:** Describe in detail Your job duties for all positions You have held at Amazon.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it is overbroad, unduly burdensome, and seeks information already in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:** Ms. Schomer was employed at Amazon from October 2019 until May 2024, during which time she held multiple different roles with varying job duties.

In her first role, between October 2019 and approximately February 2021, Ms. Schomer was Head of Market Intelligence and Diversity for Executive Recruiting (L7). She initially reported to Kala Nicholson (L7, Head Market of Intelligence for Specialty Recruiting), but was moved under Craig Pape (L8, Director of Executive Recruiting) when her team was moved to Executive Recruiting. Her skip-level while reporting to Ms. Nicholson was Anne Szeto (L8), her skip-level while reporting to Mr. Pape was Jim Sterner (VP, L10) and towards the end of 2020 her skip-level changed to another L10 VP [name unknown]. To the best of her memory, Ms. Schomer's original title was "Senior Manager, Specialty Recruiting" within the larger "Specialty Recruiting" job code, but was later changed to "Senior Manager, Program Manager" after a job code review was conducted with Human Resources in late 2020. As part of the Executive Recruiting team, Ms. Schomer was responsible for leading a team that included one L4, three L5s, and one L6 employee, as well as contractors/vendors, to find and recruit diverse executive candidates (L8+) for all Amazon business organizations. More specifically, Ms. Schomer:

- Built and led a team of analysts to augment Executive Recruiting efforts to hire L8+ diverse candidates, specifically to meet the 2020 S-Team goal to double Amazon Black



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

leadership (L8+ roles). This included finding and recommending diverse L8+ candidates, managing recruiting data base entries of these candidates, recommending and reporting on key goals to Amazon S-Team, developing dashboard visualizations, conducting market research, and providing diversity thought leadership regarding diverse candidates across recruiting and Amazon business teams (tech and non-tech).

- Collaborated DEI initiatives, goals, and reporting (MBR/QBRs) across all Amazon executive recruiting teams and partnered with human resources and other DEI leaders. This included using data (past hiring/funnel performance data, market data of candidate availability that met Amazon hiring requirements, and diverse candidate availability) to determine all Executive Recruiting (across Amazon business organizations) specific diverse category (Black, Latinx, Native American, and Female) recruiting goals and targets for 2021.
- In addition to providing diverse recruiting leads, Ms. Schomer also provided coaching, training materials/workshops (via Amazon wiki's), and technical assistance (for the recruiting database) to executive recruiters regarding DEI hiring.
- Conducted research and collection of data to show the bias of qualifications required for hiring white executives vs. diverse candidates. Ms. Schomer developed the design and thought leadership for completing this research and the data collection was conducted by Ms. Schomer's team under her guidance/direction. After Ms. Schomer moved to her next role, the final analysis and document was completed by one of her former reports, Sophie Brooke, and to her knowledge was presented to the Director of AWS Executive Recruiting at the time (Ian [last name unknown]) and possibly the HR VP [name unknown] at the time.
- As the team lead, Ms. Schomer wrote Monthly Business Reviews (MBRs) for her team and provided content/input for the larger Executive Recruiting MBRs. She also



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

completed ongoing program reviews for her team.

- Participated in high-level planning discussions (e.g., OP1), business reviews, talent reviews, promotion assessments (for those across Executive Recruiting), and compensation reviews.

In February or March 2021, Ms. Schomer began a new role as Voice of the Customer PM, which was part of the Pathfinder Recruiting team, a large experimental team (200+ employees) to test a new way to hire software development engineers across the company. Moving to this team changed caused her job code to change to "Principal Program Manager," as she was no longer leading a team and became an Individual Contributor. While her job code remained as a Principal PM rather than a Senior Manager PM, Ms. Schomer did have one L5 report (Tiffany Champagne) soon after joining the Pathfinder team. In this role, Ms. Schomer reported to Amy Cropper (L7), and her skip-level was Aaron Bruce (L8) and then later was Albert Kim (L8). The Voice of Customer (VOC) program did not exist prior to Ms. Schomer building it, and her objective was to create a program to monitor all recruiting lifecycle customer group satisfaction (candidates, recruiters, hiring managers, and interviewers) and provide actions/ recommendations for candidate recruitment improvements. In this role, Ms. Schomer was responsible for:

Developing a data-driven customer journey map to improve recruiting processes, determine candidate supply, provide recruiting strategies, meet tech business hiring demands with data recommendations, and manage cross-team functions to drive operational and candidate improvements. This included building a Voice of Customer (VOC) wiki for recruiters to self-service VOC data collected, report documents, and recommended actions for all customers groups (recruiters, hiring managers, candidates, and interviewers).

- Designed a tracking survey to capture ongoing recruiter feedback that reduced recruiter attrition by approximately 35%. Moderated focus groups with Pathfinder recruiters and



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

used survey data to better understand recruiter barriers to meeting their hiring goals.

- Designed a custom tracking survey, including developing the research design, implementation, and survey questions to capture ongoing hiring manager and interviewer feedback to understand their satisfaction with the Pathfinder program, satisfaction with candidates they hired using Pathfinder, and collect their recommendations for improvements.
- Provided automated survey reports of candidate satisfaction with the interview process, including providing actionable alerts via the VOC wiki and in weekly recruiter meetings with recommended improvements to recruiters.
- Took the lead to conduct the analysis and write a document assessing the software developer engineer (SDE) candidate availability in the US vs. the SDE hiring needs of all Amazon business organizations. This document showed the availability of SDEs with the qualifications needed to be hired by Amazon was significantly less (not feasible) than the hiring demands of Amazon business organizations. It also explained why Pathfinder and other recruiting departments at Amazon were not meeting their SDE hiring goals for 2021. This document was presented to the Pathfinder Director, the Recruiting Engine VP (Alfonso [last name unknown], L10) and to all HR VPs leading recruiting teams responsible for SDE recruiting at Amazon (approximately May-June 2021). In addition to providing this initial document, Ms. Schomer provided follow-up documents/tools predicting the monthly and year-end SDE U.S. availability vs. recruiting team SDE hiring goals.
- Participated in high-level planning discussions (e.g., OP1), business reviews, talent reviews, promotion assessments, and compensation reviews.

In January 2022, Ms. Schomer applied and took a new role as Principal Customer Insights Product Manager as part of the Net Promotor Score (NPS) Benchmarking team, which



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

was responsible for providing global NPS data across several key Amazon business organizations (Prime Video/Music, AWS, Seller, Alexa/Devices, and 15+ retail categories). Moving to this team changed her job code to "Principal Product Manager" with two L6 Product Customer Insight Managers (PCIM) employees reporting to her. In this role she reported to Maureen Stewart-Norberg (L7), and her skip-level was Simon [last name unknown] (L8). While her role was continuously evolving, during the six months she was in this role, Ms. Schomer was responsible for:

- Working in partnership with an L6 Research Scientist (Pushkar Raj), who also reported to Ms. Stewart-Norberg, to develop research excellence standards (writing, analytics, and research methodology standards). Additionally, Ms. Schomer also worked with Mr. Raj to develop input request standards/tools for Amazon businesses/teams requesting NPS research and assessing feasibility of meeting those requests.
- Ms. Schomer was tasked to specifically work with all PCIMs (not just the ones reporting to her) on the team to improve the clarity and quality of their NPS product documents that were delivered and presented to VPs and SVPs across the company.
- As a research excellence lead, PCIMS were required to have their NPS/research proposals and documents reviewed and approved by either by Ms. Schomer or Mr. Pushkar. This included selecting the right methods, building an effective, valid, and reliable research design, ensuring the right data collection process with the right target audience, appropriately analyzing and interpreting the data, and clearly communicating the findings to senior leaders in Amazon businesses.
- Provided leadership and consultation with the NPS Benchmarking Tech team in the development of a data cross-tabulation tool and in the development of NPS data dashboards to be used by the wider CXBT Benchmarking team and Amazon business partners.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

- Responsible (as an IC) for conducting the global Net Promoter Score (NPS) benchmarks for Prime Video/Music and AWS products with research reports presented to the VP leads of those business organizations. Ms. Schomer also consulted on NPS implementation for Sellers and the Global Retail studies (15 retail categories).
- Responsible for designing and experimenting with new NPS research across several different AWS categories (security, AI/machine learning, etc.).
- Managed two PCIMs responsible for conducting NPS both globally and within the U.S.
- Working with and managing external research vendors that fielded NPS surveys.
- Provided consultation/guidance to the NPS Benchmarking lead, Maureen Stewart-Norberg, regarding team MBR/QBRs, operational planning documents, business reviews, and other team performance documents.

In July 2022, Ms. Schomer took a new role as Senior Research Manager as part of Global Corporate Affairs (GCA) Research & Strategy team, which served all of the research needs within Global Corporate Affairs. Moving to this team changed her job code to "Functional Marketing Manager" and initially Ms. Schomer had one L6 Research Scientist (Daria Bakina) reporting to her until late summer/early fall 2022. Between August to October 2022, Ms. Schomer hired two L6 Research Managers (also under the Functional Marketing job code) and one L6 UX Research Manager (UX Research job code) and who reported to her. In this role, Ms. Schomer reported to Caroline Wilmuth (L7), with Christina Lee (L10, VP), with Drew Herdener (L11, SVP) as her skip-levels. Ms. Schomer was responsible for leading her team to conduct all U.S. based exploratory research regarding anti-trust, consumer issues (counterfeits, fraud, seller policies), seller relations, data privacy/trust, employee issues (safety, compensation, treatment), and global employee reputational research (across 15+ countries). Specifically, in this role, Ms. Schomer was responsible for:

- Creating clarity, illuminating pitfalls, identifying opportunities using new and



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

experimental methods to solve large and complex problems with scientific innovation in the face of ambiguous and undefined circumstances that had significant business risk with potential for significant impact particularly with the counterfeit, anti-trust, and data privacy research conducted by Ms. Schomer's team.

