# Exhibit D

THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLINE WILMUTH, KATHERINE SCHOMER, And ERIN COMBS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.com, Inc.,<br><br>Defendant. | Case No. 2:23-CV-01774-JNW<br><br>PLAINTIFF ERIN COMBS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES |



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Erin Combs ("Plaintiff"), by and through her attorneys, Outten & Golden LLP, hereby submits the following first supplemental objections and responses to Defendant's First Set of Interrogatories, dated May 31, 2024.

## PRELIMINARY STATEMENT

All responses to the following Interrogatories are based on information currently known to Plaintiff and are provided without prejudice to Plaintiff's right to submit evidence of any subsequently discovered facts and information, should such become known. Plaintiff anticipates that as investigation and trial preparation continue, it is possible that additional facts may become known, which may in turn warrant additions to or changes in the responses provided herein. These responses are made in a good faith effort to supply such information as is presently known to Plaintiff. These objections and responses are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

Plaintiff reserves all objections to the competence, relevance, materiality, or admissibility at trial of any information or documents requested or identified by any party. The inadvertent disclosure of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information.

The production of information and/or documents pursuant to this response is made without waiving, or intending to waive, but on the contrary reserving and intending to reserve: (a) the right to object on any grounds to the use of information produced pursuant to this response in this or any other action or proceeding; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery mechanisms or proceedings; and (c) the right at any time to revise, correct, or supplement this response.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Plaintiff objects to Defendant's "Definitions" and "Instructions" to the extent that Defendant seeks to impose obligations that go beyond the provisions and requirements of the FRCP and the Local Civil Rules.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify each Person with whom You have communicated Regarding this lawsuit, the subject matter of this lawsuit, or the allegations of the Complaint. For each such individual other than Your counsel in this Action, identify the form, general substance, and date of each such Communication as well as all methods used to communicate with these individuals.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or common interest privilege.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows: In addition to those individuals identified in Plaintiffs' Initial Disclosures, Ms. Combs has also communicated with the following persons regarding this lawsuit or the allegations in the Amended Complaint:

1. Maisie Antonello
   Contact through Plaintiffs' counsel

Maisie Antonello is a former colleague of Ms. Combs. Ms. Combs had a single discussion with Ms. Antonello about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking meeting when Ms. Antonello asked Ms. Combs about her departure from Amazon.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

2. Amy Baernstein M.D.
4245 Roosevelt Way NE
Seattle, WA 98105
(206) 598-5500

Amy Baernstein M.D. is the general practitioner of Ms. Combs. Ms. Combs has spoken to Dr. Baernstein about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

3. Sally Bock
Contact through Plaintiffs' counsel

Sally Bock is a personal friend and colleague of Ms. Combs. Ms. Combs has had verbal conversations with Ms. Bock about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

4. Leah Baltus
Contact through Plaintiffs' counsel

Leah Baltus is a personal friend and colleague of Ms. Combs. Ms. Combs has had verbal conversations with Ms. Baltus about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications were limited to one discussion and passing references.

5. Shannon Boldizsar
Contact through Plaintiffs' counsel

Shannon Boldizsar is a colleague of Ms. Combs. Ms. Combs has had verbal conversations with Ms. Boldizsar about the discriminatory and retaliatory conduct that Amazon



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

6. Meghan Brooks
Contact through Plaintiffs' counsel

Meghan Brooks is a former Amazon employee and a personal friend of Ms. Combs. Ms. Combs has spoken extensively with Ms. Brooks about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

7. Justin Brooks
Contact through Plaintiffs' counsel

Justin Brooks is a personal friend of Ms. Combs. Ms. Combs has had multiple conversations with Mr. Brooks about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

8. Jennifer Buchanan
Contact through Plaintiffs' counsel

Jennifer Buchanan is a personal friend of Ms. Combs. Ms. Combs has spoken to Ms. Buchanan about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications were limited to one discussion and passing references.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

9. Andrea Buckmeier
Contact through Plaintiffs' counsel

Andrea Buckmeier is a personal friend of Ms. Combs. Ms. Combs has had multiple conversations with Andrea Buckmeier about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

10. Kelsey Butler

Kesley Butler is a reporter at Bloomberg. Ms. Combs spoke to Ms. Butler on November 20, 2023 regarding the Complaint and the allegations therein, and then again on February 8, 2024 regarding the Amended Complaint and allegations contained therein. To the best of her recollection, Ms. Butler interviewed Ms. Combs via a Zoom meeting.

11. Natasha Cagen
Contact through Plaintiffs' counsel

Natasha Cagen is a personal friend of Ms. Combs. Ms. Combs has spoken to Natasha Cagen about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications were limited to one discussion or passing references.

12. Steven Cagen
Contact through Plaintiffs' counsel

Steven Cagen is a personal friend of Ms. Combs. Ms. Combs has spoken to Steven Cagen about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

13. Darby Carlisle
Contact through Plaintiffs' counsel

Darby Carlisle is a personal friend of Ms. Combs. Ms. Combs has had multiple verbal conversations with Ms. Carlisle about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

14. Robert Carlisle
Contact through Plaintiffs' counsel

Robert Carlisle is a personal friend of Ms. Combs. Ms. Combs has spoken to Robert Carlisle about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been limited in nature.

15. Lynn Combs
Contact through Plaintiffs' counsel

Lynn Combs is the sister of Ms. Combs. Ms. Combs has had multiple conversations with her sister about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

16. Lyz Cover
Contact through Plaintiffs' counsel

Lyz Cover is a personal friend of Ms. Combs. Ms. Combs has spoken to Lyz Cover about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications were limited to one discussion and/or passing references.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

17. Matt Day

Matt Day is a reporter at Bloomberg. Ms. Combs spoke to Mr. Day on November 20, 2023 regarding the Complaint and the allegations therein, and then again on February 8, 2024 regarding the Amended Complaint and allegations contained therein. To the best of her recollection, Mr. Day interviewed Ms. Combs via a Zoom meeting.

18. Jason Del Ray

Jason Del Ray is a reporter at Fortune. Ms. Combs spoke to Mr. Del Ray on March 8, 2024 regarding the lawsuit and the allegations therein. To the best of her recollection, Mr. Del Ray interviewed Ms. Combs via a Zoom meeting.

19. Brian Ellingwood
Contact through Plaintiffs' counsel

Brian Ellingwood is the brother-in-law of Ms. Combs. Ms. Combs has had verbal conversations with Mr. Ellingwood about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These conversations have been limited in nature.

20. Jana Ellingwood
Contact through Plaintiffs' counsel

Jana Ellingwood is Ms. Combs' sister-in-law. Ms. Combs has had multiple verbal conversations with Ms. Ellingwood about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

21. Oliver Evans
Contact through Plaintiffs' counsel

Oliver Evans is a personal friend of Ms. Combs. Ms. Combs has spoken to Oliver Evans about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been limited in nature.

22. Cynthia Flash
Contact through Plaintiffs' counsel

Cynthia Flash is a colleague of Ms. Combs. Ms. Combs exchanged emails with Ms. Flash about the lawsuit, discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, and/or the mental and physical distress caused by Amazon's conduct. These emails were in the context of Ms. Flash recommending that Ms. Combs read Kristi Coulter's book, *Exit Interview*, and Ms. Combs responded by sending the link to the Seattle Times' article about this lawsuit.

23. Tim Flynn
Contact through Plaintiffs' counsel

Tim Flynn is a personal friend of Ms. Combs. Ms. Combs has had multiple conversations with Mr. Flynn about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications may have been exchanged either verbally and/or via text messages.

24. Desiree Gale
Contact through Plaintiffs' counsel

Desiree Gale is the after-school care provider for Ms. Combs' daughter. Ms. Combs had a single conversation with Desiree Gale about the discriminatory and retaliatory conduct that



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of Ms. Combs giving Ms. Gale an update about events at home that have affected Ms. Combs' daughter.

25. Mel Gregory
Contact through Plaintiffs' counsel

Mel Gregory is a personal friend of Ms. Combs. Ms. Combs has spoken extensively to Ms. Gregory about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been both verbal and *via* text messages.

26. Kelsey Hansen
Contact through Plaintiffs' counsel

Kelsey Hansen is a former colleague of Ms. Combs. Ms. Combs had a single verbal discussion in the context of a professional networking conversation with Ms. Hansen about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation happened in response to Ms. Hansen asking Ms. Combs about that lawsuit after reading about it in the newspaper.

27. Kris Haskins
Contact through Plaintiffs' counsel

Kris Haskins is a personal friend of Ms. Combs. Ms. Combs has spoken extensively to Mr. Haskins about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged verbally.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

28. Katie Herrod
Contact through Plaintiffs' counsel

Katie Herrod is a former colleague of Ms. Combs. Ms. Combs had a single discussion in the context of a professional networking conversation with Ms. Herrod about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of Ms. Herrod asking Ms. Combs about her departure from Amazon.

29. Hana Jacobs
Contact through Plaintiffs' counsel

Hana Jacobs is a personal friend and colleague of Ms. Combs. Ms. Combs has spoken with Ms. Jacobs about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These conversations have been in the context of professional networking when Ms. Jacobs asked Ms. Combs about the lawsuit after reading it in the newspaper, and then following passing references.

30. Ethan Johnson
Contact through Plaintiffs' counsel

Ethan Johnson is a former Amazon employee and former colleague of Ms. Combs. Ms. Combs had a single conversation with Mr. Johnson about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking conversation after both Mr. Johnson and Ms. Combs were no longer employed by Amazon.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

31. Monique Johnson
Contact through Plaintiffs' counsel

Monique Johnson is a colleague of Ms. Combs. Ms. Combs had a single discussion with Ms. Johnson about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking meeting when Ms. Johnson asked Ms. Combs about her role at Amazon and about her departure from Amazon.

32. Susan Kannel
Contact through Plaintiffs' counsel

Susan Kannel is Ms. Combs' mother. Ms. Combs has spoken extensively to her mother about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

33. Sara Kath
Contact through Plaintiffs' counsel

Sara Kath is a personal friend of Ms. Combs. Ms. Combs has had multiple conversations with Ms. Kath about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

34. Jackie Liao
Contact through Plaintiffs' counsel

Jackie Liao is a colleague of Ms. Combs. Ms. Combs had a single discussion with Ms. Liao about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking meeting with Ms. Liao asked Ms. Combs about her role at Amazon and why she departed Amazon.

35. Meghan Manwill
Contact through Plaintiffs' counsel

Meghan Manwill is a personal friend of Ms. Combs. Ms. Combs has had multiple verbal conversations with Ms. Manwill about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

36. Sarah Marino
Contact through Plaintiffs' counsel

Sarah Marino is a personal friend and colleague of Ms. Combs. Ms. Combs had a single discussion with Ms. Marino about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking conversation when Ms. Combs described her role and departure from Amazon.

37. Jill McKay-Fleisch
Contact through Plaintiffs' counsel

Jill McKay-Fleisch is a personal friend of Ms. Combs. Ms. Combs has had verbal conversations with Ms. McKay-Fleisch about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

38. Markus McKay-Fleisch
Contact through Plaintiffs' counsel

Markus McKay-Fleisch is a personal friend of Ms. Combs. Ms. Combs has spoken to Markus McKay-Fleisch about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

39. Anne McNaughton
Contact through Plaintiffs' counsel

Anne McNaughton is Ms. Combs' step-mother. Ms. Combs has spoken extensively to Ms. McNaughton about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These conversations have been verbal.