- Building out and responsible for all aspects of these research projects/business areas under her purview (listed above), including selecting the right methods, building an effective, valid, and reliable research design, ensuring the right data collection process with the right target audience, appropriately analyzing and interpreting the data, and clearly communicating the findings to senior leaders across GCA and Amazon more broadly (e.g., Marketing, Consumer/Seller, Devices, People Experience & Technology, Legal/Policy).
- Delivering research results and writing research documents that had a significant impact on senior leaders' strategic decisions, roadmaps, and resource allocation.
- Ensuring the research conducted had a global remit when required (e.g., Internal Employee Reputation Survey conducted in 15-22 countries) and addressed U.S. reputational and communication priorities within her assigned research categories (e.g., employee compensation, employee working conditions, employee safety, economic impact, data privacy, antitrust, consumer/seller issues).
- In partnership with Ms. Wilmuth, presented research findings and recommendations to senior leaders within GCA and across Amazon more broadly, educating them about how research is conducted, what the limitations of research are, and how to effectively interpret and apply the findings to their strategic decisions.
- Building and managing a budget and resourcing plan to address the research needs of her exploratory research team responsibilities.
- Hiring, developing, and managing of a team of scientists and researchers that had the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

relevant knowledge and capabilities to conduct original research.

- Hiring and working extensively with external research vendors to aid in data collection of both qualitative and quantitative research projects, as well as to provide research consultation to her and her team in the development of survey research.
- Participating/consulting as a lead on Ms. Wilmuth's team in high-level planning discussions, business reviews, talent reviews, and compensation reviews for her specific team members.
- Elevating the scientific standard within the organization, ensuring that were always producing high quality, valid, and reliable data through their research.
- Keeping abreast of current research, techniques, methods, tools, and industry trends to ensure scientific excellence across the team.

In January 2023, Amazon moved Ms. Schomer to report to Ana Rocca (L7, Head of Strategy and Research), with Jordon Burke (L8) as her skip-level. Ms. Schomer remained in this role until May 2024 (except for taking FMLA from May-August 2023) when her employment with Amazon was terminated. Ms. Schomer's main job code category (Functional Marketing) and level remained the same in this new role initially but was changed to General Marketing Manager around July 2023 (during the time she was on FLMA), and her scope and overall compensation was significantly reduced, and she lost all of her previous job responsibilities under Ms. Wilmuth. Under Ms. Wilmuth, Ms. Schomer was set to become a Senior Manager because she had three or more employees reporting to her. At Amazon, being a Senior Manager with a minimum of three or more direct reports is an upgraded job code and comes with additional compensation. In the move to report to Ms. Rocca, however, Ms. Schomer also lost two of her employees reporting to her. Thus, reducing her compensation and demoting her job code to no longer that of a Senior Manager. Beyond the loss of team members reporting to her, this role was a significant demotion for Ms. Schomer as she was stripped of her leadership



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

responsibilities for her team as a Senior Manager, with 10 of her 11 projects under her purview removed from her, with no pathway to promotion as a team leader, and went from reporting to an L7 to reporting to an L10 (Christina Lee), to reporting lower within the team hierarchy (reporting to an L7 reporting to an L8, reporting to the same L10). Ms. Schomer's remaining and only responsibility in this new role was to lead the Global Employee Reputation and Communication Survey (known internally as the ARC survey) with her one remaining L6 report (Jamal Scott).

In this role, Ms. Schomer improved upon the previous employee survey by writing a full research plan that included improvements to the employee communication survey that was implemented before she joined the GCA organization, adding approximately 30+ new survey items that were requested and approved by key Internal Communications stakeholders. This plan also improved the survey full implementation process (fielding/email survey invitations to employees, matching data to employee PXT/HR data, matching to employee engagement data with internal communications, and weighting), and expanded the number of countries from 18 to 22. Ms. Schomer conducted bi-variate analysis and proposed additional advanced analysis for the ARC survey data and provided full experimental, qualitative, and quantitative research proposals with both stakeholder input and approval to dive deep on key topics important to Amazon leadership (e.g., Leadership Principals and Artificial Intelligence).

Ms. Schomer worked with vendors to build a self-service dashboard allowing internal communications stakeholders access to ARC survey data. This unique dashboard (RepTracker did not have this) provided key stakeholders a holistic view of employee reputation perceptions and communication preferences to enable them to diagnose communication challenges (for their country/communication topic areas), measure success towards their goals, and optimize their communication challenges. Ms. Schomer also worked with external vendors to conduct qualitative research (e.g. focus groups) with employees, but she was responsible for the research proposal/scope and initial question guides. Lastly, because the ARC survey was a new



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

experimental program with the organization, Ms. Schomer conducted program reviews/quality assessments to identify barriers/failures so that constant improvements were made to the survey questions, survey implementation process, to outputs (reports/dashboards), and to future research proposals.

Each of these responsibilities was significantly below Ms. Schomer's prior job responsibilities when she was leading research projects across several key areas and Amazon business groups. In fact, Ms. Schomer hired her L6 report, Jamal Scott, to lead the development and implementation of the ARC survey, which now constituted her only responsibilities. And following her termination, Mr. Burke replaced Ms. Schomer with an L6 Research Scientist (Dan Tamul).

**INTERROGATORY NO. 4:** Describe all facts supporting Your allegation in Paragraph 212 of the Complaint that Amazon discriminated against You by "paying [You] less than [Your] male comparators who performed equal work requiring equal skill, effort, and responsibility, and which was performed under similar working conditions," including by Identifying the described male comparators and their positions, describing the allegedly equal work that You and Your male comparators performed, and detailing the compensation paid to You and the described males.

**OBJECTIONS:** Plaintiffs objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiffs further object to this Interrogatory as premature because Plaintiffs' investigation is ongoing and to the extent that Plaintiffs have sought from Defendant information in discovery directly related to the compensation paid to Ms. Schomer's male comparators.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows: Upon information and belief, Amazon paid her less than several male peers performing substantially equal or lesser work in higher-paying job codes, including but not limited to Pushkar Raj and Gouri Shankar Mishra.

Pushkar Raj: Between January – June 2022, Ms. Schomer worked on the Customer Experience and Business Trends ("CXBT") "Benchmarking" team / Net Promotor Score (NPS) Customer Insights team as a Principal Product Manager. Ms. Schomer worked side-by-side with Puskar Raj (male), both of them performing the same job, leading research excellence together, and both possessing the same level of education. But Amazon changed Mr. Raj as a Research Scientist soon after Ms. Schomer arrived on the team (within approximately one month), rather than Product Manager, and upon information and belief, paid him more than Ms. Schomer despite being a level below her (L6 instead of L7).

Gouri Shankar Mishra: When Ms. Schomer joined the GCA Research and Strategy team in July 2022, she discovered that while she was coded as a "Senior Research Manager" within the Functional Marketing job code, her male peer, Gouri Shankar Mishra, was coded as a Research Scientist. Both Ms. Schomer and Mr. Mishra were L7 researchers on the same team reporting to the same manager (Caroline Wilmuth). Although Ms. Schomer does not possess a PhD (like Mr. Mishra), the Research Scientist position requires *either* a PhD or comparable years of research experience in lieu of a PhD. With a Masters' degree, 25+ years of research experience, and 17 research publications, Ms. Schomer more than meets this qualification.

Further, while the subjects of Ms. Schomer's and Mr. Mishra's respective research projects initially varied (with Ms. Schomer leading antitrust/consumer/employee research and Mr. Mishra leading external reputation tracking), the diminishment of Ms. Schomer's role in the December 2022 "reorg," in which she lost 10 of her 11 projects only served to highlight the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

substantial similarity of hers and Mr. Mishra's work. Ms. Schomer's one remaining project following the reorg was the Internal Reputation tracking survey ("ARC survey"). The scope and function of Ms. Schomer's Internal Reputation tracking survey and Mr. Mishra's External Reputation tracking survey ("RepTracker") was nearly identical, as were the skill, effort, and responsibility involved in managing those projects (a team member estimated 90%-95% overlap in their roles and responsibilities). Both the internal and external reputation tracking teams use surveys in the United States and other countries to track Amazon's reputation as an employer. And both teams administer the surveys, gather the data in chart or graphs, and produce a report on findings. Like Mr. Mishra and the other Research Scientists on the RepTracker team, Ms. Schomer conducted bi-variate analysis and proposed additional advanced analysis for the ARC data and provided full experimental research proposals with stakeholder input and approval to dive deep on key topics important to Amazon leadership (e.g., Leadership Principals and Artificial Intelligence). The work of the two teams was so similar that Amazon often combined the RepTracker report with the internal employee ARC survey so that the external and internal reputation tracking survey findings could be presented to both the team VP (L10 Christina Lee) and SVP (L11 Drew Herdener). Nevertheless, Amazon continued to pay Ms. Schomer substantially less than Mr. Mishra and other Research Scientists on the RepTracker team (and at an even bigger pay difference following the "reorg").

**INTERROGATORY NO. 5:** Describe all facts supporting Your allegation in Paragraph 21 of the Complaint that "Amazon also tracks women, including Plaintiffs Wilmuth and Schomer, into lower paying job codes, while assigning men to higher paying adjacent job codes, resulting in female employees being cabined to lower paying work."