40. Donna Monroe
Contact through Plaintiffs' counsel

Donna Monroe is Ms. Combs' mother-in-law. Ms. Combs has had multiple verbal conversations with Ms. Monroe about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

41. Michael Monroe
Contact through Plaintiffs' counsel

Michael Monroe is Ms. Combs's husband. Ms. Combs has spoken extensively with Mr. Monroe about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text message.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

42. Joelle Nausa Skagin
Contact through Plaintiffs' counsel

Joelle Nausa Skagin is a colleague of Ms. Combs. Ms. Combs had a single discussion with Joelle Nausa Skagin about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking meeting when Ms. Skagin asked Ms. Combs about her departure from Amazon.

43. Andreea Niculescu
Contact through Plaintiffs' counsel

Andreea Niculescu is a colleague of Ms. Combs. Ms. Combs had a single discussion with Ms. Niculescu about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of a professional networking meeting with Ms. Niculescu asked Ms. Combs about the lawsuit after reading about it in the media.

44. Joe Paganelli
Contact through Plaintiffs' counsel

Joe Paganelli is a client and colleague of Ms. Combs. Ms. Combs had a single verbal conversation with Mr. Paganelli about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. This conversation was in the context of Mr. Pagenelli asking Ms. Combs about the change in Ms. Combs' role at Amazon after she was demoted.

45. Krista Quicke
Contact through Plaintiffs' counsel

Krista Quicke is Ms. Combs' step-sister. Ms. Combs has had verbal conversations with Ms. Quicke about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

46. Sarah Richardson
Contact through Plaintiffs' counsel

Sarah Richardson is a personal friend of Ms. Combs. Ms. Combs has spoken extensively to Ms. Richardson about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

47. Lisa Richardt
Contact through Plaintiffs' counsel

Lisa Richardt is a personal friend of Ms. Combs. Ms. Combs has had verbal conversations with Ms. Richardt about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

48. Lauren Rosenblatt
lrosenblatt@seattletimes.com

Lauren Rosenblatt is a reporter at the Seattle Times. Ms. Combs spoke to Ms. Rosenblatt on November 20, 2023 regarding the filed Complaint and the allegations therein. To the best of her recollection, Ms. Rosenblatt interviewed Ms. Combs via a Zoom meeting.

49. Samantha Savage
Contact through Plaintiffs' counsel

Samantha Savage is a personal friend of Ms. Combs. Ms. Combs has had multiple verbal conversations with Ms. Savage about the discriminatory and retaliatory conduct that Amazon



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

50. Katherine Schomer

Katherine Schomer is a co-plaintiff, colleague, and friend of Ms. Combs. Ms. Combs has spoken extensively to Ms. Schomer about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have been exchanged both verbally and via email and text messages.

51. Tana Senn
Contact through Plaintiffs' counsel

Tara Senn is a personal friend of Ms. Combs. Ms. Senn reached out to Ms. Combs after the reading about the lawsuit in the media when it was filed. They had one verbal conversation regarding the lawsuit, the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, and/or the mental and physical distress caused by Amazon's conduct.

52. Steven Severin
Contact through Plaintiffs' counsel

Steven Severin is a friend and former colleague of Ms. Combs. Ms. Combs has spoken to Mr. Severin about the lawsuit, the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, and/or the mental and physical distress caused by Amazon's conduct. Ms. Combs had a single conversation with Mr. Severin explaining why her role changed after she was demoted, then exchanged text messages after the lawsuit was filed and Mr. Severin read about it in the media.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

53. Erin Shane
Contact through Plaintiffs' counsel

Erin Shane is a personal friend of Ms. Combs. Ms. Combs has had multiple conversations with Erin Shane about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

54. Leigh Sims
Contact through Plaintiffs' counsel

Leigh Sims is a friend of Ms. Combs. They had a single discussion regarding the lawsuit, the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, and/or the mental and physical distress caused by Amazon's conduct.

55. Julia Szilliard
Contact through Plaintiffs' counsel

Julia Szilliard is a personal friend of Ms. Combs. Ms. Combs has spoken extensively to Ms. Szilliard about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

56. Esther Teodoro
Contact through Plaintiffs' counsel

Ester Teodoro is a personal friend of Ms. Combs. Ms. Combs has spoken to Ester Teodoro about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications were limited to one discussion and passing references.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

57. Mia Tisdale
Contact through Plaintiffs' counsel

Mia Tisdale is a massage therapist and treated Ms. Combs from 2020 - 2023. During this time, Ms. Combs had verbal conversations with Ms. Tisdale about the mental and physical distress caused by Amazon's conduct. These conversations were limited in nature, and in the context of Ms. Combs' describing her stress level during the time Ms. Tisdale treated her.

58. Susie Van Hess
Contact through Plaintiffs' counsel

Susie Martinek is a personal friend of Ms. Combs. Ms. Combs had a single discussion with Ms. Van Hess about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

59. Courtney Vinopal

Ms. Vinopal is a reporter at HR Brew. Ms. Combs spoke to Ms. Vinopal on November 27, 2023 and February 29, 2024 regarding the lawsuit and the allegations therein. To the best of her recollection, Ms. Vinopal interviewed Ms. Combs via a Zoom meeting.

60. Abby Wargo

Ms. Wargo is a reporter at Law360. Ms. Combs spoke to Ms. Wargo on November 20, 2023 regarding the filed Complaint and the allegations therein. To the best of her recollection, Ms. Wargo interviewed Ms. Combs via a Zoom meeting.

61. Aina Williams
Contact through Plaintiffs' counsel

Aina Williams is a personal friend of Ms. Combs. Ms. Combs has spoken to Aina Williams about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications were limited to one discussion or passing references.

62. Caroline Wilmuth

Caroline Wilmuth is a co-plaintiff, colleague, and friend of Ms. Combs. Ms. Combs has spoken extensively to Ms. Wilmuth about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and this lawsuit. These communications have been exchanged both verbally and via email and text messages.

63. Drew Woodruff
Contact through Plaintiffs' counsel

Drew Woodruff is a personal friend of Ms. Combs. Ms. Combs has had multiple verbal conversations with Drew Woodruff about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

64. Dr. Priscilla Wright Ph.D.
3245 Fairview Ave E
Seattle, WA 98102
(206) 718-4153
priscilla56@live.com

Dr. Priscilla Wright Ph.D. is the psychologist of Ms. Combs. Ms. Combs has spoken to Dr. Wright about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and the lawsuit.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

65. Michael Zittle
Contact through Plaintiffs' counsel

Michael Zittle is a personal friend of Ms. Combs. Ms. Combs has spoken to Mr. Zittle about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit. These communications have been exchanged both verbally and via text messages.

66. Dr. Christina Wei
425-892-0672
Tranquilwaypsych@gmail.com

Dr. Wei is Ms. Combs' current therapist, who she began seeing in January 2025. Ms. Combs has spoken to Dr. Wei about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, and the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

67. Mary and Dick Usher
Contact through Plaintiffs' counsel

Mary and Dick Usher are personal friends of Ms. Combs. Ms. Combs has spoken to them about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

68. Lindsey Derry
Contact through Plaintiffs' counsel

Lindsey Derry is a personal friend of Ms. Combs. Ms. Combs has spoken with Ms. Derry about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

69. Roddy & Elli Theobald
Contact through Plaintiffs' counsel

Roddy and Elli Theobald are personal friends of Ms. Combs. Ms. Combs has spoken to

them about the discriminatory and retaliatory conduct that Amazon subjected Ms. Combs to during her employment, the mental and physical distress caused by Amazon's conduct, and/or the lawsuit.

70. Meg Coyle

Meg Coyle is a former Amazon employee who reached out to Ms. Combs after being laid off by Amazon. Ms. Combs and Ms. Coyle discussed their respective experiences at Amazon and the present lawsuit.

71. Elizabeth "Betsy" Hart

Elizabeth "Betsy" Hart is a former Amazon employee who reached out to Ms. Combs after being laid off by Amazon. Ms. Combs and Ms. Hart discussed their respective experiences at Amazon and the present lawsuit.

**INTERROGATORY NO. 2:** For each job code classification, promotion, or pay increase You allege You were denied because of employment discrimination by Amazon, please Identify the job code classification, promotion, or pay increase You were denied, Your qualifications, when You were denied, and who was responsible for denying You the job code classification, promotion, or pay increase.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it is overbroad, unduly burdensome, and seeks information already in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:**

Ms. Combs does not allege she was denied a job code classification or promotion. She alleges Amazon paid her less than her male peers in the same job code at the same level, including males who had substantially less experience than Ms. Combs, and Amazon further denied her a pay increase because of discrimination and retaliation.

Regarding the denied pay increase, Ms. Combs states as follows: She reported to Ms.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Wilmuth for all but two weeks of 2022 (until mid-December 2022). As her manager, Ms. Wilmuth submitted a year-end performance rating for Ms. Combs, prior to her team being removed (and Ms. Combs' demotion). Ms. Wilmuth submitted a "top tier" performance rating for Ms. Combs.

On December 16, 2022, Ms. Combs was moved to report to Dylan Green. Mr. Green was only Ms. Combs' manager for the last two weeks of 2022, during which time Ms. Combs was primarily on PTO for the holidays. Mr. Green did not perform any managerial duties, supervise, or even witness any of Ms. Combs' work to provide him any basis to evaluate her performance for 2022.

Nevertheless, by the time Ms. Combs received her review in March 2023, Amazon had downgraded her performance rating from "top tier" to the lowest level of "meets expectations," likely "HV1." Compensation targets are directly tied to performance ratings. If an employee is rated "meets expectations," their target compensation for the next year is 40-60% of the range for their job code. Conversely, in employee is rated "top tier," their target compensation for the next *two years* is 85-95% of the range for their job code.

Plaintiffs estimate the change in Ms. Combs' performance rating from "top tier" to "meets expectations" resulted in the loss of approximately 2,020 RSUs that would have vested in 2024 and 2025. Ms. Combs' projected total compensation for 2023 (according to her 2023 compensation statement) was $254,560. This represents a decrease of $40,000 from her total compensation in 2022, and only $4,560 more than her total compensation at the time she was hired three years prior. This decreased rating also would have suppressed Ms. Combs' compensation for the following two years because "top tier" ratings predict compensation targets for multiple years.

**INTERROGATORY NO. 3:** Describe in detail Your job duties for all positions You



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

have held at Amazon.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it is overbroad, unduly burdensome, and seeks information already in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:** Ms. Combs was employed at Amazon from March 2020 until December 2023, during which time she held multiple different roles with varying job duties.

In her first role, between March 2020 and mid-2021, Ms. Combs reported to Alice Shobe, L8, Director of Amazon in the Community (now named Global Social Impact). Her skip-level manager was Drew Herdener (SVP, L10). Ms. Combs' original title was "Principal Program Manager, Amazon in the Community Communications," within the larger "Program Manager" job code. Shortly after Ms. Combs' started (exact date unknown), however, the entire AITC team went through a job code review. As a result, Ms. Combs' title was changed to "Principal General Marketing" and her job code changed to "General Marketing." Neither Ms. Combs' reporting line, compensation, nor job duties changed.