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows: Ms. Schomer is aware of numerous examples, in addition to herself, of Amazon placing women into lower pay job codes compared to their male peers performing the same or similar that Amazon work placed in higher paying job codes. This includes, but may not be limited to, the following:

Caroline Wilmuth / Gouri Shankar Mishra: Amazon paid another male direct report, Gouri Shankar Mishra (an L7 Research Scientist), more than Ms. Wilmuth during the entirety of his tenure on her team between June and December 2022. Mr. Mishra was one of four L7 research leaders on the team, included Ms. Wilmuth, Ms. Schomer, and Roxana Cosmaciuc. Both Ms. Wilmuth and Mr. Schomer have graduate degrees (PhD for Ms. Wilmuth and MA for Ms. Schomer) and were both performing research requiring equal skill and effort on the same team, although Ms. Wilmuth had significantly more responsibility, as leader of the team. Indeed, prior to removing the Research and Strategy team from her leadership in December 2022, Ms. Wilmuth was the only researcher on her team *not* coded in a research job code (and the only person on her team with a Ph.D. coded in a lower compensation job code). Even after her team and all the projects under her purview had been removed in December 2022, Mr. Mishra continued to run the RepTracker program that Ms. Wilmuth had originated and run for three years; but throughout his tenure Amazon paid him significantly more than Ms. Wilmuth to manage just one of the projects that had been under her purview.

Roxana Cosmaciuc / Gouri Shankar Mishra: Ms. Coscmaciuc previously worked at Amazon for almost six years, first from November 2014 to January 2020, and then again from August 2022 to June 2023. When she returned to Amazon in August 2022, she joined the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Research & Strategy, reporting directly to Ms. Wilmuth. Ms. Coscmaciuc was one of several L7 employees leading strategic research projects on Ms. Wilmuth's team. The other L7 research leaders on the team included Ms. Wilmuth herself, Ms. Schomer, and Gouri Shankar Mishra. Although the topics of their individual research projects differed (Ms. Cosmaciuc led research on Amazon's reputation in sustainability, innovation, and community, while Ms. Schomer led antitrust, consumer, data privacy, and employee research and Mr. Mishra led external reputation tracking), their positions all required the same skills and responsibility. There is no doubt in Ms. Cosmaciuc's mind that she, Ms. Schomer, and Mr. Mishra all performed the substantially equal work (Mr. Mishra also believes they all had comparable levels of responsibility). Despite this, Amazon placed Ms. Cosmaciuc in a non-technical marketing job code, while placing Mr. Mishra in a much higher-paid Research Scientist (tech) job code. Ms. Cosmaciuc believes Amazon intentionally moved the female L7 researchers from Ms. Wilmuth's team into smaller, diminished roles lower in the team hierarchy in December 2022 to make it easier to avoid addressing the pay inequity, as it would have been difficult for Amazon to justify the pay differential before this "reorg."

Cody Wallace / Cameron Waterhouse: Amazon paid Cody Wallace less than her male peer, Cameron Waterhouse, for the same/equal work. Ms. Wallace and Mr. Waterhouse were both contractors with the GCA Marketing team reporting to Daniel Scarvalone, performing the same job. Amazon then hired them both as full-time employees but hired Mr. Waterhouse (male) at the L6 level in the Marketing job code, while hiring Cody (female) at the L5 level and the Program Manager job code (Program Managers are paid less than General Marketing).

Allison Heim / Dan Scarvalone: Ms. Heim is a former Amazon employee (L6) who, at the time of her separation in 2023, reported to Dan Scarvalone (L7), with Jordan Burke (L8) as her skip-level manager. In January 2023, Ms. Heim began complaining that job codes within Mr. Burke's organization, including Mr. Scarvalone's and that of Ms. Heim and other women on



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

the team, which was resulting in discriminatory pay inequities between men and women. Mr. Scarvalone informed Ms. Heim that Mr. Burke placed him in an (incorrect) and inflated job code, as a Principal Technical Product Manager, specifically to meet his compensation needs, even though Mr. Scarvalone's team owned no product. Following Ms. Heim's complaints, Mr. Burke took steps to adjust Mr. Scarvalone's title from Principal Technical Product Manager to Senior Manager, Technical Product Management (which was still incorrectly coded) so he could remain highly compensated. But neither Mr. Burke or anyone else at Amazon took steps to correct Ms. Heim's job code.

Leona Zamora / Pushkar Raj: Ms. Zamora filled in as a Research Excellence Lead on the Benchmarking/NPS Customer Insights team after Ms. Schomer's departure from the team. She is an L6 and coded as a Product Manager. Like when Ms. Schomer was in this role, Ms. Zamora worked in partnership with Pushkar Raj and was responsible ensuring research excellence on the team. Mr. Raj is her male peer and he is performing almost the exact same work as her, but is coded as a Research Scientist job code, and being paid significantly more than her. Ms. Zamora has a Ph.D. and Mr. Raj does not.

**INTERROGATORY NO. 6:** Describe all facts supporting Your allegation in Paragraph 118 of the Complaint that "Multiple other women who work with Mr. Burke have also raised concerns in the last year that he treats them differently because of their gender and/or race," including identifying the described women, the concerns they raised, when and where the alleged differential treatment of these women took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

Caroline Wilmuth: *See* Plaintiff Caroline Wilmuth's Objections and Responses to Defendant's First Set of Interrogatories for a description of Mr. Burke's discriminatory treatment toward Ms. Wilmuth and the concerns she raised.

Erin Combs: *See* Plaintiff Erin Combs' Objections and Responses to Defendant's First Set of Interrogatories for a description of Mr. Burke's discriminatory treatment toward Ms. Combs and the concerns she raised.

Allison Heim: Ms. Heim is a former Amazon employee who reported up into Mr. Burke. On January 3, 2023, Ms. Heim complained to her manager, Dan Scarvalone, that job codes within Mr. Burke's organization were incorrect, including Mr. Scarvalone's and that of Ms. Heim and other women on the team, which was resulting in discriminatory pay inequities between men and women on the team. Mr. Scarvalone informed Ms. Heim that Mr. Burke put him in an (incorrect) and inflated technical job category specifically to meet his compensation needs.

Later that month, Ms. Heim shared her concerns regarding pay inequality in Mr. Burke's organization with Ms. Schomer. Specifically, Ms. Heim disclosed that she had been reporting her concerns to Mr. Scarvalone, Mr. Burke, and Keith Johnson (HRBP) about pay and job code inequities between her and the male members on her team. Ms. Heim in turn reported this to Amazon's Employee Relations, specifically an investigator named Alea O'Neal in early February 2023.

Ms. Heim subsequently filed formal complaints on February 6 and February 13, 2023 related to gender-based pay discrimination (including with respect to job codes), retaliation, and Mr. Burke's unethical handling of data. Ms. Heim communicated with Ms. Combs and Ms. Schomer regarding her internal complaints in March 2023. Following Ms. Heim's complaints,



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Mr. Burke took steps to adjust Mr. Scarvalone's title from Principal Technical Product Manager to Senior Manager, Technical Product Management (which was still incorrectly coded) so he could remain highly compensated. Neither Mr. Burke or anyone else at Amazon took steps to correct Ms. Heim's job code.

On March 15, 2023, Amazon's Employee Relations informed Ms. Heim that in response to her discrimination and retaliation complaints, it had not found any violation of Amazon policy, while still acknowledging that job codes were being incorrectly applied within Ms. Heim's Organization. In May 2023, while Ms. Heim was out on approved and protected FMLA leave related to the discrimination and retaliation she had suffered, Amazon contacted Ms. Heim about separating from the Company and releasing her legal claims in exchange for severance.

<u>Kendra Tappin:</u> Kendra Tappin (a Black woman) is also a former Amazon employee who previously reported up into Mr. Burke. In 2023, Ms. Tappin reported to numerous members of Mr. Burke's team, including Ms. Combs, Ms. Heim, Ms. Schomer, and Jamal Scott, that Mr. Burke, Dan Scarvalone, and other males on the team were not receptive to her ideas, the men did not listen her, they did not credit her work or ideas, and instead they criticized her work for unfair reasons that could not be supported by the research data. Ms. Tappin disclosed that she felt these men were treating her this way because of her gender and race. In or around June 2023, Ms. Tappin formally complained to Amazon's Human Resources. Shortly thereafter, Ms. Tappin was separated from Amazon.

<u>Katie Ambrose:</u> Ms. Ambrose is a current L7 on the Reputation Marketing and Insights Team within the Global Communications & Community Involvement (GCCI) organization (previously known as the "Paid Campaigns" team) led by Mr. Burke. Ms. Ambrose has reported that she believes there is a culture of gender discrimination that is rampant on Mr. Burke's team, and that herself and several other women on the team have been discriminated against because of their gender. She has stated that Mr. Burke's team has a pattern/practice of elevating men to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

leadership roles, whereas women with greater experience are passed over or shuffled down in the organizational structure and have their access to Mr. Burke removed or limited. For example, when Ms. Ambrose joined Mr. Burke's team in July 2023, she had 20 years of experience and had most recently been leading a three-person team at Amazon. Upon joining Mr. Burke's team, however, she became a nested L7 position (a L7 reporting to one – and in her case- two - other L7s). Ms. Ambrose became one of five women reporting to Dylan Green, and four of whom (Ms. Ambrose, Ms. Combs, Bailey Sargent, and Kathy Lane) were L7s, and each of them has considerably more leadership and brand marketing experience than Mr. Green. Despite Mr. Green not having the experience necessary to lead that team, to Ms. Ambrose's knowledge, Mr. Burke never considered any of the female L7s for the leadership role.

Indeed, it is clear to Ms. Ambrose that Mr. Burke is more comfortable having men report to him. She has stated that Mr. Burke meets more frequently with the male members of his team, opportunities the female leaders are not provided. According to Ms. Ambrose, Mr. Burke also regularly assigns the L7 men on the team (Rob Wilson, Dylan Green, Josh Weirman, and Dan Scarvalone) to lead bi-weekly meetings with senior leadership, while the L7 women on the team (including herself and formerly Ms. Combs and Ms. Schomer) are not given the same opportunity, with Ms. Ambrose estimating that more than 75% of Mr. Burke's bi-weekly meetings are led by men. Ms. Ambrose has opined that she does not believe Mr. Burke "cares about gender bias on his team," "[h]e allows it to flourish," and "it is hurting the women on his teams," whose careers have stalled.