On AITC, Ms. Combs' was responsible for all marketing activities -- from strategy to execution -- for the social impact programming run by AITC, which is akin to the Company's central corporate social responsibility (CSR) function. Specifically, Ms. Combs:

- Wrote annual AITC marketing strategies and gained buy-in from senior leaders;
- Led the first brand strategy work for AITC, including developing AITC's brand, and rolling it out with partners Company-wide;
- Led development of the internal-facing "Amazon Cares" brand;
- Led marketing efforts (strategy and execution) for high-priority programs, including the $2 billion Housing Equity Fund, Amazon Future Engineer, and Disaster Relief by Amazon;
- Created and developed local community engagement efforts in the Puget Sound,



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Amazon's headquarters region ("HQ1"), including leading proof-of-concept pilots to demonstrate her headquarter proposal, drafting multiple headquarter proposals and presenting to multiple leaders, including Christina Lee (VP, L10);

- Partnered with Amazon's Communications, Public Relations, and Public Policy teams to develop strategies and messaging for communications, media, or government relations campaigns or initiatives;
- Developed "marketing 101" trainings, tools, playbooks and resources in order to scale and enable marketing efforts across the teams; and
- As member of the AITC leadership team, filled various roles involving drafting or contributing to quarterly business reviews (QBRs), OP1s (annual strategy planning), and organization strategies (such as drafting team tenets).

Ms. Combs' role was re-scoped in mid-2021. In this second role, which Ms. Combs held from mid-2021 until January 2022, she reported to Victor Reinoso, L8 Director of Amazon Future Engineer (AFE). Her title, job code, level, and compensation remained the same. Ms. Combs' functional job duties also were similar, but her scope shifted from all AITC to focused on the global AFE program. Specifically, Ms. Combs:

- Was responsible for the marketing strategy and execution for all AFE marketing, including student and teacher acquisition;
- Led brand strategy for AFE, developed AFE's brand messaging, brand book, and rolled it out across the team; and
- Led the AFE marketing campaign across paid, owned, and earned channels, from brief through measurement.

In January 2022, Ms. Combs joined the Research and Strategy team as a Principal Brand Strategist. In this third role, which Ms. Combs held until December 2022, she reported to Caroline Wilmuth (L7), and Christina Lee, (VP, L10) was her skip-level manager. Ms. Combs'



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

job code, level, and compensation remained the same. Her job duties included the following:

- Working alongside technical researchers to develop the research strategies that would meet specific business needs, and then synthesizing data into actionable brand, messaging, and marketing business recommendations. Notable projects included Rep Tracker, Brand Messaging, and Executive Research;
- Building and leading the HQ1 work, which Ms. Combs had originated and brought with her from AITC, including leading headquarters research and developing the headquarters marketing strategy; and
- Leadership role, working with Ms. Wilmuth to interview, hire, and onboard headcount; lead strategy to define team organizational structure and develop and draft team mission, and draft strategic plan documents, including OP1/YBR.

On December 15, 2022, Amazon moved Ms. Combs to report to Dylan Green (L7), with Ana Rocca (L7) and Jordan Burke (L8) as her skip-level managers. This fourth role, which Ms. Combs remained in until March 2023 when she went out on FMLA and short-term disability leave, was a demotion for Ms. Combs. Ms. Combs' job code and level remained the same, but her scope and overall compensation was reduced after her performance rating was downgraded, and she lost the majority of her previous job responsibilities. Her only remaining responsibility in this new role was to manage headquarter marketing - a body of work she had already owned for two years. Even with respect to the HQ1 work, Ms. Combs was no longer the senior leader responsible for the work. Her ownership was significantly diluted and reduced, with Green, Rocca, and Burke all inserted as managerial levels above her. Despite the reduced ownership and added layers, the headquarters work was approved and fully funded by SVP Drew Herdener (L10) in February 2023.

Amazon further reduced Ms. Combs' role again when she returned from medical leave in July 2023. In this fifth and final role, which Ms. Combs held until December 2023, neither her



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

job code, level, or reporting line changed, but she was assigned new and different job responsibilities (her prior responsibilities having been permanently transferred to others while she was out on FMLA and short-term disability leave). Ms. Combs' three responsibilities in this new role were (1) "Lead localization strategy and local integrated execution for the National Good Employer Campaign," (2) "own the HQ1 and HQ2 mailer workstream," and (3) serve as the "Swayable program lead."

Each of these responsibilities were significantly below Ms. Combs' qualifications and expertise (and her prior job responsibilities). For example, with respect to the first, there were at least two other L7s on the team already leading similar if not duplicative work. Further, leadership did not agree there was a need for a local strategy, and they had not approved funding for this work (i.e., this was busy work with no path to success). Second, the mailer workstream was more aligned with the work of an L5 or an L6, and the bulk of the workstream already had been completed (by an L6). Even the woman who was leading it prior to Ms. Combs' return, Bayley Sargeant, told Ms. Combs' manager that there was not any work needed (i.e., more busy work). Finally, the Swayable role was scoped for and previously held by an L6 with a research/analyst background, while Ms. Combs was an L7 brand/marketing strategist. Despite trying to convince Ms. Combs this work was not a demotion and appropriate for her level and background, Amazon later hired another L6 with a research background, Kaitlyn Mcauliffe, to lead Swayable.

**INTERROGATORY NO. 4:** Describe all facts supporting Your allegation in Paragraph 212 of the Complaint that Amazon discriminated against You by "paying [You] less than [Your] male comparators who performed equal work requiring equal skill, effort, and responsibility, and which was performed under similar working conditions," including by Identifying the described male comparators and their positions, describing the allegedly equal work that You and Your



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

male comparators performed, and detailing the compensation paid to You and the described males.

**OBJECTIONS:** Plaintiffs objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiffs further object to this Interrogatory as premature because Plaintiffs' investigation is ongoing and to the extent that Plaintiffs have sought from Defendant information in discovery directly related to the compensation paid to Ms. Combs' male comparators.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows: Upon information and belief, Amazon paid Ms. Combs less than several male comparators in her same job code (General Marketing) and level (L7), including but not limited to Dylan Green and Rob Wilson. Ms. Combs also compares herself to several males at her level within the closely related job code of Product Manager, including Josh Werman, Dan Scarvalone and Kenneth Turner.

Dylan Green: Ms. Combs and Mr. Green were both in L7 General Marketing positions within Christina Lee's organization. Prior to December 2022 and the demotion that had Ms. Combs reporting to Mr. Green, her role had a larger scope of work. Ms. Combs had two direct reports, she was on the leadership team reporting to Ms. Wilmuth, her skip-level manager was a L10 Vice President, and her role required high-level strategy, execution, and operational/scaling. Comparatively, Mr. Green had no direct reports prior to December 2022, he was not part of the leadership team reporting to Jordan Burke, he was a nested L7 with his skip-level manager an L8, and was not responsible for setting strategy. While both Ms. Combs' and Mr. Green's roles involved tactical/ project management elements, and both developed operational processes to scale the work, Ms. Combs was also responsible for broader team organization and strategy, preparing deep strategy documents that contained sensitive or company-wide recommendations, and regularly interfaced with VPs and SVPs. Mr. Green adopted several of the functions and



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

tools Ms. Combs created as best practices, including the "tear sheet' Ms. Combs created with Ms. Wilmuth. After the "reorg" in December 2022, Ms. Combs' role was significantly reduced and Mr. Green's role was inflated.

Rob Wilson: Ms. Combs and Mr. Wilson were both in L7 General Marketing positions within Christina Lee's organization (prior to December 2022, Lee was skip-level manager to both). Ms. Combs and Mr. Wilson were also both on their respective manager's leadership teams (Wilmuth and Burke, respectively), both had a couple direct reports, and their roles involved substantially similar scope of work. Mr. Wilson was responsible for creative strategy, managing creative work, and operationalizing systems and processes; while Ms. Combs was responsible for brand/messaging/marketing strategy, managing and implementing marketing and messaging work, and operationalizing systems and processes. In sum, Ms. Combs and Mr. Wilson shared the same level and job code, they both filled leadership roles and managed direct reports, had similarly broad scopes of work, and their roles required strategy, execution, and operations/scaling. In addition, prior to December 2022, Ms. Combs was responsible for writing many high-level strategy docs, including PRFAQs and annual planning and business reviews, whereas Mr. Wilson did not prepare his first PRFAQ until August or September 2023, and his PRFAQ was never completed and never made it to a leadership review.

Josh Werman: Ms. Combs and Mr. Wilson were both in L7 within Christina Lee's organization, both were on their respective manager's leadership teams (Wilmuth and Burke, respectively), and despite their differing job codes, their roles involved substantially overlapping work. For example, Mr. Werman led the development of a mission and vision statement for Mr. Burke's team, something Ms. Combs had done on both AITC and Ms. Wilmuth's team; Mr. Werman led development of team tenets, something Ms. Combs did on AITC and Ms. Wilmuth's team; Mr. Werman coordinated the team's OP1/annual planning doc, something Ms. Combs did on Ms. Wilmuth's team; and Mr. Werman was responsible for building team SOPs,



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

something Ms. Combs had overseen her two direct reports in doing. (Notably, Ms. Combs' two direct reports were moved to reporting to Mr. Werman, who was brand new to Amazon, when she was demoted in December 2022). In short, Ms. Combs' role was substantially similar, but also significantly broader and more strategic than Mr. Werman's role.

Dan Scarvalone: Ms. Combs and Mr. Scarvalone were both in L7 positions within Christina Lee's organization (prior to December 2022, Lee was skip-level manager to both). Ms. Combs and Mr. Scarvalone were both on their respective manager's leadership teams (Wilmuth and Burke, respectively), both had a couple direct reports, and their roles involved substantially similarly broad scope of work that included strategy, execution, and operations/scaling. Prior to December 2022, Ms. Combs also was responsible for writing many high-level strategy docs, including PRFAQs and annual planning and business reviews, while Mr. Scarvalone was not. Further, while Mr. Scarvalone is coded as a Technical Product Manager, he does not own a product (nor did he pass his tech assessment at the time of hire). Rather, Mr. Scarvalone's job code does not match his role/position (or the job codes of others on his team) because, upon information and belief, Mr. Burke placed him in an incorrect (and inflated) job code to match his compensation needs.

Kenneth Turner: Ms. Combs and Mr. Turner started at Amazon around the same time on the same team (Amazon in the Community), both as L7 Principal Program Managers and Individual Contributors. While the focus of their roles differed, they were similar in terms of scope and function. Ms. Combs was responsible for marketing strategy, execution, and scaling, while Mr. Turner was (partially) responsible for employee engagement and employee volunteering, which also required strategy, execution, and scaling.

**INTERROGATORY NO. 5:** Describe all facts supporting Your allegation in Paragraph 109 of the Complaint that "Upon information and belief, Amazon was also paying Ms. Combs



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

less than her male peers. Ms. Combs was paid at the very low end of the pay band for her role and level, while males who had the same job code at the same level were being paid more, including males who had substantially less experience than Ms. Combs, including but not limited to Dylan Green."

**OBJECTIONS:** Plaintiffs objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiffs further object to this Interrogatory as premature because Plaintiffs' investigation is ongoing and to the extent that Plaintiffs have sought from Defendant information in discovery directly related to the compensation paid to Ms. Combs' male comparators.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows: Upon information and belief, Amazon paid Ms. Combs less than several male comparators in her same job code (General Marketing) and level (L7), including but not limited to Dylan Green and Rob Wilson, despite Ms. Combs having equal or greater experience.