During a team meeting on November 1, 2023, which included Ms. Ambrose's manager, Dylan Green, she spoke up about these concerns, referencing the optics of five women on the team (including herself and Ms. Combs) being subjected to gendered treatment, particularly at the hands of Rob Wilson. Ms. Ambrose described this gendered treatment as being enforced and demonstrated from the top down (i.e., Mr. Burke). Ms. Ambrose continued calling out the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

gender divide on the team, how she feels she is treated differently than men on the team, and how women are talked over and not listened to by the male leaders. She concluded that Mr. Burke does not care about diversity or inclusion on the team. Upon information and belief, Ms. Ambrose's comments were reported to Amazon's Employee Relations, which opened an investigation into gender discrimination on Mr. Burke's team, and interviewed Ms. Ambrose (as well as Ms. Combs) about her experience. On or around December 6, Employee Relations closed out the investigation with no finding of any violation of Amazon policy or standards of conduct.

Alexis Skiles: Between May 2022 and December 2022, Ms. Skiles reported to Ms. Combs, with Ms. Wilmuth as her skip-level supervisor. After Ms. Wilmuth's entire team was moved under Mr. Burke in December 2022, Ms. Skiles began reporting up into him. During her tenure on Mr. Burke's team, from December 2022 – June 2023, Ms. Skiles observed that Mr. Burke's entire senior level / leadership team is comprised of men, except for one woman (Ana Rocca). She described Mr. Burke's team as a "boy's club," observing that Mr. Burke was chummy with the male leaders on the team, while he frequently went around women on the team even to discuss projects they own, instead speaking to male supervisors or peers about their work.

In June 2023, Mr. Burke notified Ms. Skiles that she was being laid off. In an email to the team, Mr. Burke explained he was eliminating the Program Manager role on the team. Presumably, this would have encompassed the other PMs on Burke's team, including Cody Wallace (female), Cameron Waterhouse (male), and her manager, Josh Werman (male). But this was not the case. While the Ms. Skiles and Ms. Wallace had their roles eliminated, Mr. Werman remained on the team and continues to perform the Operations work Ms. Skiles had been performing, and Mr. Waterhouse also kept his position on the team reporting to Rob Wilson. Thus, the only two Program Managers whose positions Mr. Burke "eliminated" were the two



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

women, while the two male Program Managers kept their jobs. And just six months later, in December 2023, Mr. Wilson posted a new Program Manager role reporting to him (and Mr. Burke as skip-level), further undermining Mr. Burke's stated rationale and evidencing that he never eliminated the PM role for his team. Ms. Skiles believes she was pushed out in retaliation for vocally raising concerns about Mr. Burke's team.

Meg Coyle: Prior to her termination in early 2025, Meg Coyle reported to Rob Wilson, and Mr. Burke was her skip-level manager. Ms. Coyle raised concerns about Mr. Burke's refusal to communicate with her directly, instead filtering everything through Mr. Wilson, and using him as a messenger. Ms. Coyle repeatedly asked Mr. Burke: "Will you please communicate with me directly?" And during a Connections call for employee feedback last year, Ms. Coyles reported that even when Mr. Burke knows she owns a project, he will bypass her to speak to Mr. Wilson about her project. Ms. Coyle believes Mr. Burke is uncomfortable working with women, and commented on the number of L7 women across the team he has forced out, while retaining the L7 men. In the most recent example, Mr. Burke laid off two female L7s (Mr. Coyle and Bailey Sargent), while retaining two male L7s (Ben Herson and Josh Werman).

Christine Hoeger: Ms. Hoeger is a female peer of Mr. Burke, with both of them reporting to Christina Lee. Ms. Hoeger has reported to Ms. Wilmuth and others that she has experienced issues with Mr. Burke not collaborating with her team, not treating them with respect, and not deferring to her when it comes to her work leading the Social Media team. And when Ms. Hoeger's team partnered with Mr. Burke's on a research project, Mr. Burke's team edited research findings to be more favorable to them.

Linda Thomas: Ms. Thomas is a female peer of Mr. Burke, who previously reported to Ms. Lee until December 2021. Ms. Thomas has told Ms. Wilmuth (and others) that Mr. Burke mistreated her team and exhibited a pattern of taking credit for other people's ideas and work.

Brandi Daniels: Ms. Daniels is a female L6 on Mr. Burke's team. Ms. Daniels started at



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Amazon in May 2020 working under Ms. Schomer. She interviewed for an L6 role but was hired as an L5. Approximately 6 months after she started her position, Ms. Schomer successfully advocated for Ms. Daniels to be increased to L6, as she believed she was under-leveled. Ms. Daniels was classified as Functional Marketing under Ms. Wilmuth, and was changed to General Marketing in July 2023 under Mr. Burke's team and is therefore paid less than the Product Management and Research Scientist job code that her peers on Mr. Burke's team are coded. After the reorg, Ms. Daniels indicated to Ms. Schomer (and others) that she too had been improperly coded and assigned when being moved to Mr. Burke's team. Ms. Daniels has also told Ms. Combs, Ms. Schomer, Ms. Wilmuth, and others that she believes she - and others on Mr. Burke's team - have been discriminated against by Mr. Burke on the basis of gender and race.

<u>Roxana Cosmaciuc</u>: Ms. Cosmaciuc is a female former employee of Amazon. Ms. Cosmaciuc worked at Amazon from November 2014 to January 2020, and then again from August 2022 to June 2023. When Ms. Cosmaciuc returned to Amazon in August 2022, she joined the Research & Strategy team within Amazon's GCA organization, which is part of WWC. In this role, Ms. Cosmaciuc reported directly to Ms. Wilmuth. While reporting to Ms. Wilmuth, Ms. Cosmaciuc, Mr. Shankar, and Ms. Schomer all performed the same or substantially equal work and their positions all required the same or substantially equal skill, effort, and responsibility. Throughout Ms. Cosmaciuc's tenure in this role, she was classified in a non-technical marketing job code, despite leading a research team. Ms. Cosmaciuc earned substantially less than Mr. Shankar. Ms. Cosmaciuc has told Ms. Wilmuth (and others) that she was being paid less than Mr. Shankar, her male peer. At the end of 2022, when Amazon removed Ms. Wilmuth's entire team from her and transferred it under Mr. Burke, Ms. Cosmaciuc lost her direct reports, lost all of her projects, and moved two levels down the reporting line. Mr. Shankar gained a direct report (Ms. Cosmaciuc's former report) and retained his major research project. In conversation with Ms.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Combs, Ms. Wilmuth, Ms. Schomer and others, Ms. Cosmaciuc stated her belief that she and the rest of the L7 women from Ms. Wilmuth's team were discriminated and retaliated against based on gender. Ms. Cosmaciuc was interviewed by an Amazon investigator in early 2023 and told Amazon's investigator that all of the female L7s on Ms. Wilmuth's team had been demoted and lost responsibilities and reports in the reorganization, and that she believed the reorganization had been gendered and discriminatory.Bailey Sargent: Ms. Sargent joined Mr. Burke's team (with him serving as her skip-level supervisor) in April 2023. She was originally asked to take a short-term assignment to cover the HQ1 campaign while Erin Combs was out on medical leave, but was converted to a full-time position in June 2023. During the remainder of 2023 and throughout 2024, Ms. Sargent (and other women on the team) vocalized several concerns about what she characterized as a hostile working environment and gender discrimination. Among the concerns Mr. Sargent raised was Mr. Burke not communicating with her directly (instead going through her manager), while going directly to Ms. Sargent's male colleagues (both peers and junior level) with questions regarding campaigns Ms. Sargent was leading. Similarly, Ms. Sargent experienced issues working with two of Mr. Burke's male direct reports, Rob Wilson and Dan Scarvalone, in which Wilson and Scarvalone treated Ms. Sargent in a hostile manner and would go around her to Mr. Burke. Despite Ms. Sargent and several other women on the team raising concerns about working with Mr. Wilson, Mr. Burke failed to take any corrective action.

Mr. Burke also passed Ms. Sargent over for a role in favor of a less-qualified male. Specifically, Amazon hired Ms. Sargent for her experience in international campaign and policy work. When she transferred to Mr. Burke's team, Ms. Sargent discussed with him her desire to take on any international work if the team's scope expanded. When Mr. Burke subsequently opened a new role to lead international campaigns, he did not even provide Ms. Sargent with the opportunity to interview for the role, instead giving it to a male transfer from another team who lacked Ms. Sargent's qualifications.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

One January 29, 2025, Mr. Burke notified Ms. Sargent that her role was being eliminated. By Ms. Sargent's count, she was one of at least 9-10 females (all L6s or L7s) that Mr. Burke terminated or forced out during her tenure on his team.

**INTERROGATORY NO. 7:** Describe all facts supporting Your allegation in Section D of the Complaint that "Plaintiffs have repeatedly raised concerns about gender discrimination, but Amazon has failed to remedy the problems," including detailing the concerns raised and the response, identifying the dates the concerns were raised, the method by which the concerns were raised, and to whom they were raised.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

Subject to and without waiving these objections, Ms. Schomer will respond with respect to the concerns she raised about gender discrimination and Amazon's failures to remedy such discrimination. For facts regarding other Plaintiffs' concerns about gender discrimination and Amazon's failures with respect thereto, *see* Plaintiff Erin Combs' Objections and Responses to Defendant's First Set of Interrogatories, and *see* Plaintiff Caroline Wilmuth's Objections and Responses to Defendant's First Set of Interrogatories.