Erin Combs: Ms. Combs has over 20 years of experience in brand marketing, reputational strategy, and corporate social responsibility (CSR) roles with marketing agencies, start-ups, and global technology and retail brands, including Starbucks, Lyft, and Microsoft. She built and led Starbucks' headquarter (HQ) reputation initiative, and led Lyft's regional marketing team to achieve over 20% regional ride growth and become the market-share leader in the Pacific Northwest (the only region in the country where Lyft is preferred over Uber).

Dylan Green: Following Ms. Combs' demotion in December 2022 and prior to her constructive discharge, Ms. Combs was one of five women reporting to Mr. Green. This put Mr. Green in a higher compensation range as a Senior Manager than his direct reports. Four of these women (Ms. Combs, Katie Ambrose, Bailey Sargent, and Kathy Lane) were L7s, and each of them has considerably more leadership and brand marketing experience than Mr. Green. For example, Ms. Combs and Ms. Ambrose both have over 20 years of experience, Ms. Lane has 27



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

years of experience, compared to Mr. Green's approximately 14 years of experience. Ms. Combs and Mr. Green both worked at Lyft immediately prior to Amazon, but Ms. Combs has significantly more experience leading teams and with large, global brands. To the best of Ms. Combs' understanding, Mr. Green had never led a team or managed people prior to December 2022. Before joining Amazon, Mr. Greene worked almost exclusively at communications agencies, with little in-house experience. Comparatively, Ms. Combs has more years of people management, team leadership, and big brand experience.

Rob Wilson: While Ms. Combs and Mr. Wilson both started at Amazon in 2020, Ms. Combs has five years more experience than Mr. Wilson. And prior to joining Amazon, Mr. Wilson worked almost exclusively at communications agencies, with little or no experience working in-house for a major brand. Ms. Combs, on the other hand, had experience at both marketing agencies and with global technology and retail brands, including Starbucks, Lyft, and Microsoft, leading substantially similar brand reputation and local marketing strategy to the work of Mr. Burke's team at Amazon.

**INTERROGATORY NO. 6:** Describe all facts supporting Your allegation in Paragraph 110 of the Complaint that You "have experienced discriminatory treatment at the hands of Jordan Burke," including identifying all instances of alleged discriminatory treatment, when and where it took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

Ms. Combs began reporting up into Jordan Burke in December 2022. Prior to that point, Ms. Combs regularly had to interact and work with Mr. Burke and his team, given the close proximity between the reputation research conducted by Ms. Wilmuth's former team and Mr.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Burke's paid advertising campaigns team.

Throughout Ms. Combs' time working with Mr. Burke, he devalued and questioned Ms. Combs' experience and expertise, undermined and marginalized her work and contributions, and spoke to her in in an unprofessional, disrespectful, condescending, and patronizing manner. This began in or around July 2022 when Mr. Burke started taking credit for Ms. Combs' work. For example, Ms. Combs worked with Mr. Burke's team to prepare a joint paper sharing the findings of career advancement research that had been conducted by their two teams. After the paper had been finalized, Mr. Burke removed Ms. Combs' team name, and then circulated the joint paper to a wide group of Amazon stakeholders with only his team listed, deliberately concealing Ms. Combs' contributions. During a meeting the following month, in August 2022, when Ms. Lee asked Mr. Burke for an example of local reputation work he had done at Uber (where he worked prior to Amazon), he cited a program that was neither his nor Uber's - instead, it was a program that Ms. Combs' team had led for Lyft (Uber's primary competitor and her employer prior to Amazon).

Ms. Combs is not aware of any instance of Mr. Burke taking credit for her male peers' work. To the contrary, and as described further below, Mr. Burke often selects male L7s in comparable roles, including, Dan Scarvalone, Dylan Green and Robert Wilson to present their work to leadership. Mr. Burke also routinely highlights successful accomplishments from men on his team, including Mr. Wilson, Joshua Werman, Benjamin Herson, Mr. Green, and Mr. Scarvalone. In contrast, Mr. Burke never acknowledged Ms. Combs' successes – publicly or privately – including (but not limited to) securing Drew Herdener's approval and $13M budget for the HQ1 work she led.

Throughout August and September 2022, Mr. Burke continued to claim credit for Ms. Combs' work, while also sending emails to Ms. Combs' supervisors describing her as



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

uncollaborative, "presumptuous," and "strident." After Ms. Combs successfully presented her HQ1 reputation research and marketing strategy to SVP Drew Herdener on August 11, 2022, Mr. Burke began to assert ownership for the work she had originated and spent the last two plus years building at Amazon (after spending much of her career doing the same for prior companies). Mr. Herdener was so impressed by Ms. Combs' presentation that he asked Ms. Wilmuth's team to come back with a tactical go-to-market proposal based on Ms. Combs' strategy. Despite the fact that Ms. Combs is indisputably a subject matter expert in this area, there would be no HQ work but for her leadership, and Ms. Combs had already initiated the creative development process, Mr. Burke insisted that a male reporting to him, Rob Wilson, should own all HQ1 creative development. On September 22, Mr. Burke and Mr. Wilson held a meeting to walk Ms. Combs through the creative development process, repeatedly talking down to her in a condescending and insulting manner, and mansplaining creative marketing to Ms. Combs (who has more than 20 years of experience in creative marketing and has spent the last 10 years leading creative teams or agencies, far greater experience than Mr. Burke and Mr. Wilson). Notably, while Ms. Combs observed Mr. Burke and Mr. Wilson speak to other women on the team in a similar manner, Ms. Combs never saw them speak to their male colleagues this way.

Ms. Combs also saw her roles and responsibilities materially diminished in favor of enhancing Mr. Burke and his team. Despite Mr. Burke having significantly less marketing experience than Ms. Combs, Amazon enabled him to take over large portions of her work. In early October 2022, Mr. Herdener approved a $2 million budget for HQ1 sponsorship activations based on the research and strategy paper Ms. Combs had written and presented. Afterward, Mr. Burke lobbied Ms. Lee, and she permitted him to assume the $2 million budget for advertising. Ms. Combs was left with only $350,000 of the budget, which limited or eliminated her ability to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

deliver any of the sponsorship activations which Mr. Herdener had originally approved.

In December 2022, Ms. Wilmuth's entire team, including Ms. Combs, was removed from her and forced to report into Mr. Burke. As part of the "reorg," Ms. Combs was demoted, losing both of her direct reports, a large portion of her remit, moving down in the organization, and becoming one of four L7 women reporting to a less qualified male peer, Dylan Green, despite Ms. Combs and each of these women having considerably more leadership and brand marketing experience than Mr. Green. Mr. Burke was a decisionmaker with respect to the December 2022 "reorg," but, upon information and belief, never considered Ms. Combs for the leadership role.

Mr. Burke's discriminatory behavior continued after she began reporting up to him in December 2022. On January 25, 2024, Ms. Combs' male peer, Mr. Mishra, informed her that Mr. Burke had removed her from the RepTracker working team, despite Ms. Combs being the document owner, primary drafter, and strategy lead. Mr. Mishra relayed that Mr. Burke wanted to "streamline" the working team, but Ms. Combs was the only person removed, despite her historical ownership and stellar work. When Ms. Combs raised this with Mr. Burke directly, he tried to shift blame, telling Ms. Combs that it was Mr. Mishra who had made the decision as the lead researcher on the project. But Mr. Mishra confirmed this was untrue, he had wanted Ms. Combs to remain involved and had communicated that she was the document owner and would be a valuable contributor moving forward. It was Mr. Burke who had insisted that Ms. Combs not participate in the future RepTracker meetings.

Two weeks later, Mr. Burke further diminished Ms. Combs' role in favor of another male. On February 9, Mr. Burke assigned Rob Wilson (the same white male Mr. Burke previously said would own Ms. Combs' HQ1 work) to step in to take over the Brand Messaging project Ms. Combs had built from scratch and led for over a year, after previously telling Ms. Combs to stop working on it because it was no longer a team priority. Even with respect to the HQ work Ms. Combs had ostensibly kept (to that point), Mr. Burke continued to erode Ms.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Combs' ownership, diminish her role, and exclude her from meetings regarding the project that she built from the ground up and single-handedly developed and oversaw for the last two and a half years. Mr. Burke refused to speak to Ms. Combs about the work, and he assigned Mr. Wilson to be responsible for "all public-facing assets" of the HQ work, despite the work being scoped for Ms. Combs to own that portion. Mr. Burke has also asked Mr. Wilson to check Ms. Combs' work and confirm they could deliver the plan she built, despite Ms. Combs' considerably greater knowledge and expertise, and Mr. Herdener's prior approval. Mr. Burke even removed Ms. Combs as the "owner" of the project, instead listing himself as the "doc owner."

As another example, after the December 2022 "reorg," Mr. Burke assigned Josh Werman to lead strategy work for the newly expanded team, including developing a new team mission, vision, and tenets. But Mr. Werman does not have a brand background and was only two months into Amazon at the time, whereas there were far more experienced women on the team, including Ms. Combs who had led nearly identical work for Ms. Wilmuth's team months prior, and for Amazon in the Community in 2020/2021.

Mr. Burke also met more frequently with the male members of his team and provided them with greater opportunities that female leaders, including Plaintiffs Combs and Schomer, were not provided. For example, Mr. Burke holds a bi-weekly team meeting with his manager, VP Christina Lee, to update Ms. Lee on the work of his team. During Ms. Combs' tenure on his team (between December 2022 – December 2023), Mr. Burke routinely selected the L7 men, including Dan Scarvalone, Dylan Green, and Rob Wilson, to lead these meetings, thereby excluding their L7 female peers, who were not provided equal opportunities for visibility in front of leadership.

Mr. Burke also assigned L7 men responsibilities to own high level strategy docs, including quarterly business reviews (QBRs), OP1 annual strategy planning (OP1), and yearly



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

business reviews (YBRs), but to Ms. Combs' knowledge never assigned an L7 woman to own those documents, despite the women having equal or more experience with these documents from prior Amazon teams. Similarly, Mr. Burke routinely recognized successes from the men on his team, but not the women. For example, after Ms. Combs presented the final HQ strategy to SVP Drew Herdener in March 2023 and he approved $13M to fund Ms. Combs' proposal, Mr. Burke failed to acknowledge this success. Conversely – as noted above – Mr. Burke would routinely highlight successful accomplishment from men (Rob Wilson, Josh Werman, Ben Herson, Dan Scarvalone, etc.)

At a team meeting in August or September of 2023, Mr. Burke asked Rob Wilson to share a PRFAQ (a high-level strategy document that is used across all of Amazon) with the full team. This was Mr. Wilson's first PRFAQ, it reflected sub-par work, was never completed, and did not make it to leadership review. Nevertheless, Mr. Burke praised Mr. Wilson's work as exemplary and asked him to present it as a "development opportunity" for team members, while multiple L7 women on the team (including Ms. Combs, Ms. Schomer, Katie Ambrose, and Bailey Sargeant) had written multiple successful PRFAQs approved by leadership, and would have been better positioned to lead a session on PRFAQ writing.

In Ms. Combs' experience, Mr. Burke also had a practice of not speaking to the women on his team, but engaging directly with the men. Mr. Burke largely ignored Ms. Combs, particularly during the last four months of her tenure on his team. If Ms. Combs needed anything from Mr. Burke, she was forced to ask Dylan Green to ask Mr. Burke (because Burke ignored her emails) and then Green would relay the information back to Ms. Combs.