**RESPONSE:**

Prior to joining the GCA Research & Strategy team, Ms. Schomer worked on the Customer Experience and Business Trends ("CXBT" or "Benchmarking") team as a Principal Product Manager. Ms. Schomer worked side-by-side with her male colleague Pushkar Raj, with both Ms. Schomer and Mr. Raj performing the same job, leading research excellence together, and both possessing the same level of education. But Amazon coded Mr. Raj as a Research



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Scientist soon after Ms. Schomer joined this team, rather than Product Manager, and upon information and belief, paid him more than Ms. Schomer despite being a level below her (L6 instead of L7). Ms. Schomer verbally raised concerns about the differing job codes and resulting pay disparity to her then supervisor, Maureen Stewart-Nordberg, but she received no rationale for the disparity.

With weeks of joining the GCA Research & Strategy team in July 2022, Ms. Schomer began raising concerns about pay inequity with her new supervisor, Caroline Wilmuth. This was after Ms. Schomer discovered that her male colleague, another L7 research on the team, Gouri Shankar Mishra, was classified as a Research Scientist, while Ms. Schomer was coded as Marketing. Approximately three weeks later, when Brandi Daniel (Black) joined Ms. Schomer's team, also in the lower-paid Functional Marketing job code, she similarly expressed that the pay inequities were unfair given that Ms. Schomer's and Mr. Mishra's teams both performed the same work (research) on the same team. Additionally, Ms. Schomer and Ms. Daniel took over and repaired the work of a previous poor-performing Research Scientist on Ms. Wilmuth's team, Daria Bakina (white) and reported to Ms. Schomer for a brief time. Ms. Bakina's work was of such inferior quality that Ms. Daniel spent several weeks repairing the data, so it could be analyzed. Thus, Amazon was paying Ms. Schomer and Ms. Daniel less to clean up the mess than it paid the previous poor-performing, white Research Scientist who caused it.

Ms. Wilmuth was responsive to the concerns about pay inequality that Ms. Schomer raised on behalf of herself and Ms. Daniel, and Ms. Wilmuth was supportive of investigating new job codes to ensure equal pay for equal work. Ms. Wilmuth suggested Ms. Schomer connect with Director Katie Curran who had been investigating job codes for SVP Drew Herdener's organization. Ms. Schomer met with Ms. Curran on September 21, 2022 and explained how the job codes were creating significant pay discrepancies on the team, and the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

impact was being felt across race/gender lines (because Ms. Schomer is a female and Ms. Daniel is a Black female).

During her next two one-on-ones with Ms. Wilmuth in late September and then October 5, 2022, Ms. Schomer continued to raise strong concerns about unequal pay across the team, noting the concerning divide across gender and racial lines. Per Ms. Curran's request, Ms. Schomer then followed up with an email to her and Ms. Wilmuth on October 7, 2022, summarizing the compensation issues they had discussed and the need for an HR job code and compensation review for Ms. Wilmuth's team. Ms. Wilmuth escalated this email to VP Christina Lee and Keith Johnson (HRBP). On October 12, 2022, Mr. Johnson emailed Ms. Schomer that he would review the job codes, and promised if movement was supported, it would take only a week or two for him from the time he requested the changes to final implementation of the compensation change. (At the time of her termination in May 2024, this still had not occurred.)

Ms. Schomer continued to follow-up several times on the status of this job code review with Ms. Wilmuth. Meanwhile, Ms. Daniel reported to Ms. Schomer and Ms. Wilmuth that she believed she had been down-leveled when Amazon hired her because of her race, a concern Ms. Schomer and Wilmuth duly escalated. Ms. Schomer expressed increasing tension was building between her and Mr. Mishra's team the longer Amazon permitted the gender and racial pay inequities to continue. Ms. Schomer's concerns only worsened when she hired a Black researcher, Jamal Scott, on her team in early November 2022, who similarly was placed in a lower-paid job category (not Research Scientist), thus increasing the racial pay discrimination.

Further, with this hire, Ms. Schomer now had three people reporting to her, which should have automatically elevated her into the higher-paying Senior Manager title. Ms. Schomer raised this with Mr. Wilmuth on November 18, 2022, as she was still being paid as a "Principal."



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Ms. Wilmuth emailed HRBP Keith Johnson that same day seeking guidance on how to make this change to ensure Ms. Schomer was "appropriately recognized and compensated" for the people leadership role that she was then performing. After Ms. Schomer discussed her pay discrimination concerns with Ms. Wilmuth again on December 5, 2022, Ms. Wilmuth again escalated the issue of Ms. Schomer's pay raise. Each time, Mr. Johnson refused to provide the requested information and insisted that Ms. Schomer not be compensated as a senior manager until after the completion of a job code analysis. This served to continue and worsen the pay disparity between Ms. Schomer and Mr. Mishra.

On December 15, 2022, Amazon announced that as part of a "reorg," 10 of Ms. Schomer's 11 projects and two of her three team members were being removed from her. In addition to losing 2/3 of her staff and 90% of her projects, Ms. Schomer also was moved to report to a peer on Jordan Burke's team with substantially less research experience (approximately 12 years of experience compared to Ms. Schomer's 25+ years) and lower on the team hierarchy than under Ms. Wilmuth.

On January 4, 2023, Ms. Schomer filed a formal complaint regarding Amazon's pay discrimination and her retaliatory demotion. Ms. Schomer detailed Amazon's disparate treatment of her as compared to Mr. Mishra, both with respect to their compensation and their treatment in the "reorg." Whereas Ms. Schomer lost direct reports and saw her role substantially reduced, Mr. Mishra gained a direct report in the "reorg," (making it so he received the Senior Manager pay increase instead of Ms. Schomer) and also kept his entire remit intact, which primarily entailed the External Reputation tracking survey. Ironically, the changes to Ms. Schomer's diminished role only served to highlight the substantial similarity of hers and Mr. Mishra's work, as the only project Ms. Schomer did not lose in her demotion is the Internal Reputation tracking survey ("ARC survey"). The scope and function of the Internal and External



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Reputation tracking surveys are nearly identical, as are the skill, effort, and responsibility involved in managing these projects. Nevertheless, Amazon continued to pay Ms. Schomer substantially less than Mr. Mishra and at an even bigger pay difference following the "reorg."

When Ms. Schomer met with the Amazon Employee Relations investigator assigned to her EEO claim on January 12, the investigator's questions focused on *how* Ms. Schomer knew that Mr. Mishra was a Research Scientist and his compensation range (and whether Mr. Mishra had told Ms. Schomer his salary), rather than the substance of her discrimination and retaliation claims.

Ms. Schomer followed up with the investigator multiple times in January and February to report additional retaliation, including Mr. Burke and Ms. Rocca (her manager) pressuring her to downgrade the performance rating of all of her current and previous direct reports in initial/early talent review meetings regarding Ms. Wilmuth's previous team only, and by leaving Ms. Schomer out of the formal and final talent review meeting conducted for Mr. Burke's entire team. Leaving Ms. Schomer out of this process as an L7 manager was not a standard talent review practice that Ms. Schomer had experienced at Amazon. There was also no HR presence to manage the early talent reviews of Ms. Wilmuths' team only, which is not standard practice at Amazon. Mr. Burke and Ms. Lee also began to spread false messaging regarding Ms. Schomer's diminished role. After she lost 10 projects involving various reputational issues, Mr. Burke told Ms. Schomer and others within Amazon that her role had not been reduced because, despite no longer *owning* those projects, which had been reassigned to others on his team, she would still be *asking* about those reputational issues in the Internal Amazonian survey (the "ARC" survey and the one project she kept). Christina Lee also attempted to conceal the consequences of Ms. Schomer's demotion, telling Ms. Combs (and presumably others) that Ms. Schomer's scope had not been reduced by 90% because her one remaining project was increasing in scope, but was in



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

fact an increased scope that had been planned previously under Mr. Wilmuth's leadership and was intended for one of Ms. Schomer's L6 reports (Jamal Scott) to own.

On February 1, 2023, Ms. Schomer met with the Employee Relations investigator assigned to Ms. Wilmuth's and Ms. Combs' discrimination and retaliation claims. Ms. Schomer told the investigator that the "reorg" was absolutely gendered and had a disproportionately negative impact on female leaders, and that the "reorg" was retaliatory.

Approximately four weeks after returning from FLMA leave, Ms. Schomer reported to the HRBP (Keith Johnson) that she was being further retaliated against because after only two weeks of working together after Ms. Schomer returned from FLMA leave, her manager Ana Rocca met with Ms. Schomer to tell her she had "performance" issues. Prior to being on FLMA, Ms. Rocca had never specially indicated that Ms. Schomer had "performance" issues. Per Mr. Johnson's request an employee relations investigation was opened. The investigator determined that no retaliation had occurred.