Due to Amazon's discriminatory and retaliatory treatment, Ms. Combs was forced to resign her employment, effective December 4, 2023. Even since Ms. Combs' separation, however, she has continued to learn of examples of Mr. Burke taking credit for her ideas/initiatives. For example, as part of Ms. Combs' HQ1 brand marketing and community



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

engagement strategy for the Puget Sound region, she repeatedly proposed and tested partnerships with the Seattle Seahawks and Seattle Kraken. Mr. Burke openly opposed the sports partnerships, criticizing that portion of Ms. Combs' plan, both verbally and in writing, and in front of Ms. Combs' supervisory chain (Christina Lee and Drew Herdener). Mr. Burke tried to deprioritize and defund the partnership with the Seahawks, questioning Ms. Combs' expertise and the value of sports partnerships. But a professional colleague with the Seahawks recently informed her that the team just signed a "big community engagement partnership with Amazon," and that he had worked directly with Mr. Burke (and Mr. Herdener) to negotiate and finalize the deal.

**INTERROGATORY NO. 7:** Describe all facts supporting Your allegation in Paragraph 118 of the Complaint that "Multiple other women who work with Mr. Burke have also raised concerns in the last year that he treats them differently because of their gender and/or race," including identifying the described women, the concerns they raised, when and where the alleged differential treatment of these women took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

Caroline Wilmuth**:** *See* Plaintiff Caroline Wilmuth's Objections and Responses to Defendant's First Set of Interrogatories for a description of Mr. Burke's discriminatory treatment toward Ms. Wilmuth and the concerns she raised.

Allison Heim: Ms. Heim is a former Amazon employee who reported up into Mr. Burke. On January 3, 2023, Ms. Heim complained to her manager, Dan Scarvalone, that job codes within Mr. Burke's organization were incorrect, including Mr. Scarvalone's and that of Ms.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Heim and other women on the team, which was resulting in discriminatory pay inequities between men and women on the team. Mr. Scarvalone informed Ms. Heim that Mr. Burke put him in an (incorrect) and inflated job category specifically to meet his compensation needs.

Later that month, Ms. Heim shared her concerns regarding pay inequality in Mr. Burke's organization with Ms. Schomer. Specifically, Ms. Heim disclosed that she had been reporting her concerns to Mr. Scarvalone, Mr. Burke, and Keith Johnson (HRBP) about pay and job code inequities between her and the male members on her team. Ms. Schomer in turn reported this to Amazon's Employee Relations, specifically an investigator named Alea O'Neal in early February 2023.

Ms. Heim subsequently filed formal complaints on February 6 and February 13, 2023 related to gender-based pay discrimination (including with respect to job codes), retaliation, and Mr. Burke's unethical handling of data. Ms. Heim communicated with Ms. Combs regarding her internal complaints in March 2023. Following Ms. Heim's complaints, Mr. Burke took steps to adjust Mr. Scarvalone's title from Principal Product Manager to Senior Manager, Product Management (which was still incorrectly coded) so he could remain highly compensated. Neither Mr. Burke nor anyone else at Amazon took steps to correct Ms. Heim's job code.

On March 15, 2023, Amazon's Employee Relations informed Ms. Heim that in response to her discrimination and retaliation complaints, it had not found any violation of Amazon policy, while still acknowledging that job codes were being incorrectly applied within Ms. Heim's Organization. In May 2023, while Ms. Heim was out on approved and protected FMLA leave related to the discrimination and retaliation she had suffered, Amazon contacted Ms. Heim about separating from the Company and releasing her legal claims in exchange for severance.

<u>Kendra Tappin:</u> Kendra Tappin (a Black woman) is also a former Amazon employee who previously reported up into Mr. Burke. In 2023, Ms. Tappin reported to numerous members of Mr. Burke's team, including Ms. Combs, Ms. Heim, Ms. Schomer, and Jamal Scott, that Mr.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Burke, Dan Scarvalone, and other males on the team were not receptive to her ideas, the men did not listen to her, they did not credit her work or ideas, and instead they criticized her work for unfair reasons that could not be supported by the research data. Ms. Tappin disclosed that she felt these men were treating her this way because of her gender and race. In or around June 2023, Ms. Tappin formally complained to Amazon's Human Resources. Shortly thereafter, Ms. Tappin was separated from Amazon.

Katie Ambrose: Ms. Ambrose is a current L7 on the Reputation Marketing and Insights Team within the Global Communications & Community Involvement (GCCI) organization (previously known as the "Paid Campaigns" team) led by Mr. Burke. Ms. Ambrose has reported that she believes there is a culture of gender discrimination that is rampant on Mr. Burke's team, and that herself and several other women on the team have been discriminated against because of their gender. She has stated that Mr. Burke's team has a pattern/practice of elevating men to leadership roles, whereas women with greater experience are passed over or shuffled down in the organizational structure and have their access to Mr. Burke removed or limited. For example, when Ms. Ambrose joined Mr. Burke's team in July 2023, she had 20 years of experience and had most recently been leading a three-person team at Amazon. Upon joining Mr. Burke's team, however, she became a nested L7 position (a L7 reporting to one – and in her case- two - other L7s). Ms. Ambrose became one of five women reporting to Dylan Green, and four of whom (Ms. Ambrose, Ms. Combs, Bailey Sargent, and Kathy Lane) were L7s, and each of them has considerably more leadership and brand marketing experience than Mr. Green. Despite Mr. Green not having the experience necessary to lead that team, to Ms. Ambrose's knowledge, Mr. Burke never considered any of the female L7s for the leadership role.

Indeed, it is clear to Ms. Ambrose that Mr. Burke is more comfortable having men report to him. She has stated that Mr. Burke meets more frequently with the male members of his team, opportunities the female leaders are not provided. According to Ms. Ambrose, Mr. Burke also



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

regularly assigns the L7 men on the team (Rob Wilson, Dylan Green, Josh Werman, and Dan Scarvalone) to lead a bi-weekly meeting with senior leadership, while the L7 women on the team (including herself and formerly Ms. Combs and Ms. Schomer) are not given the same opportunity, with Ms. Ambrose estimating that more than 75% of Mr. Burke's bi-weekly meetings are led by men. Ms. Ambrose has opined that she does not believe Mr. Burke "cares about gender bias on his team," "[h]e allows it to flourish," and "it is hurting the women on his teams," whose careers have stalled.

During a team meeting on November 1, 2023, which included Ms. Ambrose's manager, Dylan Green, she spoke up about these concerns, referencing the optics of five women on the team (including herself and Ms. Combs) being subjected to gendered treatment, particularly at the hands of Rob Wilson. Ms. Ambrose described this gendered treatment as being enforced and demonstrated from the top down (i.e., Mr. Burke). Ms. Ambrose continued calling out the gender divide on the team, how she feels she is treated differently than men on the team, and how women are talked over and not listened to by the male leaders. She concluded that Mr. Burke does not care about diversity or inclusion on the team. Upon information and belief, Ms. Ambrose's comments were reported to Amazon's Employee Relations, which opened an investigation into gender discrimination on Mr. Burke's team, and interviewed Ms. Ambrose (as well as Ms. Combs) about her experience. On or around December 6, Employee Relations closed out the investigation with no finding of any violation of Amazon policy or standards of conduct.

<u>Alexis Skiles</u>: Between May 2022 and December 2022, Ms. Skiles reported to Ms. Combs, with Ms. Wilmuth as her skip-level supervisor. After Ms. Wilmuth's entire team was moved under Mr. Burke in December 2022, Ms. Skiles began reporting up into him. During her tenure on Mr. Burke's team, from December 2022 – June 2023, Ms. Skiles observed that Mr. Burke's entire senior level / leadership team is comprised of men, except for one woman (Ana



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Rocca). She described Mr. Burke's team as a "boy's club," observing that Mr. Burke was chummy with the male leaders on the team, while he frequently went around women on the team even to discuss projects they own, instead speaking to male supervisors or peers about their work.

In June 2023, Mr. Burke notified Ms. Skiles that she was being laid off. In an email to the team, Mr. Burke explained he was eliminating the Program Manager role on the team. Presumably, this would have encompassed the other PMs on Burke's team, including Cody Wallace (female), Cameron Waterhouse (male), and her manager, Josh Werman (male). But this was not the case. While Ms. Skiles and Ms. Wallace had their roles eliminated, Mr. Werman remained on the team and continues to perform the Operations work Ms. Skiles had been performing, and Mr. Waterhouse also kept his position on the team reporting to Rob Wilson. Thus, the only two Program Managers whose positions Mr. Burke "eliminated" were the two women, while the two male Program Managers kept their jobs. And just six months later, in December 2023, Mr. Wilson posted a new Program Manager role reporting to him (and Mr. Burke as skip-level), further undermining Mr. Burke's stated rationale and evidencing that he never eliminated the PM role for his team. Ms. Skiles believes she was pushed out in retaliation for vocally raising concerns about Mr. Burke's team.

<u>Meg Coyle</u>: Prior to her termination in early 2025, Meg Coyle reported to Rob Wilson, and Mr. Burke was her skip-level manager. Ms. Coyle raised concerns about Mr. Burke's refusal to communicate with her directly, instead filtering everything through Mr. Wilson, and using him as a messenger. Ms. Coyle repeatedly asked Mr. Burke: "Will you please communicate with me directly?" And during a Connections call for employee feedback last year, Ms. Coyle reported that even when Mr. Burke knows she owns a project, he will bypass her to speak to Mr. Wilson about her project. Ms. Coyle believes Mr. Burke is uncomfortable working with women, and commented on the number of L7 women across the team he has forced out, while retaining the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

L7 men. In the most recent example, Mr. Burke laid off two female L7s (Mr. Coyle and Bailey Sargent), while retaining two male L7s (Ben Herson and Josh Werman).

Christine Hoeger: Ms. Hoeger is a female peer of Mr. Burke, with both of them reporting to Christina Lee. Ms. Hoeger has reported to Ms. Wilmuth and others that she has experienced issues with Mr. Burke not collaborating with her team, not treating them with respect, and not deferring to her when it comes to her work leading the Social Media team. And when Ms. Hoeger's team partnered with Mr. Burke's on a research project, Mr. Burke's team edited research findings to be more favorable them.

Linda Thomas: Ms. Thomas is a female peer of Mr. Burke, who previously reported to Ms. Lee until December 2021. Ms. Thomas has told Ms. Wilmuth (and others) that Mr. Burke mistreated her team and exhibited a pattern of taking credit for other people's ideas and work.

Brandi Daniels: Ms. Daniels is a female L6 on Mr. Burke's team. Ms. Daniels started at Amazon in May 2020 working under Ms. Schomer. She interviewed for an L6 role but was hired as an L5. Approximately 6 months after she started her position, Ms. Schomer advocated for Ms. Daniels to be increased to L6, as she believed she was under-leveled. Ms. Daniels is classified as Functional Marketing and is therefore paid less than the Product Management job code that her peers are coded. Ms. Daniels has told Ms. Schomer (and others) that she has been improperly coded and leveled while reporting to Mr. Burke's team. Ms. Daniels has also told Ms. Combs, Ms. Schomer, Ms. Wilmuth (and others) that she believes she - and others on Mr. Burke's team - have been discriminated against by Mr. Burke on the basis of gender and race.