After returning from FLMA and being told by Ms. Rocca of her sudden performance issues, Ms. Schomer later began to suspect around October/November 2023 that she was in Amazon's "Focus" system that more formally reviews employee performance and provides coaching for improvement. To verify Ms. Schomer contacted the HRBP, Keith Johnson again to formally report this continued retaliation. Mr. Johnson set up a meeting to discuss with Ms. Schomer and his skip level Director (L8, Joel [last name unknown]). During this meeting, Joel confirmed that Ms. Schomer was in the Focus system. Ms. Schomer requested guidance and Joel set-up another meeting to talk with Ms. Schomer and Ms. Rocca separately and then with both together to discuss ways of improving their "communication" differences. Ms. Schomer also followed up with Joel via email about the lack of direct communication from Ms. Rocca regarding her performance and how she felt Ms. Rocca was continuing to retaliate against her by hyper-focusing on issues that were part of the everyday role at Amazon. She also expressed



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

concern that she was being placed in Focus during the second round (not complete yet) of the ARC survey implementation/fielding process. To be placed in Focus so soon in a new program did not allow her the ability to be assessed for improvements she was making from round one, as was standard to her prior experience at Amazon when developing a new program. To Ms. Schomer's knowledge, no investigation was conducted by employee relations. From this point forward in regular 1:1's with Ms. Rocca, she did not update Ms. Schomer on her performance status and whether she was still in Focus or not and to Ms. Schomer's knowledge did not provide any of the required coaching while in Focus. In February 2024, after Ms. Schomer had been on medical leave for a surgery and subsequent life-threatening infection, she was placed in the PIVOT program (Amazon's official performance improvement plan). Ultimately, Ms. Schomer's employment was terminated.

**INTERROGATORY NO. 8:** Describe all facts supporting Your allegation in Paragraph 168 that "Amazon removed Plaintiffs Wilmuth, Schomer, and Combs from their leadership roles, stripped their direct reports from them, removed the majority of their remits, and severely diminished their career paths after they repeatedly raised concerns about gender and pay discrimination," including by identifying the remits removed, the Person or Persons who removed the remits, how Your career path was diminished, and the Person or Persons who were responsible for diminishing Your career path.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

Subject to and without waiving these objections, Ms. Schomer will respond with respect to Amazon removing her leadership role, direct reports, and the majority of her remit, and the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

diminishment of her career path. For facts regarding Amazon removing other Plaintiffs from their leadership roles, stripping their direct reports, and the majority of their remits, and diminishing their respective career paths, *see* Plaintiff Erin Combs' Objections and Responses to Defendant's First Set of Interrogatories, and *see* Plaintiff Caroline Wilmuth's Objections and Responses to Defendant's First Set of Interrogatories.

**RESPONSE:**

Within a week or two of Ms. Schomer having most recently raised concerns about pay discrimination (based on her job code and the continued failure to pay her as a Senior Manager), in December 2022, Amazon removed Ms. Wilmuth as Ms. Schomer's supervisor and announced that 10 of Ms. Schomer's 11 projects and two of her three team members were being removed from her. In addition to losing 2/3 of her staff and 90% of her projects, Ms. Schomer also was moved to report to a peer on Mr. Burke's team substantially less research experience (approximately 12 years of experience compared to Ms. Schomer's 25+ years) and lower within the hierarchy of the team.

The removal of Ms. Schomer's directs also removed her eligibility for the higher-paying Senior Manager job code, which should have automatically taken effect back in November 2022. While each of the female L7s (Ms. Combs, Ms. Schomer, and Ms. Cosmaciuc) lost direct reports, lost their leadership roles, and had their scopes severely reduced, the only male L7 (Mr. Mishra) had his scope, team, and compensation increased. Indeed, Mr. Mishra gained a direct report in the "reorg," making it so he would instead receive the Senior Manager pay increase. Mr. Mishra also kept his entire remit intact, which primarily entailed the External Reputation tracking survey ("RepTracker").

Ironically, the changes to Ms. Schomer's diminished role, however, only served to highlight the substantial similarity of hers and Mr. Mishra's work, as the only project Ms. Schomer did not lose in her demotion was the Internal Reputation tracking survey ("ARC



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

survey"). Each of Ms. Schomer's responsibilities in this new role were significantly below her prior job responsibilities when she was leading research projects across several key areas and Amazon business groups. In fact, before the "reorg," Ms. Schomer had hired her L6 report, Jamal Scott to lead the development and implementation of the ARC survey that were now her only responsibilities.

Moreover, in December 2022, Ms. Wilmuth entered a "top tier" performance rating for Ms. Schomer. By the time Ms. Schomer received her annual performance review in March 2023, however, her new supervisor Ana Rocca, had downgraded her to "meets expectations," despite having only supervised her for two weeks of the applicable review period. This resulted in a significant loss of stock compensation and negatively impacted her compensation through the terms. When Ms. Schomer asked why Ms. Rocca had rejected Ms. Wilmuth's rating, Ms. Rocca told her they could not "talk" to Ms. Wilmuth, but they had spoken to Ms. Schomer's previous manager, Maureen Stewart-Nordberg, who is now no longer at Amazon. Ms. Schomer complained to Employee Relations that this review process had not followed standard Amazon protocol. Amazon took no action in response to Ms. Schomer's complaint. This lower rating also affected Ms. Schomer's reputation at Amazon and impacted her ability to find another role internally (prior to her termination).

**INTERROGATORY NO. 9:** Describe all facts supporting Your allegation in Paragraph 178 that "Since returning from [Your] . . . medical leave[], Amazon has continued to discriminate and retaliate against [You]," including identifying the Person or Person who allegedly discriminated and retaliated against You, what they did to discriminate and retaliate against You, when and where that alleged discrimination and retaliation took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

protected from disclosure by the attorney-client privilege and/or work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

Ms. Schomer took FMLA medical leave between May 5th and August 2, 2023. Within weeks of returning from FMLA leave, Ms. Schomer began experiencing additional retaliatory treatment. After Ms. Rocca had only been supervising Ms. Schomer for two weeks following her return from PTO, she provided Ms. Schomer with a list of purported performance issues that she had never previously mentioned, and notably came on the heels of Ms. Schomer's complaints and her protected FMLA leave. Ms. Schomer reported this retaliatory action to HR and Employee Relations. Ms. Rocca falsely reported to Employee Relations that she had conveyed issues with Ms. Schomer's work specifically as performance problems prior to Ms. Schomer's FMLA leave.

In late November, days after filing this lawsuit, Ms. Schomer learned that Amazon had placed her in Focus, an internal performance management program. On February 2, 2024, approximately two months after the filing of the instant lawsuit, Amazon further placed Ms. Schomer into Pivot, which Amazon' equivalent of a Performance Improvement Plan.

While she was in Focus and later Pivot, Ms. Schomer was battling a life-threatening bone infection known as Osteomyelitis. From October to December 2023, Ms. Schomer was on high-dose antibiotics and had two surgeries to combat this infection. This included hospitalization and surgery on December 19, 2023 after the infection returned. At this time, Ms. Schomer took the remainder of her leave available to recover and returned to work after the New Year holiday. Within approximately 2 weeks of leaving the hospital and shortly after returning to work, Ms. Schomer had severe complications with the oral antibiotic she was prescribed and was placed on



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

daily intravenous antibiotics for approximately six weeks. She also had severe anaphylactic response to the first intravenous antibiotic, and she required additional minor surgeries to abate the infection. Ms. Schomer was able to work at this time but reported to Ms. Rocca the fatigue and limited cognitive abilities the high-dose and lengthy antibiotic treatments caused. Ms. Schomer informed Ms. Rocca of all these medical complications since the infection started in October 2023. Ms. Schomer had the antibiotic line in her arm that was visible to both the HRBP Keith Johnson and Mr. Rocca during the meeting when they informed her she was being placed in Pivot. Ms. Schomer completed all six of the Pivot assignments while battling this infection.

On April 17, 2024, Ms. Schomer was informed that she had failed her Pivot and would be terminated. Ms. Schomer was shocked because she fulfilled all the requirements of the Pivot. Amazon did not meet their own requirements in the Pivot, and Ms. Schomer had been extremely successful in the time frame despite her health setbacks. Ms. Schomer appealed the failure of the Pivot on several grounds, including that: 1) Ms. Schomer's job performance well exceeded the requirements of the Pivot; 2) Ms. Rocca did not satisfy the requirements on the Pivot, including by failing to provide timely feedback on the assignments, and when that feedback was provided, it conflicted with 1:1 meetings where Mrs. Rocca approved the work outlined in the assignments to move forward (including contracting vendors); 3) Ms. Schomer was not being measured under the proper job category; 4) Ms. Schomer was subjected to unfair levels of scrutiny given her known health condition; and 5) Amazon set Ms. Schomer up to fail and retaliated against her for ongoing protected conduct. Amazon did not permit Ms. Schomer to mention numbers 4 and 5 in connection with the appeals process.

On May 3, 2024, Ms. Schomer was informed that Amazon denied her Pivot appeal and was terminating her employment.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**INTERROGATORY NO. 10:** Identify separately with respect to each element of damages that You seek to recover in this Action:

a. The amount of damages sought;

b. The party or parties against whom such damages are sought;

c. The basis upon which such damages are to be calculated;

d. Each Person believed by You to have knowledge relating to such calculation of damages; and

e. Each Document that relates to each such calculation of damages.

**OBJECTIONS:** Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiff further object to this Interrogatory to the extent it seeks a calculation of compensatory and punitive damages, neither of which are amenable to calculation or computation. With respect to each such category of damages, Ms. Schomer will seek from a jury the maximum amount amenable to proof at trial.

With regard to Ms. Schomer's economic losses, Plaintiff further objects to this Interrogatory insofar as her damages are ongoing and continue to increase. In addition, Plaintiffs objects to this Interrogatory to the extent that they are in the process of calculating her economic damages based on information received to date from Defendant in discovery.