Roxana Cosmaciuc: Ms. Cosmaciuc is a female former employee of Amazon. Ms. Cosmaciuc worked at Amazon from November 2014 to January 2020, and then again from August 2022 to June 2023. When Ms. Cosmaciuc returned to Amazon in August 2022, she joined the Research & Strategy team within Amazon's GCA organization, which is part of WWC. In this role, Ms. Cosmaciuc reported directly to Ms. Wilmuth. While reporting to Ms. Wilmuth, Ms.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Cosmaciuc, Mr. Shankar, and Ms. Schomer all performed the same or substantially equal work and their positions all required the same or substantially equal skill, effort, and responsibility. Throughout Ms. Cosmaciuc's tenure in this role, she was classified in a non-technical marketing job code, despite leading a research team. Ms. Cosmaciuc earned substantially less than Mr. Shankar. Ms. Cosmaciuc has told Ms. Wilmuth (and others) that she was being paid less than Mr. Shankar, her male peer. At the end of 2022, when Amazon removed Ms. Wilmuth's entire team from her and transferred it under Mr. Burke, Ms. Cosmaciuc lost her direct reports, lost all of her projects, and moved two levels down the reporting line. Mr. Shankar gained a direct report (Ms. Cosmaciuc's former report) and retained his major research project. In conversation with Ms. Combs, Ms. Wilmuth, Ms. Schomer (and others), Ms. Cosmaciuc stated her belief that she and the rest of the L7 women from Ms. Wilmuth's team were discriminated and retaliated against based on gender. Ms. Cosmaciuc was interviewed by an Amazon investigator in early 2023 and told Amazon's investigator that all of the female L7s on Ms. Wilmuth's team had been demoted and lost responsibilities and reports in the reorganization, and that she believed the reorganization had been gendered and discriminatory.

Bailey Sargent: Ms. Sargent joined Mr. Burke's team (with him serving as her skip-level supervisor) in April 2023. She was originally asked to take a short-term assignment to cover the HQ1 campaign while Erin Combs was out on medical leave, but was converted to a full-time position in June 2023. During the remainder of 2023 and throughout 2024, Ms. Sargent (and other women on the team) vocalized several concerns about what she characterized as a hostile working environment and gender discrimination. Among the concerns Mr. Sargent raised was Mr. Burke not communicating with her directly (instead going through her manager), while going directly to Ms. Sargent's male colleagues (both peers and junior level) with questions regarding campaigns Ms. Sargent was leading. Similarly, Ms. Sargent experienced issues working with two of Mr. Burke's male direct reports, Rob Wilson and Dan Scarvalone, in which Wilson and Scarvalone



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

treated Ms. Sargent in a hostile manner and would go around her to Mr. Burke. Despite Ms. Sargent and several other women on the team raising concerns about working with Mr. Wilson, Mr. Burke failed to take any corrective action.

Mr. Burke also passed Ms. Sargent over for a role in favor of a less-qualified male. Specifically, Amazon hired Ms. Sargent for her experience in international campaign and policy work. When she transferred to Mr. Burke's team, Ms. Sargent discussed with him her desire to take on any international work if the team's scope expanded. When Mr. Burke subsequently opened a new role to lead international campaigns, he did not even provide Ms. Sargent with the opportunity to interview for the role, instead giving it to a male transfer from another team who lacked Ms. Sargent's qualifications.

One January 29, 2025, Mr. Burke notified Ms. Sargent that her role was being eliminated. By Ms. Sargent's count, she was one of at least 9-10 females (all L6s or L7s) that Mr. Burke terminated or forced out during her tenure on his team.

**INTERROGATORY NO. 8:** Describe all facts supporting Your allegation in Section D of the Complaint that "Plaintiffs have repeatedly raised concerns about gender discrimination, but Amazon has failed to remedy the problems," including detailing the concerns raised and the response, identifying the dates the concerns were raised, the method by which the concerns were raised, and to whom they were raised.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

Subject to and without waiving these objections, Ms. Combs will respond with respect to the concerns she raised about gender discrimination and Amazon's failures to remedy such



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

discrimination. For facts regarding other Plaintiffs' concerns about gender discrimination and Amazon's failures with respect thereto, *see* Plaintiff Caroline Wilmuth's Objections and Responses to Defendant's First Set of Interrogatories, and *see* Plaintiff Katherine Schomer's Objections and Responses to Defendant's First Set of Interrogatories.

**RESPONSE:** Ms. Combs began voicing concerns about gender-based disparate treatment by Director Jordan Burke to her manager, Ms. Wilmuth, in July 2022. Ms. Wilmuth in turn escalated Ms. Combs' concerns, as well as her own (she was also suffering disparate treatment at the hands of Burke), to her manager (Ms. Combs' skip-level manager), VP Christina Lee. Ms. Combs also shared her concerns directly with Ms. Lee twice in the fall of 2022. In early August 2022, Ms. Combs told Ms. Lee that she had never in her professional career seen a leader speak to team members in the "alarming and offensive" way that Director Burke had spoken to Ms. Wilmuth, Ms. Combs, and Lauren Edwards during an OP1 working session in July 2022.

On September 20, 2022, Ms. Lee told Ms. Combs that Mr. Burke's communications (in which he referred to Ms. Combs as uncollaborative, "presumptuous," and "strident") were "inappropriate" and she would speak to him about it. Ms. Lee also assured Ms. Combs that she would continue to own the HQ1 work that Mr. Burke was attempting to commandeer and give to a less qualified male on his team. But Mr. Burke's disrespectful treatment and efforts to assume control of Ms. Combs' work continued unabated. On September 26, during a one-on-one with Mr. Burke, Ms. Combs called out Mr. Burke's comments as disrespectful and insulting. In response, Mr. Burke told her that a male on his team, Rob Wilson, would soon own Ms. Combs' HQ1 work, and she "could apply for an open role reporting to Rob" (notably, the open role Mr. Burke was referring to was a L6 position, lower than the L7 role Ms. Combs was performing.)

At this point, Ms. Combs reached out to the team's Human Resources Business Partners (HRBPs), Keith Johnson and Christopher Royal, for support. Johnson and Royal in turn directed



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Ms. Combs to Amazon's PXT Partner Team of floating HRBPs. When Ms. Combs spoke to the PXT Partner team on September 30, 2022, she detailed her concerns regarding Mr. Burke's "unprofessional, unethical, and unequal" treatment. She expressed her fear about working with (or worse, under) Mr. Burke. In response, Amazon's PXT Partner Team told Ms. Combs that she should continue working through her manager (Ms. Wilmuth) and VP skip-level (Ms. Lee), who had done nothing to date, and that her only other option was to file a formal complaint. Ms. Combs stated she did not feel she was in a safe environment to file a formal complaint because she feared retaliation. Later that same day Ms. Combs met with Director Burke and reiterated that she found his emails and comments to be "inappropriate" and "inflammatory."

Ms. Combs continued raising her concerns with Ms. Wilmuth throughout fall 2022, who was experiencing similarly discriminatory treatment from Mr. Burke, and was attempting to address both women's concerns directly with Mr. Burke. Ms. Combs explicitly called out Mr. Burke's treatment of her as "gendered," and told Ms. Wilmuth that she found "him to be deeply misogynistic," and that he speaks to and interacts with male leaders in a different manner than female leaders. She stated: "I can't even imagine him treating a man the way he treats me." Ms. Combs again escalated her concerns to Ms. Lee on November 10, 2022, reporting that Mr. Burke continued to marginalize her and was trying to assume ownership of her HQ1 work.

By this point, Ms. Wilmuth had filed a formal gender discrimination complaint related to Mr. Burke's treatment of her and Ms. Combs. On November 17, 2022, Ms. Combs was contacted by Amazon's Employee Relations as part of the investigation into Ms. Wilmuth's EEO complaint. Over the course of two interviews, and follow up emails, Ms. Combs provided documentation of Mr. Burke's treatment, and expressed she was "terrified she may end up reporting to him" and "didn't feel safe." But the investigator did not offer Ms. Combs any support, or even ask if she believed Mr. Burke's treatment was discriminatory or gendered. Instead, the investigator asked only about "tension" between Ms. Wilmuth's and Mr.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Burke's teams.

On December 20, 2022, Ms. Combs again spoke with the Employee Relations Investigator assigned to Ms. Wilmuth's gender discrimination and retaliation complaint. Ms. Combs told the Investigator that she believed Mr. Burke's prior treatment was gender discrimination, and that her demotion as part of the recent "reorg" was both discriminatory and in retaliation for her raising concerns about Mr. Burke's discrimination. Three days later, on December 23, Ms. Combs formally added her name as a complainant in the investigation into Mr. Burke arising out of Ms. Wilmuth's EEO complaint. In her written complaint, Ms. Combs called out how the "reorg" disproportionately affected the female members of the Research & Strategy leadership team (Ms. Wilmuth, Ms. Combs, Ms. Schomer, and Roxana Cosmaciuc) relative to their male colleague, Gouri Shankar Mishra. Of the four L7 leads who had reported to Ms. Wilmuth, each of the three women (Ms. Combs, Ms. Schomer, and Ms. Cosmaciuc) lost direct reports, lost their leadership roles, and had their scopes severely reduced, while the only male L7 (the Male Comparator) had his role, team, and compensation remain the same or even increased.

In a follow up interview on January 9, 2023, Ms. Combs was shocked to discover that the Employee Relations investigator had written into her notes from their first meeting that Ms. Combs did *not* believe Mr. Burke's treatment was gendered. This was blatantly false, as Ms. Combs not only would never have stated as much (given she had been raising concerns about his gendered treatment for months), but also because the investigator had never even asked Ms. Combs if she thought his treatment was discriminatory. Rather than work to actually investigate Mr. Burke's discrimination, Amazon's EEO investigator spent the next several minutes arguing with Ms. Combs about whether she had made such a statement.

Even in the face of such institutional failures, Ms. Combs continued raising concerns about Mr. Burke's gendered treatment and the discriminatory and retaliatory nature of the



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

"reorg", including with her new manager, Dylan Green, on January 19, 2023. A week later, on January 25th, Mr. Burke removed her from the RepTracker working team, despite Ms. Combs being the document owner, primary drafter, and strategy lead. When Ms. Combs raised this with Mr. Burke, he tried to shift blame, telling Ms. Combs that it was Mr. Mishra who had made the change. But Mr. Mishra confirmed this was untrue, he had wanted Ms. Combs to remain involved, but Mr. Burke had insisted that Ms. Combs not participate in the future RepTracker meetings. Ms. Combs followed up with the investigator identifying the further retaliatory reduction of her role and Mr. Burke's lies regarding the same. Two weeks later, Mr. Burke further diminished Ms. Combs' role. On February 9, Mr. Burke assigned Rob Wilson (the same white male Mr. Burke previously said would own Ms. Combs' HQ1 work) to step in to take over the Brand Messaging project Ms. Combs had built from scratch and led for over a year, after telling Ms. Combs to stop working on it because it was no longer a team priority. Ms. Combs again identified this to Amazon's Employee Relations as an additional instance of gender discrimination and retaliation.