**RESPONSE:** Plaintiff Schomer seeks the following damages, in each instance against Defendant Amazon.

(1) Schomer seeks back wages in an amount to be determined at trial based on difference between what Amazon actually paid her, and what it should have paid her if it had not discriminated and retaliated against her. This includes:

a. the difference between what she actually earned while coded as Functional & later in July 2023 to General Marketing, and what she would have made, had



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Amazon correctly coded her position as that of a Research Scientist for her level and Forte Rating prior to the retaliation beginning in January 2022; and

b. damages stemming from Amazon's retaliatory actions, including her reduced compensation and stock award resulting from her lower-than warranted Forte rating for 2023, her placement in Pivot, and lost wages and benefits resulting from her wrongful termination in May 2024;

(2) Schomer seeks an award of front pay in amount to be determined at trial to compensate her for the difference between what she will earn through any future employment and what she would have earned, had Amazon compensated her equally as compared to her male peers, correctly coded her job position, and not retaliated against her, including by terminating her employment;

(3) Schomer seeks an equity interest in the corporate entities in an amount to be determined at trial based on the stock she lost as a result of Amazon's discriminatory and retaliatory actions;

(4) Liquidated damages or statutory damages pursuant to the Washington Equal Pay and Opportunities Act, RCW 49.58.010 *et seq.* ("EPOA") and the federal Equal Pay Act;

(5) An amount to be determined at trial to compensate Schomer for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Schomer's emotional distress;

(6) An amount to be determined at trial to compensate Schomer for the harm to her professional and personal reputations and loss of career fulfillment;

(7) An award of punitive damages in an amount to be determined at trial;

(8) An award for Schomer's reasonable attorneys' fees and costs; and

(9) An award of prejudgment and post-judgment interest, calculated at the legal rate under applicable law.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

For calculation purposes, Plaintiff Schomer believes her actual compensation was $289,751 in 2021; $395,852 in 2022; and $322,459 in 2023, but estimates, she would have been earning between $570,000-$900,000 as an L7 Research Scientist. The exact pay differential will be determined after discovery.

Following Plaintiff Schomer's termination, she was paid a total of $26,494 in unemployment insurance benefits, which have since expired. After applying for hundreds of jobs, in May 2025, Plaintiff Schomer secured a position as Senior Research Manager with Wizards of the Coast, which pay $135,000 per year in base salary, with potential bonus up to 15%.

**INTERROGATORY NO. 11:** Identify all administrative proceedings, litigations, and arbitrations, past or pending, in which You were involved either as a party or witness, including the parties involved, relevant allegations, and outcome(s).

**OBJECTIONS:** Plaintiff objects to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence, as it lacks any limitations on the temporal scope or subject matter.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

Around May 2014, Ms. Schomer was witness to a gang shooting in Seattle, Washington. While she was driving by, Ms. Schomer's car was shot at, and she saw the shooter flee the scene (where several people had been shot). Ms. Schomer provided witness testimony to the Seattle Police Department, including a description of the shooter. She was later provided notice by the King County Judicial system that they had arrested and detained the shooter. To Ms. Schomer's knowledge, the perpetrator is still incarcerated and she will be notified if he is released.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**INTERROGATORY NO. 12:** Identify all educational programs, awards, club memberships, association memberships, director or officer positions, and any other positions You have completed, applied for, been nominated for, or received since graduating from high school.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence, including but not limited to the extent the temporal scope dates back to high school, well over twenty years ago.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

Ms. Schomer attended Gonzaga University for undergrad and University of Cincinnati for graduate school. While she was an undergraduate student at Gonzaga, she applied for and was awarded an assistant position for two Political Science faculty. She assisted with preparing exams (typing), grading exams, and other administrative tasks as needed. Ms. Schomer was also nominated and selected by the Women's Studies Department at Gonzaga, to the be a co-leader to plan the annual Women's History Month event. This included planning all activities for the month, engaging/hiring key speakers, identifying panel members, developing the marketing materials (posters, brochures, advertising.), facilitating all the events, and staying within the budget allotted.

Also, while at Gonzaga, Ms. Schomer was awarded three internships. The first was working for U.S. Senator Ted Stevens in the summer of 1994, assisting a legislative aide with environmental correspondence to both constituents and to other U.S. Senators leading Senate committees. Ms. Schomer also drafted legislation that was entered into the congressional record on July 18, 1994 (a colloquy regarding wet land issues). The second internship was to provide event coordination activities for the 1995 International Women's Day event for the Peace and Justice Action League of Spokane, Washington. The third internship was in the summer of



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1995, after she graduated, with the Washington Department of Vocational Rehabilitation, where Ms. Schomer assisted rehabilitation counselors with correspondence and drafting vocational plans for their disabled clients. Ms. Schomer graduated magna cum laude at Gonzaga and was awarded the Dean's List Award for all semesters attended.

While a graduate student completing her master's degree at the University of Cincinnati, Ms. Schomer was awarded free tuition to complete her degree and an assistantship with the Institute for Policy Research to provide data management, field surveys with constituents, and analysis assistance for the Ohio Poll (a semiannual survey that explored the attitudes and opinions of Ohioans on a variety of public policy topics, including the prediction of U.S. Presidential elections).

While employed at PRR, Inc., Ms. Schomer was awarded a National Science Foundation monetary award, approximately $300,000, to design measurement templates for transportation agencies, and her team was awarded a Public Relations Society of America Silver Anvil award for designing campaign impact research to reduce air pollution in Washington school zones.

From 2011 to 2013, Ms. Schomer was elected the Co-VP of Fundraising for the McGilvra Elementary School in Seattle, Washington, where she raised more than one million dollars to provide additional teachers, after-school programs, and other school support. Then, in 2013, Ms. Schomer served on the City of Seattle PTA Counsel as the Central Director, and this was followed by being elected as the Seattle PTSA President from 2014 to 2015. As the President, Ms. Schomer was responsible for addressing parental education concerns across Seattle, mitigating issues with the Seattle School District, working with the City of Seattle Mayor's Office and City Counsel, managing the Seattle PTA Counsel budget, and being the PR spokesperson for the Seattle Counsel PTA. After her time on the Seattle PTA Counsel Board, Ms. Schomer also served as Co-VP of Fundraising for the Seattle Central Little League.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**INTERROGATORY NO. 13:** Identify all instances of gainful work or employment, including but not limited to jobs, independent contractor arrangements, and businesses owned or operated by You, that You have had since graduating from high school.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence to the extent that the temporal scope dates back to high school, well over twenty years ago.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

Prior to her employment at Amazon, Ms. Schomer was a Vice President and later a Senior Vice President of Research for Edelman PR Agency from February 2017 to October 2019. While at Edelman, Ms. Schomer managed and built a team of researchers across office locations (Seattle, Portland, Los Angeles, and San Francisco) to conduct both quantitative and qualitative customer end-to-end global research to inform reputation strategy, product development, brand, and communication business decisions for Edelman clients (Meta, Samsung, Microsoft).

Prior to working at Edelman, Ms. Schomer was a Research Associate, Senior Research Associate, and Group Account Director of Research at PRR, Inc. from July 2001 to approximately February 2017. (Between 2007 to 2013, Ms. Schomer worked at PRR as a part-time Research Associate Contractor.) While at PRR, Inc., Ms. Schomer developed and managed ongoing tracking, customer satisfaction, and brand reputation surveys for Washington Department of Transportation, Seattle Department of Transportation, Seattle Public Utilities, Washington Department of Health, as well as for several city government and transportation agencies across Washington, Oregon, California, Colorado, District of Columbia, and Georgia. She also conducted both qualitative and quantitative original end-to-end research to uncover equity challenges and develop solutions to improve DEI engagement for clients including Seattle



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Children's, King County Public Health Department, Washington Department of Health, and Seattle Community Police Commission. Ms. Schomer also managed a large-scale experiment (5,000+ participants) for California Department of Transportation (Caltrans) to understand public willingness to use road usage charging instead of paying gas taxes as well as similar studies in WA, OR, and Colorado. This included recruiting and managing participants, as well as analyzing monthly survey data to provide actional insights to Caltrans leadership. Besides the PRSA and Science Foundation awards that she received while at PRR, Ms. Schomer also led sustainable product research for Nike and conducted research for the EPA to redesign the fuel economy label on all new cars across the U.S.

From 2007 to 2013, Ms. Schomer worked as a Research Manager for the University of Washington Department of Rehabilitation as part of the UW Medical Center. In this role, she managed a team to conduct 21 evidence-based rehabilitation medical reviews. She partnered with 50 or more physicians/researchers/faculty across various U.S. universities. The result was 17 journal publications addressing needs of patients with spinal cord, burn, and traumatic brain injuries (Publications are listed here: https://www.researchgate.net/scientific-contributions/Katherine-Schomer-15335394). Ms. Schomer also developed an enterprise data collection/analytical tool designed for conducting evidence-based reviews in rehabilitation medicine across U.S. universities at scale.

Additionally, while employed at both PRR, Inc. and UW Department of Rehabilitation, Ms. Schomer was a Research Methods and Statistics Instructor at City University from 2003 - 2007, where she taught one or two undergraduate classes per quarter for both the Psychology and Communications Department in Research Methods & Statistics, Communication Research Methods, and Organizational Psychology.

Lastly, Ms. Schomer worked as a Research Project Manager at Boeing Employees Credit Union ("BECU") from 1997 to 2000. Ms. Schomer was responsible for managing the marketing



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

customer database, providing return of investment ("ROI") analysis for marketing campaigns, providing target audiences for marketing campaigns, conducting original end-to-end survey research, and managing vendors to conduct focus groups. This was followed by a brief role at Primus Software as a Vertical Marketing Manager in 2001 before she was employed at PRR. Inc in July of 2001.