Despite this, on March 1, 2023, the ER investigator met with Ms. Combs to explain she had found no evidence of discrimination or retaliation. It quickly became clear, however, that the investigator did not even understand the nature of Ms. Combs' claims (and apparently had failed to take the basic step of reading Ms. Combs' written complaint). The investigator stated that she understood Ms. Combs had raised concerns about pay discrimination, gender-based salary inequality, and job title classification, despite never having raised concerns about her job code (that applies to Ms. Wilmuth and Ms. Schomer). The investigator's confusion became even more clear when she referred to Ms. Combs as a researcher (she is not), misidentified her supervisor (instead identifying the new supervisor of Ms. Combs' peer, Roxana Cosmaciuc), and stated that she had investigated Ms. Combs' "functional title" (despite her not complaining about it). Ms. Combs can only surmise that there were so many women complaining about gender and



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

pay discrimination at this time, that Amazon's Employee Relations could not keep them straight. Most ridiculously, the ER investigator then told Ms. Combs that her complaint did not say anything about Mr. Burke's treatment of her being gendered, and therefore she had not even investigated this claim (despite their prior conversations on this exact topic and it being plainly written in Ms. Combs' formal EEO complaint). Finally, the investigator admitted that, with respect to the December 2022 "reorg," "on its face, it seems like there is a disparate impact" as it relates to women, and multiple times referencing the "optics of disparate impact."

Ms. Combs continued to raise concerns about gender discrimination with her manager, Dylan Green, both before and after her FMLA leave in the summer of 2023. For example, during a team meeting on November 1, 2023, and in a follow up email to Mr. Green later that day, Ms. Combs reiterated her belief that gendered treatment is systemic in Jordan Burke's team, and that she has both experienced it herself, and witnessed other women on the team experience it. This includes that compared to men on the team, women are not given the same leadership opportunities, women are excluded from work they are supposed to own, women's expertise is minimized, women's feedback is often ignored, women do not have the same access to Mr. Burke or other leaders in the organization, and multiple women were reporting to male leaders with less experience. Ms. Combs also reiterated her concern that she had continued to experience retaliation since first raising concerns about Mr. Burke's gendered treatment. Employee Relations opened another investigation into gender discrimination on Mr. Burke's team, and interviewed Ms. Combs on or about November 14, 2023. On December 6, Amazon closed out the investigation, with no finding of any violation of Amazon policy or standards of conduct.

**INTERROGATORY NO. 9:** Describe all facts supporting Your allegation in Paragraph 168 that "Amazon removed Plaintiffs Wilmuth, Schomer, and Combs from their leadership roles,



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

stripped their direct reports from them, removed the majority of their remits, and severely diminished their career paths after they repeatedly raised concerns about gender and pay discrimination," including by identifying the remits removed, the Person or Persons who

removed the remits, how Your career path was diminished, and the Person or Persons who were responsible for diminishing Your career path.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

Subject to and without waiving these objections, Ms. Combs will respond with respect to Amazon removing her leadership role, direct reports, and the majority of her remit, and the diminishment of her career path. For facts regarding Amazon removing other Plaintiffs from their leadership roles, stripping their direct reports, and the majority of their remits, and diminishing their respective career paths, *see* Plaintiff Caroline Wilmuth's Objections and Responses to Defendant's First Set of Interrogatories, and *see* Plaintiff Katherine Schomer's Objections and Responses to Defendant's First Set of Interrogatories.

**RESPONSE:**

As described above, Ms. Combs repeatedly raised concerns about gender discrimination beginning in July 2022. In December 2022, Ms. Combs' then manager, Ms. Wilmuth, submitted a "top tier" rating for Ms. Combs and a target date of Q1 2024 for promoting her from an L7 to an L8. As Ms. Combs' manager, Ms. Wilmuth had actively discussed the steps Ms. Combs would need to take to be considered for an L8 promotion, and supported Ms. Combs' development in those areas. For example, one of Ms. Combs' goals was to lead a team, and Ms. Wilmuth identified opportunities for Ms. Combs to become a People Manager.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

That same month, however, Amazon removed Ms. Wilmuth's entire team and transferred everyone on it, including Ms. Combs, to report to Jordan Burke. In doing so, Amazon removed Ms. Combs from her leadership position on Ms. Wilmuth's team and demoted her. (This was less than a month after Ms. Combs had most recently raised concerns regarding Mr. Burke's discriminatory treatment up through her chain of command and with Employee Relations.) In the "reorg," Amazon stripped both of Ms. Combs' direct reports from her, functionally demoting her from a People Manager to an Individual Contributor, and substantially reduced the scope of her role, including by removing her executive research work (a highly sensitive and high-visibility body of work on CEO and senior leader communications). Amazon also moved Ms. Combs several rungs down the organizational chart so she was reporting to a less-experienced male L7, Dylan Green, who has approximately 14 years of experience compared to Ms. Combs' 20+ years of experience. Mr. Green in turn reports to another L7 (Ana Rocca), who reports to Mr. Burke (L8). This layering of supervisors over Ms. Combs' position, such that instead of one supervisor between her and the Vice President-level there were now three, severely limited Ms. Combs' path to promotion (not only did she lose visibility with leadership, but now both Ms. Rocca and Mr. Green would need to be promoted before Ms. Combs). Thus, Ms. Combs lost her direct reports (they were moved under a male L7 on Burke's team, Josh Werman), lost her leadership responsibilities, and lost many of her high-profile projects, while being moved further down the organization and effectively eliminating any path to promotion, as well as her leadership and growth opportunities. As Mike McCann, Global Head of Sponsorships in XCM later summed up during a conversation with Ms. Combs: "Wow, you went from hob-nobbing with Drew [Herdener] to reporting to Dylan [Green]? They really buried you, didn't they?"

A few weeks later, in late January 2023, Mr. Burke further diminished Ms. Combs' role by removing her from RepTracker, the team's largest and highest-priority project, despite the fact that Ms. Combs had been the strategic lead, document owner, and primary drafter. Two



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

weeks later, Mr. Burke also directed Ms. Combs to cease work on her Brand Messaging project, a complex cross functional body of work Ms. Combs had conceived and led for more than a year, purportedly because it was not a priority. But then on February 9, 2023, Mr. Burke assigned a less qualified male Rob Wilson (the same individual Mr. Burke previously said would own Ms. Combs' HQ1 work) to also take over her Brand Messaging project. In total, Ms. Combs lost approximately 70%-75% of her scope between December 2022 and January 2023.

In addition, as her manager, Ms. Wilmuth had entered a "top tier" performance rating for Ms. Combs in December 2022. (Ms. Combs had reported to Ms. Wilmuth for all but two weeks of 2022, until December 15, 2022). By the time Ms. Combs received her review in March 2023, however, Amazon had downgraded her rating to "meets expectations." In the written review, Ms. Combs' new manager, Mr. Green, failed to give Ms. Combs credit for a majority of the work she completed in 2022, including her Brand Messaging and marketing strategy projects, as well as her leadership and people management contributions. Mr. Green also identified "deliver results" as a growth area for Ms. Combs (while multiple peers and direct reports identified "delivers results" as one of Ms. Combs' strengths), and wrote "while Erin spent most of 2022 developing the strategy for HQ1 marketing, she has not yet been able to deliver significant business/reputational impact for this work." This is demonstrably false. Drew Herdener, SVP of Worldwide Communications, had approved two of Ms. Combs' strategy proposals in 2022 and, only a few weeks before her review was finalized in 2023, approved $13 million to fully fund the HQ1 strategy she developed. Ms. Combs' lowered performance rating (based on unfounded criticism) resulted in a significant loss of stock and decreased Ms. Combs' total compensation.

From the time Ms. Combs began reporting to Mr. Green, Ms. Rocca, and Mr. Burke in December 2022, any discussion of professional development stopped. They made no effort to support her success or development. For example, throughout all of 2023, Mr. Green (as Ms. Combs' direct manager) did not have a single conversation with her about promotion timeline or



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

steps to be considered for promotion.

**INTERROGATORY NO. 10:** Describe all facts supporting Your allegation in Paragraph 178 that "Since returning from [Your] . . . medical leave[], Amazon has continued to discriminate and retaliate against [You]," including identifying the Person or Person who allegedly discriminated and retaliated against You, what they did to discriminate and retaliate against You, when and where that alleged discrimination and retaliation took place, and who else was present.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine, and/or the common interest privilege. Plaintiffs further object to this Interrogatory to the extent it seeks information in Defendant's possession and more readily obtained by Defendant.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

Ms. Combs took FMLA medical leave between March 20 and June 11, 2023 and short-term disability between June 12 and July 18, 2023. While out on medical leave, Ms. Combs regularly communicated with Mr. Green and others at Amazon regarding her expected return date. When Ms. Combs returned on July 19, 2023, however, Amazon failed to reinstate her to her pre-leave role (which was already a demotion from her pre-December 2022 role). When she was out on medical leave, Amazon had transferred Ms. Combs' HQ1 work (which she owned and had spent three years building) to two individuals, Bailey Sargent and Robin Heitzman, who do not have Ms. Combs' experience or subject matter expertise. Both Ms. Sargent and Ms. Heitzman expressed hesitation about leading the work (Ms. Heitzman told Ms. Combs that she had never done sponsorship work of this kind or at this scale, and asked for Ms. Combs' assistance). In a subsequent conversation with Mike McCann, Global Head of Sponsorships in XCM, he told Ms. Combs how excited he had been at the beginning of the year about the HQ1



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

work she had built, but he was very frustrated with Ms. Heitzman and disappointed with the state of the work since Ms. Combs had gone out on leave.

While Ms. Combs was out on medical leave, Mr. Burke, Ms. Rocca, and Mr. Green all told a new team member, Katie Ambrose, that they were not expecting Ms. Combs to return to the team or Amazon, and that Ms. Sargent would permanently replace her. (Ms. Ambrose understood that Mr. Burke and his team wanted Ms. Combs to quit, and were very surprised when she did not.) Thus, when Ms. Combs returned from FMLA and disability leave in July 2023, Amazon failed to return Ms. Combs' HQ1 work (it remained with Ms. Sargent and Ms. Heitzman).

Instead, Amazon further demoted Ms. Combs and placed her in a role in which she was set up to fail. Specifically, Amazon directed Ms. Combs to work on the Swayable testing program, previously led by an L6 researcher/analyst (Kendra Tappin), which was both below her level and outside Mr. Combs' skillset (marketing strategist), as she has no background in technical research or methodology. Ms. Combs requested training and coaching on this research tool, and told her managers that she was not comfortable leading tests in it. But her managers ignored these requests, and then blamed Ms. Combs for any small and insignificant misstep.

In addition to the Swayable project, Ms. Combs was assigned to two other projects following her return from FMLA leave. The first of these projects, campaign localization, was duplicative of the work of other team members (Kathy Lane, Katie Ambrose, and Caitlin Gallagher), which Ms. Combs expressed to her supervisors, and the project lacked funding for 2024, indicating it was low priority and unlikely to materialize in the future. The third project Ms. Combs was assigned, to lead the HQ direct mail piece, did not carry any tasks, as the work had been completed by Bailey Sargent while Ms. Combs was on FMLA leave, with Ms. Sargent stating she did not understand why Ms. Combs was assigned to it as there was nothing for her to do. Ms. Combs complained numerous times to her supervisors regarding her project



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

assignments, including the lack of future viability and priority. But Ms. Combs' supervisors ignored her.

On November 14, 2023, Mr. Green assigned Ms. Combs a new project, which he portrayed as a "growth opportunity." The project was to develop a reputational marketing strategy and campaign for HQ2 (in Washington DC). In other words, he was assigning Ms. Combs to perform the exact same work she had originated, built, and launched for HQ1 (the Puget Sound region), but which Amazon had removed from her remit through two demotions. Mr. Green indicated this was an "opportunity to build and lead an integrated marketing campaign," (i.e. an opportunity for Ms. Combs to repeat her prior HQ1 work), but this time with no budget, funding, or leadership support. This was clearly not a growth opportunity.