**INTERROGATORY NO. 14:** Identify all jobs for which You have applied, whether with Amazon or any other employer, since November 20, 2020, including the dates on which You applied to each, and describe the outcome of any such applications, including but not limited to whether You were extended an interview or offered a job.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, irrelevant, and harassing to the extent the temporal scope predates Ms. Schomer's termination and her efforts to mitigate her damages following her termination. Plaintiff further objects to this Interrogatory as unduly burdensome.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

Following her demotion in December 2022 and prior to her termination from Amazon in May 2024, Ms. Schomer applied to or investigated research positions at the Ford Motor Company, Seattle Children's Hospital (interviewed), AT&T, Smith-Hanley Associates, Albion Rye Associates, Gates Foundation, Adobe, Starbucks, Herbalife, Boeing Employees Credit Union, Hinge Health, The College Board, University of Washington, CVS, and Publicis Sapient. She also had 2-3 conversations/meetings with a previous colleague from her time on the Seattle PTA Counsel (Charles Wright) from August 2023 to January 2024. Mr. Wright reached out to her about an advisory role, as a volunteer, for an education initiative he was leading that could lead to a full-time paying role. However, this never came to fruition as Ms. Schomer had to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

decline the volunteer role due to her health complications and retaliation she was experiencing at Amazon during this time. During this period, Ms. Schomer also explored other L7 research roles at Amazon. Although she followed-up with recruiters and hiring managers regarding multiple L7 research roles, she does not recall formally applying to any, as her memory is they had already been filled at the time or were no longer available.

Since her termination from Amazon in May 2024, Ms. Schomer has applied for hundreds of jobs, including but not necessarily limited to the following:

- May 2024: Brooks Running, Wild Alaskan Company, Door Dash, Seed Health, Washington State Senate, University of Washington, Qince, Onerail, Survey Monkey;
- June 2024: Nuvolo, Georgia-Pacific, University of the People, Burtch Works, David Tech & Hiring, Upwork, Qualz;
- July 2024: Mercury, Adobe, Meta, Starbucks, Tiktok, Sandy Hook Promise, Academic Partnerships, Liquid Agency, Greif, Nerdy, e.l.f. Beauty;
- August 2024: Microsoft, Riot Games;
- September 2024: Entrepreneurs' Organization, Workday, Eaze, Storm6, Brex, Pets Best Insurance Services, Chewy, Brightspeed, Newlab, Swedish Orphan Biovitrum AB, Sobi North America, Bantam Communications, Guideline, Wellstar Health System, Kalon Executive Search for Health and Wellness, Dollar General, Cityblock Health, Oscar Insurance Corporation, Brightspeed, Imply, LUNGevity Foundation, DrFirst, Monday Talent, Torticity, Miaplaza, Stealth Startup, Genesis Research Group, Walker Lovell, WittKieffer, Neiman Marcus Group, Weller & Company, Inc., Rover, HustleWing, Aquent, Sobi, Albion Rye Associates, Come Near;
- October 2024: Cleerly, Tata Electronics, Jack Farrell & Associates, Glass, Peacock, Bellevue College, GEHA, LatentView Analytics, Olipop, Madison Wells, Instruction Partners, Gaber Marketing Studios, Liquid Agency, Wilkins Media, Lee Kum Kee USA,



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Advocate Health, Robert Half, LatentView Analytics, TELUS Digital, Starbucks, HireVue, MAFE Resources, Dynata;

- November 2024: Alaska Airlines, tvScientific, Synergy Pet Group, Zywave, LHH, ARMRA, LHH, Brilliant Earth, Assurant, RevCats, Financial Health Network, Meta, Pixis, Data Axle, Crowdwave, Radius Global Market Research, iQor, King County Housing Authority, Harnham, Engage Partners, Chargebee, Precision AQ, ZRG Partners;
- December 2024: 2CV, InnovArise by Grupo AG, Trader Interactive, Minority Corporate Counsel Association, Highlights for Children, Brown & Brown Insurance, nxtplay Search Group, ComOps, Alter Agents;
- January 2025: Finch Brands, Advanced Energy United, Weller & Company, Included Health, AMC Global, Zillow, Hartman Group, SIVO, University of WA, WorkMoney, Collage Group, Smith Hanley Associates, Alter Agents, Edgility Consulting, Lantern Care, Liquid Agency, Ipsos, Paritii, Microsoft, Angi, Korn Ferry, MathCo, Salesforce, Core Education, ARTYFACT;
- February 2025: WorkMoney, Higher Research Recruiting, Blue Room Research, Artisanal Consulting, TideWatch, Silgan Dispensing, M3USA, PointClickCare, Healogix, GOODQUES, The Marketing Practice, Storm Search, ActiveCampaign, HealthVerity, Family Reach, Fuel Talent, Envision Health Partners, Worth Rises, Albion Rye Associates, FRANdata, ID5.io, Union of Concerned Scientists, VOX Wins, Jobot, Wellesley Information Services, Vybrant HR, Precision AQ, Vimergy, Sekisui House US Holdings, Ibis Public Sector, NielsenIQ, Jobgether, tonies USA;
- March 2025: Cypress HCM, Ste. Michelle Wine Estates, Nintendo, Seattle's Children, Bellomy Market Research, ADP, Stone Alliance Group, FreshRealm, Stanley 1913, HealthVerity, BEESY Strategy, The Hain Celestial Group, HP, Kaplan, Onward, Rover,



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Nordstrom, LHH, DexCare, Olipop, Mainspring Energy, Cohere Health, Core Education, Grow, Aditi Consulting, NBCUniversal, Salesforce, Seattle City Flag, Momcozy, Atlassian Recruiting, The Happy Employees, Coach Foundation, VIVIO Health, HireTalent, Encore Support Services, Olinger, leapcure, EVERSANA INTOUCH, Tribe, The Who We Are Project, Common Cause, US Tech Solutions, DoorDash, Hasbro, Adobe, ADL, The Sage Group, Recruitly, Smith Hanley Associates, Wizards of the Coast, Considine Search, Vamos Search Consulting, National University, TrueDialog, Lakeview Farms, HireVue, Microsoft, Angi, Vamos Search Consulting, Lantern, Talent Navigation Experts, Psyma;

- April 2025: Black & White Zebra, Crystal Equation Corporation, Ignis AI, Batonex, Carnegie Foundation, LinkedIn, Rackspace Technology, MavenMagnet AI, Tailored Management, Robert Half, 52 Limited, Experian, Henderson Search & Consulting, ghSMART, My Code Media, PrizePicks, ClifyX, PARITY, Enact Insight, Advancing Health Equity, Theron Solutions, Dscout, Milestone, Crisis Text Line, M/A/R/C Research, Protocol Theory.

A year after her termination in May 2025, Ms. Schomer secured a new position as a Senior Research Manager with Wizards of the Coast. Plaintiffs have produced documents reflecting Ms. Schomer's mitigation efforts, including job applications, inquiries, networking, etc., in respons to Request for Production No. 24.

**INTERROGATORY NO. 15:** Identify all e-mail accounts, e-mail addresses, user names, handles, mobile devices, mobile device numbers, blogs, forums, cloud storage accounts, social media platforms or accounts, or the like, including but not limited to SMS message accounts, iMessage accounts, Facebook, Twitter, Instagram, WhatsApp, Snapchat, Vine, Pinterest, TikTok, Reddit, Google+, Dropbox, Google Drive, Apple iCloud, and Microsoft OneDrive, by which



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

You have sent, received, shared, stored, posted or forwarded communications or content of any sort in any form (excluding private and privileged communications to or from counsel) concerning the allegations in the Complaint.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it includes information protected by the attorney-client privilege, work product doctrine, and/or common interest privilege. Plaintiffs further object to this Interrogatory as overly broad and not reasonably calculated to lead to admissible evidence.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:

- Personal email addresses:
  - schkg@hotmail.com (with an alias of Katherine.schomer@outlook.com)
  - kschomer.edelman@gmail.com
  - katherineschomer@comcast.net
- iPhone: (206) 852-3015)
- LinkedIn: https://www.linkedin.com/in/katherine-schomer-b578444/
- Facebook/Instagram Messenger

**INTERROGATORY NO. 16:** Identify all electronic devices, removable media devices (including but not limited to USB drives, thumb drives, and external hard drives), in Your possession, custody or control that contain information related to Your employment, or have contained information related to Your employment at any time since November 20, 2020.

**OBJECTIONS:** Plaintiffs further object to this Interrogatory as overly broad and not reasonably calculated to lead to admissible evidence.

**RESPONSE:** Subject to and without waiving these objections, Ms. Schomer responds as follows:



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

- Personal computer
- Cell phone
- Work laptop (now in Amazon's possession)
- USB drive (now in Amazon's possession)

**INTERROGATORY NO. 17:** Identify any consultants or experts with whom You have spoken in connection with this Action.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it conflicts with applicable deadlines for identifying retained experts or producing expert reports.

**RESPONSE:** If and when Plaintiffs retain a testifying expert in this matter, Plaintiffs will comply with the Court's deadlines for disclosures related thereto.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

DATED: August 8, 2025

OUTTEN & GOLDEN LLP

By: [signature]

Cassandra W. Lenning, WSBA #54336
Jahan C. Sagafi*
Menaka N. Fernando*
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800

Adam T. Klein*
Cara E. Greene*
Chauniqua Young*
Michael C. Danna*
685 3rd Ave 25th Floor
New York, NY 10017
Telephone: (212) 209-0675

Jennifer Davidson*
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 918-5476

*admitted pro hac vice*

*Attorneys for Plaintiffs*

**VERIFICATION**

I, Katherine Schomer, solemnly affirm, pursuant to the laws of the United States and the State of Washington, and under the penalty of perjury and upon personal knowledge, that the Responses to the foregoing seventeen interrogatories are true and correct.

By: ______________________
Katherine Schomer



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

The signed document can be validated at https://app.vinesign.com/Verify

# CERTIFICATE OF SERVICE

I certify that on August 8, 2025, I caused the foregoing Plaintiff Katherine Schomer's First Supplemental Objections and Responses to Defendant's First Set of Interrogatories to be sent to all counsel of record *via* electronic mail.

DATED: August 8, 2025

OUTTEN & GOLDEN LLP

By: Cassandra Lenning

Cassandra W. Lenning, WSBA #54336
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800