Around this same time in November 2023, Ms. Combs' managers began conveying unfounded and negative performance feedback in writing, which indicated to Ms. Combs they were attempting to create and document purported performance issues pursuant to her placement in Focus. Further, in the four months since returning from FMLA leave, Mr. Burke had completely ignored Ms. Combs, communicating directly with her only once during that period. As a direct result of Amazon's discriminatory and retaliatory demotions (pre and post leave), limited assignment of projects that had no funding or future viability, and lack of opportunity to grow her career at Amazon, Ms. Combs was compelled to resign, effective December 4, 2023.

**INTERROGATORY NO. 11:** Identify separately with respect to each element of damages that You seek to recover in this Action:

a. The amount of damages sought;

b. The party or parties against whom such damages are sought;

c. The basis upon which such damages are to be calculated;

d. Each Person believed by You to have knowledge relating to such calculation



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

of damages; and

e. Each Document that relates to each such calculation of damages.

**OBJECTIONS:**

Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Plaintiff further object to this Interrogatory to the extent it seeks a calculation of compensatory and punitive damages, neither of which are amenable to calculation or computation. With respect to each such category of damages, Ms. Combs will seek from a jury the maximum amount amenable to proof at trial.

With regard to Ms. Combs' economic losses, Plaintiff further objects to this Interrogatory insofar as her damages are ongoing and continue to increase. In addition, Plaintiff objects to this Interrogatory to the extent that they are in the process of calculating her economic damages based on information received to date from Defendant in discovery.

**RESPONSE:** Subject to and without waiving these objections, Plaintiff Combs responds that she is seeking the following damages, in each instance against Defendant Amazon.

(1) Combs seeks back wages in an amount to be determined at trial based on difference between what Amazon actually paid her, and what it should have paid her if it had not discriminated and retaliated against her. This includes:

a. the difference between what she actually earned and what she would have made, had Amazon compensated her commensurate with her male peers in her same job code and at her same level; and

b. damages stemming from Amazon's retaliatory actions, including her reduced compensation and stock award resulting from her lower-than warranted Forte rating for 2023, and lost wages and benefits resulting from her constructive discharge in December 2023.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

(2) Combs seeks an award of front pay in amount to be determined at trial to compensate her for the difference between what she will earn through any future employment and what she would have earned, had Amazon compensated her equally as compared to her male peers, and not retaliated against her, resulting in her constructive discharge.

(3) Combs seeks an equity interest in the corporate entities in an amount to be determined at trial based on the stock she lost as a result of Amazon's discriminatory and retaliatory actions;

(4) Liquidated damages or statutory damages pursuant to the Washington Equal Pay and Opportunities Act, RCW 49.58.010 *et seq*. ("EPOA") and the federal Equal Pay Act;

(5) An amount to be determined at trial to compensate Combs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Combs' emotional distress;

(6) An amount to be determined at trial to compensate Combs for the harm to her professional and personal reputations and loss of career fulfillment;

(7) An award of punitive damages in an amount to be determined at trial;

(8) An award for Combs' reasonable attorneys' fees and costs;

(9) An award of prejudgment and post-judgment interest, calculated at the legal rate under applicable law.

For calculation purposes, Plaintiff Combs believes her actual compensation, which was at the low-end of the compensation range for her job code/level, was $272,526 in 2021; $294,383 in 2022; and $254,560 in 2023. Conversely, Plaintiff Combs estimates, she would have been earning as much as $426,000 per year at the high-end of the compensation range for her job code/level. The exact pay differential will be determined after discovery is complete.

Since her employment with Amazon ended, Plaintiff Combs has started her own consulting business, Artio Strategies. She earned $ 45,182.43gross in contract work in 2024, and



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

has earned $89,786.03 gross so far in 2025.

**INTERROGATORY NO. 12:** Identify all administrative proceedings, litigations, and arbitrations, past or pending, in which You were involved either as a party or witness, including the parties involved, relevant allegations, and outcome(s).

**OBJECTIONS:** Plaintiff objects to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence, as it lacks any limitations on the temporal scope or subject matter.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows: None.

**INTERROGATORY NO. 13:** Identify all educational programs, awards, club memberships, association memberships, director or officer positions, and any other positions You have completed, applied for, been nominated for, or received since graduating from high school.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence, including but not limited to the extent the temporal scope dates back to high school, well over twenty years ago.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

Ms. Combs was on the Dean's list in college based on her academic performance. Since graduating, Ms. Combs has been an active alumni of the University of Washington School of Communications, invited to participate in various speaking engagements, mentoring sessions, and other events. Ms. Combs has also been invited to speak as an expert at many industry and academic events and conferences. She has served as a spokesperson in media interviews and events for Starbucks and Lyft. And she recently published an op-ed in the Puget Sound Business Journal.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**INTERROGATORY NO. 14:** Identify all instances of gainful work or employment, including but not limited to jobs, independent contractor arrangements, and businesses owned or operated by You, that You have had since graduating from high school.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, harassing, and not likely to lead to the discovery of admissible evidence to the extent that the temporal scope dates back to high school, well over twenty years ago.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

- 1999/2000 (summers): worked full time at Nu Way dry cleaners in Greeley, CO
- 2000-2002: part time while attending college at Eddie Bauer in Seattle, WA
- 2002-2004: part time while attending college, then full time post-graduation at Anthony's Homeport in Kirkland, WA
- 2003-2003: interned at Bombar Public Relations in Kirkland, WA
- Feb 2004- August 2004: full time at Rockey Hill & Knowlton (PR firm) in Seattle, WA
- 2004-2010: full time at Pyramid Communications in Seattle, WA
- 2010-2011: full time at WE Communications in Bellevue, WA
- 2011-2018: full time at Starbucks in Seattle, WA
- 2018-2020: full time at Lyft in Seattle, WA
- 2020-2023: full time at Amazon in Seattle, WA
- 2024-present: full time self-employed, as founder & principal of Artio Strategies in Seattle, WA

**INTERROGATORY NO. 15:** Identify all jobs for which You have applied, whether with Amazon or any other employer, since November 20, 2020, including the dates on which You applied to each, and describe the outcome of any such applications, including but not limited to



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

whether You were extended an interview or offered a job.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as overbroad, irrelevant, and harassing to the extent the temporal scope predates Ms. Combs' constructive discharge and her efforts to mitigate her damages thereafter.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

In January 2023, Ms. Combs was invited to apply, and did apply, for a creative strategist role at Brooks Running. Ms. Combs participated in interviews, but was not offered the job.

In May 2023, the Seattle Seahawks contacted Ms. Combs and asked her to apply for a VP of Community Outreach position with the team. The role was not posted publicly, and they were only inviting hand-picked candidates to apply. Ms. Combs agreed to be considered for the role and sent in her resume. The following month, the Seahawks promoted someone internally before interviewing Ms. Combs or any other external candidates.

Since her constructive discharge from Amazon in December 2022, Ms. Combs has focused on starting and running her own independent consulting business, Artio Strategies. Since launching in January 2024, Ms. Combs has obtained consulting work with Madaraka Festival, Third Stone, New Rising Sun (the producers of Bumbershoot Music & Arts Festival), Puyallup Tribe of Indians, Mother Bear Agency (to lead projects on its behalf with Reverba Global, RPI/Blurb, and Udemy), Carlton Wealth Management, and People Come First (PCF) Construction group.

Ms. Combs' mitigation efforts also include securing and attending over 125 networking and business development meetings, attending eight professionally organized networking events, fulfilling four speaking engagements, writing and publishing an op-ed in the Puget Sound Business Journal, being featured in a Starbucks Alumni Network LinkedIn feature, and hiring a business coach.

In addition, Ms. Combs has submitted more than 45 applications for full-time



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

employment. In April 2024, Ms. Combs was contacted by and spoke to a recruiter regarding a role at TikTok, but was not offered the job. Similarly, Ms. Combs interviewed for a roles at Rover and Stanley 1913, but was not offered the positions.

**INTERROGATORY NO. 16:** Identify all e-mail accounts, e-mail addresses, user names, handles, mobile devices, mobile device numbers, blogs, forums, cloud storage accounts, social media platforms or accounts, or the like, including but not limited to SMS message accounts, iMessage accounts, Facebook, Twitter, Instagram, WhatsApp, Snapchat, Vine, Pinterest, TikTok, Reddit, Google+, Dropbox, Google Drive, Apple iCloud, and Microsoft OneDrive, by which You have sent, received, shared, stored, posted or forwarded communications or content of any sort in any form (excluding private and privileged communications to or from counsel) concerning the allegations in the Complaint.

**OBJECTIONS:** Plaintiffs object to this Interrogatory to the extent it includes information protected by the attorney-client privilege, work product doctrine, and/or common interest privilege. Plaintiffs further object to this Interrogatory as overly broad and not reasonably calculated to lead to admissible evidence.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

- Personal Email: erincombs13@gmail.com
- Work Email: erin@artiostrategies.com
- Cell Phone: 206.856.4104
- LinkedIn: https://www.linkedin.com/in/erin-e-combs/

**INTERROGATORY NO. 17:** Identify all electronic devices, removable media devices (including but not limited to USB drives, thumb drives, and external hard drives), in Your possession, custody or control that contain information related to Your employment, or have



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

contained information related to Your employment at any time since November 20, 2020.

**OBJECTIONS:** Plaintiffs further object to this Interrogatory as overly broad and not reasonably calculated to lead to admissible evidence.

**RESPONSE:** Subject to and without waiving these objections, Ms. Combs responds as follows:

- Cell phone
- Laptop

**INTERROGATORY NO. 18:** Identify any consultants or experts with whom You have spoken in connection with this Action.

**OBJECTIONS:** Plaintiffs object to this Interrogatory as premature to the extent it conflicts with applicable deadlines for identifying retained experts or producing expert reports.

**RESPONSE:** If and when Plaintiffs retain a testifying expert in this matter, Plaintiffs will comply with the Court's deadlines for disclosures related thereto.



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

DATED this 8th day of August, 2025.

OUTTEN & GOLDEN LLP

By: Cassandra Lenning

Cassandra W. Lenning, WSBA #54336
Jahan C. Sagafi*
Menaka N. Fernando*
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800

Adam T. Klein*
Cara E. Greene*
Chauniqua Young*
Michael C. Danna*
685 3rd Ave 25th Floor
New York, NY 10017
Telephone: (212) 209-0675

Jennifer Davidson*
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 918-5476

**admitted pro hac vice*

*Attorneys for Plaintiffs*

**VERIFICATION**

I, Erin Combs, solemnly affirm, pursuant to the laws of the United States and the State of Washington, and under the penalty of perjury and upon personal knowledge, that the Answers to the foregoing eighteen interrogatories are true and correct.

By: ______________________________
Erin Combs



OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

The signed document can be validated at https://app.vinesign.com/Verify

**CERTIFICATE OF SERVICE**

I certify that on August 8, 2025, I caused the foregoing Plaintiff Erin Combs' First Supplemental Objections and Responses to Defendant's First Set of Interrogatories to be sent to all counsel of record *via* electronic mail.

DATED: August 8, 2025

OUTTEN & GOLDEN LLP

By: Cassandra Lenning

Cassandra W. Lenning, WSBA #54336
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800